# FILED

JUL 1 6 2007

E-Filing

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  __EKDAHL__      __Emil__      __J.W. III__
         (Last)              (First)           (Initial)

Prisoner Number  __C-79199__

Institutional Address  __San Quentin State Prison 1 Main St, CA 94974__

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

__Emil Joseph Wilhelm Ekdahl III__    C 07 - 3642
Full Name of Petitioner                          Case No.(To be provided by the
                                                           clerk of court)      (PR)

                vs.

__Warden Ayers_____    PETITION FOR A WRIT OF HABEAS CORPUS
Name of Respondent
(Warden or jailor)

Read Comments Carefully Before Filling In

When and Where to File

   You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

   If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

petition will likely be transferred to the district court for the district that includes the institution where you are confined.  Habeas L.R. 2254-3(b).

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

<u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

1.    What sentence are you challenging in this petition?

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):



<u>Monterey County Superior Court</u>        <u>Monterey  California</u>
Court                                Location

(b)    Case number, if known  <u>CR 9938 & CR9942  (CR9938 A&B)</u>
(c)    Date and terms of sentence  <u>16 years to life</u>
(d)    Are you now in custody serving this term?  (Custody means being in jail, on parole or probation, etc.) (Yes)    No

Where?  <u>San Quentin State Prison    P.O. Box C-79199 S.Q. CA 94974</u>
(Name of Institution)            (Address)

2.    For what crime were you given this sentence?  (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

<u>Penal Code § 190 , Penal Code § 31 , Penal Code §§12022 & 211</u>
<u>2nd degree murder via accessory hence principle rule and</u>
<u>gun allegation during robbery</u>

3.    Did you have any of the following?

Arraignment: Yes <u>✓</u> No __  Preliminary Hearing: Yes <u>✓</u> No __ Motion to Suppress: Yes <u>✓</u> No __

3

4.    How did you plead?

Guilty _____    Not Guilty ___✓___    Nolo Contendere _____

Any other plea (specify) ___N/A_____

5.    If you went to trial, what kind of trial did you have?

Jury _____    Judge alone ___✓___    Judge alone on a transcript _____

6.    Did you testify at your trial?  Yes ___  No ✓

7.    Did you have an attorney at the following proceedings:

(a)    Arraignment    Yes ___        No ✓
(b)    Preliminary hearing        Yes ✓        No ___
(c)    Time of plea    Yes N/A        No ___
(d)    Trial    Yes ✓        No ___
(e)    Sentencing    Yes ✓        No ___
(f)    Appeal    Yes ✓        No
(g)    Other post-conviction proceeding    Yes ___        No ✓

8.    Did you appeal your conviction?  Yes ✓  No ___

(a)    If you did, to what court(s) did you appeal?

Court of Appeal    Yes ✓    No ___    __1984__    __Denied__
                                    (Year)                    (Result)

Supreme Court of
California    Yes ✓    No ___    __1985__    __Denied__
                                    (Year)                    (Result)

Any other court    Yes ___    No ✓    __N/A__
                                    (Year)                    (Result)

(b)    If you appealed, were the grounds the same as those that you are raising in this petition?
                                    Yes ___  No ✓

(c)    Was there an opinion?    Yes ___  No ___

(d)    Did you seek permission to file a late appeal under Rule 31(a)?
                                    Yes ___  (No)

4

If you did, give the name of the court and the result:

---

9.     Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?     Yes ⊗     No _X_

2005 BPH Parole Hearing

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a)     If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.     Name of Court __Monterey County Superior Court.__

Type of Proceeding __Petition for Writ of Habeas Corpus__

Grounds raised (Be brief but specific):

a.     BPH used Some Evidence Test which is Insufficient to Protect Due Process of Law and
__BPH used Immutable Factors to Deny Parole Suitability Ground #1__

b.     __Ground #2 BPH is forcing A.A. Religion upon Petitioner.__

c.     __Ground #3 P.C. 3042 Right to have Trial Attorney Notified__

d.     __Petition Ground #2 was Denied on Sep 13, 2006 See Exhibit "XA" "X"__

Result __Summary Denied See Exhibit "XA" "X"__ Date of Result __July 21, 2007__

II.     Name of Court __Sixth Appellate Court of California__

Type of Proceeding __Petition for Writ of Habeas Corpus.__

Grounds raised (Be brief but specific):

a.     __Same as above petition   See Continued attached page 6a__

b.     __See "Fact" attached as page 6b & 6c__

c.     __See Exhibit V: Appellate Court Denial Order.__

d.     _____

Result _____ Date of Result __Oct 16, 2006__

III.     Name of Court __California Supreme Court__

I.

Continued for grounds raised

Grounds raised (Be brief but specific)

d. Ground #4  Illegal and unreliable evidence used by Board to deny parole.

e. Ground #5  Board Order for Therapy violates Due process of Law.

f. Ground #6  Illegal Sentence

g. Ground #7  Penal Code Statue 3001 is illegal (3003 is correct statue)

h. Ground #8  Sixth Appellate Court violated Constitutional Habeas Proceedure

i. ///

See Exhibit X: Superior Court of Monterey County. Case No. 5267
Dated July 21, 2006 pp. 1-7  Denial Order

# FACTS.

On January 24, 2006 ., petitioner filed a petition for writ of habeas corpus in Monterey County Superior Court. The writ was given the file number of HC 5267.

The writ raised seven grounds for relief:

1.    The ' some evidence test ' is insufficient as a test to protect petitioner's due process rights due in a parole hearing.

8.    Prison Officials are forcing their religion of AA on petitioner as a condition of parole suitability in violation of the right to separation of Church and State religious freedom.

9.    BPH did not send P.C. § 3042 notice to trial attorney in violation of Due Process.

10.    The BPH used illegal and unreliable evidence in a parole hearing which resulted in arbitrary and capricious hearing in violation of Due Process.

11.    The BPH in denying parole with denial reason # 11, violated petitioner's due process of law rights pursuant to Ca. Penal Code § 5011, under the California and Federal Constitutional clauses, and including the relevant due process claims of a right to a defense, and Ineffective Aid of Counsel at trial.

12.    Petitioner has an illegal sentence, in violation of the applicable clauses of either the California of Federal Constitutions, as 2nd degree felony murder for one of the felonies enumerated in Penal Code § 189 is usurpation of legislative power by the California Supreme Court.

13.    Penal Code § 3001 is unconstitutional.

On March 23, 2006., the Monterey Count Superior Court issued an ORDER to extend time which to respond to petitioner's writ 60 days from March 23, 2006.

See Exhibit Attachment _____ Court Order CRCR 4.551(h).

# FACTS.

On July 21, 2006., the Monterey County Superior Court Judge the Honorable Marla O. Anderson issued an ORDER to summarily deny six of petitioner's seven grounds for relief. For the 2nd ground of the writ the Court found that a *prima facie* showing was made, and issued an informal response order.

See Exhibit Attachment _____ Summery Denial Order., pp. 1 - 7 line(s)

///

///

///

(9)

Type of Proceeding _Petition for Writ of Habeas Corpus._

Grounds raised (Be brief but specific):

a. _Same as above two stated Courts Habeas Petitions._

b. _See Exhibit Y: California Supreme Court Summary Denial_

c. _____

d. _____

Result _____  Date of Result _May 16, 2007_

    (b)    Is any petition, appeal or other post-conviction proceeding now pending in any

court?    Yes ___ No ✓

_____

(Name and location of court)

## B. GROUNDS FOR RELIEF

    State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need more space. Answer the same questions for each claim.

    Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

    Claim One: _See Attached pages Ground #1_

Supporting Facts: _____

_____

_____

_____

Claim Two: _See Attached pages Ground #2_

_____

Supporting Facts: _____

_____

_____

_____

Claim Three: _See Attached pages Ground #3_

_____

Supporting Facts: _____

Claim Four: See Attached pages Ground #4

Claim Five: See Attached pages Ground #5

_____

If any of these grounds was not previously presented to any other court, state briefly which

grounds were not presented and why:

N/A

_____

_____

_____

8

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

_In re Dannenberg (2005) 34 Cal. 4th 1061_

_In re Rosenkrantz 29 Cal. 4th 616 (2002)_

_In re Elkins 144 Cal. App 4th 475, 479 (2006)_

Do you have an attorney for this petition?    Yes ___ No ✓

If you do, give the name and address of your attorney:

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

July 04, 2007            _Emil Joseph Wilhelm Ekdahl III_

Executed on _July 04 2007._    _Emil Joseph Wilhelm Ekdahl III_
                Date                Signature of Petitioner

{ rev. 5/96}

9

Page 9 of Federal Petition for Writ of Habeas Corpus

List by name and citation only cases ....

In re Barker ____ Cal. App. 4th ____ #A114686 (2007)
In re Gray ____ Cal. App. 4th ____ #B197193 (2007)
In re Lawrence ____ Cal. App. 4th ____ #B190874 (2007)
In re Lee 143 Cal. App. 4th 1400, 1408, (2006)
In re De Luna 126 Cal. App 4th 585, 591 (2005)
In re Scott 133 Cal. App. 4th 573, 595 (2005)
In re Smith 109 Cal. App. 4th 489 (2003)
In re Weider 145 Cal. App. 4th 570, 575-576 (2006)
Martin v Marshall 431 F. Supp. 2d. 1038, 1048 (N.D. Cal. 2006)
Rosenkrantz v Marshall 444 F. Supp 2d 1063 (N.D. Cal. 2006)
Johnson v. Finn 2006 WL 195159 (E.D. Cal. 2006)
Greenholtz v Inmates 442 U.S. 1, 12 (1979)
McQuillion v. Duncan 306 F.3d. 895 (9th Cir 2002)
Biggs v Terhune 334 F.3d. 910, 915 (9th Cir 2003)
Irons v. Carey 479 F. 3d. 658 (9th Cir 2007)
Irons v Warden 358 F. Supp. 2d 936, 939 (E.D. Cal 2005)

Emil Joseph Wilhelm Ardahl III
Emil Joseph Wilhelm Ardahl III

July 01, 2007.

