# EXHIBIT M:

S117967

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re EMIL JOSEPH EKDAHL on Habeas Corpus

Petition for writ of habeas corpus is DENIED.

Werdegar, J., was absent and did not participate.

SUPREME COURT
**FILED**

APR 2 1 2004

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE,
Chief Justice

# EXHIBIT N:

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JUNE 2005 CALENDAR

I. **COMMITMENT FACTORS:**

A. **Life Crime:**

Ekdahl was received to the Department of Corrections on January 1, 1984 to serve a 15 year to life term from Monterey County (case number CR9938) for Murder in the second degree. The victim in the case was Arthur Sandoval, age 17 years old.

1. **Offense Summary:**

(Source record supplied by the Monterey County Sheriff's Department)

On October 18, 1981, at approximately 10:50 p.m., Soledad Police responded to Pete's Shell (a service station and grocery store) on South Front Street regarding an armed robbery, which had just occurred. Arthur Sandoval (17) was located behind the station face down in a pool of blood; there was no pulse. Victims Pamela Lewis (21) and Sal Montoya (19) stated that two subjects with ski masks entered the store, ordered them to lay face down on the floor, took $13 from the cash register and ran from the store. A short time later they heard two shots.

The autopsy report indicates that Arthur Sandoval died from a gunshot wound to the head.

2. **Prisoner's Version:**

Ekdahl declines to discuss the offense, and made this statement "I am factually innocent-I don't discuss the case."

B. **Aggravating/Mitigating Circumstances:**

1. **Aggravating Circumstances:**

a.    The crime involved the use of a firearm.
b.    It can be argued that the robbery was premeditated, which indirectly resulted in the shooting that took place while Ekdahl was fleeing the scene.

EKDAHL, EMIL                    C-79199              CSP-SQ              JUNE 2005

2.   <u>Mitigating Circumstances:</u>

   a.   Lack of a significant criminal history. Ekdahl has no juvenile or other adult convictions.

   b.   It can be argued that Ekdahl participated in the crime under circumstances of coercion, duress, or his conduct was partially excusable for some other reason not amounting to a defense.

## II.   <u>PRECONVICTION FACTORS:</u>

### A.   <u>Juvenile Record:</u>

No juvenile convictions noted.

### B.   <u>Adult Convictions and Arrests:</u>

Sacramento Police Department on 8/19/83 arrested Ekdahl for Forgery (PC 470), access/alter/theft from a computer (PC 502), grand theft (PC 487) and criminal conspiracy (PC 182). All charges were dismissed on 11/9/83 by Sacramento County Municipal Court.

Ekdahl was arrested for the instant offense by Monterey County Sheriffs Officers on 9/17/83. He is currently serving a 15-year to life term for this offence.

### C.   <u>Personal Factors:</u>

Emil Ekdahl was born to the parents, Emil Ekdahl Sr. and Mona Christopher on 3/29/63. He is an only child born to this relationship. Ekdahl never knew his father and was raised by his mother and stepfather (George Christopher) in Northern California. He has two brothers (Jamon and Tony Christopher) and two sisters (Indie Meyers and Celia Montgomery) who live in California. Ekdahl attended school until the ninth grade. He later earned his GED. Ekdahl reports that he married Darlene Victor in 1982. He later found out that the marriage was not legal. The two sustained a common-law relationship. Ekdahl has no children.

Military records indicate Ekdahl served in the United States Army for nine months in 1982 but did not adapt well to military life and was granted an early discharge. At the time of his arrest in September, Ekdahl had been employed six months as an apprentice longshoreman for the Port of Sacramento.

## III.    POSTCONVICTION FACTORS:

### A.    Custody History:

Ekdahl was received in the Department of Corrections on 1/16/84 at the Northern Reception Center (NRC-CMF) in Vacaville, California. He was processed and endorsed for placement at California Training Facility (CTF) on 3/2/84. Ekdahl was received at CTF on 3/5/84 for level III placement. Initial custody was established at Close B due to his minimum eligible parole date (MEPD) of 5/14/94. Ekdahl was placed on the support services waiting list at his initial classification hearing on 3/15/84. On 6/21/84, he appeared before the Unit Classification Committee (UCC) for special classification. Based on a psychiatric referral dated 6/20/84 by Phillip Hicks, M.D., Staff Psychiatrist, Ekdahl was referred to the Classification Service Representative (CSR) for Category J placement at California Men's Colony East (CMC-E). Ekdahl was subsequently reviewed by the CSR on 7/10/84 and endorsed for transfer to California Medical Facility (CMF) for CAT J placement. Ekdahl was received at CMF on 9/20/84. He appeared before UCC on 10/3/84 for initial review. Custody was reduced to Medium A custody and he was involuntarily unassigned pending declassification and program determination. Ekdahl was re-referred to the CSR for category K placement. UCC noted that Ekdahl did not meet the criteria for the Cat J program. It was noted that he did not suffer from a major mental illness and did not have a history of mental illness. Ekdahl was subsequently reviewed by the CSR on 11/1/84. He was endorsed for placement in the Cat K program at CMF. Ekdahl received a work assignment to the sandwich room. Ekdahl was reviewed before UCC on 3/28/85 for program evaluation and possible transfer consideration. Ekdahl related to the committee that he did not feel comfortable at CMF, but stated he did not have any known enemies that would preclude his transfer to CMC-E. His case was subsequently referred to the CSR for Category K placement. Ekdahl case was presented to the CSR on 4/18/85. He was endorsed for transfer to CMC-E. Subject was reviewed before UCC on 6/10/85 for deletion from the Cat K program. It was recommended that he be retained at CMC-E as a level IV override for general population (GP) programming. Ekdahl was deleted from the Cat K program by the CSR on 6/25/85. He was retained at CMC-E for GP placement. Ekdahl received a work assignment to textile products on 7/10/85. He was later reassigned to vocational auto body. Ekdahl was unassigned from his work assignment in Industries on 3/25/91 due to a CDC 115 rules violation report (RVR) for refusal to perform an assigned task. He was later reassigned to the hospital dietary kitchen on 4/16/91. Ekdahl was reassigned to the vocational machine shop in 1992. Ekdahl received a non-adverse transfer to CSP-CTF on 4/28/93. Custody was maintained at Medium A. Ekdahl was

EKDAHL, EMIL                C-79199              CSP-SQ              JUNE 2005

reviewed by UCC on 3/27/96 for transfer consideration to San Quentin II for Category X evaluation at the request of the Board of Prison Terms (BPT). Ekdahl was subsequently endorsed for transfer on 4/18/96 and received at SQ-II on 5/30/96 for Cat X placement. Custody was retained at Medium A. He received a work assignment to Industries. Upon completion of the Cat X evaluation, he was transferred back to CTF-C on 10/16/96. Ekdahl was placed in Administrative Segregation (Ad/Seg) on 2/9/97 for assault on an inmate. Custody was increased to Maximum B. He was retained in Ad/Seg pending adjudication of the RVR. Ekdahl was issued a CDC 115 for battery on an inmate, he was found guilty of this violation. He was assessed a 3 month Security Housing Unit (SHU) and received a 90 day loss of credit. He was reviewed before ICC on 3/18/97. The committee elected to assess and suspend the SHU term as of 3/18/97 and alternate GP placement as an appropriate alternative. Ekdahl's case was referred to the CSR for transfer consideration to SQ-II/FOL-II. He was retained in Ad/Seg pending transfer. Ekdahl was endorsed for transfer to SQ-II on 7/14/97. He was received at SQ-II on 9/20/97. Ekdahl was initially placed in Ad/Seg upon his arrival at SQ due to his previous Ad/Seg placement while at CTF. He was reviewed by ICC on 9/25/97 for his initial Ad/Seg review. During this classification hearing, Ekdahl requested retention in Ad Seg due to an enemy concern. Ekdahl indicated that he had a serious enemy situation with condemned inmate Danny Horning. He indicated that Horning's two brothers, Stephen and Mark, were his crime partners. Based on this information, Ekdahl was referred to the CSR for transfer consideration to Folsom or Chuckawalla Valley State Prison. No documentation could be located in the file to indicate what the action of the CSR was or whether the case ever referred to the CSR for transfer consideration. Ekdahl was at some point between September and October of 1997 was released from Ad Seg and placed in the GP at San Quentin. He appeared before UCC for his initial classification hearing on 10/23/97. Custody was reduced to Medium A. He was placed on the Prison Industries waiting list for a work assignment. At 5/27/04 at a program review, UCC elected to place Ekdahl in Vocational Sheet metal. UCC kept Ekdahl's custody at Medium A and is currently working in Vocational Sheet Metal.

**EKDAHL, EMIL**          **C-79199**          **CSP-SQ**          **JUNE 2005**

B.    Therapy & Self-Help Activities:

Ekdahl was a member of the Alcoholics Anonymous Program on a continual basis since May of 1986 (refer to CDC 128B general chronos dated May 1986 through January 2003). Records indicate that Ekdahl attended the first four weeks of an eight week substance abuse group from 11/13/86-1/9/87 (refer CDC 128B dated 2/24/87). Ekdahl participated in the Chapman University College Program at CMC from 9/16/91-12/20/91, 7/17/92-1/21/92, and 5/18/92-8/21/92 (refer CDC 128B's dated 3/26/92, 10/1/92, and 1/6/93). CDC 128C Psychiatric Chronos dated 1/6/98 indicate that Ekdahl completed eight-weeks of Self-esteem and Assertiveness Training and participated in an eight-week Anger Management Group. CDC 128B dated 2/18/94 indicates that he participated in a sixteen week Psychology Workshop. Ekdahl was a participant in the Alternatives to Violence Project workshop from 7/31/96 until 8/2/96 (refer to CDC 128B dated 8/2/96). He attended a four week advanced relaxation therapy group in 1997 (refer to CDC 128 dated 9/15/97). Ekdahl was a participant in the Chapman College Program from 9/14/92 until 12/18/92 (refer to CDC 128B dated 1/28/93), and later completed courses while attending San Quentin's college program (refer CDC 128 dated 5/21/99). Ekdahl received his State of California Certificate of Educational Completion for 2200 hours of Vocational Auto Shop training on 6/14/89. Ekdahl received a Certificate of Achievement for Vocational Machines from Valley Adult School on 3/1/96. CDC 128B dated 10/9/00 indicates that Ekdahl attended the KAIROS men's retreat which was held on 10/6/00 until 10/9/00.

C.    Disciplinary History:

| Date | Charge/Description | Disposition |
|---|---|---|
| 02/9/97 | CCR 3005/ Battery on an Inmate | Guilty/90 loss of privileges |
| 11/27/96 | CCR 3041(b) Refusing to Work | Guilty/30 days loss of credit, 90 days LOP |
| 04/02/92 | CCR 3005(c) Fighting | Guilty/90 days LOP, 10 days Disciplinary Detention (DDU) |
| 03/6/91 | CCR 3005(a)Disobeying Orders | Guilty/30 Loss of credits, and two weekends confinement to qtrs. (CTQ) |
| 10/6/87 | CCR 3005(c)Fighting | Guilty/(4) weekends CTQ which was suspended pending 90 days clean conduct. |
| 07/12/84 | CCR 3016 Possession of I/M Alcohol | Guilty/90 days loss of behavioral credits. |
| 07/1/84 | CCR 3016 Suspected Intoxication | Guilty/150 days loss of behavioral credits |

EKDAHL, EMIL              C-79199              CSP-SQ              JUNE 2005

Ekdahl also received twelve CDC 128A general counseling chronos between 12/13/84 and 9/28/99. Ekdahl has remained disciplinary free since 1997.

IV.    **FUTURE PLANS:**

A.    Residence:

Ekdahl indicates that he applied to the Genesis Residential Center at 1152 Sonoma Avenue in Seaside, California in regards to placement in their drug and alcohol residential program. He indicated that he is still awaiting a response.

B.    Employment:

When released he has indicated that he will seek employment as a Machinist in Auto Mechanics or Sheet Metal.

V.    **SUMMARY:**

A.    Unfortunately, Ekdahl's been facing severe medical issues, which have affected his progress to parole. Due to the current medication Ekdahl has been receiving, he's been unable to participate in self-help therapy or attend his current job on a regular basis. Ekdahl understands the expectations of the Board and knows his lack of participation will possibly affect his possibility to parole. Ekdahl has stated he would have a stronger support system if he was allowed to relocate to Placer County where his family lives. Ekdahl has made attempts, to comply with the BPT recommendation to find viable living arrangements in Monterey County by contacting Genesis Residential Center in Seaside, CA. He is currently awaiting a response from the center concerning his inquiry for placement in the drug and alcohol treatment program.

EKDAHL, EMIL          C-79199          CSP-SQ          JUNE 2005

B.    If feasible, Ekdahl could benefit from continuing to participate in available self-help/therapy programs and continuing to remain disciplinary free.

