1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | ANYA M. BINSACCA
Supervising Deputy Attorney General
5 | AMBER N. WIPFLER, State Bar No. 238484
Deputy Attorney General
6 |   455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
7 |   Telephone:  (415) 703-5721
  Fax:  (415) 703-5843
8 |   Email:  Amber.Wipfler@doj.ca.gov

9 | Attorneys for Respondent
Warden R. Ayers

10

11

IN THE UNITED STATES DISTRICT COURT

12

FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

OAKLAND DIVISION

14

15 | **EMIL JOSEPH WILHELM EKDAHL, III,** | C07-03642 SBA

16 | Petitioner, | **ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**

17 | v.

18 | **ROBERT AYERS, Warden,**

19 | Respondent. | Judge:  The Honorable Saundra B. Armstrong

20

21

22

23

24

25

26

27

28

Answer to OSC; Mem. of P. & A.

*Ekdahl v. Ayers*
C07-03642 SBA

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

ANSWER TO THE ORDER TO SHOW CAUSE .......................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 8

ARGUMENT ....................................................................................................... 8

    THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
    CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE
    APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
    NOR BASED ON AN UNREASONABLE DETERMINATION
    OF THE FACTS. ............................................................................................. 8

    A.   The State Superior Court Decision Was Not Contrary to or an
        Unreasonable Interpretation of Clearly Established Federal Law. .... 9

        1.   Petitioner received all process due under the only United States
            Supreme Court law addressing due process in the parole context. ... 9

        2.   The Ninth Circuit's some-evidence test is not clearly established
            Supreme Court law. ............................................................................. 10

        3.   Even if the some-evidence standard was clearly established
            federal law, the standard was correctly applied by the state
            courts. .................................................................................................. 13

        4.   The Board may rely on static factors to deny parole. .................... 14

        5.   The Board's self-help recommendation does not violate the
            Anti-Establishment Clause of the First Amendment. .................... 15

        6.   Petitioner fails to prove that the Board based its decision on
            illegal evidence. .................................................................................. 16

        7.   Penal Code Section 3001 Does Not Apply to Petitioner. ............... 16

        8.   Clearly established federal law does not require the notification
            of trial counsel. .................................................................................. 17

    B.   The State Court Decision Upholding the Board's Parole Denial
        Was Based On a Reasonable Interpretation of the Facts. .............. 17

CONCLUSION .................................................................................................. 18

1

**TABLE OF AUTHORITIES**

2

**Page**

3 **Cases**

4 *Bd. of Pardons v. Allen*
  482 U.S. 369 (1987                                                          5

5
  *Biggs v. Terhune*
6 334 F.3d 910 (9th Cir. 2003)                                          12, 14, 15

7 *Carey v. Musladin*
  ___ U.S. ___, 127 S.Ct. 649 (2006)_ U.S. ___, 127                    6, 11, 12

8
  *Crater v. Galaza*
9 ___F.3d___, 2007 WL 1965122, *2 (9th Cir. July 9, 2007)                     12

10 *Foote v. Del Papa*
   486 F.3d 1166, 2007 WL 1469776 (9th Cir. 2007)                             11

11
   *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*
12 442 U.S. 1 (1979)                                                  5, 9, 10, 12

13 *In re Dannenberg*
   34 Cal. 4th 1061 (2005)                                                  5, 14

14
   *Irons v. Carey*
15 ___F.3d.___, 2007 WL 2027359 (9th Cir. 2007)                              12

16 *Irons v. Carey*
   479 F.3d 658 (9th Cir. 2007)                                               15

17
   *Jancsek v. Oregon Board of Parole*
18 833 F.2d 1389 (9th Cir. 1987)Ñ                                         11, 12

19 *Johnson v. Zerbst*
   304 U.S. 458 (1938)                                                       16

20
   *Juan H. v. Allen*
21 408 F.3d 1262 (9th Cir. 2005)                                             17

22 *Laws v. Lamarque*
   351 F.3d 919 (9th Cir. 2003)                                               7

23
   *Lockyer v. Andrade*
24 583 U.S. 63 (2003)                                                         8

25 *McQuillion v. Duncan*
   306 F.3d 895 (9th Cir. 2002)                                          11, 12

26
   *Miller-El v. Cockrell*
27 537 U.S. 322 (2003)                                                   8, 12

28

Answer to OSC; Mem. of P. & A.

*Ekdahl v. Ayers*
C07-03642 SBA

## TABLE OF AUTHORITIES  (continued)

Page

*Miller-El v. Dretke*
545 U.S. 231 (2005)                                                      9

*Nguyen v. Garcia*
477 F.3d 716 (9th Cir. 2007)                                            11

*Sandin v. Connor*
515 U.S. 472 (1995)                                                      5

*Sass v. California Board of Prison Terms*
461 F.3d 1123 (9th Cir. 2006)                              5, 6, 12, passim

*Superintendent v. Hill*
472 U.S. 445 (1985)                                           6, 9, 11, 13

*Wainwright v. Greenfield*
474 U.S. 284 (1986)                                                 11, 12

*Wilkinson v. Austin*
545 U.S. 2384 (2005)                                                    10

*Williams (Terry) v. Taylor*
529 U.S. 362 (2000)                                                      8

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                                      9


**Constitutional Provisions**

United States Constitution
  First Amendment                                          15, 16
  Sixth Amendment                                              11


