Case 4:07-cv-03642-SBA    Document 5-3    Filed 11/05/2007    Page 1 of 9

# EXHIBIT B

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY

FILED
JAN 3  4 14 PM '84
ERNEST A. HARDING
MONTEREY COUNTY CLERK
_____ DEPUTY

STATE OF CALIFORNIA
— V S —

DEPT. (Silver (1-5-84)
ACTION NO. CR 9938

EMIL JOSEPH EKDAHL
DEFENDANT

PROBATION OFFICER'S REPORT

CASE DATA

CONTROLLED DOCUMENT

| | |
|---|---|
| DATE OFFENSE COMMITTED | October 13, 1981 |
| DATE OF ARREST | September 17, 1983 |
| INFORMATION FILED | October 24, 1983 |
| DATE OF REFERRAL | December 14, 1983 |
| REPORT FILED | |
| ORIGINAL OFFENSE | Count I: Section 187 P.C. |
| | Count II: Section 211 P.C. |
| | Count III: Section 211 P.C. |
| | Count IV: Section 245 (b) P.C. |
| | Count V: Section 245 (b) P.C. |
| CONVICTED OFFENSE | Defendant found guilty by Court of murder and two counts of Armed Robbery. Arguments for degree of murder pursuant to People vs. Dillon to be heard at sentencing. |
| DAYS IN CUSTODY | Actual: 111   Good time: 56   Total: 167 |
| LEGAL COUNSEL | James Newhouse (appointed) |
| PROBATION OFFICER | Gene Downing |
| DATE OF BIRTH | March 27, 1963 (20) |
| BIRTHPLACE | Redding, CA. |
| ADDRESS | 617 Maple Street, West Sacramento, CA. |
| TELEPHONE NUMBER | None |

OBATION 9313 7/81

    Section 187 P.C., 2nd Degree    15 years to life.

    Section 211 P.C. (2 counts)    2 years, 3 years, 3 years.

ENHANCEMENTS:   (Charged and found)    P.C. Section 12022 (a).

GOVERNMENT CODE 13967 FINDINGS:  It is respectfully recommended that the Court find that this offense is a crime of violence and that there be no penalty assessment.

FINANCIAL RESPONSIBILITY:   None.

RECOMMENDATION:   It is respectfully recommended that probation be denied and that the defendant be committed to the Department of Corrections.

Respectfully submitted,

DONALD G. FARMER
CHIEF PROBATION OFFICER

GP:gad

Dated this 30th day of December, 1983.

Gene Poening
Deputy Probation Officer

I have read and considered the foregoing report of the Probation Officer.

_____
Judge of the Superior Court

Approved for filing

-3-

PENAL CODE SECTION 2900.5 - TIME SERVED CREDITS

THE DEFENDANT WAS IN CUSTODY IN THE FOLLOWING FACILITY(S) BECAUSE OF THE CONDUCT FOR WHICH THE DEFENDANT WAS CONVICTED IN THIS CASE:

| | NAME OR LOCATION OF FACILITY | DATES FROM | TO | TOTAL DAYS |
|---|---|---|---|---|
| JAIL | Monterey County | 9-17-83 | 1-5-84 | 111 |
| CAMP | | | | |
| WORK FURLOUGH | | | | |
| HALF-WAY HOUSE | | | | |
| REHABILITATION FACILITIES | | | | |
| HOSPITAL | | | | |
| PRISON | | | | |

ANY OTHER PLACE DEFENDANT WAS ORDERED BY A COURT TO RESIDE AS A CONDITION OF PROBATION, SUCH AS A RESIDENTIAL DRUG (ALCOHOL, PSYCHIATRIC) TREATMENT CENTER.

| | Good time | | | 56 |
|---|---|---|---|---|
| TOTAL CREDITS | | | | 167 |

CIRCUMSTANCES OF THE OFFENSE: (Source: Records supplied by the Monterey County Sheriff's Department) On October 15, 1981, at approximately 10:50 p.m., Soledad Police responded to Pete's Shell (a service station and grocery store) on South Front Street regarding an armed robbery which had just occurred. Arthur Sandoval (17) was located behind the station face down in a pool of blood; there was no pulse. Victims Pamela Lewis (21) and Sal Montoya (19) stated that two subjects with ski masks entered the store, ordered them to lay face down on the floor, took $13.00 from the cash register and ran from the store. A short time later they heard two shots.

It should be noted that during the robbery Dario Ballon (approximately age 30) and Sal Melchor (26) entered the store to buy beer. They ignored the responsibles' demand that they join the other individuals on the floor. The subjects were gone by the time they returned to the counter with the beer. Ballon, Melchor

and his companion, Frank Garcia (17) remained at the scene after the arrival of the police. Arthur Sandoval had apparently been with them prior to the robbery.

The autopsy report indicates that Arthur Sandoval died from a gunshot wound to the head.

On May 20, 1983, Laura Horning contacted Detective Gordon Sonne at the Sheriff's Department regarding her concerns about her estranged husband Mark Horning being released from prison. Her concerns included the possibility that Horning may attempt to steal their child and that he may attempt to make good his threat to kill Detective Sonne. She further related that her husband Mark, Steven Horning and Joe Ekdahl had committed a murder and robbery in Soledad about two years ago. She claimed that she heard them discuss the robbery on two or three occasions. She stated that about one week prior to the offense, Mark decided to have Steven participate in the offense. After returning late one evening they talked about killing someone during the commission of the robbery.

Mark Horning was arrested on September 9, 1983. Steven Horning was arrested at his parent's home in Idaho on September 15, 1983.

