# EXHIBIT  D

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )
Hearing of: )               CDC Number C-79199
)
EMIL EKDAHL )
)          **RECORDS**
_____)
**COPY**

CALIFORNIA STATE PRISON

SAN QUENTIN, CALIFORNIA

JULY 1, 2005

TIME NOT DICTATED

PANEL PRESENT:

Mr. Stephen Lee, Presiding Commissioner
Ms. Noreen Blonien, Deputy Commissioner

OTHERS PRESENT:

Mr. Emil Ekdahl, Inmate (Preliminary Hearing Only)
Mr. Ed Albord, Attorney for Inmate (Preliminary
Hearing Only)

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____    No        See Review of Hearing
_____    Yes       Transcript Memorandum

**Kathryn Kenyon, Peters Shorthand Reporting**

ii

## INDEX

| | PAGE |
|---|---|
| Preliminary Hearing | 1 |
| Proceedings | 5 |
| Case Factors | 6 |
| Pre-Commitment Factors | 7 |
| Post-Commitment Factors | 8 |
| Parole Plans | 12 |
| Recess | 14 |
| Decision | 15 |
| Adjournment | 20 |
| Transcriber Certification | 21 |

--oOo--

1

1          P R E L I M I N A R Y   H E A R I N G

2          PRESIDING COMMISSIONER LEE:    Mr. Ekdahl,

3    Jerry, Emil, C-79199.  (Indiscernible) this is a

4    preliminary hearing prior to his actual Board

5    hearing.  And this is necessary because of the

6    information that I have in the file.  At this

7    point in time what I would usually

8    (indiscernible).  My name is Stephen Lee,

9    Commissioner Presiding.  We'll go to my right

10   and when it reaches your turn, sir, please give

11   us your CDC number as well.

12          DEPUTY COMMISSIONER BLONIEN:    I'm Noreen

13   Blonien, B-L-O-N-I-E-N.  I'm the Deputy

14   Commissioner.

15          INMATE EKDAHL:    Ekdahl, E-K-D-A-H-L, C-

16   79199.

17          ATTORNEY ALBORD:    Ed Albord, A-L-B-O-R-

18   D.

19          PRESIDING COMMISSIONER LEE:    We are all

20   here because I have a document that indicates

21   that Mr. Ekdahl wishes to waive attorney and

22   waive his presence.  Generally, that is

23   absolutely right.  He can do whatever he chooses

24   to do.  However, I can do so only if he is able

25   to waive his rights.  Counsel, you've had an

26   opportunity to speak with Mr. Ekdahl.  Do you

27   believe that Mr. Ekdahl can waive his rights in

2

1  regards to this hearing and his representation

2  by counsel?

3      **ATTORNEY ALBORD:**   I read his file.   I

4  attempted to discuss with Mr. Ekdahl and we

5  spoke (indiscernible) and then did not want the

6  participation.  He did convey to me that he

7  wanted to waive (indiscernible).

8      **PRESIDING COMMISSIONER LEE:**   Mr. Ekdahl,

9  let's talk.  You know your rights.

10      **INMATE EKDAHL:**   Yes, sir.

11      **PRESIDING COMMISSIONER LEE:**   That I'm

12  quite sure of.  And my problem is this, is that

13  you're (indiscernible), you had psychotropic

14  medication, you had certain bouts of depression.

15      **INMATE EKDAHL:**   Okay.  But you seem to

16  be like stereotyping or something there.  I have

17  triple CMS for depression.

18      **PRESIDING COMMISSIONER LEE:**   Oh, no, no,

19  no.

20      **INMATE EKDAHL:**   It doesn't make me

21  mentally ill, doesn't mean I'm stupid, doesn't

22  mean I don't know my right, and I ask to waive

23  this parole hearing.

24      **PRESIDING COMMISSIONER LEE:**   All right

25  (indiscernible).  The law requires me that

26  (indiscernible) EOP.  I can't even allow you to

27  waive (indiscernible), so now you're up to CMS

3

1  so I have to make that determination.   So

2  believe me, I'm not insulting you in any way.

