# EXHIBIT E

PSYCHOLOGICAL EVALUATION
FOR THE BOARD OF PRISON TERMS
JUNE 2005 LIFER HEARING
SAN QUENTIN STATE PRISON

PSYCHOSOCIAL ASSESSMENT

1. <u>Identifying Information:</u>  Emil Ekdahl is a 42-year old Caucasian male who is serving a 15-year to life sentence for the 1981 murder of 17-year old Arthur Sandoval. For a thorough review of background information see Section X through XI of Dr. Francis' evaluation of February, 2004 and Dr. Carr's evaluation of February, 1999.

This report is based on two, one hour interviews occurring on June 6, 2005 and June 13, 2005. Also reviewed were the medical records and the Central File including the previous psychological evaluations for the Board of Prison Terms.

**CLINICAL ASSESSMENT**

XII. Current Mental Status and Treatment Needs
    A. <u>Mental Status evaluation:</u> Mr. Ekdahl presented as an adult male of medium build and stature who was clean shaven with short, dark blonde hair worn in a combed-back style. His attention to grooming was more than adequate. He was polite and deferential and made good eye contact through out. Mr. Ekdahl was consistently engaged and cooperative. In keeping with impressions in previous evaluations, he presents as reserved but easily discusses his concerns and addresses interviewer questions in depth when encouraged. Mr. Ekdahl discussed topics of intellectual interest to him and in this sense indicative of a curious and active mind of a man who has endeavored to increase his knowledge base while incarcerated. His thought processes were logical and coherent with no evidence of psychosis current or within the past year since his last evaluation in July of 2004. At present he reports significant symptoms of depression including anhedonia and hypersomnia and lack of motivation. Observably his thinking tends to be negativistic in that his perceived life options are unrealistically restricted, limited to him. Mr. Ekdahl reports that he became quite depressed after the Prozac he relied on ceased to be effective. He reports that his depression began two years ago resulting in mental health and anti-depressant medication. He reports that the medication helped him for approximately one year before his depression returned. He was subsequently prescribed a higher dosage that was only marginally effective. As of the second interview with Mr. Ekdahl, a medical order was placed for another dose increase of which the therapeutic effects are yet to be known. Mr. Ekdahl denied suicidal and homicidal ideation or intent.

At the first interview he appeared markedly depressed and vocalized that he felt like he was "just waiting to die." He explained that some of his friends at San Quentin have died this year while waiting for parole causing him to feel that he may meet the same fate. Mr. Ekdahl explained that he feels caught between trying to stay positive and work

1

ekdahl, emil 06/16/05 C-79199

toward parole or to give up and resign himself to living the rest of his life in prison. He is pessimistic about his chances for release and questions whether he should continue to make meaningful efforts in this direction. At our second interview, Mr. Ekdahl appeared more energized and upbeat. He still expressed pessimism but was significantly more able to consider that though his chances to parole were not as great as he would like, it was still worth his efforts to meet Parole Board concerns for the possibility of release. Mr. Ekdahl explained that the improvement in his mood since the first meeting, one week before resulted from a physical work several hours prior to the interview. He was able to consider that regular physical exercise could help alleviate some of his depressive symptoms, improving his overall mood. He agreed that physical exercise was worthwhile to incorporate into his daily routine. Mr. Ekdahl does not want to attend work, citing fatigue and lack of energy have greatly reduced his ability to motivate himself. He speculated that both his depression and Hepatitis C status impact his capacity to work. As far as formal activities self enhancement activities he has attended vocational sheet metal training for 6 months while also attending college classes. Mr. Ekdahl has limited the amount of college courses he takes per semester to one to two because of his diminished energy levels for activities.

Mr. Ekdahl is no longer attending therapeutic group activities. He recently dropped a yoga class that he had attended briefly and and no longer attends his many year, weekly 12-step meetings. He ceased to go one year ago. Mr. Ekdahl explained that he no longer attends 12 step groups because he objects to the Christian religious overtones in the program. Nevertheless, he strongly asserts that he has no desire to return to alcohol and drugs and that he feels as committed as ever to maintaining his clean and sober status. He added that, were he released, he would continue to remain drug and alcohol free because he has no desire to return to his previous active addiction lifestyle. His insight and judgment were within normal limits with chronic depression an influencing factor of mild to moderate degree.