# Ground 1.

## CONTENTIONS

Petitioner contends that the fundamental purpose of due process of law, even the laws of our government is based upon fairness. That concept of fairness of the Constitutions, federal law, and state law applies to the Individual. Even down to the least individual of our society the convicted murder.

The parole term suitability hearings before the California BPH must provide due process of law. And that due process means something more than a mere pro forma parole hearing. It means that due process of law is there to insure that a fair hearing is held. Petitioner did not receive a fair hearing and it is petitioner's contention that a court review that only looks to see if there is ' some evidence ' to support the BPH decision is not sufficient enough to protect a prisoners' due process rights. A reviewing courts some evidence test would cause a arbitrary and capricious pro forma parole hearing to pass review. The problem with that standard is that there will always be some evidence to support the BPH. Especially if all the BPH has to is recite some of the CCR title 15 regulations and slap one or facts from any prisoner's murder and presto a pro forma hearing was had. And yet the controlling parole statue Ca. Pen. Code § 3041 (a) states that parole for murder is normal.

Petitioner denies each and every one of the BPH's 12 denial reasons. Petitioner will lay out a contention for each denial reason as due process violation also some denial reasons will

6.

## Ground 1.

### CONTENTIONS

be raised as separate constitutional grounds herein this petition for writ of habeas corpus.

Petitioner contends the BPH just regurgitated some boiler-plate of the CCR title 15 regulations and added some fact from the offense to an illegal repromulgation of the regulations. The one added fact is from denial reason #2:

" Multiple victims were robbed and one
person killed. "

The actual regulation CCR Title 15 § 2402 reads:

(c)(1)(A) Multiple victims were attacked, injured
or killed in the same or separate incidents.

Petitioner contends that regulations give raise to the same due process of law rights as any law. The title 15 regulation as promulgated does not fit petitioners offense. The actual wording of the regulation means victims were attacked coma injured There can be no separation of attacked, injured. Together the phrase attacked, injured means as in physically attacked and injured. While in petitioners offense two victims were robbed by being made to lay upon a floor, they were not physically harmed in any way. What the BPH has done is to repulmagate the regulation to fit the offense instead of weighing the offense to see if the offense fits the regulation.

7.

Ground 1.

CONTENTIONS

The BPH repromulgation was done without proper OAL procedure. U.S. v. Nixon (1974) 418 U.S. 683, 41 L.Ed.2d. 1039. Ag.L.Rl.Bd. v Sup.Ct. (1976) 16 Cal.3d. 392, 128 Cal.Rptr. 183.

Petitioner contends That the California felony murder theory coupled with Ca. Pen. Code § 31 co-conspirater liability, and the particular facts of the offense prove that there is no truth to the BPH's unsuitability findings # 1 - 3; that the offense was cruel and callous, dispassionate, inexplicable, [or] trivial. Nor is the BPH considering petitioner as an individual pursuant to Ca. Pen. Code § 3041(b); by acknowledging the above mentioned facts. The BPH acted arbitrarily by placing the full weight of the offense onto petitioner while not considering the facts from the offense as they apply to petitioner as an individual.

Individually petitioner was forced to participate in the offense under a credible threat of duress. This duress was more than sufficient enough to cause the trial court to lower the degree of murder to 2nd degree felony murder pursuant to the individual culpability plus cruel and unusual punishment holdings of People v Dillon (1983) 34 Cal.3d. 440. This was small occurrence because as Dillon characterizes it: A proportionality finding of cruel and unusual punishment is the exception to the rule and not the normal course of action for a trial court to make. Petitioner's Dillon reduction in degree of murder is an exceptional event premised upon petitioners duress defense.

Ground 1.

CONTENTIONS

It is a major, exceptional, court found true fact, that the BPH arbitrarily and capriciously, did not consider in the absentee parole hearing held on July 01, 2005.

Particularly troubling is the BPH's unsuitability finding of dispassionate. As the dictionary defines it dispassionate means to be without emotion. While duress is defined by court case law holdings to mean:

Duress is defined as " a direct or implied threat of force violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to

1.) Perform an act which otherwise they would not have performed.

2.) Acquiesce in an act to which one would not have submitted.

People v Cochran (2002) 103 Cal.App.4th. 8, 13.

Duress is not dispassionate it is a form of fear. See the following case law for a definition of what fear means:

People v Pitmon (1985) 170 Cal.App.3rd. 38, 51.

Petitioner contends that the robbery was only carried out after being given a credible death threat by co-conspirater Mark Horning. In fact anyone of the Horning brothers would have killed petitioner on, or for Marks behalf, especially Danny Horning. The Detective who investigated petitioners commitment offens Detective Gordon Sonne' wrote a letter to the then BPT supporting

9.

## Ground 1.

### CONTENTIONS

petitioners parole. In that letter Dect. Sonne characterized the Horning brothers as a gang. Petitioner contends this is the same as a criminal street gang.

See Ex. C: Detective Sonne's Mar 06 1991 Letter.

See Ex. D: Probation Officers Report.


Petitioner offers the following two case laws to support the contention that the Hornings threat was credible.

People v Horning (1984) 150 Cal.App.3d. 1015, 1017 - 1018 198 Cal.Rptr. 384.

People v Horning (2005) 34 Cal.4th. 871, 22 Cal.Rptr.2d. 305.


In the first case law from 1984 where its an appeal by Mark Horning where Danny Horning is also involved.

In another robbery, unrelated to petitioner's conviction, , Mark Horning threatens the victim Mr. Sears with a credible threat, as follows:

> " he [Mark] always got even with the people he thought
> didn't do him right"

Later that same day, Mark and Dannys erratic and aggressive behavior frightened the victim Mr. Sears.

Several hours later the same day the victim Mr. Sears was attacked , injured in his barn. Someone [Mark or Danny] hit Mr. Sears in the head twice with a five pound sledge hammer. The victim Mr. Sears was then threatened with a pistol and personally robbed.

10.

Ground 1.

CONTENTIONS

The reader should note from this case law (150 C.A.3rd. 1015) that a police stop of the Hornings near the victim Mr. Sear's residence, did not result in an arrest because Mark Horning was identified as a Prison Guard employee. Mark Horning was Correctional Officer and due's paying member of the CCPOA when he credible threatened petitioner. In short an authority figure. People v. Pitmon (1985) 170 Cal.App.3rd. 38, 51.


The second case law People v. Horning (2005) 34 Cal.4th. 871., is a death penalty appeal of Danny Horning occurring some years after petitioner's commitment offense. Danny Horning never did time for his Ca. Pen. Code § 31., personal culpability in petitioner's commitment offense of California felony murder. The reason Danny Horning never received any punishment for his role was because the Monterey County District Attorney picked Danny over petitioner, to turn state's evidence, and immunity from prosecution. Yet the District Attorneys star witness Danny Horning would go on to commit several danger to society felonies, including murder-robbery were the victims head and hands were cut off. It's interesting that Danny never came forward to turn anyone in for two years. In fact nobody invol-ved in this case came forward, as the District Attorney complains of in his Ca. Pen. Code § 3042 reply to the BPH. And Mark Horning never received any punishment for his personal culpab-ility, as Danny says from Death Row Mark paid the D.A. off to

11.

Ground 1.

CONTENTIONS

drop all charges against Mark Horning, Terry Jones, and Shelly Bragi. And the BPH never took any of this into consideration in the July 01, 2005., waived absentee parole hearing.

It is clear from this later death penalty appeal that Danny Horning was dangerous and dangerous at the time of petitioner's commitment offense. Had petitioner not robbed the store Mark and Danny would have killed petitioner. See Ca. Pen. Code § 26 (6)(8)., were as the trial court used the duress of this statue's holding to lower the degree of murder to second degree. However the trial court committed a sentencing error because as soon as, the court lowered the degree it should have followed through and found petitioner factually innocent of the offense pursuant to Ca. Pen. Code § 26 (6)(8), as second degree felony murder is not punishable by the death penalty.

Issue raised as Ground 5 of this here petition for habeas corpus.

Petitioner contends that the BPH denial reason # 4:

> " Even if we were to take the inmates (indis-
> cernible) that he was a willing participant
> in the robbery, but that was based upon that
> he was threatened, we have an individual who
> was killed, two other individuals robbed. "

And including for the same reasons the BPH denial reason # 6.,

12.

Ground 1.

CONTENTIONS

are a violation of petitioner's due process rights and petitoner's right to a court review that is sufficient enough to protect those rights because the current ' some evidence ' test is not sufficient to protect those said rights.

The BPH arbitrarily decided the duress and second degree Dillon proportionality/personal culpability factors found true by the trial court are irreverent. It's easy to tell the BPH is doing this by what their saying in the opening sentence of denial reason # 4: " Even if we were to take the ... " Clearly this means the BPH is not taking the relevant factors into consideration. See Ramirez quote in the Scott case law:

> " The gravity of the commitment offense or
> offenses alone may be sufficient basis for
> denying parole application, so long as the
> Board [BPH] does not fail to consider all
> other relevant factors "

In re Ramirez (2001) 94 Cal.App.4th. 549, 569 114 Cal.Rptr.2d. 381. Quoted from:

In re Scott (2005) _____Cal.App.4th. _____,DJDAR 12450, 12456. See Ex. B: BPH Denial Trans. pp. 15 - 16 line(s) 17-22 & 1-6.

The BPH arbitrarily ignored the relevant factors of duress in denial reason # 4. And in denial reason # 4 and # 6 the BPH

13.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ground 1.

CONTENTIONS

primary consideration for all of the unsuitability factors stems from the gravity of the commitment offense alone. As Quoted:

> We have an individual who was killed,
>
> two other individuals robbed. "

See Ex. B: BPH Denial Trans. pp. 15 line(s) 20 - 21.