C.    This report is based on an hour interview with the inmate and a thorough review of the central file.

D.    Ekdahl was provided the opportunity to review his central in preparation for his BPT appearance, which he declined. (refer to CDC 128 dated 11/16/04)

E.    Ekdahl is currently a participant in the Mental Health Service Delivery System. His current level of care is designated at CCCMS.  CDC form 1845 indicates that Ekdahl has a permanent disability not-impacting placement. Subject has indicated that he does not require adaptive services for the purpose of effective communication as required per Armstrong II remedial plan..

**EKDAHL, EMIL**            C-79199            **CSP-SQ**            **JUNE 2005**

M. GARCIA
Correctional Counselor I


V. KELLEY
Correctional Counselor II


C. BELSHAW
Correctional Counselor III, C&PR


**EKDAHL, EMIL**          C-79199          **CSP-SQ**          **JUNE 2005**

# EXHIBIT O:

Life Extension by Durk Pearson Phd and Sandy Shaw Phd.    ISBN 0-446-37583-3    Warner Books 666-5th Ave NY    pp 270-71

Our bodies don't just leave this dangerous acetaldehyde hanging around, though. We have another enzyme (called aldehyde dehydrogenase) which enzymatically oxidizes the toxic acetaldehyde into essentially harmless acetate (a form of acetic acid, common vinegar). Unfortunately, long-term heavy use of alcohol leads to free radical liver damage which impairs the performance of this enzyme system. This results in less acetaldehyde being harmlessly destroyed enzymatically and more acetaldehyde self-oxidizing to free radicals which do further damage, and so forth, in a destructive chain reaction.

Normal people who do not drink excess alcohol have no trouble converting all the internally created alcohol into acetate via the alcohol-handling enzyme system. When we drink alcohol, though, we can overload the enzyme system. If we drink alcohol fast enough, acetaldehyde may be made by the enzyme alcohol dehydrogenase faster than can be eliminated by the aldehyde oxidizing enzyme. *That's* when the trouble begins. Alcohol itself is much less harmful than acetaldehyde. Acetaldehyde and its free radical autoxidation products cause nearly all the damage to brain and body that we blame on alcohol—the increased risk drinkers have of developing cancer or cardiovascular disease, premature skin wrinkling, atherosclerosis, liver damage, brain damage, cataracts, decreased resistance to disease (due to suppression of our body's police force, the immune system), alcohol addiction itself, and even hangover!

Scientists recently discovered that alcoholics have a metabolic defect that results in their having twice as much of the harmful acetaldehyde in their bloodstream after a drink as normal people. Even some nondrinking relatives of alcoholics make more acetaldehyde from alcohol than normal people; they have inherited this tendency. The tragedy of alcoholism has emerged not as a lack of morality or willpower but as an inherited condition which makes alcoholics either create too much acetaldehyde too rapidly from the alcohol they drink or destroy the acetaldehyde slower. In one study, adopted boys whose natural parents were alcoholics tended to become alcoholics themselves. The boys whose natural parents were not

alcoholics tended not to become alcoholics even when their adoptive parents were alcoholics. Heredity, rather than environment or weak will, causes alcoholism.

Alcohol itself provides a degree of protection against the unpleasant effects of the acetaldehyde by scavenging some of the dangerous reactive free radicals created when the acetaldehyde is abnormally oxidized in the body. This abnormal oxidation occurs when the acetaldehyde produced from the alcohol piles up and overwhelms the supply of the acetaldehyde-destroying enzyme called acetaldehyde dehydrogenase. The vicious cycle of alcoholism is now revealed. Acetaldehyde is made from alcohol mostly in the liver by our enzymes. The acetaldehyde and its free radicals make the drinker feel lousy so he drinks more alcohol, which not only makes him feel better but actually helps protect him against acetaldehyde poison and dangerous free radicals—*until* the liver makes *more* acetaldehyde out of the additional alcohol, so the drinker drinks more alcohol. And on and on. Before we understood this metabolic pathway in alcoholics, alcoholism seemed a nearly hopeless problem, with complete abstinence the only solution.

Alcohol addiction is not due to weak will or moral depravity; it is a genetic metabolic defect, just as Durk and most males in Durk's father's family have a genetic metabolic defect resulting in gout. For centuries it was thought that gout was the result of "immoderate living," "weak will," or "moral depravity." Sound familiar? We now know that gout can be caused by at least 85 different inheritable metabolic defects. A proclivity to alcohol addiction is genetic, not moral. If you have a high ratio of the enzyme alcohol dehydrogenase (which turns alcohol into nasty acetaldehyde) to the enzyme acetaldehyde dehydrogenase (which turns nasty acetaldehyde into harmless acetate), you will find it hard to stop drinking if you ever start.

It is interesting to note that there are racial differences in the average levels of these two enzymes. (Note that we are speaking of group averages, not individuals. There are far greater differences between individuals within a race than there are differences between racial averages.) For example, the incidence of alcoholism is higher than average among the Irish and among American Indians (and several other groups as well. These groups have a higher average ratio of acetaldehyde-producing to acetaldehyde-destroying enzymes. An

# EXHIBIT P:

| | Hot Topic |
|---|---|

# California Correctional Peace Officers Association

**LIBRARY**
**Institute of Governmental Studies**
**University of California**
109 Moses Hall #2370
Berkeley, CA 94720-2370
510-642-1472 (voice)
510-643-0866 (fax)



- Introduction
- History
- Political Challenges
- Prison Reform
- Web Sites
- Newspaper/Journal Articles & Reports

**July 2005**

## Introduction

The California Prison system is the third largest penal system in the country, costing $5.7 billion dollars a year and housing over 161,000 inmates. Since 1980 the number of California prisons has tripled and the number of inmates has jumped significantly. In the past few years controversies involving prison expansion, sky-rocketing costs, and claims of mismanagement and inmate abuse have put the California prison system under heightened public scrutiny.

The California Correctional Peace Officers Association (CCPOA) is the California prison guards' union. In recent years the CCPOA has become a major player in California politics. Its political influence has grown to the point that it is widely considered to be one of the most powerful political forces in Sacramento. Its lobbying efforts and campaign contributions have greatly facilitated the passage of legislation favorable to union members.

The CCPOA takes the position that correctional personnel perform a vital public service that puts them under great danger and stress, and therefore makes no apologies for its aggressive promotion of member interests and its high-profile role in California correctional policy. CCPOA's critics argue that the union has become too powerful in California politics, that it has used its power to unfair advantage, and that it has been an impediment to constructive debate and openness about the state of California prisons.

## History                                                                          top↟

The California Correctional Peace Officers Association began in 1957 as the California Correctional Officers Association (CCOA). Prior to the 1980s, the group was politically weak with its membership divided between the California State Employees' Association and the California Correctional Officers' Association. The CCPOA's rise to prominence began in the 1980s, when Don Novey became the group's president. Novey, the son of a prison guard and a guard himself, led a successful effort to combine Youth Authority supervisors and parole officers with prison guards, and

the CCPOA's membership soared. Novey is credited with fostering a positive public image for the union, which under his leadership spent over half a million dollars a year during the 1980s on public relations. Novey was also an aggressive lobbier and propelled the union to a position of great influence in Sacramento politics. With a strategy of large campaign contributions and adroit political maneuvering, the CCPOA rose to become one of the most powerful unions in the state. The union's impact can be gauged by the rising annual prison guard salary (from $14,440 in 1980 to $54,000 in 2002), the growth in number of state prisons (from 13 in 1985 to 31 in 1995), and large increases in the California Department of Corrections budget (from $923 million in 1985 to $5.7 billion in 2004).

By 1992 the CCPOA was the state's second largest political action committee. The union contributed over a million dollars to various senatorial and assembly candidates that year. Many analysts believe the CCPOA helped Pete Wilson win the governorship with a contribution of over a million dollars, the largest independent campaign contribution on behalf of a candidate in California history. The CCPOA backed Gray Davis for his governorship bid in 1998 against Dan Lungren. Many believe the CCPOA's support was instrumental in Davis' win.

The CCPOA has been active in funding and promoting the victims' rights movement in California. In 1991 the CCPOA assisted the movement in creating the Doris Tate Crime Victims Bureau, and in 1992 the Crime Victims United of California, a political action committee which received over 95% of its startup costs from the CCPOA. In addition, the CCPOA has supported campaigns pushing longer prison terms and more "punitive" sentences for criminals. The CCPOA made large contributions to the 1994 campaign for Proposition 184,* the "three strikes" initiative which put repeat offenders behind bars, and is credited with helping the proposition to pass with over 70 percent of the vote.

*Ballot text and arguments can be found in the California Ballot Propositions Database.

# Political Challenges                                                                    top

In light of prominent abuse scandals that rocked California prisons in the last few years, as well as allegations of large scale overspending without regard for the California budget, Governor Schwarzenegger and his administration formed a 40-member "California Corrections Independent Review Panel" in February 2004, headed by Former Gov. Deukmejian. After three months of investigation, the panel released "Reforming California's Youth and Adult Correctional System", a 300-page report which offered more than 200 recommendations to overhaul the system. The report focused on a prison culture it claims is "dysfunctional" and cited a "code of silence" that protects abusive prison workers. The report openly criticized the CCPOA's power over the system, stating that the agreement between the state and the California Correctional Peace Officers Association "clearly has resulted in an unfair and unworkable tilt toward union influence." (Sec. 10, Labor Contract).

In addition to the panel's report, the CCPOA met political challenge when the 2004-05 California state budget negotiations put the union at the center of a struggle over scheduled salary increases for correctional officers. The salary increases, part of a five-year contract giving a cumulative 37 percent pay raise to the union's 31,000 members, were opposed by the Schwarzenegger administration and the California Senate. Schwarzenegger requested that the union give back $300 million from its contract, a large piece of the $465 million he's seeking from all unions to help trim the state's budget deficit. In late May 2004 the state senate challenged the union by publicly vowing to undo the contract if the union did not agree to renegotiate salaries. The effort to annul the contract along with Schwarzenegger's refusal to accept CCPOA campaign contributions in the October 2003 recall election represents a significant change in political support for the CCPOA and may mark a turning point in the union's influence in California politics.

In early July 2004, the Schwarzenegger administration reached a deal with the CCPOA that would delay the scheduled union pay raise by several years. While not a reversal of the contract, the compromise is expected to save $108 million in 2004-2005. Instead of receiving the original 10.9 percent raise, the guards received 5 percent on July 1st and are scheduled for another 5.9 percent on Jan. 1, 2005 . The 2005 and 2006 pay raises would also pay out every six months. In return for agreeing to the deferral, the CCPOA won guarantees against layoffs for two years, additional healthcare for guards at rural prisons, more control for supervisors and shorter weeks for local union officers.

On July 21st 2004, U.S. District judge Judge Thelton Henderson, publicly condemned the deal that Gov. Arnold Schwarzenegger struck with the state's prison guards union, saying it gives the union too much power. In a letter he sent to the Schwarzenegger administration, Henderson said that he was considering appointing a receiver to run the state Corrections Department and demanded a meeting with the governor. Judge Henderson is overseeing the settlement of a lawsuit originating from complaints about inmate abuse and poor conditions at Pelican Bay State Prison. While it is rare for Court-ordered receiverships to be ordered, at least ten other states have experienced radical court appointed changes in prison system operations. Critics of Judge Henderson claim he has no jurisdiction to order a change to the entire system. Several legislators spoke out that the deal Schwarzenegger had reached with the union was fundamentally flawed and that the governor had rushed to secure a contract by June 30, 2004.

In November 2004, Judge Henderson ordered an investigation into the state's labor contract with California's correctional officers, asking whether it gives the CCPOA too much control over prison management. In addition, the judge asked a court-appointed special master working for him to examine whether the contract hinders the state's ability to conduct fair investigations of guard misconduct. He also ruled that the practice of allowing union officers to be present at disciplinary meetings at Pelican Bay prison poses a conflict of interest.

---

# Prison Reform

The CCPOA made news during the winter and spring of 2005 for joining with legislators and victims rights organizations in opposing Gov. Schwarzenegger's prison reform proposals. In January, 2005, Gov. Schwarzenegger announced plans for major reforms in California government during his "State of the State" speech. Among his reforms was a proposal to re-structure the California prison system. One piece of his proposal would give a governor-appointed secretary direct control over operations of the state's prison and parole systems. The Department of Corrections and the California Youth Authority would be abolished and replaced by separate units of youth and adult operations that would report to the secretary through a chief deputy secretary. The new agency would be called the Department of Corrections and Rehabilitation and would cost $6 billion. Some critics claim the governor's move was designed to break up CCPOA influence of state prison leadership. In April 2004, Gov. Schwarzenegger struck a deal with legislative Democrats that eliminated his new agency plan. In return, Democrats agreed to give up their power to confirm wardens at state prisons. Some pundits believe that CCPOA influence on the California state Assembly and Senate led to the dissolution of Gov. Schwarzenegger's plan.