**Regulations**

California Code of Regulations, Ttitle 15
  § 2402(c)(1)                                                6, 14


**Statutes**

28 United States Code
  § 2244(d)(1)                                                     7
  § 2254(d)(1-2)                                                8, 17
  § 2254(d)(2)                                                    17
  § 2254(e)(1)                                                 9, 17

## TABLE OF AUTHORITIES  (continued)

**Page**

California Penal Code
§ 3001                                          2, 4, 7, passim
§ 3401                                                       14
§ 3041(b)                                                     6
§ 3042                                                       17


**Other Authorities**

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)        5-9, 11-15, 17

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  AMBER N. WIPFLER, State Bar No. 238484
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5721
     Fax:  (415) 703-5843
8    Email:  Amber.Wipfler@doj.ca.gov

9  Attorneys for Respondent
   Warden R. Ayers

10

11                    IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                              OAKLAND DIVISION

14

15  **EMIL JOSEPH WILHELM EKDAHL, III,**        C07-03642 SBA

16                                Petitioner,   **ANSWER TO ORDER TO SHOW
                                                CAUSE; MEMORANDUM OF POINTS**
17           **v.**                             **AND AUTHORITIES**

18  **ROBERT AYERS, Warden,**
                                                Judge:  The Honorable Sandra B. Armstrong
19                                Respondent.

20

21                              **INTRODUCTION**

22          Petitioner Emil Ekdahl is an inmate at San Quentin State Prison, proceeding pro se in this

23  habeas corpus action.  Petitioner, currently serving an indeterminate sentence for second-degree

24  murder, alleges that the Board of Parole Hearings unconstitutionally denied him parole at his

25  2005 parole consideration hearing.  Ekdahl makes nine claims in his petition:  first, that the

26  some-evidence standard of review is not sufficient to protect him from arbitrary and capricious

27  parole decisions; second, that the Board improperly used static factors to deny parole suitability;

28  third, that the Board is forcing religion on Petitioner by making attendance in Alcoholics

Answer to OSC; Mem. of P. & A.                                        *Ekdahl v. Ayers*
                                                                      C07-03642 SBA

1  Anonymous a prerequisite of parole; fourth, that the Board violated his right to have his trial

2  attorney notified of his parole consideration hearing; fifth, that the Board used illegal and

3  unreliable evidence to deny parole; sixth, that the Board's finding that Petitioner requires therapy

4  violates his due process rights; seventh, that Petitioner is serving an illegal sentence; eighth, that

5  California Penal Code section 3001 (regarding parole discharge) is illegal; and finally, that the

6  California Court of Appeals violated constitutional habeas procedure.

7      On September 5, 2007, this Court issued an order to show cause why a writ of habeas

8  corpus should not issue.  Respondent Warden Robert Ayers answers as follows:

9                          **ANSWER TO THE ORDER TO SHOW CAUSE**

10     In response to the petition for writ of habeas corpus filed on July 16, 2007, Respondent

11  admits, denies, and alleges the following:

12     1.   Petitioner is in the lawful custody of the California Department of Corrections and

13  Rehabilitation following his 1984 conviction of robbery and second-degree murder.  (Ex. A,

14  Abstract of Judgment.)  He is currently serving an indeterminate sentence of fifteen years to life.

15  (*Id.* at 2.)

16     2.   Respondent affirmatively alleges that on October 18, 1981, Petitioner and three

17  companions drove from Salinas to Soledad with the intent of committing armed robbery.  (Ex. B,

18  Probation Officer's Report at 4.)  After arming themselves and masking their faces, Petitioner

19  and one of his cohorts entered a service station, brandished their guns, and ordered the occupants

20  of the store to lie down on the floor.  (*Id.* at 2.)  They stole approximately fifteen dollars from the

21  cash register, and fled.  (*Id.* at 4.)  In the course of escaping, Petitioner or one of his companions

22  shot the victim, seventeen year-old Arthur Sandoval, in the head, killing him.  (*Id.* at 2-3.)  The

23  murder remained unsolved for nearly two years, until the estranged wife of Petitioner's

24  companion told police about the crime.  (*Id.* at 3.)

25     3.   Respondent admits that Petitioner told police that he believed someone else was going

26  to commit the robbery, and that he went along with the plan because one of his cohorts

27  threatened to "kick [his] ass."  (Ex. B at 3.)  Respondent affirmatively alleges that Petitioner

28  maintains that he is "factually innocent" of the commitment offense.  (Ex. C, Life Prisoner

1 │ Evaluation at 1.)

2 │   4.   Respondent affirmatively alleges that before his incarceration, Petitioner abused

3 │ alcohol and heroin.  (Ex. B at 6.)

4 │   5.   Respondent affirmatively alleges that while incarcerated, Petitioner has received nine

5 │ serious disciplinary violations for offenses such as intoxication, possession of inmate

6 │ manufactured alcohol, fighting, disobeying orders, refusing to work, and battery on an inmate.

7 │ (Ex. C at 5.)  Most recently, on April 29, 2004, he received a serious rule violation report for

8 │ refusing to work.  (Ex. D, 2005 Parole Hearing Transcript at 9.)  Petitioner has also received

9 │ eighteen minor disciplinary violations, including five since his last parole suitability hearing in

10 │ 2002.  (*Id.*)

11 │   6.   Respondent affirmatively alleges that between 2004 and 2005, Petitioner stopped

12 │ participating in all therapeutic group activities, including his yoga class and weekly twelve-step

13 │ meetings.  (Ex. E, 2005 Psychological Report at 2.)