Joe Ekdahl (20) was arrested on September 16, 1983. After advisement of rights, Ekdahl stated that he and Steven Horning had been given pistols by Mark Horning. They drove to Soledad, where Mark told him, "get out and go with Steven to do the job or I'll kick your ass." He followed Steven into the store. He stated that Steven ordered the victims to lie on the floor. Two Mexican adults entered the store and they refused to lie on the floor. They took the money from the register and ran from the store. Ekdahl stated that he heard two shots as they were running from the store to the vehicle which was occupied by Mark Horning. He mentioned that Mark Horning was angry because they had gotten so little money.

STATUS OF VICTIMS:   This officer was unable to contact Sal Montoya. A

-3-

message was left with Ruth Lewis' sister regarding the probable disposition.

Mrs. Mary Serna Sandoval, the mother of Arthur Sandoval, was advised of the probable disposition.

DEFENDANT'S STATEMENT:   (Source: Interview at the jail on December 13, 1983)

The defendant stated that he began associating with the Hornings a few weeks prior to the offense. He heard of the robbery plans and willingly accompanied the Horning brothers (Mark, Danny & Steven) to Soledad. He thought that Mark Horning had delegated Danny and Steven to commit the robbery. Danny, however, did not like the plan and walked away after they arrived in Soledad from Salinas. Mark Horning then threatened violence upon the defendant if he refused to accompany Steven. Mr. Ekdahl indicated that he was more afraid of Mark and Steven than he was of committing the robbery. At any rate, Mark provided them each a gun and mask and they left the vehicle to commit the robbery. The defendant stated that the vehicle was parked about one half mile from the market.

Mr. Ekdahl related that he and Steven entered the store and told the two people that they were being robbed and to lie on the floor. They had trouble opening the cash register and had to ask assistance from the male victim. They were finally able to get about $15.00 from the register. It was at about this time that two Mexican adult males entered the store. After declining to lie on the floor, they stated that they merely wanted beer and for them to go on about their business.

Mr. Ekdahl related that he and Steven were quite frightened when they ran from the store with their $15.00. The defendant stated that he was first out the door and somewhat ahead of Steven as they ran into the fog. He stated after a short time he heard two shots. He emphasized that he did not fire his weapon.

He finally reached the vehicle with Steven nowhere in sight. They drove around for a few minutes and found Steven who had apparently become lost in the

-6-

log.

Mr. Ekdahl stated that Mark was angry that they got only $15.00. They returned to Salinas and spent the night at Mark's girlfriend's home. He recalls that Mark stayed up all night looking at his police scanner.

The defendant stated the next morning Mark was packing to take a trip to the Los Padres Forest. It was at this point that Mark threatened violence against the defendant. Mr. Ekdahl mentioned that Mark always had guns and was packing guns for the camping trip. The defendant left the area for Sacramento.

The defendant, who was quite emotional during the interview, stated that he has had many nightmares since the offense. He related that "something died in me when it happened." Mr. Ekdahl recalls that Mark Horning seemed bigger and more powerful than he does at present.

PRIOR CRIMINAL RECORD:    None.

FAMILY HISTORY DATA:

| | |
|---|---|
| Father: | Emil J. Ekdahl – possibly resides in Texas – defendant has never known his father. |
| Mother: | Mona Christopher – age 46 – resides in Forest Hill, CA. (near Auburn) – bus driver for Placer County Public Transportation. |
| Step-father: | George Christopher – age unknown – marriage intact. |

Family Criminalty History:    None reported.

DEFENDANT'S MENTALITY:    The defendant was very cooperative and appears to have at least average intelligence. He has a G.E.D.

WORK RECORD:    At the time of arrest in September, the defendant had been employed six months as an apprentice longshoreman for the Port of Sacramento.

-3-

He worked approximately two weeks each month and earned $150.00 a day. He also has experience as a farm worker in the Sacramento area.

MARITAL HISTORY:    The defendant married Darlene Victor (31) on April 13, 1983. The defendant is unsure as to the stability of the marriage. Mr. Ekdahl stated that his wife is an alcoholic.

HEALTH AND HABITS:   Good health - may be seriously depressed - possible alcohol problem - sporadic heroin use in the past two years.

MILITARY HISTORY:   The defendant was in the Army for the first nine months of 1982. He did not adapt well to military life and was therefore given an early discharge.

EVALUATION:  It is this officer's opinion that the defendant's participation in the offenses was at least partially a result of his weak willed personality in combination with the malevolent influence of Mark Horning. Mr. Ekdahl was probably the ideal recruit as he could be dominated and later discarded by the much more forceful Horning. He is the type of individual who would allow Horning to park a half mile from the robbery scene while he and another stooge did the dirty work.

Regardless of Mr. Ekdahl's possibly situational involvement, the defendant must accept the consequences of a young man being murdered. The justifiable consequences for Mr. Ekdahl, whether or not he fired the weapon, are many years in state prison. Mitigating factors may justify a judgement of murder in the second degree.

-6-

## SENTENCING CONSIDERATIONS

PROBATION ELIGIBILITY:   Pursuant to P.C. Section 1203, the defendant is not eligible for probation.

POSSIBLE FACTORS IN AGGRAVATION:   (Rule 421)

1. The crimes involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under Section 12022.7.

2. The defendant was armed with or used a weapon at the time of the commission of the crime, whether or not charged or chargeable as an enhancement under Section 12022 or 12022.5.

3. It can be argued that the robberies were premeditated.

POSSIBLE FACTORS IN MITIGATION:   (Rule 423)

1. It can be argued that the defendant participated in the crime under circumstances of coercion or duress, or his conduct was partially excusable for some other reason not amounting to a defense.

2. The defendant has no prior record.

3. The defendant is ineligible for probation and but for that ineligibility would have been granted probation.

BASE TERM SENTENCE RANGE:

Section 187 P.C., 1st Degree     Death, life without possibility of parole or 25 years to life.

-7-