3  In fact, I don't even think -- I wasn't even

4  thinking along those lines (indiscernible). I

5  just wanted to make sure that this was a

6  situation that you were doing it -- of that you

7  are fully understanding of what you were going

8  to do, so I will not violate your rights.   If

9  you wish to waive your hearing, you absolutely

10  have that right to waive your attorney.   I just

11  want to verify on the record that you know what

12  you're doing, that this is (indiscernible).   So

13  at this time, sir, understand that all the

14  reasons (indiscernible) 115 and at this point in

15  time you don't want to sit through this and that

16  you don't want an attorney to represent you; is

17  that correct?

18          **INMATE EKDAHL:**   It isn't because of a

19  115, but, yes, I do want to waive my right --

20  waive my right to attend a hearing.   I want to

21  waive my right to a attorney.

22          **PRESIDING COMMISSIONER LEE:**   Would you

23  like to tell me the reason?  You don't have to.

24          **INMATE EKDAHL:**   I don't think I have to

25  respond to you.

26          **PRESIDING COMMISSIONER LEE:**   No, you

27  don't.

4

1        **INMATE EKDAHL:**    I've exercised my

2    rights.

3        **PRESIDING COMMISSIONER LEE:**    You don't

4    want to?

5        **INMATE EKDAHL:**    I don't want to.

6        **PRESIDING COMMISSIONER LEE:**    All right.

7    At this point in time I'm going to make a

8    determination that (indiscernible) the ability

9    to waive (indiscernible) to waive that

10   (indiscernible) up.    Counsel, make sure you

11   (indiscernible).

12                          --oOo--

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

5

1            P R O C E E D I N G S

2        **DEPUTY COMMISSIONER BLONIEN:**    We're on

3    record.

4            **PRESIDING COMMISSIONER LEE:**    All right.

5    This is the subsequent parole consideration for

6    Emil Ekdahl, E-K-D-A-H-L, CDC Number C-79199.

7    We are currently located at San Quentin State

8    Prison.   The date is June -- no, July the 1st,

9    2005.   Inmate was received on January 16, 1984,

10    out of the County of Monterey, Case Number CR

11    9938.   The offense was murder in the second

12    degree.   The term was set at 15 years to life.

13    Minimum eligibility for parole, June the 7th,

14    1992.   We had a previous hearing and at that

15    particular hearing we determined that Mr.

16    Ekdahl, though he is triple CMS, has voluntarily

17    waived his attorney as well as his presence at

18    this hearing.   Mr. Ekdahl actually appeared

19    before the Commissioners, and we believe that

20    Mr. Ekdahl has the ability to waive his

21    appearance as well as his attorney and he has

22    the ability to represent himself and he did so.

23        **DEPUTY COMMISSIONER BLONIEN:**    Mr. Lee, I

24    just wanted to point out that we documented that

25    on tape and we have it at the beginning of this

26    hearing.

27        **PRESIDING COMMISSIONER LEE:**    Okay.

6

1  Thank you.  At this point in time, we found no

2  ADA issues.  We had an attorney speak with Mr.

3  Ekdahl and he indicated that at that point in

4  time as far as he knew that there were no ADA

5  issues.  The purpose of today's hearing was to

6  consider suitability for parole.  Since the

7  inmate has waived his appearance, I don't

8  believe it's necessary at this point in time to

9  go through the procedural aspects of the

10  hearing.  This is not his first hearing.  I

11  believe that he understands what would have

12  occurred during the hearing.  The inmate still

13  has his administrative decision, grievance

14  procedure pursuant to 0401.  At this time

15  (indiscernible) the fact that the inmate is not

16  here, we will go to the facts of the case.  The

17  facts of the case are being taken from the June

18  2005 report.  On this summary, in October 18th,

19  1981, at approximately 10:50 p.m., Soledad

20  relief officers responded to Pete's Shell on

21  South Front Street regarding an armed robbery.

22  Mr. Sandoval was located behind the station face

23  down in a pool of blood.  There was no pulse.

24  Victim's (indiscernible) Sal Montoya stated that

25  two subjects with ski masks entered the store,

26  ordered them to lay on the floor, took $13 from

27  the cash register, and ran from the store.  A

7

1   short time later, they heard two shots.   Autopsy

2   report indicates that Arthur Sandoval died from

3   gunshot wounds to the head.   Inmate was in fact

4   convicted of this offense and I will now go into

5   his juvenile record.   The report seems to

6   indicate that inmate has no juvenile

7   convictions.   Adult convictions.   Inmate at this

8   time appears to have a 470 forgery from a

9   computer, as well as a grand theft pursuant to

10   Penal Code Section 487 and a criminal conspiracy

11   to Penal Code Section 182.   All these charges

12   were dismissed on November 9th, 1983, by the

13   Sacramento County Municipal Court.   Inmate was

14   arrested for this case on September 17th, 1983.