B. <u>Clinical Diagnosis and Level of Functioning/Diagnostic Impressions:</u>

  Axis I:   296.32   Major Depressive Disorder, recurrent, moderate
            304.80   Polysubstance Dependence, in full sustained institutional remission
  Axis II:  V71.01   History of Adult Antisocial Behavior
  Axis III:          Hepatitis C, Back Problems, Allergies r/o Benign Tumor, r/o Seizure Disorder
  Axis IV:           Stressors: Incarceration with Life Term and Health Problems
  Axis V:            Global Assessment of Functioning (GAF) = 60

C. <u>Current Level of Care:</u> CCCMS Program
D. <u>Treatment Activities:</u> Contact with Social Worker every 90 days
                               Contact with Psychiatrist on as needed basis
E. <u>Medications:</u> Prozac

2

ekdahl, emil 06/16/05 C-79199

F. <u>Prognosis</u>: Guarded: Monitoring important to track depressive symptoms. Mr. Ekdahl could benefit from regular exercise, returning to self-enhancing group activities, especially 12 step meetings and regular individual counseling for his depression..

XIII: <u>Review of Life Crime</u>:
    A. Inmates view of offense and attitude toward victim: assessment of causative factors: Mr. Ekdahl refused to discuss the crime event stating that he has "already been through that before and there is nothing more to say about it." When asked how he felt about his involvement in the homicide he briefly became quite emotional and expressive for him. He said that he felt great remorse and that "it breaks my heart because the last thing I wanted to do was to be a part of killing someone."

    B. Relevance of mental condition to life crime/criminal behavior. In keeping with the psychological evaluation of June 29, 2004 by Dr. Zak Benicich, at the time of the life crime is appears that Mr. Ekdahl had significant emotional difficulties from a difficult childhood. He had a harsh and restrictive stepfather while his family frequently relocated. At the same time, Mr. Ekdahl's mother did not protect him from the hurtful and overbearing step-father; a failure in parenting function on her part. The cumulative effects of these experiences probably engendered a low estimate of his self worth and the inclination toward over-submissiveness and compliance to intimidating and dominant others. At the time of the life crime it appears that the young Mr. Ekdahl complied with the apparent "ringleader's" deadly plan to commit armed robbery that killed the 17-year old victim. At the time of the commitment offense, Mr. Ekdahl's capacity to form reasoned judgment and to make good decisions were likely trumped by the psychological liabilities referenced above. In addition to unhealthy conforming tendencies and compromised self worth as causative factors in the life crime, he was also abusing drugs and alcohol on a regular basis. The routine abuse of mood altering substances may indicate that he suffered a mood disorder, likely depression that caused him to self-medicate to control for his dysphoric affect Mr. Ekdahl's than active addiction is one contributing factor to the life crime because the regular intake of substances tends to increase vulnerability to behave in ways they would not if they were abstinent.
    C. Inmate's level of insight and remorse/empathy. Since Mr. Ekdahl refused to discuss the life crime in any detail it is difficult to fully ascertain the quality of his thoughts and feelings about participating in the homicide death of the victim. However, he was able to express brief but apparently genuine regret when pressed by this examiner (previously detailed in Section XIII. A.)

XIV: <u>Assessment of Dangerousness</u>:
    A. <u>Within controlled setting</u>: At the time of the 2004 evaluation by Dr. Benicich, Mr. Ekdahl had eight disciplinary actions consisting of fighting and refusing to perform assigned tasks. As well he had several actions involving the possession and use of alcohol. He since has acquired another disciplinary action pertaining to work refusal. However, he was able to remain discipline free from 1997 to 2004 suggesting that he is capable of sustaining significant time without engaging in behaviors that can get him in trouble with prison authority. He has been drug and alcohol free since 1986. However,

ekdahl, emil  06/16/05  C-79199

within the last year he has ceased to attend 12 step meetings for his addiction issues. Yet within the controlled setting of prison he has been able to sustain his sobriety and drug free status despite the absence of 12 step support.