The BPH further places emphases on the gravity of the commitment offense in their denial reason # 6:

> " The bigger issue, of course, is the killing
>
> of the victim and there seems to be no reason
>
> why the victim had to be killed. This was
>
> not a situation where the victim was attemp-
>
> ting to fight off the robbers with guns or
>
> (indiscernible) anything like that. "

See Ex. B: BPH Denial Trans. pp. 15 -16 line(s) 26, 1 - 6.

Petitioner contends the BPH with these two denial reasons is not judging whether petitioner would pose an unreasonable public safety risk, but the BPH is seeking retribution, punishment, and even vigilantism. Nobody, not even the Monterey County District Attorney thinks petitioner is dangerous just that petitioner needs more punishment.

See Ex. G: Monterey County District Attn. 3042 reply.

14.

## Ground 1.

### CONTENTIONS

Petitioner contends that the BPH is not judging petitioner as an individual, nor considering petitioner's 22 years incarceration. Ca. Pen. Code § 3041(b) requires both individual consideration, and that in judging the gravity of the offense, it also includes, the concept of timing. The BPH arbitrarily disregarded the timing and placed undo emphases upon the gravity of the commitment offense alone in judging whether or not petitioner would pose an unreasonable public safety risk.

See the Carl Irons case law quote in the Scott case law:

> " Yet, the predictive value of the commitment
> offense may be very questionable after a long
> period of time 9. "

Iron v. Warden of State Prison - Solano (E.D. Cal. 2005) 358 F.Supp.2d. 936, 947 fn. # 2; Quoted from:

In re Scott (2005) _____Cal.App.4th. _____, DJDAR 12450, 12456.

> " Thus, the denial of release solely on the
> basis of the gravity of the commitment
> offense warrants especially close scrutiny"

In re Scott (2005) _____Cal.App.4th. _____, DJDAR 12450, 12456. See Fn. # 9.

## Ground 1.

### CONTENTIONS

Petitioner contends that the BPH denial reason # 7:

> " The other reason for the denial at this point
> in time is his institutional behavior.  Prior
> programming has only been limited while incar-
> erated.  He has not sufficiently participated
> in the programs.  He has failed to demonstrate
> evidence of positive change. "

See Ex. B: BPH Denial Trans. pp. 16  line(s) 8 - 12.


The BPH denial reason # 7 is arbitrary and capricious because no prior BPT unsuitability findings, or recommendations of what petitioner could do to become parole suitable, have stated that petitioner is not sufficiently programing. At petitioners prior parole hearing he was told to get his ducks in a row because he is getting close.  How could petitioner be getting close if his prior programming was not sufficient ? See Ex. H: Prior BPT Denial Trans. pp. 62 - 69 line(s) ____


The deference between the two hearings is the last parole hearing and the present parole hearing is; in the last hearing from Mar. 26, 2003., the commissioners were Governor Davis, a democrat, appointees, and in the present hearing from Jul. 01, 2005., the commissioners are Governor Scwarzenegger, a republican, appointees. The two groups of commissioners did

16.

Ground 1.

CONTENTIONS

not communicate with each other. The two political groups have the same illegal no parole agenda, but do not rely on what a prior governors commissioners may have said. In this case the new BPH acted without considering what petitioner had been told by prior parole panels concerning his programming.

Petitioner further contends that he has had a total of six prior parole hearings were he was found unsuitable. As a matter of procedural due process of law rights petitioner had the right to a written notice of what he might do concerning prison programming in order that he may become parole suitable. In each of the prior six parole hearing written notices the BPT made certain programming request of petitioner. Petitioner has completed each and every one of those BPT request. So at what point in time would petitioner know from the BPT that his prison programming was not sufficient enough for this future neo-con parole commissioners appointed by a Republican?

Petitioner has completed the vocational trade of Automotive Service with degrees from the Automotive Society of Engineers. Petitioner has completed the vocational trade of Machinist with a State of California Certificate, as well as, a Machinist Union Certificate. Petitioner has completed the Category X program with a low to none violence potential something the BPT recommended. Petitioner has completed the BPT recommended groups of "anger control", and "assertive behavior".

17.

Ground 1.

CONTENTIONS

Petitioner has completed the workshop "Alternatives to Violence" Petitioner has completed the program from the Catholic Church known as KAIROUS. Petitioner has completed several college classes and is close to earning an A.A. degree. Petitioner has participated in the Alcoholics Anonymous program for over twenty some years; a program recommended by every prior BPT panel. Note up until two years ago petitioner attended this program until he became an evolutionist and now objects to the program as being religious. See ground 2., of this here petition for writ of habeas corpus where petitioner raises the first amendment objection to further participation in A.A.


No prior BPT parole panel said that this was not sufficient so the current BPH parole panel's finding is arbitrary.
See Ex. A: BPH Hearing Trans. pp. 9 line(s) 12 - 21.


Petitioner contends that the BPH should of appointed a CDC&R correctional counselor pursuant to Ca. Pen. Code § 3041.5 (3) because petitioner waived his constitutional right to attend the hearing. Once a prisoner waives this attendance right the BPH is required to hold an absentee parole hearing.
The absentee parole hearing is to be just as legally fair as a parole hearing where the prisoner attends. The reason is because petitioner did not waive any other procedural rights, only the first right to attend. Because the BPH did not appoint

18.

Ground 1.

CONTENTIONS

a CDC&R person the BPH weigh of the evidence was lopsided and arbitrarily construed in favor of the government.

Petitioner contends that the denial reason # 8:

" Misconduct while incarcerated includes
recently a 115, April 29th, year 2004 as well
as five recent 128's, starting with chrono
2003 which is his last parole date.  He had
a 115 on July 2000 -- excuse me a 128 of July
2003; April 2004; another one in April 2004;
in June 2004; 128 and finally a recent January
2005"

See Ex. B: BPH Denial Trans. pp. 16 line(s) 12 - 18.    also
pp. 19 line(s) 3 - 12.

are an arbitrary action by the BPH because the BPH has an illegal
five years worth of denials policy for any inmate who recieves
a CDC&R disciplinary report known as a CDC&R 115.  The evidence
of this policy is in the statement of the commissioner on page
19 of the denial transcript where it says that petitioner needs
to look in the rearview mirror and put this far behind him.
Obviously the BPH is using a metaphor meaning a substantial
amount of time needs to pass from the last 115 or 128 Chrono
before petitioner can be found parole suitable.  This policy
is illegal because Ca. Pen. Code § 3041(b) restricts the BPH's

19.

### Ground 1.

#### CONTENTIONS

review to the gravity or timing of past or current convicted offenses. A CDC&R 115 or 128 Chrono are not convicted offenses.

The BPH, also broke petitioner off, a three year denial behind the CDC&R 115 from April of 2004, and the Jan. 2005 CDC&R 128 Chrono. The 115 was for quitting a prison job because of inadequate ventilation from the wood dust and petitioner does not want to die from wood workers disease. And petitioner was placed in the job after a personality conflict with a Prison Industry Authority (PIA) supervisor.                    the PIA supervisor for ~~running Heroin~~ and ~~marijuana into~~ San Quentin, and ~~having sex~~ with the ~~Medium Center.~~ As a result that supervisor no longer works for San Quentin PIA, but as get back at petitioner he was placed in a Hand sanding part of PIA where no inmate wants to work. The wood dust is bad because there is no ventilation in that part of the PIA factory. Petitioner was not allowed to move out of that work position, so he quit. However how does this make petitioner an unreasonabl e risk to public safety ? Petitioner contends that this is analogous to quitting a job in society while it may not pay the bills - it only means new employment must be had.

The reason the BPH gave petitioner a three year denial of parole is because they are under a court order to catch up on over due parole hearings. Petitioners July 01, 2005., parole hearing was almost a year late. So the BPH is giving out multi year denials to catch up on their overdue backlog of parole

### Ground 1.

#### CONTENTIONS

hearings and only because a court has ordered them to do so. The BPH has given other life inmates with CDC 115's dates. Some of the other life inmate CDC 115's were as recent as petitioner's year old 115. Some of the other life inmate's CDC 115 were for rule violations far worse than petitioner's quitting a prison job CDC 115. See the Smith case law: In re Smith (2003) 109 Cal.App.4th. 489, 134 Cal.Rptr.2d. 781.


Petitioner contends that the BPH denial reason #9 and the related BPH denial reason # 11, are arbitrary and capricious because the BPH misread the psychological reports in a way that was to support their predetermined pro forma parole farce. BPH denial reason # 9:


"The psychological report from a Dr. Lewis
Phd indicates that there are concerns. One
of the major concerns that the doctor had
was in regards to his AA 12-step program.
Basically the doctor indicates under inpres-
sions, assessment of (indiscernible) 2003
details a risk and return to dangerousness.
Under Dr. Bencichs, " If the state absolutely
ask for drug and alcohol (indiscernible)
finds potential compared to average lifer.
However, his capacity (indiscernible) social

21.

Ground 1.

CONTENTIONS

> status were he released is compromised since
> he is no longer availing himself for (indis-
> cernible) of weekly support of 12-step meet-
> ing. This makes it more likely he will
> relapse. (indiscernible) meeting. Therefore,
> (indiscernible) he be paroled. "

See Ex. B: BPH Denial Trans. pp. 16 - 17 line(s) 19-26, 1-9.

See Ex. I: Dr. Lewis's Life Prisoner Evaluation pp. 1 - 5.

See Ex. J: Dr. Bencich's Psychological Evaluation pp. 1 - 3.

The first thing to notice is an incredible usage by the BPH of the word indiscernible in parentheses. The word indiscernible always appears in the sentences in a way that would tend to have a reader fill in the blank with a negative con -notation reflecting badly upon petitioner.

Both Doctors Lewis and Bencich are agents of the State of California Government via the BPH and CDC&R. It is in the Doctor's official capacity that they violated petitioner's rights to be free of Government sponsored religion. 12-step programs such as AA are religious programs and as such petitioner contends it violates his first amendment rights. This usage of religion by the Doctors has caused the BPH to deny parole on the basis of petitioner's refusal to participate in religion because of his belief in science and evolution. See ground 2 of this petition.