Another part of Gov. Schwarzenegger's key prison reforms was dropped in April 2005 under pressure from the CCPOA and their allies. The governor's plan targeted parolees and involved sending parole violators to halfway houses or community-based drug abuse programs instead of returning them to prison. Admistration advocates claimed that more than half of California's convicts released on parole return to prison within 2 years of their release. They claim that the prisons are already too overcrowded to accomodate delinquent parolees. Schwarzenegger's plan was launched in 2004 and was built on a program initiated under the Gray Davis administartion. The Department of Corrections began allowing some parolees to enter half-way houses and

substance abuse facilities last year and the program was on its way to full implementation in 2005. Officals at a Senate hearing in March claimed the system was not working, however, and the CCPOA, Crime Victims United of California and other victims rights groups launched a television ad campaign against the proposal. Some analysts believe that the attacks from the CCPOA and their allies were successful when Schwarzenegger abandoned the parole program mid-April.

In part, CCPOA resistance against the governor is rooted in union resentment of his new "rehabilitation" agenda towards reforming the California prison system. Schwarzenegger advocates a less punitive approach in dealing with prisoners, one that would re-orient parolees and ex-convicts into society. His stance is a contrast to the last 20 years of state government leadership on prisons. During the 1980's and 90's, the CCPOA and other prison advocates pushed California elected officials to focus on imprisonment and punishment rather than the idea that convicts can be rehabilitated into society. The union has traditionally supported tough anti-crime initiatives such as Proposition 184 and pushed California governors Pete Wilson and Gray Davis to maintain hard-line attitudes towards California corrections. Schwarzenegger's endorsement of rehabilitation is based on his claims that California prisons are dangerously overcrowded and rehabilitation will clear more space, keep prison costs down and reform convicts more adequately than imprisonment. The CCPOA and anti-crime groups believe that rehabilitation will allow dangerous felons onto the streets and that the Governor's new stance is soft on crime. They say they will fight the loosening of parole and incarceration standards. Administration advocates deny the charges, pointing to Schwarzenegger's role in defeating Proposition 66 which would have ammended state's current "three strikes" law. Schwarzenegger supporters also say that violent offenders would not be allowed into parole and rehabilitation programs.

For more on convict rehabilitation, see IGS Library hot topic from Nov. 2004, "Proposition 66: Limitation on "Three-Strikes" Law".

# Web sites

California Department of Corrections

California Correctional Peace Officers Association

Crime Victims United of California

Doris Tate Crime Victims Bureau

# Newspaper/Journal Articles and Reports

The following citations include links to full-text online when available. For more info, see Tips for Finding Full-Text Articles.

Sterngold, James.
"U.S. seizes state prison health care: Judge cites preventable deaths of inmates, 'depravity' of system,"

**EXHIBIT Q:**

STATE OF CALIFORNIA
GA-22 (9/92)

## INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE | TO | | FROM (LAST NAME) | CDC NUMBER |
|---|---|---|---|---|
| 02/20/05 | C & PR | | EKDAHL | C-79199 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | | JOB HOURS |
|---|---|---|---|---|
| North Block | 2N30L | Med. Unass. | | FROM            TO |

OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.)

ASSIGNMENT HOURS
FROM            TO

**Clearly state your reason for requesting this interview.**
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

In the BPT evidence pk. is a memo stating: 3042 notice not sent to trial attorney because address is unknown. Here is the name & address from BAR dirctery: James Newhouse 160 Alma St. Monterey, CA. 93490-3203

Do NOT write below this line. If more space is required, write on back.

INTERVIEWED BY

DATE

DISPOSITION

# EXHIBIT R:

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

# INMATE/PAROLEE
## APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region     Log No.                    Category
1. _____    1. _____    BPT
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| EKDAHL  Emil | C-79199 | Med unassigned | 2N301 |

A. Describe Problem: 2nd small problem concerning the BPT parole consideration evidence packett concerning a CDC memorandum (attached). The memo states that P.C. 3042 notice was not sent to my trial attorney because of unknown address. So here is said attorney's name & address: from The 1st Directory of Attorneys Jan 2006:

James Newhouse
460 Alma Street
Monterey California 93940-3203

If you need more space, attach one additional sheet.

B. Action Requested: That due process of law P.C. 3042 be followed and proper notification be sent to trial Attorney at Law name & address give above thank you!

Inmate/Parolee Signature: Emil J Ekdahl          Date Submitted: 03/12/05

                                                   MAR 1 4 REC'D

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: _____

_____

_____

_____

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed          CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                                      ARNOLD SCHWARZENEGGER, *GOVERNOR*

## BOARD OF PRISON TERMS
1515 K Street, 6th Floor
Sacramento, CA 95814

2 N 30L



April 8, 2005

Emil Ekdahl
C79199
SQ

Dear Mr. Ekdahl:

This is in response to your appeal received on March 17, 2005.

Effective May 1, 2004, the Board of Prison Terms Appeals section (15 CCR § 2050-2056) was repealed by Administrative Directive No. 04/01. The Board of Prison Terms no longer has an Appeals Unit; therefore, the decisions or actions regarding the issues listed below **cannot be appealed** and will no longer be addressed by the Board, regardless of whether the issues are written on a BPT 1040, a CDC 602, or in letter format:

- Due process (including hearing scheduling/postponements)
- Hearing panel issues
- Mitigating factors of parole suitability
- CDC clerical errors regarding date/time/credit calculations
- CDC staff related issues (prison transfers, programming)
- Parole consideration (grant/denial of parole)
- Psychological/psychiatric evaluations, Board reports
- Court issues (recall of sentence)
- Attorney representation

You may go directly to the courts per California Department of Corrections, 15 CCR § 3160, Inmate Access to the Courts. Forms are available at the institution's law library. Issues concerning clerical errors on the BPT 1001 Life Prisoner Decision Face Sheet form related to Board decisions, and other rules of law, can be reviewed by the Board. You can submit these concerns via correspondence to the Board of Prison Terms, Quality Control Unit, 1515 "K" Street, Sixth Floor, Sacramento, California, 95814.

Sincerely,

Kirsten Preslar
Quality Control Unit

# INMATE/PAROLEE APPEALS SCREENING FORM

NAME: _Ekdahl._    NUMBER _C79199_    SQP LOG No: _____

(OTHER LOG NO)_____    ISSUE:_____    AREA OF ORIGIN:_____

HOUSING UNIT _2N30_      NOTE _____

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

____1. The action or decision being appealed is not within the jurisdiction of the Department.

    ____a. BPT Issue, file ~~BPT 1040 form~~ & submit to C&PR      ____b. Other, see comments

____2. You have submitted a duplicate appeal on the same issue. Check one:

    ____Your first appeal was screened out on _____ for _____

    ____Your appeal is currently under review at the _____ level.

    ____Your first appeal has been completed at the _____ level.

____3. You are appealing an action not yet taken.

____4. You may not submit an appeal on behalf of another inmate.

____5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents.

    ____CDC-115 Hearing Officer's or Disciplinary Committee Results      ____Supplemental Reports to CDC-115.

    ____CDC-115A with I.E./D.A. info.    ____CDC-128B1 Hearing Notif.    ____CDC-839/840 Class/Reclass Score Sheet

    ____CDC-128G ICC/UCC Clas.Com.    ____CDC-128G Init. Clas. Com.    ____CDC-128G CSR Endorsement Chrono

    ____Lab Results Sheet    ____CDC-114D Lock Up Order    ____CDC-1030 Confidential Disclosure

    ____CDC-7219 Medical Report    ____Legal Status Summary    ____CDC-128C Medical Chrono

    ____Board of Control Claim Form (attached)      ____Property Inventory Slip

    ____Receipts:____Qtr.Pkg. Inventory Slip    ____CDC-143 Property Transfer Slip    ____Cell Search Slip

    ____You have failed to complete Section_____      ____Sign & Date Section_____

    ____Other:_____

____6. There has been too great a time lapse between when the action or decision occurred and when you filed your appeal.

____7. This issue has been appealed under the assigned SQP Appeal Log No._____. Per DOM section 54100.10.1,

    a copy of the reviewer's response:      ____Is attached      ____Will be forwarded to you upon completion

____8. Abuse of the Appeal Procedure. See Comments.

Comments: _Your appeal is not appropriate for formal level processing. You must provide proof of having received an informal level response prior to submitting this appeal to the Appeals Office, for further processing. Reference CCR section 3084.2(c) which states: Place of Filing._

_t the formal levels, the appeal shall be forwarded to the appropriate office or appeals coordinator within the time limits prescribed in_

_ection 3084.6._ **NOTE: as of 6/23/97, Appeals Office will not assign log numbers to informal appeals. Appeals will receive a log number**

_pon reaching the 1st formal level if necessary. Please take heed of this notice when preparing future appeals._

_(signature)_      _W Jepperson_      _send to BPT_

CHANDLER-DACANAY      W. JEPPESON

CC-II, Appeals Coordinator      CC-II, Appeals Coordinator      Date _3-14-5_

This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to the Appeals Coordinator with the necessary information.

## PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE.

_copies : 3_                  CDC-695 (REVISED 9/03)

# EXHIBIT S:

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION HEARING CHECKLIST

☐    Initial Hearing     *"ITEMS MARKED "IN 'C' FILE" FOR BOARD OF PRISON*
                                   *TERMS COMMISSIONERS ONLY*

☒    Subsequent Hearing

All life prisoner hearing packets are to be divided into the following seven major categories. Within each category, similar documents should be filed together in reverse chronological order. Beginning with the most recently dated document.

1. ☒    **Cumulative Case Summary**

2. ☒    **Board Reports (All)**

3. ☒    **Psychiatric Reports (All)**

4. ☒    **Prior Decisions (AA, CRB, BPT)**

5. ☒    **Notices and Responses, including:**

         ☒    Notices and Responses (This hearing only)

         ☒    Officials' Letter

         ☐    Fearful Letter **IN "C"FILE CONFIDENTIAL FOLDER**

         ☐    Support Letters

         ☐    _____

6. ☒    **Legal Documents, including:**

         ☒    Probation Officer's Report

         ☐    Arrest Reports, if any

         ☒    Abstract of Judgement

         ☐    Charging Documents

         ☐    Appellate Decisions

         ☒    Sentencing Transcripts

         ☐    1203.01 P.C. Statement

         ☒    ORDER RE HABEAS CORPUS

         ☐    _____

         ☐    _____

7. ☒    **Miscellaneous,** including:

         ☐    Crime Partner's Parole Decision, if any **IN "C" FILE CONDIFENTIAL FOLDER**

         ☒    Notice of Hearing Rights (This hearing only)

         ☒    Disciplinary Reports and Incident Reports (All) **IN "C" FILE DISCIPLINARY SECTION**

         ☒    Confidential Folder **IN "C" FILE**

         ☐    Other, non-specified, but pertinent information developed since date of last hearing

         ☐    _____

         ☐    _____

The transcript of the prior hearing, if any, is to be included in the life prisoner-hearing packet but not indexed.
Checklist and packet reviewed for completeness ___J. Grant___ CCRM,   Date _6/17/05_

                                       **J. GRANT**

| NAME: | CDC NUMBER | INSTITUTION |
|---|---|---|
| **EKDAHL, EMIL** | **C-79199** | **SAN QUENTIN STATE PRISON** |

*Attachment -*

BOARD OF PRISON TERMS                                          STATE OF CALIFORNIA

## LIFE PRISONER HEARING DECISION FACE SHEET

( ) **PAROLE GRANTED – (YES)**
    CDC:  Do not release prisoner before
        Governor's review.

| Records Use Only | | |
|---|---|---|
| Parole Release Date | | |
| YR | MO | DAY |
| Attach Prison Calculation Sheet | | |

(X) **PAROLE DENIED – (NO)**   3yrs  (7/08)

( ) **AGREED UNSUITABLE** (Attach 1001A Form)  FOR: _____ YEAR(S)

( ) **HEARING POSTPONED/REASON:**_____

---

### PANEL RECOMMENDATIONS AND REQUESTS

**The Board Recommends:**

(X) No more 115's or 128A's     (X) Stay discipline free
( ) Work to reduce custody level     ( ) Learn a trade*     (X) Earn positive chronos
(X) Get self-help*                  ( ) Get therapy          ( ) Get a GED*

( ) Recommend transfer to _____
( ) Other _____

- These programs are recommended if they are offered at your prison and you are eligible/able to participate

---

**Penal Code 3042 Notices** (X) Sent  Date: _____05-13-05_____

Commitment Offense(s) _____187_____ MURDER 2ND

| Code(s) | Crime(s) |
|---|---|
| CR 9938 | 1 |
| Case #(s) | Count #(s) |

| Date Inmate Came to CDC | Date Life Term Began | Minimum Eligible Parole Date |
|---|---|---|
| 01-16-84 | 01-16-84 | 06-07-92 |

( ) Initial Hearing  ( X ) Subsequent (Hearing No) _7_  ( ) Date of Last Hearing  03-1-05

| CDC Representative | | |
|---|---|---|
| Attorney for Prisoner | WAIVED | Address |
| D.A. Representative | County | MONTEREY |