14 │   7.   Respondent affirmatively alleges that according to a 2005 psychological evaluation,

15 │ Petitioner suffers from moderate Major Depressive Disorder and Polysubstance Dependence in

16 │ institutional remission.  (Ex. E at 2.)  The evaluating psychologist emphasized that Petitioner

17 │ needed to involve himself in group activities in order to combat his depression, and

18 │ recommended regular one-to-one counseling sessions along with group activities and medication.

19 │ (*Id.* at 4-5.)  The examiner further found that Petitioner could be a viable parole candidate only if

20 │ he resumed his participation in drug and alcohol support groups and received adequate treatment

21 │ for his depression.  (*Id.* at 5.)

22 │   8.   Respondent affirmatively alleges that at the time of his 2005 parole consideration

23 │ hearing, Petitioner did not have any confirmed housing or employment plans.  (Ex. D at 12.)  He

24 │ expressed interest in living at a residential housing facility and pursuing work as an auto

25 │ mechanic or sheet metal worker, but had neither housing nor employment offers.  (*Id.*)

26 │   9.   Respondent affirmatively alleges that the District Attorney of Monterey County

27 │ opposed Ekdahl's release on parole.  (Ex. D at 12-13.)

28 │   10.  Respondent affirmatively alleges that Petitioner chose not to be present at his 2005

Answer to OSC; Mem. of P. & A.                                        *Ekdahl v. Ayers*
                                                                      C07-03642 SBA

3

1  parole consideration hearing. (Ex. D at 1-4.)

2      11.  Respondent admits that on July 1, 2005, the Board concluded that Petitioner was no

3  suitable for parole and would pose an unreasonable risk of danger to society and a threat to

4  public safety if released from prison. (Ex. D at 15.) The Board based its decision on the

5  especially heinous nature of the crime, finding that the offense involved multiple victims and was

6  carried out in a dispassionate manner for a trivial motive. (*Id.*) The Board further based its

7  decision on Petitioner's failure to sufficiently participate in self-help activities, particularly

8  substance abuse programs, as well as his numerous disciplinary violations and his lack of parole

9  plans. (*Id.* at 15-20.) Finally, as required by law, the Board noted the opposition of the Monterey

10 County District Attorney. (*Id.* at 17); Cal. Pen. Code § 3042.

11     12.  Respondent admits that on August 28, 2006, the Monterey County Superior Court

12 denied Petitioner's petition for writ of habeas corpus, in which he alleged the same general

13 causes of action in the current petition. (Ex. F, Superior Court Petition, Order to Show Cause,

14 and Denial.) The court rejected the majority of Petitioner's claims in its order to show cause,

15 finding that the some-evidence standard adequately protected his due process rights; that some

16 evidence supported the Board's finding of parole unsuitability; that the Board did not improperly

17 rely on static factors to deny parole; that Petitioner failed to demonstrate any harm resulting from

18 the Board's failure to notify his trial counsel of his parole hearing; that the hearing was not

19 arbitrary or capricious; that some evidence supported the Board's decision that Petitioner

20 required further therapy and self-help participation; that Petitioner's sentence was legal; and that

21 Petitioner's claim regarding Penal Code section 3001 (regarding parole discharge) failed to state

22 a cause of action. (*Id.* at 4-10.) In its order denying the petition, the court found that Petitioner

23 had a variety of self-help programs in which to participate, not just Alcoholics and Narcotics

24 Anonymous, and reiterated that the Board properly determined that Petitioner required further

25 participation in therapy and self-help. (*Id.* at 1-3.)

26     13.  Respondent admits that on October 16, 2006, the California Court of Appeals

27 summarily denied Petitioner's petition for writ of habeas corpus, in which he alleged the same

28 general causes of action as in the current petition. (Ex. G, Appellate Court Petition and Denial.)

Answer to OSC; Mem. of P. & A.                                                    *Ekdahl v. Ayers*
                                                                                 C07-03642 SBA

4

1    14. Respondent admits that on May 16, 2007, the California Supreme Court summarily

2    denied Petitioner's petition for review, in which he alleged the same causes of action as in the

3    current petition. (Ex. H, Supreme Court Petition and Denial.) Hence, Respondent admits that

4    Petitioner has exhausted his state court remedies as to the claims raised in the current petition.

5    Respondent denies that Petitioner has exhausted his claims to the extend that they are more

6    broadly interpreted to encompass any systematic issues beyond the review of his 2005 parole

7    denial.

8    15. Respondent denies that Petitioner has a federally protected liberty interest in parole;

9    hence, Petitioner fails to assert a basis for federal jurisdiction. *Greenholtz v. Inmates of Neb.*

10   *Penal & Corr. Complex*, 442 U.S. 1 (1979); *Bd. of Pardons v. Allen*, 482 U.S. 369, 374 (1987)

11   (no federal liberty interest without an expectation of early release); *In re Dannenberg*, 34 Cal. 4th

12   1061, 1087 (no expectation of early release in California); *Sandin v. Connor*, 515 U.S. 472, 484

13   (1995) (serving a contemplated sentence is not a significant or atypical hardship). Respondent

14   acknowledges that the Ninth Circuit came to the opposite conclusion in *Sass v. California Board*

15   *of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), but preserves the argument.