15   Personal factors.   Inmate was born to parents

16   Emil Ekdahl, Sr., and Norma Christopher on March

17   29th, 1963.   He is an only child born to this

18   relationship.   Ekdahl never knew his father and

19   he was raised by his mother and stepfather,

20   George Christopher, in northern California.   He

21   has two brothers, Jamie and his twin

22   Christopher, and two sisters (indiscernible)

23   Sylvia Montgomery who live in California.

24   Ekdahl attended school until the ninth grade.

25   He later earned a GED.   Ekdahl was

26   (indiscernible) married Darleen Duketar in 1982.

27   He found out later the marriage was not legal

8

1   (indiscernible) common-law relationship, Ekdahl

2   has no children.  Military records indicate

3   Ekdahl served in the United States Army for nine

4   months in 1982 and did not adapt well to

5   military life.  He was granted an early

6   discharge and at the time of his arrest, the

7   inmate had been in for six months as an

8   apprenticeship -- excuse me, as an apprentice

9   for a Sacramento (indiscernible).  At this point

10  in time, I'll turn it over to Deputy

11  Commissioner to speak in regards to the inmate's

12  parole -- excuse me, programming while

13  incarcerated and his psychological reports.

14          **DEPUTY COMMISSIONER BLONIEN:**  This is

15  Mr. Ekdahl's seventh subsequent hearing.  His

16  last appearance before the Board was February

17  27, 2002, and the decision was for a one-year

18  denial.  The Panel recommended that Mr. Ekdahl

19  remain disciplinary-free and participate in

20  self-help and therapy if available.  Mr. Ekdahl

21  is currently a medium A custody level.  His

22  classification score is 19.  In order to do this

23  report, I have read the counselor's report of M.

24  Garcia dated June 2005, the psychiatric report

25  by Dr. L. Francis, F-R-A-N-C-I-S, dated 2/25/03,

26  and the doctor psych report of 2/24/99 by Dr.

27  Les Carr, C-A-R-R, PhD.  I also have done a

9

1   review of Mr. Ekdahl's C file.   Mr. Ekdahl has
2   received five 115s, the last one being on
3   4/29/04 for refusal to report to work.   He has
4   received 18 128s, and since his last hearing
5   he's received five 128s which are included in
6   the 18: July 17, 2003; April 5th, 2004;
7   4/28/2004; June 3rd, 2004; and January 14th,
8   2005 all relating to his failure to report to
9   the work assignment.   Those five 115s
10   culminating -- five 128s culminated with the 115
11   issued on 4/29/04, refusal to report to work.
12   Mr. Ekdahl has been involved in Alcoholics
13   Anonymous, alternatives to violence project
14   workshop, an anger management group.   He's
15   participated in -- he had an 11th grade
16   education, but he got his GED and he has been in
17   the Chapman College in San Quentin College
18   program.   He's received vocational training in
19   auto shop and vocational mechanics, machines,
20   and he attended the (indiscernible) men's
21   retreat held in the year 2000.   On his
22   counselor's summary, he notes that,
23   "Unfortunately, Mr. Ekdahl has been facing
24   severe medical issues which has affected his
25   progress to parole.   Due to the current
26   medication Ekdahl has been receiving, he's been
27   unable to participate in self-help therapy or

10

1   attend his current job at a regular basis.  Mr.

2   Ekdahl does have hepatitis B.  Mr. Ekdahl

3   understands the expectations of the Board and

4   knows his lack of participation will possibly

5   affect his ability to parole."  In terms of the

6   psych report, the doctor -- started with Dr.

7   Carr in 1999 who noted that Mr. Ekdahl does

8   not -- did not -- have at that point any mental

9   health issues and took him out of the triple CMS

10  program.  Mr. Ekdahl has been attempting to

11  change his name, and in May of 2004 he went on a

12  hunger strike for three days when the California

13  Superior Court decided he would not be allowed

14  to change his name.  This was a trigger of

15  depression and he continues to suffer from

16  depression, reports that the Prozac he is taking

17  helps alleviate the symptoms to a great deal.