    B. <u>If released to the outside community:</u> Dr. Francis' assessment of February 25, 2003 details Mr. Ekdahl's risks and deterrents to dangerousness. Per Dr. Benicichs' report, his sustained abstinence from drugs and alcohol lowers his violence potential compared to the average lifer. However, his capacity to sustain his clean and sober status were he released is compromised since he is no longer availing himself of the weekly support of 12 step meetings. This makes it more likely that he will relapse than persons who regularly attend meetings. Therefore this is a risk factor were he paroled.

    C. <u>Significant risk factors/precursors to violence:</u> No doubt since he has ceased to avail himself of the maintenance support of 12 step meetings, this is a risk factor because he is more likely to relapse. Because he does not elaborate on the life crime and his view of his life crime it is difficult to accurately ascertain other possible factors that may make him at risk to the community. Although, he was able to briefly express apparent sincere regret for what he had done lowering the propensity to violence to some degree.

XV. <u>Clinician Observations/Comments/Recommendation:</u> Parole plans consist of prisoner advocating for release to Board of Prisons half-way house in the community at his hearing. This plan may have limited viability because, according to Mr. Ekdahl, the Board is less likely to make this placement for someone of his criminal status. His parole plans seem to rely on the Board making an exception in Mr. Ekdahl's case. Relying on the possibility that the Board will have to make an exception in his case is a gamble, however Mr. Ekdahl feels that his options are limited because has been unable since last year, to qualify for a residential drug rehabilitation program placement that could take him in were he released. As well he no longer has living relatives in Monterey County where he will be released and unable to move outside of its borders. As an alternative plan he intends to petition to be released to a neighboring county where he has a sister however, their relationship has been conflictual, making this plan less likely to provide him with the quality and consistency of family support and community that he needs in place to militate against the stressors he will likely experience living in society after so many years in prison. Mr. Ekdahl has dropped off his group activities including yoga and 12-step meetings since his last hearing. This appears to largely result from a recurrence of major depression in the last couple of years. Mr. Ekdahl, in my opinion, derives essential benefits from participating in group activities because of his depression and the tendency to isolate himself from others. Lack of meaningful contact with others and community is contra-indicated for persons who are depressed since social contact is a buffer against loneliness and unrealistic and negative thinking typical of this disorder.. Mr. Ekdahl needs to be more proactive in participating in goal oriented structured social activities by returning to 12 step meetings. Mr. Ekdahl is also aware that regular physical activity will significantly improve his mood states and provide him real relief. But because of the depression he also lacks the energy and motivation to sustain this on his own. He would best benefit from the structure of a yoga class or any other routinized physical activities group because the structure will enable him to sustain continuity.. It must be noted that Mr. Ekdahl struggles with health issues, most especially Hepatitis C and back problems. These health problems likely contribute to his depression both

ekdahl, emil 06/16/05 C-79199

psychologically and physiologically. The physical effects from his illness most likely contribute to a lack of energy and poor motivation. Mr. Ekdahl, as of the date of this report, is in line to receive an increase in his Prozac dosage which should help his depression somewhat. However, in this examiner's judgment, he needs a more comprehensive treatment approach than just medications and a few group activities. Studies indicate that the most effective treatment for depression involves simultaneous psychotherapy and anti-depressant medications. If possible Mr. Ekdahl would likely greatly benefit from the addition of regular one-to-one counseling sessions; most optimally on a weekly basis. The additional factor of counseling would be the most effective and expeditious avenue to treating his depression. He is also a very good candidate for talk therapy. Mr. Ekdahl asserts with the confidence of an individual who knows his capacities and limitations that were he to be released at this time, and had to make his way without support and limited resources he would succeed by relying on his survival skills and vocational training background. This is probably true, however the question of his capacity to maintain his drug and alcohol free status over time is diminished by not attending 12 step support groups, making him more of a risk for relapse and increase in his risk for violence than he was at the time of his last hearing. Mr. Ekdahl must resume attendance of 12 step meetings before consideration for parole since his risk factors have increased since last year. Were he to resume his former drug and alcohol support groups and receive adequate treatment for his depression, this examiner believes that Mr. Ekdahl would be a viable candidate for Parole release.

*Elizabeth R. Lewis, PhD*
Elizabeth R. lewis, Ph.D.
Contract Psychologist
San Quentin State Prison

5