22.

Ground 1.

CONTENTIONS

Both Doctors have in their evaluations placed petitioners violence level at lower than the average lifer. Also both Doctor 's have under the DSM - IV Axis II, diagnosed: no major mental illness, nor personality disorder. Petitioner is not a Social Path. These are the relevant portions of the psychological reports that the BPH arbitrarily ignored. While both Doctors expressed concern about possible alcohol usage, both also noted petitioner has been clean and sober since 1986. If I am not using alcohol while incarcerated in the most harsh punishment environment why would I drink out there in paradise ?

Neither the BPH nor the Doctors have offered petitioner an alternative non-religious alcohol abstinence program in the penitentiary, nor upon future parole. This is arbitrary because the BPH could order such a non-religious alcohol program as part of petitioner's parole requirements.


Petitioner contends that the BPH denial reason # 12:


" Prisoner should be commended for the fact
that he is attempting -- prisoner is comm-
ended by the Commission to the fact that he
realized that he was unsuitable and has not
attempted to mitigate his numerous violations
while incarcerated, and for that reason, we
take that into account during the deliberat-

1

## Ground 1.

2

### CONTENTIONS

3

-ions regarding the amount of denial. "

4

See Ex. B: BPH Denial Trans. pp. 17 - 18 line(s) 23-26, 1-24.

5

6    Petitioner contends that the BPH denial reason # 12 is

7    arbitrary and capricious because the BPH assumed petitioner

8    was unsuitable as the reason petitioner waived his right to

9    attend the parole hearing.

10   See Ex. K: BPH waiver forms signed by petitioner.

11

12    A lifer prisoner preparing to go before the BPH for a parole

13   hearing is called in before his/her correctional counselor

14   to sign a group of BPH papers concerning the life prisoners many

15   choices and possible request for ADA help ect.

16    Some of the choices on the forms includes three choices

17   concerning representation of legal counsel:

18

19        1.) The life prisoner may waive his/her right

20        to legal counsel during the upcoming parole

21        hearing.

22        2.) The life prisoner may retain his/her own

23        private legal counsel.

24        3.) The life prisoner may ask the BPH to

25        appoint legal counsel if and only if the

26        the life prisoner does not own any financial

27        in excess of $ 1500.00

28

## Ground 1.
### CONTENTIONS

See Ex. K: BPT Waiver Forms pp. 1 - 7, at page 3 - 4 & 5.

On page 5 of the BPT Waiver forms petitioner on May 05, waived his right to an attorney. Petitioner contends at that point in time the BPT or BPH should have appointed a correctional counselor (CC-I) to represent petitioners factual record and this should have been done pursuant to Ca. Pen. Code § 3041.5.

A Life prisoner also has three choice, in the waiver forms, concerning the future parole hearing:

> 1.) The life prisoner may waive his/her right
> to attend the parole hearing. As well as,
> waive the right to attend , but be represented
> by legal counsel either appointed or hired.
> 2.) The life prisoner may request a postpone-
> ment of the upcoming parole hearing.
> 3.) The life prisoner may waive the parole
> hearing and stipulation to unsuitability;
> and the right to have legal counsel represent
> the life prisoner during the upcoming parole
> hearing. This includes the life prisoners
> request for a one/two/three year denial.

See Ex. K: BPT Waiver Forms pp. 1 - 4.

In re Sydney M. (1984) 162 Cal.App.3d. 39, 48.

### Ground 1.

#### CONTENTIONS

Petitioner contends that he waived his right to an attorney and waived only the first procedural due process right, namely the right to be present and ask questions. Yet the BPH arb-itrarily commended petitioner for waiving his hearing because "... he realized he was unsuitable and has not attempted to mitigate his numerous violations while incarcerated, ... " See Ex. B: BPH Denial Trans. pp. 3 - 4 line(s) 23-26 & 1-3.

If petitioner, thought or believed, he was unsuitable, he would of made the third choice, and stipulation to a one year denial. But petitioner cannot ever stipulate to unsuitability because petitioner is not an unreasonable risk to public safety. Any life prisoner that stipulates to unsuitability is in fact legally admitting that they are a danger to society.

Petitioner only waived the right to attend the hearing were the form, he signed, said a hearing would be he in absence. The waiver form, on page 2 at the third, notice of rights, gives notice of the consequence of absence: i.e. a decision will be made in your absence (15 CCR § 2248) Petitioner contends this means an absence parole hearing shall be legally fair and not pre-decided by a parole commissioners presumptuous predetermined substitution for why petitioner waived his constitutional right. See in the hearing transcript were the commissioner asked petit-ioner if he was waiving because of the CDC&R 115 petitioner answered, " It isn't because of a 115, but, yeas I do want

26.

## Ground 1.

### CONTENTIONS

want to waive my right -- waive my right to attend a hearing.
I want to waive my right to an attorney."

See Ex. A:  BPH Hearing Trans. pp. 3  line(s) 14 - 21.

See Ex. K:  BPH Waiver Forms.  pp. 2  Line(s) at Rights # Three.


It cannot be said, that the commissioner did not know, the hearing was being waived over a CDC&R 115, because petitioner specifically expressed it was not for a 115. It is arbitrary for the BPH to presume as such.  The BPH is arbitrary for holding against petitioner his right to waive the said rights, and to do so without having to give reason.


Petitioner further contends the BPH's statement about: 'commending prisoner for not trying to mitigate his CDC&R 115', is arbitrary.  It is a biased presumption by the BPH because petitioner has the due process right to answer questions about the CDC&R 115.  If the BPH takes the position that any answer about the CDC&R 115 is an attempt to mitigate, then there is no fair hearing held.  Just a biased, and predetermined pro forma parole hearing was given.


Petitioner contends that if any reviewing court will only use the 'some evidence test' to review petitioner's many contentions, then most of the pro forma BPH's violations will not be corrected because there will always be some tiny little

27.

1

## REBUTTAL TO SUPERIOR COURT DENIAL ORDER.

2

## SUPPLEMENTAL ARGUMENT TO GND. # 1

3

## THE SUPERIOR COURT ERRED.

4

5

6        The Monterey County Superior Court denied Ground One of petition for writ of

7    habeas corpus HC 52 67 dated July 21, 2006.

8

9        In said petition, Ground One Petition raised the claim questioning and arguing, that

10   the so called "some evidence test" used by the California courts reviewing of the Board

11   of Prison Terms parole unsuitability determinations, is as a reviewing test insufficient to

12   protect petitioner's California and Federal due process rights.

13

14       The superior Court denied Ground One by application of the "some evidence test".

15   The Court found "some evidence" to deny Ground One. The Court never addressed the

16   validity question about the constitutional insufficiency of the "some evidence test."

17

18   Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pp. 1 - 3; specifically pg.

19   2  Line(s) 17 - 23.

20   Reference:  HC 5267 habeas corpus at Ground One.

21

22

23

24

25

emil ekdahl                    Page 1                    August 23, 2006

1

## SUPPLEMENTAL ARGUMENT TO GND. # 1

2

## THE SUPERIOR COURT ERRED.

3

4          Petitioner contends that the Superior erred in denying the claims presented in

5    Ground One because the Court did not address the actual arguments raised.

6

7          The actual argument raised challenged the constitutional sufficiency of the so

8    called, "some evidence test." The Court erred because the question before it was not

9    whether "some evidence" existed, but whether the actual "some evidence test" itself

10   was sufficient to protect petitioner's rights.

11

12         Petitioner concedes to, as a pro per litigant, his argument in the contention portion

13   of Ground One strays somewhat. But the Constitutional Claim raised as Ground One is

14   clear. For example, some of the 'contentions' raised in Ground One should have been

15   raised as separate Constitutional Grounds for Relief.

16

17   Reference:   HC 5267 habeas corpus at Ground One: Claim and Contentions.

18

19         Petitioner believes that a challenge to the constitutional sufficiency of the "some

20   evidence test" must also challenge the validity of the Board's unsuitability

21   determinations otherwise petitioner would not have standing in the first place.

22

23         Petitioner contends that the "some evidence test" is insufficient and the Board did

24   not have "some evidence" to support its parole unsuitability determinations.

25

emil ekdahl                    Page 2                    August 23, 2006

1
2

## SUPPLEMENTAL ARGUMENT TO GND. # 1

## THE SUPERIOR COURT ERRED.

3
4

In re Scott (2004) 119 Cal. App. 4th 573 [15 Cal. Rptr. 3rd. 32]

5

In re Shaputis (2005) 135 Cal. App. 4th. 217 [37 Cal. Rptr. 3rd. 324]

6

Irons v. Cal. St. Pr. Solono (2005 Ed. Cal.) 358 F. Supp. 2nd. 936, 947 fn. #12

7
8

Petitioner's claim and contentions are mentioned in footnote # 12 of the

9

Rosenkrantz case law. Where at least in question, of the federal aspect of petitioner's

10

claim in Ground One is referred to. The Rosenkrantz Court noted that the question of

11

whether the "some evidence test" is sufficient enough to protect the Federal due

12

process requirements has not been addressed because Rosenkrantz did not raise the

13

"more stringent standard of review" claim.

14
15

In re Rosenkrantz (2002) 29 Cal. 4th. 616, 658 fn. # 12 [128 Cal. Rptr. 2nd. 104]

16
17

Petitioner's claim in Ground One, in the Federal context does claim via the "some

18

evidence test" being insufficient that the Federal Constitution requires a more stringent

19

test for the reviewing courts to use when testing the Boards parole unsuitability

20

determinations.

21
22

Petitioner has furthered this claim by contending the California Constitution's due

23

process requirements also demand a more stringent standard of review for the courts to

24

test the propriety of the Board's unsuitability determinations.