This form and the Board's decision at the end of the hearing is only proposed and **NOT FINAL**. <u>It will not become final until it is reviewed.</u>

| Chair | *[signature]* | Date | 7/11/05 |
|---|---|---|---|
| Panel Member | *[signature]* | Date | |
| Panel Member | | ~~Date~~ | |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| EKDAHL, EMIL | C-79199 | SAN QUENTIN | SUB 7 | 06-29-05 |

BPT 1001 (Rev. 08-03)

BOARD OF PRISON TERMS                                          STATE OF CALIFORNIA

## LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING     ☒ SUBSEQUENT HEARING

| PRISONER'S NAME | CDC NUMBER: |
|---|---|
| EKDAHL, EMIL | C-79199 |

| DATE OF HEARING | LOCATION |
|---|---|
| 06-29-05 | SAN QUENTIN STATE PRISON |

## LEGAL STATUS

| DATE RECEIVED | DATE LIFE TERM STARTS | COUNTY |
|---|---|---|
| 01-16-84 | 01-16-84 | MONTEREY |

| OFFENSE | CASE NUMBER |
|---|---|
| MURDER 2ND | CR 9938 |

| COUNT NUMBER(S) | PENAL CODE SECTION (S) VIOLATED |
|---|---|
| 1 | 187 |

| TERMS | MEPD |
|---|---|
| 15 TO LIFE | 06-07-92 |

## OTHER COMMITMENT OFFENSES OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | ROBBERY | 211 PC | MONTEREY | CR 9938 | 2 |
| ☐ | ROBBERY | 211 PC | MONTEREY | CR 9938 | 3 |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| | | |

OTHERS PRESENT

☒ PRISONER (IF ABSENT, WHY?)   Waived

☒ ATTORNEY   WAIVED

☐ DEPUTY D. A. _____ COUNTY OF   MONTEREY

☐ OTHERS _____

## STATEMENT OF FACTS

☐ THE HEARING PANEL INCORPORATES BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON _____ , PAGES _____ THROUGH _____

☒ THE STATEMENT OF FACT IS

☒ QUOTED FROM THE BOARD REPORT, DATED   6/2005   , PAGE(S)   1

☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE (S) _____

☐ QUOTED FROM THE COURT OPINION, PAGE (S) _____

BPT 1000 (Rev. 8/90)

BOARD OF PRISON TERMS                                          STATE OF CALIFORNIA
LIFE PRISONER: PAROLE CONSIDERATION PROPOSED DECISION:
DENY PAROLE

√ **PAROLE DENIED FOR:**        1      2      ③      4      5        YEARS

If this decision is final, you WILL NOT get paroled. The Board will send you a copy of the decision. It will tell
you the reasons you did not get paroled. If this decision is not final, the Board will set up another hearing. You
can read the laws about your hearing. You can find the laws at California Code of Regulations, Title 15, Section
2041.

## REASONS FOR DENIAL

\_\_\_ The crime was very cruel or mean.
\_\_\_ More than one person was hurt or killed.
\_\_\_ The crime was done or planned without feeling bad about hurting others.
\_\_\_ The victim was abused or treated very badly during / after the crime.
\_\_\_ The inmate did not care if people suffered.
\_\_\_ The reason for the crime was small compared to the hurt it caused.
\_\_\_ Killing the victim did not stop the inmate from committing more crimes later on.
\_\_\_ The inmate has a record of hurting others and/or attempting to hurt others.
\_\_\_ The inmate's crimes got worse or more harmful.
\_\_\_ The inmate has a record of bad or harmful relationships.
\_\_\_ The inmate has sexually assaulted and frightened someone very much.
\_\_\_ Being in prison did not correct the inmate's behavior.
\_\_\_ The inmate cannot get along with people outside prison.
\_\_\_ The inmate committed crimes before this one.
\_\_\_ The inmate has not improved himself while in prison.
\_\_\_ The inmate has broken the rules while in prison.
\_\_\_ Clinic reports say the inmate's thinking is dangerous.
\_\_\_ The inmate has mental problems that may cause new crimes.
\_\_\_ The inmate has poor parole plans.

Other: _see transcript_

| HEARING PANEL | | | |
|---|---|---|---|
| Name | _[signature]_ | Date | 6-30 _7/1/05_ |
| Name | _[signature]_ | Date | _[illegible]_ |
| Name | | Date | |

| NAME | CDC# | PRISON | DATE |
|---|---|---|---|
| Ekdahl, Emil | C79199 | SQ | 6-29-05 |

BPT 1005(b) (REV. 01/02)

Distribution: White-C.File
Canary-BPT
Pink - Prisoner

**BOARD OF PRISON TERMS**                                    **STATE OF CALIFORNIA**
**LIFE PRISONER: PAROLE CONSIDERATION PROPOSED DECISION:**
**DENY PAROLE**

[ ] **PAROLE DENIED FOR:**          1      2      3      4      5      **YEARS**

If this decision is final, you WILL NOT get paroled. The Board will send you a copy of the decision. It will tell you the reasons you did not get paroled. If this decision is not final, the Board will set up another hearing. You can read the laws about your hearing. You can find the laws at California Code of Regulations, Title 15, Section 2041.

## REASONS FOR DENIAL

____ The crime was very cruel or mean.
____ More than one person was hurt or killed.
____ The crime was done or planned without feeling bad about hurting others.
____ The victim was abused or treated very badly during / after the crime.
____ The inmate did not care if people suffered.
____ The reason for the crime was small compared to the hurt it caused.
____ Killing the victim did not stop the inmate from committing more crimes later on.
____ The inmate has a record of hurting others and/or attempting to hurt others.
____ The inmate's crimes got worse or more harmful.
____ The inmate has a record of bad or harmful relationships.
____ The inmate has sexually assaulted and frightened someone very much.
____ Being in prison did not correct the inmate's behavior.
____ The inmate cannot get along with people outside prison.
____ The inmate committed crimes before this one.
____ The inmate has not improved himself while in prison.
____ The inmate has broken the rules while in prison.
____ Clinic reports say the inmate's thinking is dangerous.
____ The inmate has mental problems that may cause new crimes.
____ The inmate has poor parole plans.

Other:

_____
_____
_____
_____

## HEARING PANEL

Name _____        Date _____

Name _____        Date _____

Name _____        Date _____

**NAME**                **CDC#**                **PRISON**                **DATE**

**BPT 1005(b)** (REV. 01/02)

Distribution: White-C.File
Canary-BPT
Pink - Prisoner

# EXHIBIT T:

## NOTICE OF HEARING
### Pursuant to Penal Code Section 3042

**Date:**    01/15/05

**TYPE OF HEARING:**

☐  Life Prisoner Initial Parole
   Consideration Hearing
   (PC 3041,3041.7 & 3042)

**To:**    OFFICE OF THE ATTORNEY GENERAL
       ASSISTANT ATTORNEY GENERAL
       1300 "I" STREET
       SACRAMENTO, CA 95814

☒  Life Prisoner Subsequent Parole
   Consideration Hearing
   (PC 3041, 3041.7 & 3042)

☐  Life Prisoner Rescission Hearing
   (PC 3041.7)

☐  Extended Term Hearing
   (PC 1170.2(b))

☐  Other

Re:  NAME: **EKDAHL, EMIL**                          CDC #:  **C-79199**

COURT CASE #:  **CR 9938**                           PD/SO #:

DOB:    03-29-63                                     RECEIVED:  **01-16-84**

**OFFENSE: MURDER 2ND**

- **Location of Offense:** SOUTH FRONT STREET, SOLEDAD, CA        **Victim(s): ARTHUR SANDOVAL,
                                                            PAMELA LEWIS, SOL MONTOYA**

The named inmate will appear before the Board of Prison Terms for a hearing as indicated above. **THIS HEARING WILL BE
HELD ON MARCH 2, 2005 AT 1:30 P.M.  YOU MAY FAX A RESPONSE TO (415) 455-5184 NO LATER THAN 10 DAYS
PRIOR TO THE HEARING, TO THE ATTENTION OF "BPT/LIFER DESK".**

Your comments and recommendations regarding this case are respectfully invited for presentation to the Board of Prison
Terms. Please submit your written response on the reverse side or by attachment to this notice no later than 10 days prior to
the Monday of the hearing week. If you have documents or reports, which include information about the prisoner, the
prisoner's offense(s), or the prisoner's prior criminal history, you are encouraged to submit those along with your comments
and recommendations.

A representative of the District Attorney's Office may attend this hearing as provided in Title 15, Division 2, Cal. Adm. C.2030.
If a prosecutor wishes to attend, please notify the person named below at least two weeks prior to the Monday of the hearing
week. Failure to provide notice of attendance may result in denial of access to the institution for the hearing. Information not
available in the hearing file must be received in writing no later than ten days before the Monday of the hearing week even if a
prosecutor plans to attend the hearing.

Please mail reply to:

**TINA MATTIS, O.A.
San Quentin State Prison
Board Desk Coordinator
San Quentin, CA 94964**

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

## NOTICE OF HEARING
### Pursuant to Penal Code Section 3042

**Date:**  11/20/04

**TYPE OF HEARING:**

**To:**  HONORABLE PRESIDING JUDGE
MONTEREY COUNTY SUPERIOR COURT
P.O. BOX 751
MONTEREY, CA 93942-0751

[ ] Life Prisoner Initial Parole
Consideration Hearing
(PC 3041, 3041.7 & 3042)

[X] Life Prisoner Subsequent Parole
Consideration Hearing
(PC 3041, 3041.7 & 3042)

[ ] Life Prisoner Rescission Hearing
(PC 3041.7)

[ ] Extended Term Hearing
(PC 1170.2(b))

[ ] Other

Re:  NAME: **EKDAHL, EMIL**                    CDC #:  **C-79199**

COURT CASE#: CR 9938                          PD/SO#:

DOB:         03-29-63                         RECEIVED: **01-16-84**

OFFENSE: **MURDER 2ND**

• Location of Offense: **SOUTH FRONT STREET, SOLEDAD, CA**      Victim(s): **ARTHUR SANDOVAL, PAMELA LEWIS, SOL MONTOYA**

The named inmate will appear before the Board of Prison Terms for a hearing as indicated above. **THIS HEARING WILL BE HELD ON JANUARY 5, 2005 AT 11:00 A.M.   YOU MAY FAX A RESPONSE TO (415) 455-5184 PRIOR TO 10 DAYS OF HEARING TO THE ATTENTION OF "BPT/LIFER DESK".**

Your comments and recommendations regarding this case are respectfully invited for presentation to the Board of Prison Terms. Please submit your written response on the reverse side or by attachment to this notice no later than 10 days prior to the Monday of the hearing week. If you have documents or reports, which include information about the prisoner, the prisoner's offense(s), or the prisoner's prior criminal history, you are encouraged to submit those along with your comments and recommendations.

A representative of the District Attorney's Office may attend this hearing as provided in Title 15, Division 2, Cal. Adm. C.2030 If a prosecutor wishes to attend, please notify the person named below at least two weeks prior to the Monday of the hearing week. Failure to provide notice of attendance may result in denial of access to the institution for the hearing. Information not available in the hearing file must be received in writing no later than Ten days before the Monday of the hearing week even if a prosecutor plans to attend the hearing.

Please mail reply to:

**TINA MATTIS, O.A.**
**San Quentin State Prison**
**Board Desk Coordinator**
**San Quentin, CA  94964**

BPT 1078A (Rev. 10/1/83)

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

### NOTICE OF HEARING
### Pursuant to Penal Code Section 3042

Date:   05/25/04

To:   JAMES NEWHOUSE
      ATTORNEY AT LAW

**TYPE OF HEARING:**

☐ Life Prisoner Initial Parole
   Consideration Hearing
   (PC 3041,3041.7 & 3042)

☒ Life Prisoner Subsequent Parole
   Consideration Hearing
   (PC 3041, 3041.7 & 3042)

☐ Life Prisoner Rescission Hearing
   (PC 3041.7)

☐ Extended Term Hearing
   (PC 1170.2(b))

☐ Other

re:  NAME:        **EKDAHL, EMIL**             CDC #:  **C-79199**

COURT CASE #:     CR 9938                      PD/SO#:

DOB:              03-29-63                     **RECEIVED: 01-16-84**

OFFENSE: **MURDER 2ND**

• Location of Offense: SOUTH FRONT STREET, SOLEDAD, CA       Victim(s): **ATHUR SANDOVAL,**
                                                             **PAMELA LEWIS, SOL MONTOYA**

The named inmate will appear before the Board of Prison Terms for a hearing as indicated above. **THIS HEARING WILL BE HELD ON JULY 21, 2004 AT 8:30 A.M. YOU MAY FAX A RESPONSE TO (415) 455-5184 NO LATER THAN 10 DAYS PRIOR TO HEARING, TO THE ATTENTION OF "BPT LIFER/DESK".**

Your comments and recommendations regarding this case are respectfully invited for presentation to the Board of Prison Terms. Please submit your written response on the reverse side or by attachment to this notice no later than 10 days prior to the Monday of the hearing week. If you have documents or report, which include information about the prisoner, the prisoner's offense(s), or the prisoner's prior criminal history, you are encouraged to submit those along with your comments and recommendations.