16   16. Respondent denies that the state court denials of habeas corpus relief were contrary to,

17   or involved an unreasonable application of, clearly established United States Supreme Court law,

18   or that the denials were based on an unreasonable interpretation of facts in light of the evidence

19   presented. Petitioner therefore fails to make a case for relief under the Anti-Terrorism and

20   Effective Death Penalty Act of 1996 (AEDPA).

21   17. Respondent affirmatively alleges that Petitioner had an opportunity to present his case

22   to the Board, and that the Board provided him with a detailed explanation as to why he was

23   denied parole. Thus, Petitioner received all process due under *Greenholtz,* the only clearly

24   established Supreme Court law regarding the due process rights of inmates at parole

25   consideration hearings.

26   18. Respondent affirmatively alleges that the Board conducted an individualized

27   assessment of Petitioner's parole suitability and considered all relevant and reliable evidence

28   before it. Respondent denies that the Board relied on illegal evidence to deny parole.

Answer to OSC; Mem. of P. & A.                                                          *Ekdahl v. Ayers*
                                                                                        C07-03642 SBA

1   19.   Respondent denies that this Court must review Petitioner's parole denial under the

2   some-evidence standard.  In *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653 (2006), the

3   United States Supreme Court emphasized that under AEDPA, only Supreme Court holdings

4   regarding the specific issue presented may be used to overturn valid state court decisions.  As no

5   clearly established Supreme Court law provides that a parole denial must be supported by some

6   evidence, this Court need not review the current matter under the some-evidence standard.

7   20.   Respondent affirmatively alleges that if the some-evidence standard does apply to the

8   review of parole denials, the proper standard is that found in *Superintendent v. Hill*, 472 U.S.

9   445, 455 (1985), which requires that only a "modicum of evidence" support the Board's decision

10   to deny parole.  Respondent affirmatively alleges that under this standard, some evidence

11   supports the Board's parole denial.

12   20.   Respondent denies that this Court must make an independent determination of whether

13   Petitioner currently poses an unreasonable risk of danger to society in order to uphold the state

14   court decisions denying parole.

15   21.   Respondent denies that the Board relied on immutable factors to deny parole.

16   Respondent affirmatively alleges that the Board properly considered the gravity of Petitioner's

17   commitment offense, as required under California Penal Code section 3041(b) and California

18   Code of Regulations title 15, sections 2402(b), (c)(1)-(2).  Respondent further affirmatively

19   alleges that federal due process does not preclude the Board from relying on static factors to deny

20   parole.  *Sass*, 461 F.3d at 1129.

21   22.   Respondent denies that the Board mandated attendance in Alcoholic's Anonymous or

22   Narcotics Anonymous a prerequisite of a parole suitability finding.  Respondent affirmatively

23   alleges that the Board recommended only that Petitioner "return to self-help" in order to

24   demonstrate suitability for release.  (Ex. D at 20.)  Respondent denies that twelve-step programs

25   are the only form of self-help available at San Quentin State Prison.  (Ex. F at 1-3.)

26   23.   Respondent admits that the Board did not contact Petitioner's trial attorney before

27   Petitioner's parole hearing, as the Board was unable to locate the attorney's address.  (Pet. Ex.

28   U.)  Respondent denies that the Board's failure to contact Petitioner's trial attorney constitutes a

1  violation of clearly established federal law.

2      24.  Respondent denies that the Board violated due process in recommending that Petitioner

3  participate in self-help and therapy.

4      25.  Respondent denies that California Penal Code section 3001 applies to Petitioner, as

5  this statute lists the discharge schedules for determinately sentenced inmates who are already on

6  parole.  In as much as Petitioner is challenging California's geographic parole requirements,

7  Respondent denies that these requirements violate Petitioner's due process rights.

8      26.  Respondent denies that Petitioner is serving an illegal sentence.  Respondent

9  affirmatively alleges that this claim is untimely.  Any habeas claims which arose before the

10  enactment of AEDPA must have been filed "within one year of AEDPA's effective date, that is,

11  by April 24, 1997."  *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003).  Thus, any petition

12  for habeas relief regarding the imposition of Petitioner's underlying sentence—which he received

13  in 1984—must have been filed before April 24, 1997.  As such, Petitioner's claim regarding his

14  underlying sentence is untimely and will not be addressed.

15      27.  Respondent denies that the Board violated Petitioner's due process rights by denying

16  parole at his 2005 hearing.

17      28.  Respondent admits that with the exception of his claim regarding the legality of his

18  sentence, Petitioner's claims are timely under 28 U.S.C. § 2244(d)(1), and that the petition is not

19  barred by the non-retroactivity doctrine.

20      29.  Respondent denies that an evidentiary hearing is necessary in this matter.

21      30.  Respondent affirmatively alleges that Petitioner fails to state or establish any grounds

22  for habeas corpus relief.

23      31.  Except as expressly admitted above, Respondent denies, generally and specifically,

24  each allegation of the Petition, and specifically denies that Petitioner's administrative, statutory,

25  or constitutional rights have been violated in any way.

26      Accordingly, Respondent respectfully requests that the petition for writ of habeas corpus be

27  denied.