18  The inmates taking this medication are triple

19  CMS.  So that's why the designation of triple

20  CMS is because of the depression.  Under

21  clinical diagnosis and level of functioning, GAF

22  score Axis I, a diagnosis of major depressive

23  disorder, single episode moderate polysubstance

24  (indiscernible) full sustained institutional

25  remission.  Axis II notes the history of adult

26  antisocial behavior.  Axis III denotes the

27  hepatitis C and current global assessment

11

1   functioning level of 65.   He -- in terms of

2   treatment activities, he attends weekly group

3   therapy, stress management, contact with a case

4   manager every 90 days and contact with a

5   psychiatrist as needed for the depression.   Dr.

6   Bencich, B-E-N-C-I-C-H in his 6/29/04 report

7   notes that Mr. Ekdahl as recent of May 2004 had

8   a refusing to work 115 following a personality

9   conflict with his supervisor.   The discipline

10   therapy action prior to this one was in 1997.

11   He is very proud of his ability to remain free

12   of drugs and alcohol since 1986.   The doctor

13   believes his violence risk potential would be

14   lower than that of the average lifer.

15   (Indiscernible) of control substance is a major

16   risk factor.   Beyond this, it's difficult to

17   know what other factors may provoke violence in

18   this individual since he is not inclined to

19   discuss feelings about the life crime.   Given

20   the fact that Mr. Ekdahl received the 115

21   disciplinary last month, Mr. Ekdahl is both

22   depressed and very pessimistic about the outcome

23   of this upcoming Board hearing.   As a result, he

24   is unmotivated to try to develop any alternative

25   parole plans.   He is confident that he could do

26   so quickly if the future felt more promising.

27   And with that, I'll return to the Chair.

12

1          PRESIDING COMMISSIONER LEE:     Prior to

2   Mr. Ekdahl's depression over his last 115, his

3   future plans were as follows.  The file

4   indicates that he is going to reapply for the

5   Genesis Residential Center in Seaside,

6   California, for placement in their drug and

7   alcohol residential program.  He has no response

8   at this time.  Employment, he indicates that he

9   will attempt to find work as a machinist in auto

10  mechanics or sheet metal.  I will now go to the

11  notices.  Notices pursuant to 3042 are notices

12  that are sent out to individuals as well as

13  parties who have special interest in the

14  inmate's case.  In this particular case, we do

15  have a response.  The response is from the

16  District Attorney of Monterey County that is

17  indicated June the 18th, year 2004.  Beginning

18  on the fourth paragraph, the district attorney's

19  letter indicates, "Inmate Ekdahl has always

20  maintained the robbery and the murder was

21  committed under duress from one of the

22  codefendants.  Inmate Ekdahl (indiscernible)

23  duress as one single statement from the crime

24  partner, Mark Horning," H-O-R-N-I-N-G.   "'Get

25  out and go with Steve to do the job or I'll kick

26  your ass.'  This simple statement was apparently

27  the only peer pressure needed to induce inmate

13

1   Ekdahl to commit robbery and murder.   Inmate
2   Ekdahl had never come forward to express remorse
3   or to assist in bringing his accomplices to
4   justice.   Instead he kept his silence long after
5   the killing.   The crime remained unsolved for
6   almost two years before Mark Horning's ex-wife
7   came forward and provided information leading to
8   Ekdahl's arrest.   In those two years, Ekdahl was
9   arrested for new offenses in Sacramento.   He
10  also became addicted to controlled substances.
11  Regardless of progress the inmate has made in
12  prison, the fact remains that an adequate
13  punishment must be met out to admit himself for
14  this crime.   Setting a parole date at this time
15  would not adequately punish inmate Ekdahl to
16  protect society.   Sincerely, Dean Flippo, F-L-I-
17  P-P-O, by Rick Storms, Deputy District Attorney
18  for Monterey County."   At this time I've gone
19  over the parole plans as well as the letters.
20  All right.   The fact that he has no attorney,
21  there are no questions to ask the inmate.   There
22  are no statements, the statements that we have
23  are (indiscernible) district attorney's office.
24  And I indicate there is yet a more recent letter
25  from the district attorney's office.   This
26  letter is written by Michael Greeden, Monterey
27  County Deputy District Attorney, and basically

14

1   the last paragraph corroborates the initial

2   letter that was sent and indicates, "I see that

3   Mr. Ekdahl, when asked to comment upon his crime

4   said, 'I am factually innocent. I don't discuss

5   the case.' He appears to be -- still be a

6   substantial risk to the community. For the

7   above-cited reasons, the Monterey County

8   District Attorney's Office respectfully request

9   that the Board deny parole at this time for Mr.