25

1

## SUPPLEMENTAL ARGUMENT TO GND. # 1

2

## SUPERIOR COURT ERRED.

3

4    In re Rosenkrantz (2002) 29 Cal. 4th. 616, 658 fn. # 12 [128 Cal. Rptr. 2nd. 104]

5    McQuillon v. Duncan (2002 9th Cir.) 306 F. 3rd. 895, 901 - 904.

6

7         Petitioner also contends the Superior Court erred in denying Ground One because

8    when the Court applied the "some evidence test' it did so without first issuing a "show

9    cause order". The "some evidence test" establishes the Courts to review the Board's

10   unsuitability determinations with something more than a per curium review. The "some

11   evidence test" actually establishes the prima facie showing. This is because of what the

12   Rosenkrantz Court said about the "some evidence test" to the reviewing courts. The

13   Rosenkrantz Court directed any reviewing court when applying the "test:

14

15             " If the decision's considerations of the specified factors is not supported by

16             some evidence in the and thus is devoid of a factual basis, the court should

17             grant the prisoner's petition for writ of habeas corpus and should order the

18             Board to vacate its decision denying parole and thereafter proceed in

19             accordance with due process of law."

20

21   In re Rosenkrantz (2002) 29 Cal. 4th. 616, 658 ¶ # (4) [128 Cal. Rptr. 2nd. 104]

22   Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pp. 1 - 3.

23   Reference:  HC 5267 habeas corpus at Ground One: Claim and Contentions.

24

25

emil ekdahl                    Page 4                    August 23, 2006

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## SUPPLEMENTAL ARGUMENT TO GND. # 1

## SUPERIOR COURT ERRED

Thus a reviewing court cannot grant a habeas challenge to the Board's actions without first issuing the show cause order. The very requirement that a reviewing court conduct a "some evidence test" and grant relief, if due, predetermines the prima facie showing.

In re Rosenkrantz (2002) 29 Cal. 4th. 616, 658 ¶ # (4) [128 Cal. Rptr. 2nd. 104]

The Superior Court also erred in concluding there was "some evidence to support their unsuitability determinations. The Boards decision was predetermined and carried out in support of an illegal no parole policy in effect by the Schwarzenegger administration.

For example the Superior Court concluded that the Board had used petitioner's current and past depression to deny parole. When in fact the Board did not depression. The Board never used any such parole unsuitability determination to deny parole. Hypothetically speaking if the Board had used depression as a reason to deny parole, they would have violated petitioner's ADA rights

Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pg.  2 Line(s) 20.

Reference Ex. **B** of habeas HC 5267; 2005 BPH Denial Trans pp. 15 - 20

Reference:   HC 5267 habeas corpus at Ground One: Claim and Contentions.

///

///

emil ekdahl                                   Page 5                           August 23, 2006

7. Ground 2 or Ground ___2___ (if applicable):

    The BPH and their CDC&R agents are forcing their Religion of 12-steps A.A. program onto petitioner by withholding parole from petitioner until petitioner converts to the A.A. religion. This action violates petitioner's right to be free from Government sponsored --

a. Supporting facts:

    --Religion under the first Amendment to the United States Constitution, and the relevant clauses of the U.S. state of California's Constitution.


                              FACTS.


    The BPH used denial reason # 9:


        " The psychological report from Dr. Lewis Phd,
        indicates that there are concerns.  One of the
        major concerns that the doctor had was in regards
        to his AA 12-step program.  Basically the doctor
        under impressions, assessment of (indiscernible)
        2003 details a risk and return to dangerousness.
        Under Dr. Bencichs, " If the state absolutely
        asks for drug and alcohol (indiscernible) finds
        finds potential compared to average lifer.
        However, his capacity (indiscernible) social
        status were he released is compromised since he
        is no longer availing himself for (indiscernible)
        of weekly support of 12-step meeting.  This makes

continued...

b. Supporting cases, rules, or other authority:

Ex parte Andrews (1861) 18 Cal. 678.
Ca.Ed.Fac.Authority v. Priest (1974) 12 Cal.3rd. 593, 605.
Fox v. City of L.A. (1978) 22 Cal.3rd. 792, 150 Cal.Rptr. 867.
Fem.Wom. v. Philibosan (1984) 157 Cal.App.3rd. 1076, 1092.
Kerr v. Farrey (1996 7th Cir.) 95 F.3d. 472.

**Ground 2.**

CONTENTIONS

... it more likely he will relapse.

(indiscernible) meeting.  Therefore,

(indiscernible) he be paroled. "


See Ex. B:  Denial Trans. pp. 2 - 3 line(s) 19 - 26 & 1 - 9.

See Ex. I:  Dr. Lewis's Life Prisoner Evaluation. pp. 1 - 5.

See Ex. J:  Dr. Bencichs's Psychol. Evaluation. pp. 1 - 3.


The BPH and their CDC&R agents withheld parole from petitioner until petitioner converts to their religion of AA 12 steps.  Petitioner contends this violates the separation of Church and State codified in the Constitution.


On April 21, 2004., the California Supreme Court summarily denied petitioner's writ of habeas corpus.  The said writ of habeas corpus concerned CDC&R officials denying petitioner the right to pursue a legal name change to a christian name change pursuant to petitioners christian sect's belief system. No explanation was given by the court - just in your face bam your writ is denied.  The powerful do what the want in California.  This cold reality caused petitioner to question his belief system.  Why would prayers to a higher power asking that the writ be granted avail nothing (?)

So petitioner had a Evolutionary Social Darwinism enlightenment and became a Evolutionest believing only in

**Ground 2.**

CONTENTIONS

Science.  Soon after petitioner's conversion petitioner stoped attending AA 12-step after participating in the program since 1986.  The reason petitioner will not further participate is AA and all 12-step programs are religious because they require a belief in a higher power than mankind.

Petitioner told the prison Phd doctors that his objection was because of the religious nature of the AA program.  Dr. Lewis included the objection in her report.
See Ex. I: Dr. Lewis's Life Prisoner Evaluation. pp. 1 - 5.

Petitioner contends that the BPH was fully aware of petitioners objection to the AA 12-step program as religious.
And petitioner contends that the BPH fully knows that AA and all related 12-step programs are religious in nature.  And that the BPH only arbitrarily forces all life prisoners to attend such programs only to promote the programs religious and learned helplessness.  That the BPH has never tested petitioner for alcoholism.  The BPH has conducted no type of testing neither physical, psychological, medically, nor DNA wise for the genetic disorder.  Instead, what the BPH does, is just to require every life prisoner to attend AA 12-step programs, irregardless of whether or not, any of these life prisoners are actually alcoholics.  The BPH's only purpose is to promote the religious and learned helplessness of the AA 12-step programs.
People v. Aris (1989) 215 Cal.App.3rd. 1178, 1195.

40.

1

## Ground 2.

2

### CONTENTIONS

3    Petitioner asserts that he is not an alcoholic. Petitioner

4 does not have the genetic disorder encoded in petitioners DNA

5 for alcoholism. And petitioner, if tested for the genetic dis-

6 order will prove that he is not an alcoholic.

7 See Ex. O: Excerpt from book ' Life Extensions".

8

9    Petitioner contends that the forced religious AA program

10 by the BPH is arbitrary because neither the BPH nor CDC&R offered

11 petitioner a non-religious alcohol abstinence, or alcohol counsel-

12 -ing for a parole release date.

13

14    Petitioner contends that the correctional counselors report,

15 the two psychological reports, and the BPH's actions concerning

16 forcing petitioner to attend AA 12-step program is in violation

17 of petitioners ADA rights. Petitioner has told the counselor,

18 and the two psychologist that his health problems are causing

19 petitioner to miss AA meetings because he does not have the

20 energy to work all day and attend AA too. Petitioner has

21 Hepatitis C, lymphoma, chronic fatigue syndrome, and major

22 depression. All these health problems leave petitioner exhausted

23 with lack of energy and motivation to attend AA. But the BPH

24 did not even consider this. The BPH also violates petitioners

25 ADA rights for withholding parole for alcoholism because

26 alcoholism is a disability under the ADA. Parole is being denied

27 because of a disability.

28 See Ex. N: Correctional Counselors Report. pp. _____.

1

## REBUTTAL TO SUPERIOR COURT DENIAL ORDER.

2

## SUPPLEMENTAL ARGUMENT TO GND. # 2

3

## THE SUPERIOR COURT ERRED.

4

5      The Monterey County Superior Court partially denied some of the contentions in

6   Ground Two of said petition. However, the Court also found a prima facie showing was

7   made for one of the contentions of Ground Two. Accordingly, the Superior Court Ordered

8   an Informal Response to be made from the California Attorney General concerning this

9   claim.

10

11   Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pp. 3 - 4 Line(s) 3 - 25 & 1 -

12   6.

13   Reference:   HC 5267 habeas corpus at Ground Two: Claim and Contentions.

14

15      Petitioner contends that the Superior Court erred in denying the contentions of

16   Ground Two - at least the contentions that the Court did not order an informal response

17   too. Because of the Superior Courts informal response petitioner hereby motions the

18   Appellant Court, here and within the Prayer for Relief, to grant a stay of the contentions of

19   Ground Two of said habeas HC 5267

20

21   Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pp. 3 - 4 Line(s) 3 - 25 & 1 -

22   6.

23   Reference:   HC 5267 habeas corpus at Ground Two: Claim and Contentions.

24   ///

25   ///

emil ekdahl                         Page 6                         August 23, 2006

1

2

3

4

## REBUTTAL TO SUPERIOR COURT DENIAL ORDER.

## SUPPLEMENTAL ARGUMENT TO GND. # 3

## THE SUPERIOR COURT ERRED.

5      The Monterey County Superior Court denied Ground Three of petition for writ of

6  habeas corpus HC 52 67 dated July 21, 2006.

7

8      In said petition, Ground Three raised the due process claim that pursuant to

9  California Penal Code § 3042; a notice shall be sent to the attorney who represented

10  petitioner at trial. The attorney who represented petitioner at trial was James Newhouse.