A representative of the District Attorney's Office may attend this hearing as provided in Title 15, Division 2, Cal, Adm, C.2030 If a prosecutor wishes to attend, please notify the person named below at least two weeks prior to the Monday of the hearing week. Failure to provide notice of attendance may result in denial of access to the institution for the hearing. Information not available in the hearing file must be received in writing no later than Ten days before the Monday of the hearing week even if a prosecutor plans to attend the hearing.

The prosecutor may arrange to review the prisoner's department file at the institution by calling the person named below. If this is a subsequent parole consideration hearing, the transcript of last year's hearing is also available for review at the institution.

**Please mail reply to:**

**CHRISTINE CARRILLO O.A.**
**San Quentin State Prison**
**Board Desk Coordinator**
**San Quentin, CA 94964**

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

## NOTICE OF HEARING
## Pursuant to Penal Code Section 3042

**Date:**     01/15/05

**TYPE OF HEARING:**

**To:**     MONTEREY COUNTY SHERIFF'S DEPARTMENT
            1414 NATIVIDAD ROAD
            SALINAS, CA 93906

☐   Life Prisoner Initial Parole
    Consideration Hearing
    (PC 3041, 3041.7 & 3042)

☒   Life Prisoner Subsequent Parole
    Consideration Hearing
    (PC 3041, 3041.7 & 3042)

☐   Life Prisoner Rescission Hearing
    (PC 3041.7)

☐   Extended Term Hearing
    (PC 1170.2(b))

☐   Other

Re:  NAME:  **EKDAHL, EMIL**                    CDC #:    **C-79199**

COURT CASE#: **CR 9938**                        PD/SO #:

DOB:         03-29-63                           RECEIVED:  **01-16-84**
OFFENSE: MURDER 2ND

• Location of Offense: SOUTH FRONT STREET, SOLEDAD, CA          Victim (S): **ARTHUR SANDOVAL,
                                                               PAMELA LEWIS, SOL MONTOYA**

The named inmate will appear before the Board of Prison Terms for a hearing as indicated above. THIS HEARING WILL BE ON MARCH 2, 2005 AT 1:30 P.M.  YOU MAY FAX A RESPONSE TO (415) 455-5184 NO LATER THAN 10 DAYS PRIOR TO THE HEARING, TO THE ATTENTION OF *"BPT/LIFER DESK"*

Your comments and recommendations regarding this case are respectfully invited for presentation to the Board of Prison Terms. Please submit your written response on the reverse side or by attachment to this notice no later than 10 days prior to the Monday of the hearing week. If you have documents or reports, which include information about the prisoner, the prisoner's offense(s), or the prisoner's prior criminal history, you are encouraged to submit those along with your comments and recommendations.

A representative of the District Attorney's Office may attend this hearing as provided in Title 15, Division 2, Cal. Adm. C.2030. If a prosecutor wishes to attend, please notify the person named below at least two weeks prior to the Monday of the hearing week. Failure to provide notice of attendance may result in denial of access to the institution for the hearing. Information not available in the hearing file must be received in writing no later than Ten days before the Monday of the hearing week even if a prosecutor plans to attend the hearing.

Please mail reply to:

**TINA MATTIS, O.A.**
**San Quentin State Prison**
**Board Desk Coordinator**
**San Quentin, CA  94964**

# EXHIBIT U:

State of California                                            Department of Corrections

# Memorandum

Date:        MAY 25, 2004

To:          Central File

Subject:     PENAL CODE SECTION 3042 NOTICE TO THE ATTORNEY WHO
             REPRESENTED THE DEFENDANT AT TRAIL

Pursuant to Penal Code Section 3042 at least 30 days before the Board of Prison Terms
meets to review or consider the parole suitability or the setting of a parole date for any
prisoner sentenced to a life term, the board shall send written notice to the attorney who
represented the defendant at trial.

**NAME: EKDAHL, EMIL**                    **CDC: C-79199**

**DATE OF PAROLE CONSIDERATION HEARING: JULY 21, 2004**

**A Penal Code Section 3042 notice was not sent to the attorney who represented the
defendant at trial as the inmate's appointed counsel's or private attorney's address
is unknown. The inmate was not represented by a Public Defender's office.**

C. Carrillo, O.A.
Lifer Desk / Main Records
San Quentin State Prison

GA-47-8

State of California                                                        Department of Corrections

# Memorandum


**Date:**        JANUARY 15, 2005


**To:**          Central File


**Subject:**     PENAL CODE SECTION 3042 NOTICE TO THE ATTORNEY WHO
                 REPRESENTED THE DEFENDANT AT TRAIL


Pursuant to Penal Code Section 3042 at least 30 days before the Board of Prison Terms meets to review or consider the parole suitability or the setting of a parole date for any prisoner sentenced to a life term, the board shall send written notice to the attorney who represented the defendant at trial.

**NAME: EKDAHL, EMIL**                         **CDC: C-79199**

**DATE OF PAROLE CONSIDERATION HEARING:  MARCH 2, 2005**

**A Penal Code Section 3042 notice was not sent to the attorney who represented the defendant at trial as the inmate's appointed counsel's or private attorney's address is unknown.  The inmate was not represented by a Public Defender's office.**


TINA MATTIS, O.A.
Lifer Desk / Main Records
San Quentin State Prison

GA-47-8

State of California                                                    Department of Corrections

# M e m o r a n d u m

Date:        **NOVEMBER 20, 2004**

To:          **Central File**

Subject:     **PENAL CODE SECTION 3042 NOTICE TO THE ATTORNEY WHO REPRESENTED THE DEFENDANT AT TRAIL**

Pursuant to Penal Code Section 3042 at least 30 days before the Board of Prison Terms meets to review or consider the parole suitability or the setting of a parole date for any prisoner sentenced to a life term, the board shall send written notice to the attorney who represented the defendant at trial.

**NAME: EKDAHL, EMIL**                    **CDC: C-79199**

**DATE OF PAROLE CONSIDERATION HEARING: JANUARY 5, 2005**

**A Penal Code Section 3042 notice was not sent to the attorney who represented the defendant at trial as the inmate's appointed counsel's or private attorney's address is unknown. The inmate was not represented by a Public Defender's office.**

TINA MATTIS, O.A.
Lifer Desk / Main Records
San Quentin State Prison

GA-47-8

# EXHIBIT V:

*COPY*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

FILED
COURT OF APPEAL FIRST APPELLATE DISTRICT

SEP 13 2006

DIANA HERBERT, CLERK
_____ DEPUTY CLERK

In re EMIL EKDAHL,

on Habeas Corpus.

A115144

(Monterey County
Super. Ct. No. HC5267)

By the Court:[1]

The petition concerns the denial of parole. The County of Monterey Superior Court rendered the underlying judgment, and denied a related habeas corpus petition.

Therefore, the petition for writ of habeas corpus is denied without prejudice to petitioner seeking relief from the Court of Appeal, Sixth Appellate District, 333 W Santa Clara Street, San Jose, CA 95113. (Cal. Rules of Court, rule 60 (d)(2).)

The Clerk of this Court is directed to retain a copy of the petition as a duplicate original for this Court's file, and to return the original, the exhibits, and the remaining copies to petitioner along with his copy of this order.

**MARCHIANO, P.J.**

Dated: _____        _____ P.J.

_____
[1] Before Marchiano, P.J., Stein, J, and Swager, J.

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT



Court of Appeal - Sixth App. Dist.

FILED

OCT 1 6 2006

MICHAEL J. YERLY, Clerk

By _____

DEPUTY

In re EMIL EKDAHL,

    on Habeas Corpus.

H030652
(Monterey County
Super. Ct. No. HC5267)

BY THE COURT:

    The petition for writ of habeas corpus is denied.

(Premo, Acting P.J., Elia, J., and Duffy, J., participated in this decision.)

Dated    OCT 1 6 2006          PREMO, J.          Acting P.J.

# EXHIBIT X:

1    SUPERIOR COURT OF CALIFORNIA

2    COUNTY OF MONTEREY

FILED

JUL 2 1 2006

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
K. Hansen    DEPUTY

4    In re                                                )    Case No.:  HC 5267
                                                         )
5        Emil Ekdahl (C-79199)                           )    ORDER
                                                         )
6                       On Habeas Corpus.                )
                                                         )
7    _____

8        Petitioner challenges the July 1, 2005 decision of the Board of Prison Hearings denying

9    him parole on seven stated grounds:  (1) the "some evidence" test fails to adequately protect his

10   procedural due process rights; (2) prison officials are effectively forcing him to accept the

11   religious tenets of Alcoholics Anonymous in violation of his constitutional rights to religious

12   freedom; (3) the Board violated his due process rights by failing to notify his trial attorney of the

13   date of the parole suitability hearing; (4) the Board's reliance upon unreliable evidence resulted

14   in a hearing and decision which was arbitrary and capricious in nature; (5) the Board's eleventh

15   reason for denying parole (lack of program participation) was improper; (6) he was illegally

16   sentenced to 2nd degree felony murder, and is entitled to receive a 1st degree felony murder

17   sentence of the death penalty; and (7) Penal Code section 3001 is unconstitutional as it applies to

18   Petitioner and his parole plans.  The Court will address each claim in order.

19   *Ground One:  The "Some Evidence" Test.*

20       The decision of the Board of Parole Hearings to deny parole must be supported by "some

21   evidence" in the record.  *In re Rosenkrantz* (2002) 29 Cal.4th 616, 626.  A court will "inquire

22   only whether some evidence in the record before the Board supports the decision to deny parole,

23   based upon the factors specified by statute and regulation."  *Id.*, at p. 658.  The "some evidence"

24   test has been "understood as meaning that suitability determinations must have some rational

25   basis in fact."  *In re Scott* (2005) 133 Cal.App.4th 573, 590.  While *Rosenkrantz* seemingly would

1

1 | allow the Board to base its decision on the commitment offense alone, courts interpreting that

2 | decision have clarified that reliance on an unchanging factor absent consideration of subsequent

3 | circumstances may run "contrary to the rehabilitative goals espoused by the prison system and

4 | could result in a due process violation." *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910, 917; see

5 | also, *In re Scott, supra,* 133 Cal.App.4th at p. 595; *In re Smith* (2003) 114 Cal.App.4th 343, 372.

6 |     The specified factors underlying a Board's parole decision are set forth in Penal Code

7 | section 3041 and Title 15 of the California Code of Regulations, section 2402. The primary

8 | consideration is public safety: if an inmate would pose an unreasonable risk of danger to society

9 | if released, then the Board should find him unsuitable for parole. In making its suitability

10 | finding, the Board must consider all relevant, reliable information available, including an

11 | inmate's social and criminal history, his past and present mental state, and the commitment

12 | offense.

13 |     The 2005 Board found Petitioner unsuitable for parole based upon the commitment

14 | offense, his institutional behavior (lack of sufficient program participation, failure to demonstrate

15 | evidence of positive change, recent receipt of one CDC-115 and five CDC-128s), his somewhat

16 | unfavorable psychological report, and the objection of the Monterey County District Attorney.

17 | The court has reviewed the hearing transcripts, the psychological reports, and the correspondence

18 | from the District Attorney and finds that there is "some evidence" in the record to support the

19 | Board's finding. The Board did not premise its determination on the commitment offense alone.

20 | Rather, it determined that given Petitioner's social history, past and current depression, and his

21 | reluctance to discuss his feelings concerning the crime, he would substantially benefit from

22 | attending institutional programs, including AA. The rehabilitative goals of the correctional

23 | system are met when inmates participate in programs that will better enable them to adjust to life

24 | beyond the prison walls. The Board acted within its discretion in finding Petitioner unsuitable

25 |

1   for parole because, considering all relevant and reliable information available to the Board, it

2   found that releasing Petitioner at this time would jeopardize the public safety.

3   *Ground Two: Free Exercise of Religion.*

4        In Petitioner's view, the institution is forcing him to "convert[] to the AA religion." Pet.,

5   p. 38. Petitioner lost faith in God, experienced an "Evolutionary Social Darwinism

6   enlightenment and became a[n] Evolutionist believing only in science." Pet., pp. 39-40. Upon

7   making this change, Petitioner stopped attending AA classes because he deems the programs to

8   be religious in nature, in that "they require a belief in a higher power than mankind." Pet., p. 40.

9   He maintains that the Board's requirement that all lifers attend AA programs is arbitrary

10  (because the institution does not offer non-religious alcohol abstinence courses), imposes

11  religion, and is in violation of Petitioner's rights under the ADA (Petitioner's health problems

12  prevent him from working all day and attending AA classes in the evenings).