28

Answer to OSC; Mem. of P. & A.                                    *Ekdahl v. Ayers*
                                                                  C07-03642 SBA

7

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

**THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

Under AEDPA, when a state inmate's claim has been adjudicated on the merits in state court, a federal court may grant a writ of habeas corpus on the same claim only if the state court's adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

"Clearly established federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is contrary to established federal law if "the state court applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases," or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." *Lockyer v. Andrade*, 583 U.S. 63, 73 (2003) (citations and internal quotation marks omitted).  A state court decision is an unreasonable application of clearly established law "if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.  It is not enough that the state court applies the law erroneously or incorrectly; rather, the application must be objectively unreasonable. *Id.* at 75-76.

In order to find that a state court decision involved an unreasonable determination of the facts, the reviewing court must find that the decision was "objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  State court factual determinations are assumed to be correct, and a petitioner bears the

1 │ burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);

2 │ *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

3 │      When, as here, the California Supreme Court denies a petition for review without

4 │ comment, the federal court will look to the last reasoned decision as the basis for the state court's

5 │ judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). In this case, the last reasoned

6 │ decision is the Monterey County Superior Court's August 28, 2006 decision denying habeas

7 │ relief. (Ex. F.) As this decision is neither contrary to, or an unreasonable application of, clearly

8 │ established federal law, nor based on an unreasonable interpretation of the facts, Petitioner's

9 │ claim for habeas relief must be denied.

10 │     **A.**    **The State Superior Court Decision Was Not Contrary to or an Unreasonable**
            **Interpretation of Clearly Established Federal Law.**

11 │

12 │      The first standard under AEDPA is that a state court habeas decision must not be contrary

13 │ to, or an unreasonable interpretation of, clearly established federal law. Here, Petitioner received

14 │ all process due under *Greenholtz*, the only clearly established federal law regarding the due

15 │ process rights of inmates at a parole consideration hearing. Furthermore, clearly established

16 │ federal law does not require that the Board's decision be supported by some evidence; however,

17 │ even if it did, the Board's decision is supported by some evidence per the standard set forth in

18 │ *Hill*. Next, due process does not preclude the Board from relying, in part, on the factors of the

19 │ commitment offense to deny parole. Finally, Petitioner fails to provide any evidence to support

20 │ his claims regarding the Board's alleged imposition of religion and use of illegal evidence, nor

21 │ does he show that the Board's failure to notify trial counsel or parole placement regulations are a

22 │ violation of due process. As such, the state court decisions denying habeas relief were not

23 │ contrary to or an unreasonable interpretation of clearly established federal law, and the petition

24 │ must be denied.

25 │     **1.**    **Petitioner received all process due under the only United States Supreme**
            **Court law addressing due process in the parole context.**

26 │

27 │      In *Greenholtz*, the United States Supreme Court established the due process protections

28 │ required in a state parole system. The Court held that the only process due at a parole

Answer to OSC; Mem. of P. & A.               *Ekdahl v. Ayers*
                                                 C07-03642 SBA

1  consideration hearing is an opportunity for the inmate to present his case, and if parole is denied,

2  an explanation for the denial. *Greenholtz*, 442 U.S. at 16. Here, Petitioner had this opportunity,

3  but he knowingly and intelligently waived it. (Ex. D at 1-4.)  Even without Petitioner present,

4  the Board conducted a thorough evaluation of his statutory parole suitability factors and

5  considered all relevant and reliable evidence before it, including Petitioner's commitment

6  offense, social history, in-prison programming, disciplinary record, psychological evaluation, and

7  parole plans. (Ex. D.) Petitioner claims that the Board failed to consider his argument that he

8  committed the crime under duress, but this claim is belied by the record, as the Board specifically

9  noted Petitioner's duress allegation. (*Id.* at 12, 15.)  Thus, because Petitioner received both an

10  opportunity to present his case and an explanation as to why the Board denied him parole—and

11  does not claim otherwise—he received all process due under *Greenholtz*, the only clearly

12  established Supreme Court law regarding due process at parole consideration hearings.

13  Accordingly, the state court decisions upholding the Board's parole denial are not contrary to, or

14  an unreasonable application of, clearly established federal law.

15     **2.     The Ninth Circuit's some-evidence test is not clearly established Supreme**
           **Court law.**

16

17     Respondent agrees with Petitioner's assertion that the some-evidence standard is not the

18  proper standard of federal judicial review.  In *Greenholtz*, the Supreme Court specifically

19  rejected the idea that a parole board must specify particular evidence in the inmate's file or at his

20  interview to support its decision, as that would transform the parole process into an adversarial

21  proceeding and equate the denial of parole to a guilty verdict.  Thus, as a matter of clearly

22  established Supreme Court law, a challenge to a parole decision will fail if the inmate has

23  received the protections required under *Greenholtz*.[1/]

24     The Ninth Circuit, however, has erroneously determined that clearly established federal

25  _____

26     1. The Supreme Court has cited *Greenholtz* approvingly for the proposition that the "level
    of process due for inmates being considered for release on parole includes an opportunity to be heard

27  and notice of any adverse decision" and noted that *Greenholtz* remained "instructive for [its]
    discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 2384,

28  2397 (2005).

1   law requires that a parole decision be supported by some evidence. *Jancsek v. Oregon Board of*

2   *Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987); *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir.