10   Ekdahl." At this time this hearing is

11   concluded. We will recess, deliberate, and come

12   back with a decision.

13                     **R E C E S S**

14                        --oOo—

15

16

17

18

19

20

21

22

23

24

25

26

27

15

1           CALIFORNIA BOARD OF PAROLE HEARINGS

2                    D E C I S I O N

3    DEPUTY COMMISSIONER BLONIEN:    Okay.  We're back

4    on the record.

5           PRESIDING COMMISSIONER LEE:    The Panel

6    has reviewed all information received from the

7    public and relied on the following circumstances

8    in concluding prisoner is not suitable for

9    parole and would pose an unreasonable risk to

10   danger to society and a threat to public safety

11   if released from prison.  The offense was

12   carried out in a cruel and callous manner.

13   Multiple victims were robbed and one person

14   killed.  Offense was carried out in a

15   dispassionate manner or that the crime was

16   inexplicable and very trivial in relationship to

17   the offense.  Even if we were to take the

18   inmate's (indiscernible) that he was a willing

19   participant in the robbery, but that was based

20   upon that he was threatened, we have an

21   individual who was killed, two other individuals

22   robbed.  There's a (indiscernible) occasion that

23   the inmate actually got worse after the

24   incident, never turned anyone in.  This theory

25   indicates that maybe he had more participation

26   in the crime than he alleges.  The bigger issue,

27   EMIL EKDAHL  C-79199  DECISION PAGE 1   7/1/05

16

1    of course, is the killing of the victim and

2    there seems to be no reason why the victim had

3    to be killed.  This was not a situation where

4    the victim was attempting to fight off the

5    robbers with guns or (indiscernible) anything

6    like that.  The other reason for the denial at

7    this point in time is his institutional

8    behavior.  Prior programming has only been

9    limited while incarcerated.  He has not

10   sufficiently participated in the programs.  He

11   has failed to demonstrate evidence of positive

12   change.  Misconduct while incarcerated include

13   recently a 115, April 29th, year 2004 as well as

14   five recent 128s, starting with chrono 2003

15   which is his last parole date.  He had a 115 on

16   July 2000 -- excuse me, a 128 of July 2003;

17   April of 2004; another one in April 2004; in

18   June 2004 128 and finally a recent January 2005.

19   The psychological report from a Dr. Louis PhD

20   indicates that there are concerns.  One of the

21   major concerns that the doctor had was in

22   regards to his AA 12-step program.  Basically

23   the doctor indicates that under impressions,

24   assessment of (indiscernible) 2003 details a

25   risk and return to dangerousness.  Under Dr.

26   Bencichs, B-E-N-C-I-C-H-S, reports, "If the

27   **EMIL EKDAHL   C-79199   DECISION PAGE 2 ·  7/1/05**

17

1   state absolutely asks for drug and alcohol

2   (indiscernible) finds potential compared to

3   average lifer. However, his capacity

4   (indiscernible) social status were he released

5   is compromised since he is no longer availing

6   himself for (indiscernible) of weekly support of

7   12-step meeting. This makes it more likely that

8   he will relapse. (Indiscernible) meeting.