11  In petitioner's 2005 parole, hearing the Board failed to send a § 3042(A) notice to Mr.

12  Newhouse. The Board admitted it did not send a notice to Mr. Newhouse on a BPH

13  Memorandum. The Board said in the memo that the reason they did not send a § 3042(A)

14  notice to Mr. Newhouse was because they did not know his address.

15      The memo was attached to said petition for writ of habeas corpus as Exhibit **S**:

16

17   Reference Ex. **S**: of habeas HC 5267; BPH/CDC&R memo of unknown Trail Attorney

18  Address.

19

20      The Superior Court denied Ground Three by ordering three reasons:

21

22          1) The § 3042(A) notice does not apply as petitioner waived his BPH

23             appointed attorney, implying that this attorney should receive it instead.

24          2) Petitioner failed to demonstrate any harm from the BPH's failure to

25             send a § 3042 notice to the trial attorney.

emil ekdahl                  Page 7                  August 23, 2006

7. Ground 2 or Ground ___3___ (if applicable):

    The Board of Prison Hearings violated petitioner's due process of law right pursuant to California Penal Code § 3042; by the BPH failing to send a § 3042 notice to the attorney who represented petitioner at trial: under the Federal and California Constitutional clauses.

a. Supporting facts:

    For the July 01, 2005., parole hearing, petitioner waived his right to have an attorney appointed. As a result of this waiver, petitioner was given, by the BPH agent CC-I, what is known as, the attorney evidence packet. In this evidence packet were most of the Ca. Pen. Code § 3042 notices. A § 3042 notice was sent to the trial court presiding judge, the Monterey County District Attorneys Office, and to the Monterey County Sheriff's Department. All as required by Penal Code § 3042.

See Ex. T: California Penal Code § 3042 notices. pp. 1 - 4.

    However petitioner could not find a Penal Code § 3042 notice being sent to the trial attorney who represented petitioner at his court trial in Dec. of 1983. Instead the evidence packet contained a CDC&R memorandum. The memorandum stated that a § 3042 notice could not be sent to the trial attorney because his address was unknown.

See Ex. S: BPH/CDC&R memo of unknown trial attn. address.

    The attorney who represented petitioner at trial; name is on the front page of the Probation Officers Report (POR). The POR is a document that the BPH and CDC&R have.

See Ex. D: Probation Officers Report (POR). pp. 1 - 7.

b. Supporting cases, rules, or other authority:

MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page four of six

Ground 3.

CONTENTIONS

Petitioner's trial attorneys name is: James Newhouse.
Petitioner believes the person in charge of send out the Penal
Code § 3042 notices, on behalf of the BPH, is the Classification
& Parole Representative at San Quentin Prison.   Under CDC&R's
usage this is abbreviated to C&PR.

In petitioner's Central File, aka a C-file, and also
in the BPH attorney evidence packet, there are no address given
for any of the officials that Penal Code § 3042 requires the
BPH to send notification to.  The exception would be the actual
§ 3042 notices prepared by the C&PR of San Quentin Prison.
So where did the C&PR get the address's for all of the officials
that were sent a § 3042 notice ?
See Ex. T:  California Penal Code § 3042 notices. pp. 1 - 4.

Petitioner contends that the C&PR had to look these address's
up in reference books, such as, telephone books, court
directories, or CDC&R's own reference address books.  But the
C&PR did not look up petitioner's trial attorney's address in
any reference book like the California State Bar Association's
address book which contains all of the attorneys whom practice
law in California, and gives their addresses.
Petitioner did look up trial attorney James Newhouse's address
in the State Bar Directory.  The address is:  James Newhouse,
460 Alma Street.  Monterey California, 93940-3203.

43.

Ground 3.

CONTENTIONS

Petitioner attempted to give the trial attorney's address to to the C&PR via a CDC&R form, known as, a Request For Interview. See Ex. Q: Request For Interview Form to C&PR on Feb. 20, 2005.

The C&PR seemed not to do anything about sending a § 3042 notice to the trial attorney because petitioner did not receive a copy of any notice sent. Petitioner then filed a CDC&R 602 administrative appeal form. The 602 appealed the fact the trial attorney was not sent a Penal Code § 3042 notice as required by law.

See Ex. R: CDC&R 602 Appeal. Mar. 14, 2005. pp. 1 - 4.

Petitioner sent the 602 appeal to the Appeals Coordinator, at San Quentin which is either CC-II, W. Jeppeson, or CC-II R. Chandler-Dacanay. The appeals coordinator returned the 602 appeal with a CDC&R 695 form attached. The CDC&R 695 form directed petitioner to send the 602 appeal to the BPT (BPH). See Ex. R: CDC&R 602 Appeal. Mar. 14, 2005. at pg. 4.

Petitioner sent the 602 appeal to the Board of Prison Terms at their Sacramento address: 1515 K Street. 6th Floor. Sacramento, Ca. 95814. The BPT or now the BPH returned the 602 appeal. A Kirsten Preslar signed a memo stating essentially that the BPH does not accept administrative appeals of BPH's actions pursuant to CCR Title 15 § 3160.

Ground 3.

CONTENTIONS

See Ex. R:  CDC&R 602 Appeal. at pg. 1.


Petitioner contends that he has did all he could do to provide the name and address of the trial attorney to the BPH so the BPH could send a Penal Code § 3042 notice to said attorney. The attorneys name was given in the 602 appeal, and in the Request for Interview Form.  The trial attorneys address was also given in the two CDC&R official forms.  Petitioner therefore contends that the BPH arbitrarily violated his due process of law right pursuant to California Penal Code § 3042 to have a notice sent to the attorney who represented him at trial. This lack of notification by the BPH caused petitioner to have arbitrary and unfair parole hearing on July 01, 2005., becuase BPH gave undue weight to the evidence of the Monterey County District Attorneys § 3042 notice reply.  The BPH even used the Monterey County District Attorney's § 3042 notice reply, as denial reason # 10. ( See Ground One of this petition.) However the BPH did not consider any evidence that might have been presented by the trial attorney should he have received his Penal Code § 3042 notice.  The one source of possible mitigating evidence for petitioner's behalf was purposely and illegal avoided with a trivial excuse of we don't know the trial attorney's address.  At the very least petitioner ask the reviewing court to order a new parole hearing on this ground alone.

1

2

## SUPPLEMENTAL ARGUMENT TO GND. # 3
## THE SUPERIOR COURT ERRED.

3

4     3)  Petitioner failed to state a claim for relief on this Ground Three.

5

6     Petitioner Contends the Superior Court erred in denying Ground Three

7     because it is immaterial as to whether petitioner waived the attorney that the Board

8     tried to appoint to him. The California Penal Code statue § 3042(A) calls for the

9     notice to be sent to:

10

11     " ... The attorney who represented the defendant at trial..."

12

13     California Penal Code Statue § 3042(A) quoted in relevant part.

14

15     Thus, the rule of case law covering statutory interpretation applies. The Courts when

16     discerning a statue look to the words of the statue itself. The words are given their usual

17     and ordinary meaning. § 3042(A) 's words are clear as to which attorney the Board should

18     send a notice to: " the attorney who represented the defendant at trial."

19

20     People v. Castenada (2000) 23 Cal. 4th 743, 746 - 747 [97 Cal. Rptr. 2nd. 906 ]

21     People v. Robles (2000) 23 Cal. 4th 1106, 1111 [99 Cal. Rptr. 2nd. 120 ]

22

23

24

25

emil ekdahl                    Page 8                    August 23, 2006

1

## SUPPLEMENTAL ARGUMENT TO GND. # 3

2

## THE SUPERIOR COURT ERRED.

3

4      The statues intend can be further construed in light of its legislative history. In 1982,

5   the California legislature specifically modified Penal Code § 3042(A) from the former

6   Phrase:

7            " ...The attorney for the defendant..."

8

9   Former California Penal Code Statue § 3042(A) 1981 era...

10

11      To the current Penal Code § 3042(A) reading of the phrase:

12

13          " ... The attorney who represented who represented the defendant at trial..."

14

15   California Penal Code § 3042(A) 2006.

16

17      The 1982 California legislature specifically modified this above phrase from former

18   Penal Code § 3042(A) following the Attorney Generals issuing of Opinion number 64. The

19   64 Opinion held that once the Board sent notice to the attorney that the Board appointed

20   to represent the prisoner then the notification requirements of § 3042(A) were meet. The

21   Opinion 64 based this interpretation upon the former phrase: " ...the attorney for the

22   defendant..."

23

24   64 Ops. Atty. Gen. 882 December 22, 1981.

25

emil ekdahl                     Page 9                        August 23, 2006

1

## SUPPLEMENTAL ARGUMENT TO GND. # 3

2

## THE SUPERIOR COURT ERRED.

3

4        However, the 1982 California legislature did not want the Board to notify the

5    prisoner's attorney appointed to represent him years later in a parole suitability hearing.

6    The legislature wanted the Board to notify the attorney who represented the prisoner at

7    trial. The legislature wanted the trial attorney notified because he would have unique

8    insight into the case and the personality of the prisoner. The legislature wanted the

9    prisoner to have a source of mitigating evidence because all the other officials the statue

10   requires notification of are mainly a source of aggravating evidence. The prisoner should

11   be allowed some things to be on his side in the adversarial parole hearing process. So

12   the legislature modified the statue to a clear and plain meaning send a notice to the

13   attorney who represented the attorney at trial.

14

15   Mejia v. Reed (2003) 31 Cal. 4th. 657, 663 [3 Cal. Rptr. 3rd. 390]

16

17       Petitioner contests the second prong of the Superior Courts denial of Ground Three.

18   In the 2nd prong the Court's denial said that petitioner failed to demonstrate any harm

19   from the Board failing to send the § 3042(A) notice to his trail attorney James Newhouse.