13       Under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), a

14  government agency is prohibited from imposing a substantial burden on an inmate's exercise of

15  religion unless it furthers a compelling governmental interest and is the least restrictive means of

16  doing so. Here, the Board has indicated that Petitioner's attendance at AA is more or less of a

17  prerequisite to a finding of parole suitability. However, Petitioner has failed to demonstrate that

18  his Evolutionist beliefs are, in fact, religious beliefs protected by the RLUIPA.

19       Nor has Petitioner demonstrated that the Board's requirement that he attend AA programs

20  violates his rights under the ADA. To prevail on this claim, Petitioner must demonstrate that

21  prison officials failed to provide "reasonable accommodations" with respect to his attendance at

22  AA programs because of his disability. 42 U.S.C. secs. 12131 et seq.; *Townsend v. Quasim* (9th

23  Cir. 2003) 328 F.3d 511. Petitioner has failed to make this showing.

24       Petitioner has a better argument that the actions of prison officials are arbitrary and

25  capricious, in that only religious-based alcohol abstinence courses are offered by the facility, and

3

1   attendance is, in effect, mandatory. Petitioner appears to have stated a *prima facie* case for relief

2   on the grounds of due process. The Board identified one of its reasons for the unsuitability

3   finding that Petitioner had stopped attending AA classes, but did not indicate that any non-

4   religious based alcohol abstinence courses were available to Petitioner in order to achieve the

5   desired amount of programming which would lead to a finding of suitability, *despite* the

6   acknowledgement by the reviewing psychologist that Petitioner does not attend AA courses

7   because of the burden imposed on Petitioner's exercise of his evolutionary beliefs.

8   ***Ground Three: Failure to Notify Trial Counsel of Hearing Date.***

9          Petitioner contends that the Board sent notices of the parole suitability hearing date and

10  time to the trial court, the Monterey County District Attorney, and to the Monterey County

11  Sheriff's Department, but not to his attorney. Pen. Code sec. 3042. However, Petitioner admits

12  that he had waived his right to have counsel appear at the hearing. Accordingly, Petitioner has

13  failed to demonstrate any harm resulting from such failure, and has failed to state a claim for

14  relief on this ground. *People v. Duvall* (1995) 9 Cal.4th 464, 474.

15  ***Ground Four: Arbitrary and Capricious Nature of Parole Hearing.***

16         The Board posited that, "the inmate actually got worse after the incident, never turned

17  anyone in. This theory indicates that maybe he had more participation in the crime than he

18  alleges." Pet., Ex. B, p. 15. Petitioner contends that by engaging in speculation, or as he puts it,

19  "a secret theory," the Board was in essence conducting a kangaroo court. Pet., p. 46. However,

20  there is no evidence before the Court that the Board based its finding of unsuitability on mere

21  speculation. Accordingly, this claim must fail.

22  ***Ground Five: Reliance on Lack of Program Participation.***

23         The Board found that Petitioner would benefit from participate in therapy sessions for the

24  purpose of dealing with stress in a non-destructive manner. Petitioner notes that in his

25  psychological evaluation, Dr. Lewis recommended therapy for the limited purpose of treating

4

1    Petitioner's depression. Petitioner does not contend that it was Dr. Lewis' obligation to consider

2    each type of therapy available to Petitioner in the institutional setting and make a

3    recommendation as to which type of available therapy Petitioner should either avail himself of,

4    or reject at all costs. The evaluation is one of the factors considered by the Board, but not the

5    sole factor, in determining whether an inmate is suitable for parole. It was well within the

6    discretion of the Board to determine, based upon all of the evidence before it, that Petitioner

7    would be better able to adjust to life "on the outside" by participating in therapeutic sessions.

8    The Court will not disturb this finding.

9    ***Ground Six: Improper Sentence.***

10    Petitioner was convicted of 1st degree felony murder, which carries the potential penalty

11    of death, but the trial court reduced the conviction to 2nd degree felony murder, which carries a

12    term of 15 years to life. Pen. Code sec. 190(a). In Petitioner's view, a position supported by a

13    news article attached to the petition (Pet., Ex. K), inmates on Death Row are more likely to be

14    released from incarceration than inmates sentenced to a term of life imprisonment.

15    The trial court relied upon the decision in *People v. Dillon* (1983) 34 Cal.3d 441 in

16    determining that the conviction should be reduced. In *Dillon*, a 17-year old high school student

17    and his friends attempted to rob a marijuana farm that was being watched by an armed guard.

18    When the guard approached with his weapon, the boy believed his life was in danger and fatally

19    shot the guard. Because the boy was engaged in an enumerated felony at the time he pulled the

20    trigger, he was technically guilty of first degree felony murder (Pen. Code sec. 189), regardless

21    of his state of mind. The judge and members of the jury, nevertheless, believed that the

22    punishment was excessive, in violation of the prohibition against cruel and unusual punishment

23    (Cal. Const., art. I, sec. 17). The court's decision to reduce the conviction from 1st degree to 2nd

24    degree felony murder was based in part on the defendant's youth, immaturity, and lack of prior

25

5

1    criminal history, which the court held was not the prototype of a hardened criminal who posed a

2    grave threat of danger to society.

3         As *Dillon* explains, the Legislature is accorded the broadest discretion possible in

4    enacting penal statues and setting the punishment for criminal acts, but its authority is

5    circumscribed by the constitutional provision prohibiting cruel and unusual punishment.  The

6    final judgment as to whether the punishment set by the Legislature exceeds constitutional limits

7    is left to the judiciary.  In that determination, a court examines the nature of the offense and

8    offender, and the totality of the circumstances, including the motive and extent of the defendant's

9    involvement. Here, Petitioner, an impressionable 17 year old boy with low self esteem, was

10   coerced into joining two larger, intimidating men in their plan to rob a convenience store.  Unlike

11   *Dillon*, Petitioner did not shoot the victim.  As explained by Detective Gordon Sonne who

12   investigated the crime, Petitioner was just a "skinny kid" who "was a follower and the Horning

13   'Gang' (lead by Mark) used him."  Pet., Ex. B.  Detective Sonne wrote to the Board of Parole

14   Hearings on Petitioner's behalf, stating, "I have sent many, many people to prison in the past 20

15   years, but never felt quite this unsettled about the possibility of a man spending the rest of his life

16   behind bars."  *Id.* After carefully reviewing and considering all the evidence presented at trial, it

17   may well be that the trial judge and jury felt similarly unsettled with imposing punishment for

18   first degree felony murder, with the potential that Petitioner would be put to death for his role in

19   the offense.  In finding that the statutory punishment was sufficiently disproportionate to the

20   crime that Petitioner's constitutional protection from cruel and unusual punishment was

21   implicated, the court acted well within its jurisdiction to reduce the punishment to fit the crime.

22   ***Ground Seven: Parole Plans.***

23        Petitioner concludes that the Board's requirement that he find suitable parole plans within

24   Monterey County is unjust, in that Petitioner lacks family in the area.  Petitioner has not been

25   able to submit a viable parole plan because he lacks a job commitment from a Monterey County

                                        6

1  | employer, and does not have a residence to parole to. He explains that from a financial

2  | standpoint, he lacks the resources to create a viable parole plan within the County, but that the

3  | Board refuses to allow him to parole closer to family members. However, the Board has made

4  | specific suggestions concerning where and how Petitioner might seek employment and housing,

5  | and Petitioner has failed to allege that he followed these suggestions, to no avail. Petitioner has

6  | not stated a cause of action as to this claim. Moreover, after Petitioner does create a viable

7  | parole plan and is released on parole, he will be able to request an interstate parole transfer, or a

8  | transfer to another county within the state.

9  | Petitioner appears to have stated a *prima facie* case for relief as to his Second Cause of

10 | Action. Accordingly, pursuant to Rule 4.551(b) of the California Rules of Court, the Court

11 | directs Respondent to file an informal response to address whether any non-religious based

12 | alcohol abstinence courses are offered by the facility, and if not, to identify an alternate program

13 | offered at the institution in which Petitioner could participate in order to achieve the desired

14 | amount of programming and potentially lead to a finding of parole suitability. The informal

15 | response shall be filed 15 days from the date of receipt of this order. Thereafter, Petitioner may

16 | file a reply within 15 days of receipt of the informal response.

17 | IT IS SO ORDERED.

18 | Dated:     JUL 21 2006

19 |

20 |     Hon. Marla O. Anderson
    Judge of the Superior Court

21 |

22 |

23 |

24 |

25 |

# EXHIBIT Y:

S148374

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re EMIL EKDAHL on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

MAY 1 6 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE
Chief Justice

S148374

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re EMIL EKDAHL on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

MAY 1 6 2007

Frederick K. Ohlrich Clerk

_____
Deputy

_____
GEORGE
Chief Justice

# EXHIBIT Z:

Name **EMIL EKDAHL**_____                                        MC-275

Address  **P.O. Box C-79199. #2N30-U.**_____

 **San Quentin State Prison of California.**_____

**San Quentin, CA. 94964.**_____

CDC or ID Number  **C-79199.**_____


## SUPREME COURT OF THE STATE OFCALIFORNIA.

*(Court)*

| | |
|---|---|
| **Emil Ekdahl,        pro per ...**_____ <br> Petitioner <br><br> VS. <br> **San Quentin Warden Robert Avers** <br> Respondent | **PETITION FOR WRIT OF HABEAS CORPUS** <br><br> No. _____ <br> (To be supplied by the Clerk of the Court) |

### INSTRUCTIONS - READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file in the county that made the order.
- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.
- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury
- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.
- If you are filing this petition in the Court of Appeal, file the original and four copies.
- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.
- Notify the Clerk of the Court in writing if you change your address after filing your petition.
- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of th California Rules of Court [as amended effective January 1, 1999). Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

| | | |
|---|---|---|
| For Approved by the Judicial <br> Council of California MC-275 <br> (Rev. January 1, 1999) | **PETITION FOR WRIT OF HABEAS CORPUS** | Penal code, § 1473 et. Seq.; <br> Cal. Rules of Court, rules 56.5, 201(h) |

This petition concerns:

☒ A conviction                    ☒ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison Discipline

☒ Other (specify): __Parole Hearing before the Board of Prison Terms.__

1. Your name: __Emil Ekdahl.__

2. Where are you incarcerated? __San Quentin State prison of California U.S.A.__

3. Why are you in custody? ☒ Criminal Conviction  ☐ Civil Commitment

   Answer subdivisions a. Through i. To the best of your ability.

   a. State reasons for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon")

      __One count of use of a weapon during a robbery. Two counts of robbery.__

      __One count of accomplice to Second Degree Felony murder Theory.__

   b. Penal or other code sections: __§ 12022 (1981 era statute), § 211, § 31,__

      __§ 189, § 190.__

   c. Name and location of sentencing or committing court: __Monterey County Superior Court located at__

      __240 Church Street. P.O. Box 1819. Salinas, CA. 93902.__

   d. Case number: __CR-9938 & CR-9942__

   e. Date convicted or committed: __December 14, 1983.__

   f. Date sentenced: __January 05, 1984.__

   g. Length of sentence: __Sixteen Years To Life.__

   h. When do you expect to be released? __2006.__

   i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:

      __James H. Newhouse. Attorney at Law. 631 Arrego Street, Monterey, CA. 93940.__

4. What was the LAST plea you entered? (check one)

   ☒ Not guilty  ☐ Guilty  ☐ Nolo Contendere  ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury  ☒ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

---

MC-275 (Rev. January 1, 1999)     **PETITION FOR WRIT OF HABEAS CORPUS**     Page 2 of 6

1  Emil Ekdahl.....
   P.O.Box C-79199 ...
2  CSP-S.Q.
   San Quentin, CA 94974

3

4  .

5

6          APPELLATE COURT FOR THE STATE OF CALIFORNIA

7               FIRST DISTRICT COURT OF APPEAL.

8

9  EMIL EKDAHL,                    |
                                   |          Case No.:
10          *Petitioner*,          |
                                   |     Writ of Habeas Corpus
11     vs.                         |
                                   |
12 The warden of ,San Quentin Prison |
   Robert Avers.                   |
13                                 |
                                   |
14          *Respondent..*
   ─────────────────────────────────

15 TO THE HONORABLE COURT AND THE RESPONDENT IN THE ABOVE-

16 ENTITLED;

17      Comes Now: **Emil Ekdahl.**

18

19
   DATED: **August 28, 2006.**
20                                      **Respectfully submitted,**

21

22

23              _Emil Ekdahl_

24  ─                            Emil Ekdahl
                                 *Plaintiff In pro. se*
25

1

**FACTS.**

2

3        On January 24, 2006 ., petitioner filed a petition for writ of habeas corpus in

4    Monterey County    Superior Court.  The writ was given the file number of   HC

5    5267.

6        The writ raised seven grounds for relief:

7

8        1.    The ' some evidence test ' is insufficient as a test to protect petitioner's

9              due process rights due in a parole hearing.