3   2002). This standard stems from the decision in *Hill*, in which the United States Supreme Court

4   determined that some evidence must support the decision of a prison disciplinary board to revoke

5   good time credits. 472 U.S. at 455. In *Jancsek, McQuillion*, and subsequent cases, the Ninth

6   Circuit held that the some-evidence standard applies not only in the disciplinary context, but the

7   parole context as well. *Id.* However, because these holdings are not clearly established federal

8   law under AEDPA standards, it does not apply in federal habeas proceedings which challenge

9   parole denials.

10       In *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653 (2006), the United States

11   Supreme Court reiterated that for AEDPA purposes, "clearly established federal law" refers only

12   to the holdings of the Supreme Court on the specific issue presented. In *Musladin*, the Ninth

13   Circuit held that under clearly established federal law, courtroom spectators who wore buttons

14   depicting the victim of a murder inherently prejudiced the murder defendant and denied him a

15   fair trial. *Id.* at 652. In doing so, the court determined that the prejudice tests used by the

16   Supreme Court in two similar but factually distinct cases constituted clearly established federal

17   law for the purposes of AEDPA. *Id.* The Supreme Court, however, reversed the Ninth Circuit's

18   decision upon review, holding that the highest court had "never addressed a claim that private-

19   actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial."

20   *Id.* at 653. Hence, the *Musladin* court made it clear that circuit courts may not import a federal

21   standard used for one set of circumstances into a different set of circumstances under the guise of

22   "clearly established federal law."

23       The Ninth Circuit has affirmed this principle in a number of recent cases. For instance, in

24   *Foote v. Del Papa*, 492 F.3d 1026, 1029-30 (9th Cir. 2007), the court affirmed the district court's

25   denial of a petition alleging ineffective assistance of appellate counsel based on an alleged

26   conflict of interest because no Supreme Court case has held that such an irreconcilable conflict

27   violates the Sixth Amendment. Similarly, in *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007), the

28   court upheld a state court's decision finding that *Wainwright v. Greenfield*, 474 U.S. 284 (1986)

1    did not apply to a state court competency hearing on the ground that the Supreme Court had not

2    held yet applied *Wainwright* in this manner. *Id.* at 718, 727. Finally, *Crater v. Galaza*, 491 F.3d

3    1119, 1126, n. 8 (9th Cir. 2007), cited *Musladin* in acknowledging that decisions by courts other

4    than the Supreme Court are "non-dispositive" under AEDPA standards.

5         The *Jancsek* and *McQuillion* courts, however, did exactly what the *Musladin* court

6    warned against—they took the some-evidence standard from the prison disciplinary context and

7    applied it to an entirely different context. Although both prison disciplinary hearings and parole

8    consideration decisions affect the duration of an inmate's confinement, the two situations are not

9    identical. Specifically, prison disciplinary hearings involve a finding of guilt, meaning that the

10   process due in disciplinary hearings is greater than that required in parole hearings. *Greenholtz*,

11   442 U.S. at 15-16. Thus, the *Jancsek* and *McQuillion* courts erred in determining that the some-

12   evidence standard should apply in the parole hearing context, and subsequent courts have erred in

13   holding that this standard is clearly established federal law for the purposes of AEDPA. *See*

14   *Irons v. Carey*, ___F.3d.___, 2007 WL 2027359 (9th Cir. 2007); *Sass*, 461 F.3d 1123; *Biggs v.*

15   *Terhune*, 334 F.3d 910 (9th Cir. 2003).

16        Petitioner's argument that substantive due process requires a less deferential standard of

17   review is without merit. On the contrary, neither the some-evidence standard nor any more

18   stringent standard is necessary to protect due process, as three California courts have already

19   evaluated the substantive merits of Petitioner's claims. (Exs. F, G, H.) Thus, the absence of

20   substantive review under AEDPA does not diminish Petitioner's due process rights; it merely

21   defers to the state court's evaluation of those rights, consistent with AEDPA's stated purpose of

22   "further[ing] comity, finality, and federalism. *Miller-El v. Cockrell,* 573 U.S. 322, 337 (2003).

23   Thus, neither the some-evidence standard of review nor any higher standard is necessary at the

24   federal level to protect Petitioner's substantive due process rights.

25        *Greenholtz* is the only United States Supreme Court authority describing the process due

26   at a parole consideration hearing. As such, Petitioner is entitled to only those protections

27   provided in *Greenholtz*. Because he received these protections, the state court decisions

28   upholding his parole denial are not contrary to clearly established federal law.

Answer to OSC; Mem. of P. & A.                                                    *Ekdahl v. Ayers*
                                                                                  C07-03642 SBA

1    **3.    Even if the some-evidence standard was clearly established federal law, the standard was correctly applied by the state courts.**

2

3    Even if the some-evidence standard is clearly established federal law for AEDPA

4    purposes, Petitioner's claim would nonetheless fail because the state court correctly applied the

5    standard.  The some-evidence standard "does not require examination of the entire record,

6    independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it is

7    satisfied if there is "any evidence in the record that could support the conclusion reached by the

8    [B]oard." *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some

9    evidence standard is minimal").

10    The evidence used by the Board to deny parole was the egregious nature of Petitioner's

11    commitment offense, his disciplinary violations, his failure to participate in self-help programs,

12    his diagnosed need for further therapy, and his complete lack of parole plans.  (Ex. D at 15-20.)