9   Therefore, (indiscernible) he be paroled."

10  Another reason for the denial is the 3042

11  response. Inmate has read the letters from the

12  District Attorney's Office from Monterey County

13  indicating their opposition to the inmate's

14  release. Remarks. The Panel makes the

15  following findings. The prisoner continues to

16  need therapy programming and self-help in order

17  (indiscernible) discuss the (indiscernible) cope

18  and stress in a nondestructive manner as well as

19  to gather greater insight into the crime. In

20  review of the prisoner's social history and lack

21  of program participation, there's no occasion

22  that the prisoner would behave differently if

23  paroled. Prisoner should be commended for the

24  fact that he is attempting -- prisoner is

25  commended by the Commission to the fact that he

26  realized that he was unsuitable and has not

27  EMIL EKDAHL  C-79199  DECISION PAGE 3  7/1/05

18

1   attempted to mitigate his numerous violations

2   while incarcerated, and for that reason, we will

3   take that into account during the deliberations

4   regarding the amount of denial.  These factors,

5   however, do not outweigh the factors of

6   unsuitability.  Mr. Ekdahl, I suspect very

7   strongly that you will read this particular

8   transcript and I will address my comments to you

9   directly.  Sir, I know how frustrated you must

10  feel.  It appears that based upon the reports

11  that I have that indicate that you have received

12  a setback in your attempt to be free.  However,

13  I will indicate to you that that is -- that is a

14  sign of how you will react.  In society, once

15  you are released -- I'm glad that you did not

16  come into the hearing to try to excuse your 115s

17  and 128.  The Panel appreciates that.  However,

18  your therapy as well as your 12 steps are very

19  important to the Panel as all recommendations

20  are, and the fact that you have not followed the

21  recommendations causes us great concern.  So in

22  a separate decision, the Panel finds that it is

23  not reasonable to expect that parole will be

24  granted in the next three years.  Though the

25  115s and 128s suggest that you are deteriorating

26  in your programming while incarcerated, I don't,

27  EMIL EKDAHL   C-79199   DECISION PAGE 4   7/1/05

19

1    nor does the Deputy Commissioner, feel that five

2    years is warranted in this particular case.    In

3    (indiscernible) excuses, you realize that you

4    have a problem and you realize that you have to

5    put your 115s and 128s as far behind you as

6    possible.  (Indiscernible) argue and suggested

7    that the prisoner needs to look at what 115s and

8    128s in a rear-view mirror that (indiscernible)

9    that they are still a problem.  The reason why

10   we did not go to four years is because of the

11   fact that the next three years you will

12   hopefully get back to your previous ways

13   (indiscernible) continue your therapy and 12

14   steps and all the other suggestions made by

15   previous Panels.  The reason for this denial

16   also is because multiple victims were robbed and

17   one killed.  The offense was carried out in a

18   dispassionate and calculated manner.  It is

19   clear that the (indiscernible) robbery.  The

20   psychological report clearly indicates concern

21   in regards to inmate's failure to continue in

22   his 12 steps.  The prisoner recently has

23   committed a serious disciplinary violation by

24   way of (indiscernible) 115 as well as five 128s

25   since the last hearing of 19 -- excuse me 2003.

26   For these reasons, a longer period of

27   **EMIL EKDAHL   C-79199   DECISION PAGE 5     7/1/05**

20

1   observation and evaluation of the prisoner is

2   required before the Board should find this

3   prisoner suitable for parole.  At this time,

4   Deputy Commissioner, is there anything further?

5         DEPUTY COMMISSIONER BLONIEN:   Yeah.  I

6   just wanted to say -- advise the inmate to

7   resolve his work issues through the proper

8   channels and work with medical staff to address

9   his medical and psych issues in a positive

10  manner which would allow his progress and to

11  return to his self-help and, again, reiterating

12  to more 115s or 128s and you're back on the road

13  again.  So good luck to you, sir.

14        PRESIDING COMMISSIONER LEE:   This

15  hearing is adjourned.

16                    --o0o--

17

18

19

20

21

22

23  PAROLE DENIED THREE YEARS

24  THIS DECISION WILL BE FINAL ON: _____

25  YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26  DATE, THE DECISION IS MODIFIED.

27  EMIL EKDAHL   C-79199   DECISION PAGE 6   7/1/05

21

CERTIFICATE AND
DECLARATION OF TRANSCRIBER

I, KATHRYN KENYON, a duly designated

transcriber, PETERS SHORTHAND REPORTING, do hereby

declare and certify under penalty of perjury that I

have transcribed tape(s) which total one in number and

cover a total of pages numbered 1 - 20, and which

recording was duly recorded at CALIFORNIA STATE

PRISON, SAN QUENTIN, CALIFORNIA, in the matter of the

SUBSEQUENT PAROLE CONSIDERATION HEARING OF EMIL

EKDAHL, CDC NO. C-79199, ON JULY 1, 2005, and that the

foregoing pages constitute a true, complete, and

accurate transcription of the aforementioned tape to

the best of my ability.

I hereby certify that I am a disinterested

party in the above-mentioned matter and have no

interest in the outcome of the hearing.

Dated JULY 20, 2005, at Sacramento, California.

KATHRYN KENYON
TRANSCRIBER
**PETERS SHORTHAND REPORTING**