20   The contentions to this are the Board violated the due process of law of Penal Code §

21   3042(A), and the Board violated due process of law inherent in the regulation CCR Title

22   15 § 2402 subd. (b).  And that what more harm is needed to be demonstrated than the

23   Constitutional Rights of Due Process of Law were violated? Aside from that there is the

24   added harm of petitioner being cheated out of a source of mitigating evidence i.e. the

25

emil ekdahl                    Page 10                    August 23, 2006

## SUPPLEMENTAL ARGUMENT TO GND. # 3

## THE SUPERIOR COURT ERRED.

Reply the trial attorney James Newhouse would have sent to the Board if the Board had notified him. This lack of notice from the trial attorney was most harmful because the Board relied so heavily upon the § 3042(A) notice/reply from the Monterey County District Attorney. Please see Ground Four supplemental argument where the Board postulated a whole theory and subsequent speculation built on the back of a statement from the D.A.'s reply letter after he received his § 3042(A) notice from the Board.

Petitioner contests the third prong of the Superior Courts denial of Ground Three. In the third prong the Court said petition failed to state a claim and quoted the Duvall case. Petitioner contends that Duvall cannot apply to the habeas proceedings challenging a BPH unsuitability determination. Duvall only applies to habeas proceedings where the prisoner is making a collateral attack upon the original conviction. While it is true, that petitioner has two claims of collateral attack; However, claims in Ground Three are Board attacks. The Court erred in using Duvall against a Board attack. It is also contended that in a habeas proceeding from a pro per litigant who is only trying to get a show cause order; the only proof of a claim is a prima facie showing not totally proven the claim before an attorney is appointed to argue the claims. In addition, what more proof is needed to state a claim than a clear violation of Penal Code § 3042(A) by the Board.

People v. Duvall (1995) 9 Cal. 4th. 464, 474 [37 Cal. Rptr. 2nd. 259 ]

///

emil ekdahl                           Page 11                      August 23, 2006

7. Ground 2 or Ground ___4___ (if applicable):

In the July 01, 2005., parole hearing, the BPH relied upon illegal and unreliable evidence which resulted in an arbitrary and capricious parole hearing in violation of Petitioner's Due Process law rights under the California and Federal Constitutional clauses.

a. Supporting facts:

The BPH used as its denial reason # 5:

" There's a (indiscernible) occasion that the inmate actually got worse after the incident, never turned anyone in. This theory indicates that maybe he had more participation in the crime than he alleges."

See Ex. B: BPH Denial Trans. pp. 15 line(s) 22 - 26.

This is exactly why petitioner waived attending the hearing and waived his attorney, so petitioner could find out what it was the BPH was holding against him. And here it is: a secret theory. Petitioner contends that the BPH and its predecessor the BPT have in each and every one of petitioner's parole hearings been using This secret theory. A theory that has the BPH not accepting the court found true facts of the offense. The BPH has held a kangaroo court based upon one small fact from the gravity of the offense .

b. Supporting cases, rules, or other authority:

Ground 4.

CONTENTIONS

How does this small fact from the gravity of the offense support the commissioner contention that petitioner got worse after offense ? Let alone support a theory that petitioner had more participation in the offense than he alleges.

Petitioner did not turn anyone in, and this fact goes a long in explaining the duress.

Petitioner contends that the theory the BPH used to deny parole is illegal evidence because theories are not reliable evidence.   Theories also do not have an indicia of reliability. The theory used by the BPH also is in violation of the BPH's regulation of Title 15 § 2401(a), which requires the BPH to consider all reliable evidence.

In re Dannenberg (2005) 34 Cal.4th. 1060., 1083 (§ 19).

In re Powell (1988) 45 Cal.3rd. 894, 902.

Jancsek v. Oregon Bd. Parole (9th Cir. 1997) 833 F.2d. 1389, at page 1390 indicia of reliability.

In re Scott (2005) _____ Cal.App.4th. _____, _____. DJDAR 12450, 12456.

1
2
3
4

**REBUTTAL TO SUPERIOR COURT DENIAL ORDER.**

**SUPPLEMENTAL ARGUMENT TO GND. # 4**

**THE SUPERIOR COURT ERRED.**

5   The Monterey County Superior Court denied Ground Four of petition for writ of habeas

6   corpus HC 52 67 dated July 21, 2006.

7

8       In said petition; Ground Four raised the Claim that the Board used a "Theory" as one

9   of its unsuitability determination. And that the "Theory" was illegal, and illegal evidence

10  which resulted in an arbitrary and capricious parole hearing in violation of Petitioner's due

11  process of law rights.

12

13      The Superior Court denied Ground Four because the Court said, "However, there is

14  no evidence before the Court that the Board based its finding of unsuitability on mere

15  speculation."

16

17  Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pg. 4  Line(s)  15 – 21.

18  Reference:   HC 5267 habeas corpus at Ground Four: Claim and Contentions.

19

20      The Superior Court erred because while the Board did use multiple unsuitability

21  determinations it only takes one illegal determination to turn the whole hearing into a

22  violation of due process. One of the unsuitability determinations was a "Theory" and such

23  kinds of evidence do not have any indicia of reliability.

24

25  Jancsek v. Oregon Bd. Parole (1987 9th Cir.) 833 F.2d. 1389, 1390.

emil ekdahl                          Page 12                    August 23, 2006

1

## SUPPLEMENTAL ARGUMENT TO GND. # 4

2

## THE SUPERIOR COURT ERRED.

3

4      The one illegal unsuitability determination of an unreliable "Theory" caused the

5   Board to further its reasoning to start speculating about:

6

7          "... Whether, he had more participation in the crime than he alleges..."

8

9   Reference Ex. **B:** of habeas HC 5267; 2005 BPH Denial Trans pg. 15 Line(s) 22 – 26.

10

11      Petitioner contends that this speculation by the Board about petitioner supposedly

12   having more participation in the offense is most damming and harmful. Especially in

13   consideration of the facts of the offense. Petitioner is convicted of being the Penal Code §

14   31 accessory/principle in a robbery turned to a murder, during the get away phase, where

15   his co-defendant shot the victim. Petitioner's other co-defendant threatened petitioner with

16   duress. This duress coupled with the fact petitioner was not the shooter, and a few other

17   factors lead the trial court to reduce the degree of offense from first-degree to second-

18   degree. The trial court used these factors to conduct a proportionality analysis following

19   Penal Code § 26(6)(8), and Dillon case law.

20

21   People v. Dillon (1983) 34 Cal. 3rd. 441 [194 Cal. Rptr. 390]

22

23      The Board speculation of more participation disregards the court found facts. The

24   Board substituted its "Theory," and subsequent speculations for the trial court degree

25   reducing powers and resentenced petitioner to life without the possibility of parole.

emil ekdahl                    Page 13                    August 23, 2006

## SUPPLEMENTAL ARGUMENT TO GND. # 4
## THE SUPERIOR COURT ERRED.

The harm caused by this action of the Board would in fact condemn petitioner to die in prison. Because the Board will now be forever expecting petitioner to come forward and speak with insight to the supposed: ". more participation than he alleges ."Moreover, all this speculation by the Board is based upon the Boards findings of: "the inmate actually got worse after the incident, [and] never turned anyone in,"

Petitioner concedes to the fact he never turned anyone in that fact is true. Moreover, as a fact it is just that a fact of the gravity of the offense. Use of the gravity of the offense to deny parole has no predictive value, and therefore violates petitioner's due process rights.

In re Scott (2004) 119 Cal. App. 4th 573 [15 Cal. Rptr. 3rd. 32]

In re Shaputis (2005) 135 Cal. App. 4th. 217 [37 Cal. Rptr. 3rd. 324]

Irons v. Cal. St. Pr. Solono (2005 Ed. Cal.) 358 F. Supp. 2nd. 936, 947 fn. # 2

Petitioner contends that the Board's use of judicially determined facts to increase the normal parole rule of his sentence violates the holdings of Apprendi

Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed 2d. 435]

Moreover, as contented in the original habeas petition, "Theories" do not have any indicia of reliability. The Board has had this theory a secret from the very first parole hearing of petitioner. BPH Commissioner Lee let the secret theory out of bag.

emil ekdahl                    Page 14                    August 23, 2006

1

## SUPPLEMENTAL ARGUMENT TO GND. # 4

2

## THE SUPERIOR COURT ERRED.

3

4      The same BPH Commission Lee who later was dismissed from the BPH for making

5   statements that were legally compromising the BPH's secret no parole police.  The secret

6   no parole police under orders from the California Governors Deukmejian to

7   Schwarzenegger

8

9   Martin v. Marshall (2006 E.D. Cal.) No. C 05-3486 MHP.

10  Coleman  No. 96-0783 LKK PAN, slip op. At nine.

11  Jancsek v. Oregon Bd. Parole (1987 9th Cir.) 833 F.2d. 1389, 1390.

12  ///

13  ///

14  ///

15

16

17

18

19

20

21

22

23

24

25

7. Ground 2 or Ground _____5_____ (if applicable):

The BPH in denying parole with denial reason # 11, violated petitioner's due process of law rights pursuant to Ca. Penal Code § 5011, under the California and Federal Constitutional clauses, and including the relevant due process claims of a right to a defense

a. Supporting facts:          , and Ineffective Aid of Counsel at trial.

The BPH used denial reason # 11:

" The Panel makes the following findings.  The Prisoner continues to need therapy programming and self-help in order (indiscernible) discuss the (indiscernible) cope and stress in a non-destructive manner as well as to gather greater insight into the crime.  In review of the prisoner's social history and lack of program participation, there's no occasion that the prisoner would behave differently if paroled. "

See Ex. B: BPH Denial Trans. pg. 17 line(s) 14 - 23.

Petitioner contends that the two psychiatric reports prepared for the July 01, 2005., parole hearing both evaluate petitioner's dangerousness level as lower than the average prisoner.

See Ex. I:  Dr. Lewis's Life Prisoner Eval. pp. 1 - 5.

See Ex. J: Dr. Bencichs's Psychological Eval. pp. 1 - 3.

Therefore the BPH's requirements go beyond just assessing if

continued

b. Supporting cases, rules, or other authority:

California Penal Code § 5011.