10       2.    Prison Officials are forcing their religion of AA on petitioner as a

11             condition of parole suitability in violation of the right to separation of

12             Church and State religious freedom.

13       3.    BPH did not send P.C. § 3042 notice to trial attorney in violation of Due

14             Process.

15       4.    The BPH used illegal and unreliable evidence in a parole hearing

16             which resulted in arbitrary and capricious hearing in violation of Due

17             Process.

18       5.    The BPH in denying parole with denial reason # 11, violated petitioner's

19             due process of law rights pursuant to Ca. Penal Code § 5011, under the

20             California and Federal Constitutional clauses, and including the relevant

21             due process claims of a right to a defense, and Ineffective Aid of

22             Counsel at trial.

23       6.    Petitioner has an illegal sentence, in violation of the applicable clauses

24             of either the California of Federal Constitutions, as 2nd degree felony

25

i

# FACTS.

7.    murder for one of the felonies enumerated in Penal Code § 189 is
      usurpation of legislative power by the California Supreme Court.

8.    Penal Code § 3001 is unconstitutional.


On March 23, 2006., the Monterey Count Superior Court issued an ORDER to
extend time

which to respond to petitioner's writ 60 days from March 23, 2006.

See Exhibit Attachment _a A-9_ Court Order CRCR 4.551(h).


On July 21, 2006., the Monterey County Superior Court Judge the Honorable
Marla O. Anderson issued an ORDER to summarily deny six of petitioner's seven
grounds for relief. For the 2nd ground of the writ the Court found that a *prima facie*
showing was made, and issued an informal response order.

See Exhibit Attachment _a A_ Summery Denial Order., pp. 1 - 7 line(s)

///

///

///

1

# UPDATED TABLE OF CONTENTS

2

3    Petition for writ of habeas corpus MC-275                          pp. I -VIII

4    Updated Facts covering procedural history of said habeas           pp. i-   ii

5    Table of Contents                                                  pp.      Iii

6    Table of Authorities                                               pp. iv - vi

7    Table of Exhibits                                                  pp.      vii

8    Rebuttal to Superior Courts Denial Order Supplemental Arguments    pp. 1- 20

9    Facts original facts of said habeas                                pp. 1-   5

10   Habeas Corpus Grounds Ground One                                   pp. 6- 27

11   Habeas Corpus Grounds Ground Two                                   pp. 38-41

12   Habeas Corpus Grounds Ground Three                                 pp. 42-45

13   Habeas Corpus Grounds Ground Four                                  pp. 46-47

14   Habeas Corpus Grounds Ground Five                                  pp. 48-53

15   Habeas Corpus Grounds Ground Six                                   pp.      54

16   Habeas Corpus Grounds Ground Seven                                 pp.      55

17   Verification                                                       pp.      56

18   Prayer for Relief                                                  pp.      57

19   ///

20   ///

21   ///

22

23

24

25

# TABLE OF AUTHORITIES.

California Constitution

United States Constitution

California Penal Code Statue    § 12(6)(8)

California Penal Code Statue    § 31

California Penal Code Statue    § 189

California Penal Code Statue    § 190

California Penal Code Statue    § 211

California Penal Code Statue    § 3001

California Penal Code Statue    § 3041

California Penal Code Statue    § 3042

California Penal Code Statue    § 5011

California Penal Code Statue    § 12022

Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed. 2d. 435]

Ag. Lb. Rl. Bd. v. Sup. Ct. (1976) 16 Cal. 3d. 392 [128 Cal. Rptr. 183]

Cal. Ed. Fac. Authority v. Priest (1974) 12 Cal. 3d. 593, 605 [116 Cal. Rptr. 361]

Coleman (2005) No. 96-0783 LKK PAN slip op. At nine.

Ex parte Andrews (1861) 18 Cal. 679

Fem. Wom. V. Philibosan (1984) 157 Cal. App. 3d. 1076, 1092 [203 Cal. Rptr. 918]

Fox v. City of L.A.(1978) 22 Cal. 3d. 792 [150 Cal. Rptr. 876]

Flanders v. Graves (2002 8th Cir.) 299 F.3d. 924]

Kerr v. Farrey (1996 7th Cir.) 95 F. 3d. 472

In re Powell (1988) 45 Cal. 3d. 894, 902 [248 Cal. Rptr. 431]

1

# TABLE OF AUTHORITIES.

2

3   In re Ramirez (2001) 94 Cal. App. 4th 549 [114 Cal. Rptr. 2d. 381]

4   In re Rosenkrantz (2002) 29 Cal. 4th 616, 658 fn. # 12 [128 Cal. Rptr. 2d. 104]

5   In re Scott (2004) 119 Cal. App. 4th 573 [15 Cal. Rptr. 3d. 32]

6   In re Scott (2005) 133 Cal. App. 4th 573 [34 Cal. Rptr. 3d 905]

7   In re Shaputis (2005) 135 Cal. App. 4th 217 [37 Cal. Rptr. 3d. 324]

8   In re Smith (2003) 109 Cal. App. 4th 489 [134 Cal. Rptr. 2d. 781]

9   In re Sydney M. (1984) Cal. App. 3d. 39, 48 [208 Cal. Rptr. 378]

10  Irons v. Cal. St. Pr. Solono (2005 E.D. Cal.) 358 F. Supp. 2nd 936, 937 Fn. # 12

11  Jancsek v. Oregon (1987 9th Cir.) 833 F. 2d. 1389, 1390.

12  Martin v. Marshall (2006 E.D. Cal.) No. 05-3486 MHP

13  McQuillon v. Duncan (2002 9th Cir.) 306 F. 3d. 895, 901 – 904.

14  Mejia v. Reed (2003) 31 Cal. 4th 657, 663 [3 Cal. Rptr. 3d. 390]

15  People v. Aris (1989) 215 Cal. App. 3d. 1178, 1195 [264 Cal. Rptr. 167]

16  People v. Burroughs (1984) 35 Cal. 3d. 829 [201 Cal. Rptr. 319]

17  People v. Castenada (2000) 23 Cal. 4th 743, 746 – 747 [97 Cal. Rptr. 2nd 906]

18  People v. Cochran (2002) 103 Cal. App. 4th 8, 13 [126 Cal. Rptr. 2d. 416]

19  People v. Dannenberg (2005) 34 Cal. 4th 1060, 1083 [23 Cal. Rptr. 2d. 653]

20  People v. Dillon (1983) 34 Cal. 3d. 441 [194 Cal. Rptr. 390]

21  People v. Duvall (1995) 9 Cal. 4th 464, 474 [37 Cal. Rptr. 2d 259]

22  People v. Ford (1964) 60 Cal. 2nd. 7721 [36 Cal. Rptr. 620]

23  People v. Hansen (1994) 9 Cal. 4th 300 [36 Cal. Rptr. 609]

24  People v. Horning (1984) 150 Cal. App. 3d. 1015, 1017 – 1018 [198 Cal. Rptr. 384]

25

1

# TABLE OF AUTHORITIES

2

3   People v. Horning (2005) 34 Cal. 4th 871 [22 Cal. Rptr. 3d. 305

4   People v. Pitmon (1985) 170 Cal. App. 3d. 38, 51 [216 Cal. Rptr. 221]

5   People v. Pope (1979) 23 Cal. 3d. 412, 427 [152 Cal. Rptr. 732

6   People v. Robles (2000) 23 Cal 4th 1106, 1111 [99 Cal. Rptr. 2d. 120]

7   U.S. Nixon (1974) 418 U.S. 683 [41 L.Ed. 2d. 1039

8   ///

9   ///

10   ///

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6.    GROUNDS FOR RELIEF

**Ground 1:**  State briefly the grounds on which you base your claim for relief.  For example, "the trial court imposed an illegal enhancement."  (If you have additional grounds for relief, use a separate page for each ground.  State ground w on page four.  For additional grounds, make copies of pare four and number the additional grounds in order.)

### See attached points and authorities in support of the petition for writ of habeas corpus

a.    Supporting facts:

Tell your story briefly without citing cases or law.  If you are challenging the legality of your conviction, describe the fact upon which your conviction is based.  *If necessary, attach additional pages.*  CAUTION: You must state facts, not conclusions.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial.  Failure to allege sufficient facts will result in the denial of your petition. (See in re Swain (1949) 34 Cal.2nd 300, 304.)  A rule of thumb to follow is: who did exactly what to violate your rights at what time (when) or place (where).  (If available, attach declarations relevant records, transcripts, or other documents supporting your claim.)

### See attached points and authorities in support of the petition for writ of habeas corpus.

b.    Supporting cases, rules, or other authority (optional):

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

### See points and authorities in support of the petition for writ of habeas corpus

7. Grounds 2 or Ground _____ (If applicable):

**See points and authorities in support of the petition for writ of habeas corpus.**

_____

_____

_____

_____

a. Supporting facts:

**See points and authorities in support of the petition for writ of habeas corpus.**

b. Supporting cases, rules, or other authority:

**See points and authorities in support of the petition for writ of habeas corpus.**

FACTS.

1    The suitability hearing on July 01, 2005., was the 7th sub-
2  sequent parole hearing.  The offense as listed below is taken from
3  the Probation Officer's Report (POR).

4    On October 18, 1981, at approximately 10:50 p.m., Soledad
5  Police responded to Pete's Shell (a service station and grocery
6  store) on South Front Street regarding an armed robbery which
7  had just occurred.  Arthur Sandoval (17) was located behind the
8  station face down in a pool of blood; there was no pulse.
9  Victims Pamela Lewis (21) and Sal Montoya (19) stated that two
10  subjects with ski masks entered the store, ordered them to lay
11  down on the floor, took $13.00 from the cash register and ran
12  from the store.  A short time later they heard two shots.

13    It should be noted that during the robbery Dario Bailon
14  (approximately age 30) and Sal Melchor (26) entered the store
15  to buy beer.  They ignored the responsibles' demand that they
16  join the other individuals on the floor.  The subjects were gone
17  by the time they returned to the counter with the beer.  Bailon,
18  Melchor and his companion, Frank Garcia (17) remained at the
19  scene after the arrival of the police.  Arthur Sandoval had
20  apparently been with them prior to the robbery.

21                                FACTS

22    The BPH found petitioner unsuitable for parole for the reason
23  s stated in the Denial Transcripts.  Hereafter referred to as
24  denial reasons # 1 - 12.  The denial reasons as taken from the
25  denial transcripts are listed below:

26

27        #1.)  The offense was carried out in a cruel
28              callous manner.

1.

1

FACTS.

2   #2.)  Multiple victims were robbed and

3        one person killed.

4

5   #3.)  Offense was carried out in a

6        dispassionate manner or that the

7        crime was inexplicable and very

8        trivial in relationship to the

9        offense.

10

11  #4.)  Even if we were to take the

12       inmate's (indiscernible) that he

13       was a willing participant in the

14       robbery, but that was based upon

15       that he was threatened, we have

16       an individual who was killed, two

17       other individuals robbed.

18

19  #5.)  There's a (indiscernible) occasion

20       that the inmate actually got worse

21       after the incident, never turned anyone

22       in.  This theory indicates that maybe he

23       more participation in the crime than he

24       alleges.

25

26

27

28

FACTS.

#6.)  The bigger issue, of course is the killing of the victim and there seems to be no reason why the victim had to be killed.  This was not a situation where the victim was attempting to fight off the robbers with guns or (indiscernible) anything like that.

#7.)  The other reason for the denial at this point in time is his institutional behavior.  Prior programming has only been limited while incarcerated.  He has not sufficiently participated in the programs. He has failed to demonstrate evidence of positive change.

#8.)  Misconduct while incarcerated includes recently a 115, April 29th, year 2004 as well as five recent 128's, starting with chrono 2003 which is his last parole date He had a 115 on July 2000 -- excuse me a 128 of July 2003; April of 2004; another one in April 2004; in June 2004 128 and finally a recent January 2005.

3.

1

FACTS.

2  #9.) The psychological report from a Dr. Lewis

3        Phd indicates that there are concerns.

4        One of the major concerns that the doctor had

5        was in regards to his AA 12-step program.

6        Basically the doctor indicates under impress-

7        ions, assessment of (indiscernible) 2003

8        details a risk and return to dangerousness.

9        Under Dr. Bencichs, " If the state absolutely

10       asks for drug and alcohol (indiscernible) finds

11       potential compared to average lifer. However,

12       his capacity (indiscernible) social status were

13       he released is compromised since he is no longer

14       availing himself for (indiscernible) of weekly

15       support of 12-step meeting. This makes it more

16       likely he will relapse. (indiscernible)

17       meeting. Therefore, (indiscernible) he be

18       paroled. "

19

20  #10.) Another reason for the denial is the 3042

21       response. Inmate has read the letters from

22       the District Attorney's Office from Monterey

23       County indicating their opposition to the

24       inmate's release. Remarks.

25

26

27

28

4.

1

FACTS.

2      #11.)  The Panel makes the following findings.

3              The prisoner continues to need therapy

4              programming and self-help in order indiscer-

5              nible) discuss the (indiscernible) cope and

6              stress in a nondestructive manner as well as

7              to gather greater insight into the crime.