13    Petitioner participated in a premeditated armed robbery of a store, which resulted in a young man

14    being shot in the head and killed, for no apparent reason.  (Ex. B at 3.)  Petitioner may not

15    believe that pointing guns at people and ordering them on the floor constitutes an "attack," but

16    the Board correctly found that the offense involved the attack of multiple victims.  (Ex. B at 2;

17    Ex. C at 15; Pet. at 7.)  Furthermore, despite his diagnosis of depression and substance

18    dependence, between 2004 and 2005 Petitioner ceased all self-help activities, and notably failed

19    to pursue any programming relating to his history of substance abuse, despite Board

20    recommendations that he do so.  (Ex. D at 9-12, 16-20.)  Petitioner also had a series of recent

21    disciplinary violations, and had no employment or residential plans for his release.  (Ex. C at 5;

22    Ex. D at 12.)  The state court properly found that the above factors constituted some evidence of

23    parole unsuitability.  (Ex. F at 5.)

24    Thus, to the extent that the some-evidence test in *Superintendent v. Hill* is clearly

25    established federal law, it was reasonably applied by the state courts, and Petitioner's claim to the

26    contrary must be denied.

27    ///

28    ///

Answer to OSC; Mem. of P. & A.

*Ekdahl v. Ayers*
C07-03642 SBA

13

**4.    The Board may rely on static factors to deny parole.**

Petitioner also argues that due process precludes the Board from relying on static factors—namely, the circumstances of the commitment offense—to deny parole. This argument fails for a number of reasons. First, the Board did not rely solely on the facts of the commitment crime to deny parole; rather, the Board based its decision on Petitioner's numerous disciplinary violations, his unfavorable psychological report, and his failure to participate in self-help or procure parole plans, all of which are dynamic factors under Petitioner's control. (Ex. D at 15-20.) Second, no clearly established Supreme Court law provides that the Board cannot base a parole denial on the factors of an inmate's commitment offense. Third, California's parole provisions explicitly state that parole may be denied based on the egregious nature of the crime. For instance, California Penal Code section 3401 states that Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Similarly, California Code of Regulations title 15, section 2402(c)(1), provides that a crime committed "in an especially heinous, atrocious, or cruel manner" is a factor tending to indicate parole unsuitability. Finally, the California Supreme Court held in *Dannenberg* that the Board may rely solely on the circumstances of the commitment offense to deny parole. 34 Cal. 4th at 1094. Thus, under both state law and clearly established federal law, the Board properly based its decision, in part, on Petitioner's commitment offense.

The Ninth Circuit's holding in *Biggs* does not compel a different result. In *Biggs*, the Ninth Circuit stated that the Board's continuing reliance on an unchanging factor to deny parole "could result in a due process violation." *Id.* at 917. However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor necessarily violates due process, only that it possibly could. Indeed, the court praised Biggs for being "a model inmate," and found that the record was "replete with the gains Biggs has made," including a master's degree in business administration. *Id.* at 912. Nonetheless, the court denied habeas relief because the Board's decision to deny parole–which relied solely on the commitment offense–was supported by some

1    evidence. *Id.* at 917.

2          Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly

3    established federal law sufficient to overturn a state court decision under AEDPA standards. The

4    Ninth Circuit has emphasized that *Biggs* does not contain mandatory language, and that "[u]nder

5    AEDPA, it is not our function to speculate about how future parole hearings could proceed."

6    *Sass*, 461 F.3d at 1129. The *Sass* court then rejected the argument that the Board's reliance on

7    "immutable behavioral evidence" to deny parole violated federal due process. *Id.*

8          The Ninth Circuit most recently addressed this issue in *Irons*. In overturning a district

9    court grant of habeas corpus, the Ninth Circuit held that despite substantial evidence of the

10   inmate-petitioner's rehabilitation, the Board acted properly and did not abuse its discretion by

11   relying on the circumstances of the commitment offense to deny parole. *Irons*, 2007 WL

12   2027359 at *5-6.

13         Thus, the dicta from *Biggs* and its progeny do not prelude the Board from using

14   circumstances of the commitment offense to deny parole, nor may this dicta be used to overturn a

15   valid state court decision. Accordingly, Petitioner fails to prove that the state court decision

16   denying parole is contrary to or an unreasonable application of clearly established federal law,

17   and the petition must be denied.

18         **5.    The Board's self-help recommendation does not violate the Anti-
                    Establishment Clause of the First Amendment.**
19

20         Petitioner alleges that the Board is "withholding parole from petitioner until petitioner

21   converts to the A.A. religion." (Pet. at 38.) Petitioner's claim is without merit. Failure to

22   participate in self-help was indeed one of the factors cited in the Board's decision of parole

23   unsuitability, but nowhere did the Board indicate that but for the failure to attend Alcoholics

24   Anonymous, Petitioner would have received a parole date.

25         Furthermore, the Board never held that Petitioner's parole release is dependent on his

26   participation in twelve-step programs. In reading Petitioner's psychological report, the Board

27   stated that "[o]ne of the majors concerns that the doctor had was in regard to his AA 12-step

28   program" and that "[Petitioner's] 12 steps are very important to the Panel." (Ex. D at 17-18.)