People v Pope (1979) 23 Cal.3rd. 412, 427, 152 Cal.Rptr. 732.

Flanders v. Graves (8th Cir. 2002) 299 F.3d. 924

Schlup Gateway.

California and Federal Constitutions.

1

## Ground 5.

2

### CONTENTIONS

3  petitioner would pose an unreasonable risk of danger to society,

4  as Ca. Penal Code § 3041(b) requires. Instead the BPH is relying

5  upon vestibule of a popular American Myth of what parole for

6  a convicted murder should be. The myth that the prisoner must

7  be first broken then lead over a series of years to total

8  rehabilitation and finally redemption in a religious way.

9

10  Petitioner further contends that this is what the BPH is

11  is doing when it states that petitioner does not have sufficient

12  prior prison programming, or needs therapy and self-help.

13  The BPH arbitrarily presumes that petitioner is dangerous because

14  he has committed a Ca. Penal Code 31 co-defendant felony murder.

15  However the parole law Ca. Penal Code § 3041(a)(b) presumes that

16  petitioner is parole suitable. There is nothing particularly

17  egregious about petitioner second degree crime to warrant not

18  setting a parole suitability date. Petitioner does have enough

19  prior prison programming as petitioner has received from prior

20  BPT parole panels written reason of what petitioner could do

21  to become parole eligible at the next parole hearing. In none

22  of these prior parole hearings has the BPT recommended to

23  petitioner that his programming was not sufficient. How could

24  petitioner have known that he needed more programming if the

25  prior BPT panels have told petitioner he was doing the right

26  things, and to get his ducks in a row concerning parole plans

27  See Ex. H: Prior BPT Denial Trans. pg. 66 line(s) 5 - 11.

28

Ground 5.

CONTENTIONS

Petitioner also contends that the BPH finding that petitioner needs more therapy to discuss and cope with stress in a non-destructive manner is arbitrary because neither psychiatric report prepared for the parole hearing suggest that petitioner needs therapy for the purpose of dealing with stress in a non-destructive manner. Dr. Lewis's report does recommend therapy, but only for the purpose of treating petitioner's depression. See Ex. I: Dr. Lewis's Life Prisoner Eval. pg. 5 at top ¶.

Please note that both reports, evaluate petitioner as suffering from depression as a mood disorder present since child-hood.

Dr. Lewis pg. 3 at ¶ XIII Review of Life Crime, B:

> " The routine mood altering substances may
> indicate that he suffered a mood disorder,
> likely depression that caused him to self-
> medicate to control for his dysphoric affect
> Mr. Ekdahl's than active addiction is one
> contributing factor to the life crime
> because the regular intake of substances
> tends to increase vulnerability to behave
> in ways they would not if they were abstinent."

See Ex. I:  Dr. Lewis's Life Pris. Eval. pg. 3.

50.

Ground 5.

CONTENTIONS

Also Dr. Bencich pg. 2 at ¶ XIII Review of Life Crime. B:

> " I suspect his depression and very low self-
> esteem were long standing, since childhood, and
> untreated because the family was so isolated
> and transient.  I believe the fear he evidenced
> in his early incarceration, when custody felt
> he could be easily victimized, was quite similar
> to the fear he felt in childhood under his step-
> father's command and as a young adult when coerced
> into the commission of the crime by a much more
> forceful acquaintance. "

See Ex. J:  Dr. Bencichs's Psych. Eval. pg. 2.

Notice that these evaluations differ from the BPH's Assumption that petitioner's depression stems from the day that the California [Supreme] Court denied petitioner's religious name change writ of habeas corpus:

> " Mr. Ekdahl has been attempting to change his
> name, and in May of 2004 he went on a hunger
> strike for 3 days when the California Superior
> Court decided he would not be allowed to change
> his name.  This was a trigger of depression, and
> he continues to suffer from depression, he reports

51.

Ground 5.

CONTENTIONS

that the Prozac he is taking helps alleviate

the symptoms a great deal. "

See Ex. A:    BPH Hearing Trans. pg. 10 line(s) 10 - 17.


Petitioner also contends that the BPH finding that petitioner needs more therapy and self-help to gather greater insight into the crime, is arbitrary and in violation of Ca. Penal Code § 5011. This law means that a prisoner does not have to admit guilt, or have greater insight into the crime, if he is innocent of the crime. And if petitioner chooses to not discuss the crime because of his innocence the BPH should not illegally withold parole on the grounds petitioner needs more therapy to gather insight. Because the only way a life prisoner could gather greater insight through therapy would be for that prisoner to discuss the crime with the therapist.


Petitioner contends he is innocent of this crime pursuant to Ca. Penal Code § 26 (6) or later (8), and because of that fact petitioner will never discuss the crime again. The Monterey County Superior Court Judge Silver lowered the degree of murder from 1st degree felony murder to 2nd degree felony murder. The trial court was following the holding of People v Dillon (1983) 34 Cal.3rd. 441. The trial court's decision to lower the degree of offense was based upon petitioner's duress defense. The duress petitioner suffered when Mark Horning

52.

Ground 5.

CONTENTIONS

threatened petitioner with a credible death threat. The trial court was familiar with the duress as it was self-evident to trial Judge who remarked that he had personally observed the defendants and had presided over some of the Horning Brother's trial proceedings.

See Ex. E:   Trial Court Sentencing Trans.   pp. 1 - 6.

People v Horning (1984) 150 Cal.App.3rd. 1015, 1017 - 1018.

People v Horning (2005) 34 Cal.4th. 871.

Both case laws reflect upon the dangerousness of the Hornings and proves the credibility of the death threat.

The trial court would have found petitioner innocent pursuant to Ca. Penal Code § 26(6)(8) if not for the fact the statute forbids that finding if the crime is punishable by the death penalty. So instead the trial court used the duress to lower the degree of crime to 2nd degree felony murder. Petitioner contends that the trial court as soon as it lowered the degree of crime to 2nd degree felony murder then the trial court should of followed though and found petitioner innocent pursuant to Ca. Penal Code § 26(6)(8)., because petitioner's type of 2nd degree felony murder can never be punished by the death penalty. 2nd degree felony murder is a court created statute and as such has never in its history been punished by the death penalty; therefore there is no § 26 prohibition against petitioner's innocence and no time bar for an innocent claim.

53.

# REBUTTAL TO SUPERIOR COURT DENIAL ORDER.

## SUPPLEMENTAL ARGUMENT TO GND. # 5

### THE SUPERIOR COURT ERRED.

The Monterey County Superior Court denied Ground Five of petition for writ of habeas corpus HC 52 67 dated July 21, 2006.

Petitioner contends that the Superior Court erred in denying Ground Five of said petition because the Court did not address the actual contentions or claims.

The Claim raised in Ground Five was as follows: the Board in six prior parole hearings had pursuant to procedural due process requirements issued written recommendations to petitioner. The recommendations gave legal standings of what petitioner needed to accomplish in order to become parole suitable in their eyes. Petitioner has in fact completed every one of the Boards recommendations in regards to prison programming of self-help, or therapy. Therefore it is arbitrary for the 2005 Board to conclude that petitioner did not have enough prison programming.

Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pp.  4 & 5 Line(s) 22 – 25. & 1 – 8.

Reference:   HC 5267 habeas corpus at Ground Five: Claim and Contentions.

Petitioner contends the six prior Boards recommendations violated petitioner's due process rights because the recommendations were legally insufficient in instruction to accomplish a parole suitability determination in the 2005-parole hearing. Or the 2005

emil ekdahl                              Page 16                              August 23, 2006

1          **SUPPLEMENTAL ARGUMENT TO GND. # 5**

2              **THE SUPERIOR COURT ERRED.**

3

4    Board arbitrarily violated due process by not acknowledging that petitioner had achieved

5    completion of all prior Board recommendations in regards to self-help, or therapy.   Note

6    see Ground Two for self-help and therapy of Alcoholics Anonymous.

7    ///

8    ///

9    ///

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

emil ekdahl                    Page 17                    August 23, 2006

## <u>PRAYER REQUEST FOR RELIEF</u>

Petitioner is without remedy save for habeas corpus. Accordingly, petitioner request that the Court:

1.     Issue a writ of habeas corpus

2.     Issue an order to show cause

3.     Declare the rights of the parties;

**4.**     Grant any and all relief found necessary or appropriate.

Respectfully submitted

_Emil Ekdahl_

Emil Ekdahl,
Plaintiff In pro. se.

12. Other than direct appeal, have you filed any other petition, application, or motions with respect to this conviction, commitment, or issue in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1)   Name of court:  California Supreme Court.

 (2)      Nature of proceeding (for example, "habeas corpus petition"):  habeas corpus petition.

 (3)      Issues raised: (a)  Sixth Amendment Right to a Jury Trial.

 (b)   Eighth Amendment Right to Proportional Sentence by the Board of Prison Hearings.

 (4)      Result (Attach order or explain why unavailable):  Summarily Denied Review.    Lost.

 (5)      Date of decision:  August 09, 2000.

 b. (1)   Name of court:  California Supreme Court.

 (2)      Nature of proceeding (for example, "habeas corpus petition"):  writ of habeas corpus petition.

 (3)      Issues raised: (a)  New Evidence in Co-Defendant's Trial Transcripts.

 (4)      Result (Attach order or explain why unavailable):  Summarily Denied Review as being Time Barred

 (5)      Date of decision:  February 32, 2000.  Lost. S084090.

**b.**  For additional prior petitions, applications, or motions, provide the same information on a separate page.

**c.  See Attached page for 13 c.**

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

 N/A.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (see in re Swain (1949) 34 Cal.2d 300, 304)

 For the two Claims of Innocence and Illegal Sentence, petitioner believes there is no Time

 Bar, or Delay for Constitutional Relief.

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstance justifying an application to this court:

 Not Applicable.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true

Date:                                                          _____

                                    (SIGNATURE OF PETITIONER