8              In review of the prisoner's social history

9              and lack of program participation, there's

10             no occasion that the prisoner would behave

11             differently if paroled.

12

13     #12.)  Prisoner should be commended for the fact

14              that he is attempting -- prisoner is commended

15              by the Commission to the fact that he realized

16              that he was unsuitable and has not attempted

17              to mitigate his numerous violations while

18              incarcerated, and for that reason, we will

19              take that into account during the deliberat-

20              ions regarding the amount of denial.

21

22  See EX. B: BPH Denial Trans.  pp. 15 - 20  line(s)

23

24

25

26

27

28

5.

7. Ground 2 or Ground ___6___ (if applicable):

    Petitioner, in the alternative, has an illegal sentence, in violation of the applicable clauses of either the California or United States Federal Constitutions, and is not time barred because an illegal sentence will always have need of legal remedy.

a. Supporting facts:

    Petitioner was convicted of 1st degree felony murder. 1st degree felony murder only carries one penalty applicable here, and that penalty is the death penalty. However the trial court lowered the degree of felony murder to 2nd degree via the holdings of People v Dillon (1983) 34 Cal.3rd. 441.

    Petitioner contends that the Rose Bird, California Supreme Court overstepped its authority, and invaded the legislative sphere of California Government, when the Court created a new 2nd degree felony murder for punishment of one of the felonies enumerated in California Penal Code § 189. Only the California Legislature has authority to define crimes and the punishments for those crimes. While the California Judicial Branch of Government has created a " wholly judicial creation" of 2nd degree felony murder, it is only applicable to any felony inherently dangerous to human life, and is not one of the six felonies enumerated in Penal Code § 189. Petitioner's robbery convictions are one of the six felonies that are enumerated in Penal Code § 189. Therefore petitioner cannot be sentenced to 2nd degree felony murder because the court had no authority to create this proportionality type of 2nd degree felony murder. Petitioner should be ordered by the court to be re-sentenced to 1st degree felony murder sentence of Death Penalty.

b. Supporting cases, rules, or other authority:

People v Ford (1964) 60 Cal.2nd. 772; 36 Cal.Rptr. 2nd. 620.

People v Hansen (1994) 9 Cal.4th. 300; 36 Cal.Rptr. 609.

People v Mattison (1971) 4 Cal.3rd. 177; 93 Cal.Rptr. 185.

People v Burroughs (1984) 35 Cal.3rd. 824, 829.

People v Dillon (1983) 34 Cal.3rd. 441.

1    **REBUTTAL TO SUPERIOR COURT DENIAL ORDER.**

2    **SUPPLEMENTAL ARGUMENT TO GND. # 6**

3    **THE SUPERIOR COURT ERRED.**

4

5        The Monterey County Superior Court denied Ground Six of petition for writ of

6    habeas corpus HC 52 67 dated July 21, 2006.

7

8        In said petition, Ground Six raised the claim of having an illegal sentence.

9

10    Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pg. 5 & 6 Line(s) 9 – 24 & 1 -

11    21.

12    Reference:   HC 5267 habeas corpus at Ground Six: Claim and Contentions.

13

14        Petitioner contends the Superior Court erred because it misconstrued the Ground

15    Six as an "Improper Sentence" when in fact the claim was an illegal sentence.   Big

16    difference.

17

18        The claim from Ground Six contended the California Supreme Court under Rose

19    Bird erred in deciding People v. Dillon 34 Cal 3rd 441.   The Rose Bird Court created an

20    illegal 2nd degree felony murder sentence. Petitioner was sentenced by the Trial Court to

21    the Dillon illegal 2nd degree sentence therefore petitioner's sentence is illegal.

22        The Bird Court erred in deciding Dillon because the Court only had the power under

23    the California Constitution to determine if Dillon's sentence was disproportional.   The

24    Supreme Court cannot invade the legislative sphere of power and super legislate into law

25    an new 2nd degree sentence for a felony murder where the underlining felony is one of the

emil ekdahl                    Page 18                    August 23, 2006

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## SUPPLEMENTAL ARGUMENT TO GND. # 6
## THE SUPERIOR COURT ERRED.

Felonies listed in Penal Code § 189.

The only power the Dillon Supreme Court had was to direct the Board of Prison Terms to fix Dillon's sentence so the Court could then conduct a proportionality review. If the Court then found Dillon's sentence still disproportional, the Court could then order the BPT to re-fix the sentence to a new lower term. At that time the Court could conduct another proportionality review. It is conceivable that this process could cycle a few times between the Supreme Court and the BPT before a proportional term was found suitable.

Thus petitioner contends his Trial Court erred not in a disproportional analysis , but in passing an illegal sentence created by the Rose Bird Supreme Court over-stepping the tri-partie Constitutional power boundaries to usurp the legislatures duties.

People v. Dillon (1983) 34 Cal. 3rd. 441 [194 Cal. Rptr. 390]

Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pg. 5 & 6 Line(s) 9 – 24 & 1 - 21.

Reference:   HC 5267 habeas corpus at Ground Six: Claim and Contentions.

///

///

///

**REBUTTAL TO SUPERIOR COURT DENIAL ORDER.**

**SUPPLEMENTAL ARGUMENT TO GND. # 7**

**THE SUPERIOR COURT ERRED.**

The Monterey County Superior Court denied Ground Seven of petition for writ of habeas corpus HC 52 67 dated July 21, 2006.

In said petition, Ground Seven raised the claim of Penal Code § 3001 being unconstitutional because it places undue finical burden on petitioner to come up with parole plans to Monterey County. Petitioner does not have family or finical means to make viable parole plans that would be acceptable to the Board of Prison hearings in order to be found suitable for parole. The Board, the state, and the county do not have any resources available to help petitioner with viable parole plans: therefore, petitioner is condemned to die in prison because the Board demands the parole plans be submitted first before petitioner can be found suitable for parole.

The Superior Court erred because the Court denied the claim by saying that petitioner could just change parole plans after being found suitable. This is the cart before the house reasoning. If petitioner hypothetically had the means to make viable parole plans to a county void of resource for a life prisoner then there would be no need to challenge the constitutionality of Penal Code § 3001.

Reference Attachment Ex. **aA:** MoCo. Sp. Ct. Denial Order pg. 6 & 7 Line(s) 23 –25 & 1 - 8

Reference:   HC 5267 habeas corpus at Ground Seven: Claim and Contentions.

emil ekdahl                              Page 20                         August 23, 2006

7. **Ground 2 or Ground** ___7.___ *(if applicable)*:

California Penal Code Statue § 3001 is unconstitutional under any relevant Constitutional Clause of either or both of the U.S. State of California Constitution or the United States Federal Constitution.

a. Supporting facts:

Petitioner is convicted out of Monterey County. As such, pursuant to Ca. Penal Code § 3001., petitioner must parole to Monterey County. Petitioner does not have family in Monterey County. CDC&R does not provide for life prisoner under Ca. Penal Code § 1168 any type of pre parole resources. The BPH does require life prisoners to submitted viable parole plans that include a place of residence and a promise of future employment. While the BPH does not have specific regulations to cover its pre parole requirements from a life prisoner. The BPH does, as a matter of long standing routine, require such pre parole plans. Not all California Counties are equal in their economic opportunities, and resources available to petitioner to create his pre parole plans. The BPH has constantly has denied petitioner to change the county of parole. Petitioner therefore faces unfair and financial difficulties in formulating viable pre parole plans that will be acceptable enough for the BPH to find petitioner for parole. This fact causes petitioner considerable depression because he will never be able to parole because of this statutes requirements and the BPH's draconian application of the law.

b. Supporting cases, rules, or other authority:

_____

Name.

## GROUND 8.

When the Sixth Appellate District Court denied habeas corpus petition H0300652, on October 16, 2006, it violated petitioners right to Constitutional habeas procedure under the California Constitution and the United States Constitution.

Summery denial of petitioner's habeas petition disregards that there are valid constitutional grounds for relief. These grounds of the petition can be shown valid, but only after a normal habeas procedure is had. After a show cause order and subsequent motions for discovery the grounds will be proven.

See Exhibit **V:** Sixth Appellate Court Summery Denial Order of October 16, 2006.

Sims v. Rowland, 414 F.3rd. 1148 1151 (9th Cir).

People v Gallardo (2000) 77 Cal. App. 4th. 971 [92 Cal.Rptr. 2d. 217]

(3)

8.  Did you appeal from the conviction, sentence, or commitment?    ☒ Yes ☐ No. If yes, give the following information.

    a.  Name of curt ("Court of Appeal" or "Appellate Dept. Of Superior Court"):

        Court  of Appeal, First District , Division Four.

    b.  Result: __Judgement Affirmed__        c  Date of decision:  __April 29, 1985.__

    c.  Case number or citation of opinion, if known: __A025812  (CR-9938 & CR-9942)__

    d.  Issues raised: (1)  __Unknown__

        (2)  _____

        (3)  _____

    f.  Were you represented by counsel on appeal? ☒ Yes ☐ No. If yes, state the attorney's name and address, if known:

        Mr. Gardner.  900 North Point.  Apt. # 450.  San Francisco, CA. 94109.

9.  Did you seek review in the California Supreme Court?    ☒ Yes ☐ No. If yes, give the following information.

    a.  Result:  __Review Denied.__        b  Date of decision:  __July 17, 1985.__

    b.  Case number or citation of opinion, if known: __A025812  (CR-9938 & CR-9942)__

    c.  Issues raised: (1)  __Unknown.__

        (2)  _____

        (3)  _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did make on appeal, explain why the claim was not made on appeal:

        Ineffective Aid of Counsel on Appeal.

        _____

11. Administrative Review:

    a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious.  (See In re Muszalski (1975) 52 Cal. App. 3d 500 [125 Cal. Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

        No administrative remedies available from the Board of Prison Hearings.

        No known administrative review for the Innocent Claim or the Illegal Sentence Claim.

        _____

        _____

        _____

        _____

    b.  Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.  *** Not Applicable

        Attach document that show you have exhausted your administrative remedies

# ATTACHMENT 13. C.

**13. c. (1)** Name of Court:  Monterey County Superior Court. Salinas, California.

**(2)** Nature of Proceeding:  petition for writ of habeas corpus # HC 5267          .

**(3)** Issues raised:

**(a)**   The ' some evidence test ' is insufficient as a test to protect petitioner's due process rights due in a parole hearing.

**(b)**   Prison Officials are forcing their religion of AA on petitioner as a condition of parole suitability in violation of the right to separation of Church and State religious freedom.

**(c)**   BPH did not send P.C. § 3042 notice to trial attorney in violation of Due Process.

**(d)**   The BPH used illegal and unreliable evidence in a parole hearing, which resulted in arbitrary and capricious hearing in violation of Due Process.

**(e)**   The BPH in denying parole with denial reason # 11, violated petitioner's due process of law rights pursuant to Ca. Penal Code § 5011, under the California and Federal Constitutional clauses, and including the relevant due process claims of a right to a defense, and Ineffective Aid of Counsel at trial.

**(f)**   Petitioner has an illegal sentence, in violation of the applicable clauses of either the California of Federal Constitutions, as 2nd degree felony murder for one of the felonies enumerated in Penal Code § 189 is usurpation of legislative power by the California Supreme Court.

**(g)**   Penal Code § 3001 is unconstitutional

**ATTACHMENT 13 c**

**CONTINUED.**

*A:*
**(4)** Result:  Exhibit Attachment  B: Mo. Co. Sp. Ct. Summery  Denial Ord

**(5)** Date of Decision:  July 21, 2006.

///

///

///

12. Other than direct appeal, have you filed any other petition, application, or motions with respect to this conviction, commitment, or issue in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1)   Name of court:   California Supreme Court.

    (2)      Nature of proceeding (for example, "habeas corpus petition"):   habeas corpus petition.

    (3)      Issues raised: (a)  Sixth Amendment Right to a Jury Trial.

         (b)  Eighth Amendment Right to Proportional Sentence by the Board of Prison Hearings.

    (4)      Result (Attach order or explain why unavailable):  Summarily Denied Review.   Lost.

    (5)      Date of decision:  August 09, 2000.

   b. (1)   Name of court:   California Supreme Court.

    (2)      Nature of proceeding (for example, "habeas corpus petition"):   writ of habeas corpus petition.

    (3)      Issues raised: (a)  New Evidence in Co-Defendant's Trial Transcripts.

    (4)      Result (Attach order or explain why unavailable):  Summarily Denied Review as being Time Barred

    (5)      Date of decision:  February 32, 2000. Lost. S084090.

**b.** For additional prior petitions, applications, or motions, provide the same information on a separate page.

**c. See Attached page for 13 c.**

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

   N/A.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (see in re Swain (1949) 34 Cal.2d 300, 304)

   For the two Claims of Innocence and Illegal Sentence, petitioner believes there is no Time

   Bar, or Delay for Constitutional Relief.

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstance justifying an application to this court:

   Not Applicable.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true

Date: _____

_____
(SIGNATURE OF PETITIONER