Answer to OSC; Mem. of P. & A.                                              *Ekdahl v. Ayers*
                                                                           C07-03642 SBA

1  Such concern is warranted, as Petitioner's behavior and discipline have gotten progressively

2  worse since he stopped attending Alcoholics Anonymous and the other programs in which he

3  was once involved.  However, the Board was clear in advising Petitioner to "return to his self-

4  help"—not Alcoholics Anonymous exclusively, but self-help in general.  As the superior court

5  found, a myriad of self-help programs unaffiliated with Alcoholics Anonymous are available to

6  Petitioner. (Ex. F at 1-3.)  Thus, the Board did not condition Petitioner's parole on attendance in

7  Alcoholic's Anonymous, but based on the evidence before it, found that Petitioner needed to

8  involve himself in some form of self-help in order to demonstrate suitability for release.

9  Accordingly, the Board did not mandate participation in a religious program as a prerequisite to

10  parole.  As such, the state court decisions denying Petitioner's First Amendment claim were not

11  contrary to, or an unreasonable application of, clearly established federal law.

12       **6.     Petitioner fails to prove that the Board based its decision on illegal evidence.**

13       Petitioner next claims that by engaging in speculation, or in his words, "a secret theory,"

14  the Board improperly and illegally based his parole denial on theory rather than fact.  (Pet. at 46.)

15  Petitioner has the burden of proving his allegations in a habeas corpus proceeding.  *Johnson v.*

16  *Zerbst*, 304 U.S. 458, 468-69 (1938).  Because Petitioner offers no evidence save for his own

17  opinion that the Board illegally based its decision on theories and speculation, the state court

18  decisions denying this claim are not contrary to, or an unreasonable application of, clearly

19  established federal law.

20       **7.     Penal Code Section 3001 Does Not Apply to Petitioner.**

21       Next, Petitioner alleges that the application of California Penal Code section 3001 is

22  unconstitutional, as it requires him to secure parole plans in his county of commitment.

23  However, Penal Code section 3001 does not concern parole placement; rather, it lists a schedule

24  of discharge dates for inmates already found suitable for parole.  In as much as Petitioner is

25  challenging the statutory requirement that he parole to his county of commitment, he fails to

26  provide any clearly established federal law stating that an inmate may choose the county to which

27  he paroles.  As such, the state court decisions denying this claim are not contrary to, or an

28  unreasonable application of, clearly established federal law, and this claim must fail.

Answer to OSC; Mem. of P. & A.

*Ekdahl v. Ayers*
C07-03642 SBA

1    **8.    Clearly established federal law does not require the notification of**
          **trial counsel.**

2

3    Finally, Petitioner claims that the Board improperly failed to notify his trial counsel of his

4    parole consideration hearing, per California Penal Code section 3042. However, no clearly

5    established federal law requires such notification. Accordingly, the state court decisions denying

6    this claim cannot be contrary to, or an unreasonable application of, clearly established federal

7    law. The petition must be denied as to this claim.

8    **B.    The State Court Decision Upholding the Board's Parole Denial**
          **Was Based On a Reasonable Interpretation of the Facts.**

9

10    The second standard under AEDPA is that a state court habeas decision must be based on

11    a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. §

12    2254(d)(2). Petitioner bears the burden of proving that the state court's factual determinations

13    were objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270

14    (9th Cir. 2005). Thus, in order to prevail on this claim, Petitioner would need to prove that it was

15    objectively unreasonable for the state courts to conclude that the Board acted in accordance with

16    due process and that some evidence supported the factual basis of the Board's parole denial.

17    Petitioner fails to meet this burden, as some evidence in the record supports the Board's finding;

18    furthermore, he does not provide any evidence to show that the Board's determination of parole

19    unsuitability violated federal due process. Petitioner may disagree with the Board's analysis, but

20    that is not sufficient to prove that the state court's decision was objectively unreasonable. Thus,

21    Petitioner fails to prove that the state court's factual determinations were unreasonable under

22    AEDPA standards, and the petition must be denied.

23    / / /

24    / / /

25    / / /

26

27

28

Answer to OSC; Mem. of P. & A.                                            *Ekdahl v. Ayers*
                                                                          C07-03642 SBA

17

1

**CONCLUSION**

2    In order to obtain a writ of habeas corpus, Petitioner must prove that the state court

3 decisions denying him relief were contrary to, or an unreasonable application of, clearly

4 established federal law, or based on an unreasonable determination of the facts. Petitioner fails

5 to meet this burden. Not only did he receive all due process required under *Greenholtz*, but the

6 record contains some evidence to support the Board's parole denial. Furthermore, Petitioner fails

7 to prove that the Board's evaluation of the evidence before it violated clearly established federal

8 law. For these reasons, the petition for writ of habeas corpus must be denied.

9    Dated: November 5, 2007

10                                Respectfully submitted,

11                                EDMUND G. BROWN JR.
                                 Attorney General of the State of California

12                               DANE R. GILLETTE
13                               Chief Assistant Attorney General

14                               JULIE L. GARLAND
                                 Senior Assistant Attorney General

15                               ANYA M. BINSACCA
                                 Supervising Deputy Attorney General

16

17

18                               AMBER N. WIPFLER
19                               Deputy Attorney General
                                 Attorneys for Respondent
20                               Warden R. Ayers

21

22    20112058.wpd
      SF2007200726
23

24

25

26

27

28

Answer to OSC; Mem. of P. & A.                                    *Ekdahl v. Ayers*
                                                                 C07-03642 SBA

18