# EXHIBIT  F
# (PART 1 OF 2)

1   SUPERIOR COURT OF CALIFORNIA

2   COUNTY OF MONTEREY

3

**FILED**

AUG 2 8 2006

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
K. Hanson  DEPUTY

4   In re                                    )   Case No.: HC 5267
                                             )
5        Emil Ekdahl (C-79199)               )   ORDER
                                             )
6                    On Habeas Corpus.       )
    _____)

7

8        Petitioner challenged the July 1, 2005 decision of the Board of Prison Hearings denying

9   him parole on seven stated grounds:  (1) the "some evidence" test fails to adequately protect his

10  procedural due process rights; (2) prison officials are effectively forcing him to accept the

11  religious tenets of Alcoholics Anonymous in violation of his constitutional rights to religious

12  freedom; (3) the Board violated his due process rights by failing to notify his trial attorney of the

13  date of the parole suitability hearing; (4) the Board's reliance upon unreliable evidence resulted

14  in a hearing and decision which was arbitrary and capricious in nature; (5) the Board's eleventh

15  reason for denying parole (lack of program participation) was improper; (6) he was illegally

16  sentenced to 2nd degree felony murder, and is entitled to receive a 1st degree felony murder

17  sentence of the death penalty; and (7) Penal Code section 3001 is unconstitutional as it applies to

18  Petitioner and his parole plans.

19       The Court found that, for the reasons set forth in its order, each claim failed with the

20  exception of Petitioner's second claim for relief.  The Court sought an informal response from

21  Respondent as to whether self-help programs unaffiliated with Alcoholics Anonymous were

22  available to inmates who sought the benefit of self-help programs.  It appears from the record

23  that Petitioner does have a variety of self-help programs available to him in the institution.  At

24  his parole suitability hearing, it was determined that Petitioner would benefit from attending self-

25  help programs and that through his attendance, he would be demonstrating his commitment to

1

1   rehabilitation and suitability for parole.  Petitioner may attend any one of the programs available

2   at the institution to achieve this purpose.  Accordingly, the petition is DENIED.

3            IT IS SO ORDERED.

4   Dated:     AUG 2 8 2006

5

6                                        Hon. Marla O. Anderson
                                         Judge of the Superior Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## CERTIFICATE OF MAILING

2

### C.C.P. SEC. 1013a

3          I do hereby certify that I am not a party to the within stated cause and that on

4      <u> 'AUG 2 8 2006 </u>  I deposited true and correct copies of the following document:

5      ORDER in sealed envelopes with postage thereon fully prepaid, in the mail at Salinas,

6      California, directed to each of the following named persons at their respective addresses as

7      hereinafter set forth:

8      Emil Ekdahl (C-79199)

9      San Quentin State Prison
       Unit 2N30-L

10     San Quentin, CA  94964

11     Office of the Attorney General
       455 Golden Gate Ave., Suite 11000

12     San Francisco, CA  94102
       Attn:  Correctional Law Section

13

14     Pam Ham, DDA
       Office of the District Attorney

15     240 Church St., Rm. 101
       Salinas, CA  93901 AUG 2 8 2006

16

17     Dated:<u>                   </u>            LISA M. GALDOS,
                                             Clerk of the Court

18

19                                       By: <u>                      </u>
                                              Deputy    K. Hanson

20

21

22

23

24

25

1

2

3

4   In re

5       Emil Ekdahl (C-79199)

6                    On Habeas Corpus.

7

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

**FILED**

JUL 2 1 2006

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
K. Hanson                DEPUTY

)
)   Case No.: HC 5267
)
)   ORDER
)
)
)

8        Petitioner challenges the July 1, 2005 decision of the Board of Prison Hearings denying

9   him parole on seven stated grounds: (1) the "some evidence" test fails to adequately protect his

10  procedural due process rights; (2) prison officials are effectively forcing him to accept the

11  religious tenets of Alcoholics Anonymous in violation of his constitutional rights to religious

12  freedom; (3) the Board violated his due process rights by failing to notify his trial attorney of the

13  date of the parole suitability hearing; (4) the Board's reliance upon unreliable evidence resulted

14  in a hearing and decision which was arbitrary and capricious in nature; (5) the Board's eleventh

15  reason for denying parole (lack of program participation) was improper; (6) he was illegally

16  sentenced to 2nd degree felony murder, and is entitled to receive a 1st degree felony murder

17  sentence of the death penalty; and (7) Penal Code section 3001 is unconstitutional as it applies to

18  Petitioner and his parole plans. The Court will address each claim in order.

19  ***Ground One: The "Some Evidence" Test.***

20       The decision of the Board of Parole Hearings to deny parole must be supported by "some

21  evidence" in the record. *In re Rosenkrantz* (2002) 29 Cal.4th 616, 626. A court will "inquire

22  only whether some evidence in the record before the Board supports the decision to deny parole,

23  based upon the factors specified by statute and regulation." *Id.*, at p. 658. The "some evidence"

24  test has been "understood as meaning that suitability determinations must have some rational

25  basis in fact." *In re Scott* (2005) 133 Cal.App.4th 573, 590. While *Rosenkrantz* seemingly would

1  allow the Board to base its decision on the commitment offense alone, courts interpreting that

2  decision have clarified that reliance on an unchanging factor absent consideration of subsequent

3  circumstances may run "contrary to the rehabilitative goals espoused by the prison system and

4  could result in a due process violation." *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910, 917; see

5  also, *In re Scott, supra*, 133 Cal.App.4th at p. 595; *In re Smith* (2003) 114 Cal.App.4th 343, 372.

6      The specified factors underlying a Board's parole decision are set forth in Penal Code

7  section 3041 and Title 15 of the California Code of Regulations, section 2402. The primary

8  consideration is public safety: if an inmate would pose an unreasonable risk of danger to society

9  if released, then the Board should find him unsuitable for parole. In making its suitability

10  finding, the Board must consider all relevant, reliable information available, including an

11  inmate's social and criminal history, his past and present mental state, and the commitment

12  offense.

13      The 2005 Board found Petitioner unsuitable for parole based upon the commitment

14  offense, his institutional behavior (lack of sufficient program participation, failure to demonstrate

15  evidence of positive change, recent receipt of one CDC-115 and five CDC-128s), his somewhat

16  unfavorable psychological report, and the objection of the Monterey County District Attorney.

17  The court has reviewed the hearing transcripts, the psychological reports, and the correspondence

18  from the District Attorney and finds that there is "some evidence" in the record to support the

19  Board's finding. The Board did not premise its determination on the commitment offense alone.

20  Rather, it determined that given Petitioner's social history, past and current depression, and his

21  reluctance to discuss his feelings concerning the crime, he would substantially benefit from

22  attending institutional programs, including AA. The rehabilitative goals of the correctional

23  system are met when inmates participate in programs that will better enable them to adjust to life

24  beyond the prison walls. The Board acted within its discretion in finding Petitioner unsuitable

25

1   for parole because, considering all relevant and reliable information available to the Board, it

2   found that releasing Petitioner at this time would jeopardize the public safety.

3   *Ground Two: Free Exercise of Religion.*

4           In Petitioner's view, the institution is forcing him to "convert[] to the AA religion." Pet.,

5   p. 38. Petitioner lost faith in God, experienced an "Evolutionary Social Darwinism

6   enlightenment and became a[n] Evolutionist believing only in science." Pet., pp. 39-40. Upon

7   making this change, Petitioner stopped attending AA classes because he deems the programs to

8   be religious in nature, in that "they require a belief in a higher power than mankind." Pet., p. 40.

9   He maintains that the Board's requirement that all lifers attend AA programs is arbitrary

10  (because the institution does not offer non-religious alcohol abstinence courses), imposes

11  religion, and is in violation of Petitioner's rights under the ADA (Petitioner's health problems

12  prevent him from working all day and attending AA classes in the evenings).

13          Under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), a

14  government agency is prohibited from imposing a substantial burden on an inmate's exercise of

15  religion unless it furthers a compelling governmental interest and is the least restrictive means of

16  doing so. Here, the Board has indicated that Petitioner's attendance at AA is more or less of a

17  prerequisite to a finding of parole suitability. However, Petitioner has failed to demonstrate that

18  his Evolutionist beliefs are, in fact, religious beliefs protected by the RLUIPA.

19          Nor has Petitioner demonstrated that the Board's requirement that he attend AA programs

20  violates his rights under the ADA. To prevail on this claim, Petitioner must demonstrate that

21  prison officials failed to provide "reasonable accommodations" with respect to his attendance at

22  AA programs because of his disability. 42 U.S.C. secs. 12131 et seq.; *Townsend v. Quasim* (9th

23  Cir. 2003) 328 F.3d 511. Petitioner has failed to make this showing.

24          Petitioner has a better argument that the actions of prison officials are arbitrary and

25  capricious, in that only religious-based alcohol abstinence courses are offered by the facility, and

3

1    attendance is, in effect, mandatory. ~~Petitioner appears to have stated a *prima facie* case for relief~~

2    ~~on the grounds of due process.~~  The Board identified one of its reasons for the unsuitability

3    finding that Petitioner had stopped attending AA classes, but did not indicate that any non-

4    religious based alcohol abstinence courses were available to Petitioner in order to achieve the

5    desired amount of programming which would lead to a finding of suitability, *despite* the

6    acknowledgement by the reviewing psychologist that Petitioner does not attend AA courses

7    because of the burden imposed on Petitioner's exercise of his evolutionary beliefs.

8    *Ground Three: Failure to Notify Trial Counsel of Hearing Date.*

9            Petitioner contends that the Board sent notices of the parole suitability hearing date and

10   time to the trial court, the Monterey County District Attorney, and to the Monterey County

11   Sheriff's Department, but not to his attorney.  Pen. Code sec: 3042.  However, Petitioner admits

12   that he had waived his right to have counsel appear at the hearing.  Accordingly, Petitioner has

13   failed to demonstrate any harm resulting from such failure, and has failed to state a claim for

14   relief on this ground.  *People v. Duvall* (1995) 9 Cal.4th 464, 474.

15   *Ground Four: Arbitrary and Capricious Nature of Parole Hearing.*

16           The Board posited that, "the inmate actually got worse after the incident, never turned

17   anyone in.  This theory indicates that maybe he had more participation in the crime than he

18   alleges."  Pet., Ex. B, p. 15.  Petitioner contends that by engaging in speculation, or as he puts it,

19   "a secret theory," the Board was in essence conducting a kangaroo court.  Pet., p. 46.  However,

20   there is no evidence before the Court that the Board based its finding of unsuitability on mere

21   speculation.  Accordingly, this claim must fail.

22   *Ground Five: Reliance on Lack of Program Participation.*

23           The Board found that Petitioner would benefit from participate in therapy sessions for the

24   purpose of dealing with stress in a non-destructive manner.  Petitioner notes that in his

25   psychological evaluation, Dr. Lewis recommended therapy for the limited purpose of treating

4

1  Petitioner's depression. Petitioner does not contend that it was Dr. Lewis' obligation to consider

2  each type of therapy available to Petitioner in the institutional setting and make a

3  recommendation as to which type of available therapy Petitioner should either avail himself of,

4  or reject at all costs. The evaluation is one of the factors considered by the Board, but not the

5  sole factor, in determining whether an inmate is suitable for parole. It was well within the

6  discretion of the Board to determine, based upon all of the evidence before it, that Petitioner

7  would be better able to adjust to life "on the outside" by participating in therapeutic sessions.

8  The Court will not disturb this finding.

9  ***Ground Six: Improper Sentence.***

10        Petitioner was convicted of 1st degree felony murder, which carries the potential penalty

11  of death, but the trial court reduced the conviction to 2nd degree felony murder, which carries a

12  term of 15 years to life. Pen. Code sec. 190(a). In Petitioner's view, a position supported by a

13  news article attached to the petition (Pet., Ex. K), inmates on Death Row are more likely to be

14  released from incarceration than inmates sentenced to a term of life imprisonment.

15        The trial court relied upon the decision in *People v. Dillon* (1983) 34 Cal.3d 441 in

16  determining that the conviction should be reduced. In *Dillon*, a 17-year old high school student

17  and his friends attempted to rob a marijuana farm that was being watched by an armed guard.

18  When the guard approached with his weapon, the boy believed his life was in danger and fatally

19  shot the guard. Because the boy was engaged in an enumerated felony at the time he pulled the

20  trigger, he was technically guilty of first degree felony murder (Pen. Code sec. 189), regardless

21  of his state of mind. The judge and members of the jury, nevertheless, believed that the

22  punishment was excessive, in violation of the prohibition against cruel and unusual punishment

23  (Cal. Const., art. I, sec. 17). The court's decision to reduce the conviction from 1st degree to 2nd

24  degree felony murder was based in part on the defendant's youth, immaturity, and lack of prior

25

5

1    criminal history, which the court held was not the prototype of a hardened criminal who posed a

2    grave threat of danger to society.

3          As *Dillon* explains, the Legislature is accorded the broadest discretion possible in

4    enacting penal statues and setting the punishment for criminal acts, but its authority is

5    circumscribed by the constitutional provision prohibiting cruel and unusual punishment.  The

6    final judgment as to whether the punishment set by the Legislature exceeds constitutional limits

7    is left to the judiciary.  In that determination, a court examines the nature of the offense and

8    offender, and the totality of the circumstances, including the motive and extent of the defendant's

9    involvement.  Here, Petitioner, an impressionable 17 year old boy with low self esteem, was

10   coerced into joining two larger, intimidating men in their plan to rob a convenience store.  Unlike

11   *Dillon*, Petitioner did not shoot the victim.  As explained by Detective Gordon Sonné who

12   investigated the crime, Petitioner was just a "skinny kid" who "was a follower and the Horning

13   'Gang' (lead by Mark) used him."  Pet., Ex. B.  Detective Sonne wrote to the Board of Parole

14   Hearings on Petitioner's behalf, stating, "I have sent many, many people to prison in the past 20

15   years, but never felt quite this unsettled about the possibility of a man spending the rest of his life

16   behind bars."  *Id.*  After carefully reviewing and considering all the evidence presented at trial, it

17   may well be that the trial judge and jury felt similarly unsettled with imposing punishment for

18   first degree felony murder, with the potential that Petitioner would be put to death for his role in

19   the offense.  In finding that the statutory punishment was sufficiently disproportionate to the

20   crime that Petitioner's constitutional protection from cruel and unusual punishment was

21   implicated, the court acted well within its jurisdiction to reduce the punishment to fit the crime.

22   *Ground Seven: Parole Plans.*

23         Petitioner concludes that the Board's requirement that he find suitable parole plans within

24   Monterey County is unjust, in that Petitioner lacks family in the area.  Petitioner has not been

25   able to submit a viable parole plan because he lacks a job commitment from a Monterey County

1  employer, and does not have a residence to parole to.  He explains that from a financial

2  standpoint, he lacks the resources to create a viable parole plan within the County, but that the

3  Board refuses to allow him to parole closer to family members.  However, the Board has made

4  specific suggestions concerning where and how Petitioner might seek employment and housing,

5  and Petitioner has failed to allege that he followed these suggestions, to no avail.  Petitioner has

6  not stated a cause of action as to this claim.  Moreover, after Petitioner does create a viable

7  parole plan and is released on parole, he will be able to request an interstate parole transfer, or a

8  transfer to another county within the state.

9       Petitioner appears to have stated a *prima facie* case for relief as to his Second Cause of

10  Action.  Accordingly, pursuant to Rule 4.551(b) of the California Rules of Court, the Court

11  directs Respondent to file an informal response to address whether any non-religious based

12  alcohol abstinence courses are offered by the facility, and if not, to identify an alternate program

13  offered at the institution in which Petitioner could participate in order to achieve the desired

14  amount of programming and potentially lead to a finding of parole suitability.  The informal

15  response shall be filed 15 days from the date of receipt of this order.  Thereafter, Petitioner may

16  file a reply within 15 days of receipt of the informal response.

17       IT IS SO ORDERED.

18  Dated:   JUL 2 1 2006

19

20                                              Hon. Marla O. Anderson
                                                Judge of the Superior Court

21

22

23

24

25

7

1

## CERTIFICATE OF MAILING

2

### C.C.P. SEC. 1013a

3    I do hereby certify that I am not a party to the within stated cause and that on

4    ___JUL 2 1 2006___ I deposited true and correct copies of the following document:

5    ORDER in sealed envelopes with postage thereon fully prepaid, in the mail at Salinas,

6    California, directed to each of the following named persons at their respective addresses as

7    hereinafter set forth:

8

9    Emil Ekdahl (C-79199)
San Quentin State Prison
Unit 2N30-L

10   San Quentin, CA  94964

11   Office of the Attorney General
455 Golden Gate Ave., Suite 11000

12   San Francisco, CA  94102
Attn:  Correctional Law Section

13

14   Pam Ham, DDA
Office of the District Attorney

15   240 Church St., Rm. 101
Salinas, CA  93901

16   JUL 2 1 2006

17   Dated:_____

18

19

20

21

22

23

24

25

LISA M. GALDOS,
Clerk of the Court

By: _____
      Deputy

      K. Hanson

8

MC-275

Name **Emil Ekdahl.**

Address **California State Prison #2N30-L.**

**San Quentin, CA. 94964.**

CDC or ID Number **C-79199.**

# FILED

JAN 2 4 2006

LISA M. GALGOS
~~CLERK OF THE~~ SUPERIOR COURT
DEPUTY

MELISSA MENDONSA

### SUPERIOR COURT OF CALIFORNIA FOR

### THE COUNTY OF MONTEREY.

*(Court)*

---

**Emil Ekdahl,     pro per ...**
Petitioner

vs.

**Respondent**
**S. W. Ornoski, Warden of S.Q.**

PETITION FOR WRIT OF HABEAS CORPUS

No. HC 5267

*(To be supplied by the Clerk of the Court)*

---

## INSTRUCTIONS – READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

*Amended complaint pages 28 - 37 removed by Petitioner*

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 (Rev. January 1, 1999)                PETITION FOR WRIT OF HABEAS CORPUS
Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

[X] A conviction          [X] Parole

[X] A sentence            [ ] Credits

[ ] Jail or prison conditions   [ ] Prison discipline

[X] Other (specify): Parole Hearing before the Board of Prison Hearings.

1. Your name: Emil Ekdahl.

2. Where are you incarcerated? San Quentin State Prison of California U.S.A.

3. Why are you in custody? [X] Criminal Conviction   [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reasons for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      One count of use of a weapon during a robbery. Two counts of robbery. One count of accomplice to Second degree felony murder theory.

   b. Penal or other code sections: § 12022 (1981 era statute), § 211, § 31, § 189, § 190.

   c. Name and location of sentencing or committing court: Monterey County Superior Court at 240 Church Street. P.O. Box 1819. Salinas, CA. 93902.

   d. Case number: CR-9938 & CR-9942.

   e. Date convicted or committed: December 14, 1983.

   f. Date sentenced: January 05, 1984.

   g. Length of sentence: 16 years to life.

   h. When do you expect to be released? 2006.

   i. Were you represented by counsel in the trial court? [X] Yes. [ ] No. If yes, state the attorney's name and address:

      James H. NewHouse.

      631 Arrego Street. Monterey CA. 93940.

4. What was the LAST plea you entered? *(check one)*
   [X] Not guilty [ ] Guilty [ ] Nolo Contendere [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?
   [ ] Jury [X] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

ii.

1                           Table of Contents.

2

3   i.     MC-275 form pg. 1.

4   ii.    MC-275 form pg. 2.

5   iii.   Table of Contents. pg.   1.

6   iv.   Table of Exhibits.   pg.   1.

7

8   1 - 37.       Ground One Contention.  (MC-275 form pg. 3.)

9   38 - 41.     Ground Two Contention.  (MC-275 form pg. 4.)

10   42 - 45.     Ground Three Contention.  " ".

11   46 - 47.     Ground Four Contention.   " ".

12   48 - 53.     Ground Five Contention.   " ".

13   54.          Ground Six Contention.    " ".

14   55.          Ground Seven Contention.  " ".

15   56.          MC-275 form pg.   5.

16   57.          MC-275 form pg.   6.

17

18

19

20

21

22

23

24

25

26

27

28

Table of Exhibits.

A:  BPH Hearing Trans.  pp.  1 - 14.  line(s)

B:  BPH Denial Trans.  pp.  15 - 20.  line(s)

C:  Detective Sonne's Mar 06, 1991., Letter.

D:  Probation Officers Report (POR) pp. 1 - 7.

E:  Trial Court Sentencing Trans. pp. 1 - 6.

F:  Prior BPT Denial Trans.  Feb. 27, 2002., pp. 33 - 37.

G:  Monterey County District Attn. § 3042 reply to notice.

H:  Prior BPT Denial Trans.  Mar. 26, 2003., pp. 62 - 70.

I:  Dr. Lewis's Life Prisoner Evaluation.  pp.  1 - 5.

J:  Dr. Bencichs's Psychological Evaluation.  pp.  1 - 3.

K:  BPH Waiver Forms (#1001A Rev. 10/89).  pp.  1 - 8.

L:  New York Times Oct. 02, 2005., Internet.  pp.  1 - 9.

M:  Ca.Sup.Ct. No. S117967.  Summery Denial. Apr. 21, 2004.

N:  CDC&R Correctional Counselor (CC-I).  pp.  1 - 8.

O:  Except from book 'Life Extension' ISBN: 0-446-37683-3.

P:  CCPOA Internet Download.  pp. 1 - 4.

Q:  Inmate Request for Interview Form to C&PR on Feb. 20, 2005.

R:  CDC&R 602 Grievance Appeal. Mar. 14, 2005.  pp. 1 - 4.

S:  Life Prisoner Parole Consideration Worksheet. pp. 1 - 5.

T:  California Penal Code § 3042 notices.  pp. 1 - 4.

S:  BHP/CDC&R Memo of unknown trial attn. address.

iv.

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The ' some evidence test ' of court review of the BPH's violation of petitioner's due process rights, is not sufficient enough to protect petitioner's procedural due process rights under the clauses of the California or Federal Constitutions.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

On July 01, 2005., the Board of Prison Hearing's (BPH) also formally known as the Board of Prison Terms (BPT) held a pro forma parole hearing for petitioner. Petitioner waived his right to attend the parole hearing and waived his right to have an attorney represent him pursuant to Ca. Pen. Code § 3041.7

As a result of these waivers the BPH arbitrarily and capriciously concluded this automatically meant petitioner was unsuitable for parole. See EX. A: BPH Hear. Trans. pp. 6 line(s) 5 - 12.

Petitioner contends that the waivers are constitutional rights and the parole hearing should be just as fair, otherwise they are not really rights. Petitioner did not stipulate to being unsuitable, but that is exactly what the BPH assumed. See EX. B: BPH Denial Trans. pp. 17 - 18 line(s) 24 - 26; 1 - 4.

continued.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

In re Dannenberg (2005) 34 Cal. 4th 1061

Briggs v. Terhune (9th Cir. 2003) 334 F.3d. 910

U.S. v. Nixon (1974) 418 U.S. 683 41 L.Ed. 2d 1039 94 S.Ct. 3090.

Ag. Labor Relations Bd. v Sup. Ct. (1976) 16 Cal. 3d. 392, 401 128 Cal Rptr. 128.

FACTS.

1   The suitability hearing on July 01, 2005., was the 7th sub-
2   sequent parole hearing.  The offense as listed below is taken from
3   the Probation Officer's Report (POR).

4   On October 18, 1981, at approximately 10:50 p.m., Soledad
5   Police responded to Pete's Shell (a service station and grocery
6   store) on South Front Street regarding an armed robbery which
7   had just occurred.  Arthur Sandoval (17) was located behind the
8   station face down in a pool of blood; there was no pulse.
9   Victims Pamela Lewis (21) and Sal Montoya (19) stated that two
10  subjects with ski masks entered the store, ordered them to lay
11  down on the floor, took $13.00 from the cash register and ran
12  from the store.  A short time later they heard two shots.

13  It should be noted that during the robbery Dario Bailon
14  (approximately age 30) and Sal Melchor (26) entered the store
15  to buy beer.  They ignored the responsibles' demand that they
16  join the other individuals on the floor.  The subjects were gone
17  by the time they returned to the counter with the beer.  Bailon,
18  Melchor and his companion, Frank Garcia (17) remained at the
19  scene after the arrival of the police.  Arthur Sandoval had
20  apparently been with them prior to the robbery.

21                              FACTS

22  The BPH found petitioner unsuitable for parole for the reason
23  s stated in the Denial Transcripts.  Hereafter referred to as
24  denial reasons # 1 - 12.  The denial reasons as taken from the
25  denial transcripts are listed below:

26

27      #1.)  The offense was carried out in a cruel
28              callous manner.

1.

1

2

.3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACTS.

#2.)  Multiple victims were robbed and
      one person killed.

#3.)  Offense was carried out in a
      dispassionate manner or that the
      crime was inexplicable and very
      trivial in relationship to the
      offense.

#4.)  Even if we were to take the
      inmate's (indiscernible) that he
      was a willing participant in the
      robbery, but that was based upon
      that he was threatened, we have
      an individual who was killed, two
      other individuals robbed.

#5.)  There's a (indiscernible) occasion
      that the inmate actually got worse
      after the incident, never turned anyone
      in.  This theory indicates that maybe he
      more participation in the crime than he
      alleges.

FACTS.

#6.)  The bigger issue, of course is the
      killing of the victim and there seems
      to be no reason why the victim had to
      be killed.  This was not a situation
      where the victim was attempting to
      fight off the robbers with guns or
      (indiscernible) anything like that.


#7.)  The other reason for the denial at
      this point in time is his institutional
      behavior.  Prior programming has only been
      limited while incarcerated.  He has not
      sufficiently participated in the programs.
      He has failed to demonstrate evidence of
      positive change.


#8.)  Misconduct while incarcerated includes
      recently a 115, April 29th, year 2004 as
      well as five recent 128's, starting with
      chrono 2003 which is his last parole date
      He had a 115 on July 2000 -- excuse me a
      128 of July 2003; April of 2004; another
      one in April 2004; in June 2004 128 and
      finally a recent January 2005.

3.

FACTS.

#9.)  The psychological report from a Dr. Lewis
Phd indicates that there are concerns.
One of the major concerns that the doctor had
was in regards to his AA 12-step program.
Basically the doctor indicates under impress-
ions, assessment of (indiscernible) 2003
details a risk and return to dangerousness.
Under Dr. Bencichs, " If the state absolutely
asks for drug and alcohol (indiscernible) finds
potential   compared   to   average   lifer.   However,
his capacity (indiscernible) social status were
he released is compromised since he is no longer
availing himself for (indiscernible) of weekly
support of 12-step meeting.  This makes it more
likely he will relapse.  (indiscernible)
meeting.  Therefore, (indiscernible) he be
paroled. "

#10.)  Another reason for the denial is the 3042
response.  Inmate has read the letters from
the District Attorney's Office from Monterey
County indicating their opposition to the
inmate's release.  Remarks.  The Panel when

4.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACTS.

#11.)  The Panel makes the following findings.
The prisoner continues to need therapy
programming and self-help in order indiscer-
nible) discuss the (indiscernible) cope and
stress in a nondestructive manner as well as
to gather greater insight into the crime.
In review of the prisoner's social history
and lack of program participation, there's
no occasion that the prisoner would behave
differently if paroled.

#12.)  Prisoner should be commended for the fact
that he is attempting -- prisoner is commended
by the Commission to the fact that he realized
that he was unsuitable and has not attempted
to mitigate his numerous violations while
incarcerated, and for that reason, we will
take that into account during the deliberat-
ions regarding the amount of denial.

See EX. B: BPH Denial Trans.  pp. 15 - 20  line(s)

5.

1                       Ground 1.

2                   CONTENTIONS

3

4      Petitioner contends that the fundamental purpose of due

5 process of law, even the laws of our government is based upon

6 fairness. That concept of fairness of the Constitutions, federal

7 law, and state law applies to the Individual. Even down to the

8 least individual of our society the convicted murder.

9      The parole term suitability hearings before the California

10 BPH must provide due process of law. And that due process means

11 something more than a mere pro forma parole hearing. It means

12 that due process of law is there to insure that a fair hearing

13 is held. Petitioner did not receive a fair hearing and it is

14 petitioner's contention that a court review that only looks to

15 see if there is ' some evidence ' to support the BPH decision

16 is not sufficient enough to protect a prisoners' due process

17 rights. A reviewing courts some evidence test would cause a

18 arbitrary and capricious pro forma parole hearing to pass review.

19 The problem with that standard is that there will always be some

20 evidence to support the BPH. Especially if all the BPH has to

21 is recite some of the CCR title 15 regulations and slap one or

22 facts from any prisoner's murder and presto a pro forma hearing was

23 had. And yet the controlling parole statue Ca. Pen. Code § 3041

24 (a) states that parole for murder is normal.

25

26      Petitioner denies each and every one of the BPH's 12 denial

27 reasons. Petitioner will lay out a contention for each denial

28 reason as due process violation also some denial reasons will

1                         Ground 1.

2                      CONTENTIONS

3    be raised as separate constitutional grounds herein this petition

4    for writ of habeas corpus.

5        Petitioner contends the BPH just regurgitated some boiler-

6    plate of the CCR title 15 regulations and added some fact from

7    the offense to an illegal repromulgation of the regulations.

8    The one added fact is from denial reason #2:

9

10         " Multiple victims were robbed and one

11            person killed. "

12

13      The actual regulation CCR Title 15 § 2402 reads:

14

15       (c)(1)(A) Multiple victims were attacked, injured

16          or killed in the same or separate incidents.

17

18       Petitioner contends that regulations give raise to the same

19   due process of law rights as any law.  The title 15 regulation

20   as promulgated does not fit petitioners offense.  The actual

21   wording of the regulation means victims were attacked coma injured

22   There can be no separation of attacked, injured.  Together the

23   phrase attacked, injured means as in physically attacked and

24   injured.  While in petitioners offense two victims were robbed

25   by being made to lay upon a floor, they were not physically

26   harmed in any way.  What the BPH has done is to repulmagate

27   the regulation to fit the offense instead of weighing the offense

28   to see if the offense fits the regulation.

1                              Ground 1.

2                             CONTENTIONS

3        The BPH repromulgation was done without proper OAL procedure.

4   U.S. v. Nixon (1974) 418 U.S. 683, 41 L.Ed.2d. 1039.

5   Ag.L.Rl.Bd. v Sup.Ct. (1976) 16 Cal.3d. 392, 128 Cal.Rptr. 183.

6

7        Petitioner contends That the California felony murder theory

8   coupled with Ca. Pen. Code § 31 co-conspirater liability, and

9   the particular facts of the offense prove that there is no truth

10  to the BPH's unsuitability findings # 1 - 3; that the offense

11  was cruel and callous, dispassionate, inexplicable, [or] trivial.

12  Nor is the BPH considering petitioner as an individual pursuant

13  to Ca. Pen. Code § 3041(b); by acknowledging the above mentioned

14  facts. The BPH acted arbitrarily by placing the full weight

15  of the offense onto petitioner while not considering the facts

16  from the offense as they apply to petitioner as an individual.

17       Individually petitioner was forced to participate in the

18  offense under a credible threat of duress. This duress was

19  more than sufficient enough to cause the trial court to lower

20  the degree of murder to 2nd degree felony murder pursuant to

21  the individual culpability plus cruel and unusual punishment

22  holdings of People v Dillon (1983) 34 Cal.3d. 440. This was

23  small occurrence because as Dillon characterizes it: A proport-

24  ionality finding of cruel and unusual punishment is the exception

25  to the rule and not the normal course of action for a trial

26  court to make. Petitioner's Dillon reduction in degree of murder

27  is an exceptional event premised upon petitioners duress defense.

28
                                   8.

Ground 1.

CONTENTIONS

It is a major, exceptional, court found true fact, that the BPH arbitrarily and capriciously, did not consider in the absentee parole hearing held on July 01, 2005.

Particularly troubling is the BPH's unsuitability finding of dispassionate. As the dictionary defines it dispassionate means to be without emotion. While duress is defined by court case law holdings to mean:

Duress is defined as " a direct or implied threat of force violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to

       1.) Perform an act which otherwise they would not have performed.

      2.) Acquiesce in an act to which one would not have submitted.

People v Cochran (2002) 103 Cal.App.4th. 8, 13.

Duress is not dispassionate it is a form of fear. See the following case law for a definition of what fear means: People v Pitmon (1985) 170 Cal.App.3rd. 38, 51.


Petitioner contends that the robbery was only carried out after being given a credible death threat by co-conspirater Mark Horning. In fact anyone of the Horning brothers would have killed petitioner on, or for Marks behalf, especially Danny Horning. The Detective who investigated petitioners commitment Detective Gordon Sonne' wrote a letter to the then BPT supporting

9.

Ground 1.

CONTENTIONS

petitioners parole. In that letter Dect. Sonne characterized the Horning brothers as a gang. Petitioner contends this is the same as a criminal street gang.

See Ex. C: Detective Sonne's Mar 06 1991 Letter.

See Ex. D: Probation Officers Report.


Petitioner offers the following two case laws to support the contention that the Hornings threat was credible.

People v Horning (1984) 150 Cal.App.3d. 1015, 1017 - 1018 198 Cal.Rptr. 384.

People v Horning (2005) 34 Cal.4th. 871, 22 Cal.Rptr.2d. 305.


In the first case law from 1984 where its an appeal by Mark Horning where Danny Horning is also involved.

In another robbery, unrelated to petitioner's conviction, Mark Horning threatens the victim Mr. Sears with a credible threat, as follows:

    " he [Mark] always got even with the people he thought
        didn't do him right"

Later that same day, Mark and Dannys erratic and aggressive behavior frightened the victim Mr. Sears.

Several hours later the same day the victim Mr. Sears was attacked, injured in his barn. Someone [Mark or Danny] hit Mr. Sears in the head twice with a five pound sledge hammer. The victim Mr. Sears was then threatened with a pistol and personally robbed.

10.

Ground 1.

CONTENTIONS

1    The reader should note from this case law (150 C.A.3rd. 1015)
2
3 that a police stop of the Hornings near the victim Mr. Sear's
4 residence, did not result in an arrest because Mark Horning
5 was identified as a Prison Guard employee. Mark Horning was
6 Correctional Officer and due's paying member of the CCPOA when
7 he credible threatened petitioner. In short an authority figure.
8 People v. Pitmon (1985) 170 Cal.App.3rd. 38, 51.
9

10

11    The second case law People v. Horning (2005) 34 Cal.4th.
12 871., is a death penalty appeal of Danny Horning occurring some
13 years after petitioner's commitment offense. Danny Horning
14 never did time for his Ca. Pen. Code § 31., personal culpability
15 in petitioner's commitment offense of California felony murder.
16 The reason Danny Horning never received any punishment for his
17 role was because the Monterey County District Attorney picked
18 Danny over petitioner, to turn state's evidence, and immunity
19 from prosecution. Yet the District Attorneys star witness
20 Danny Horning would go on to commit several danger to society
21 felonies, including murder-robbery were the victims head and
22 hands were cut off. It's interesting that Danny never came
23 forward to turn anyone in for two years. In fact nobody invol-
24 ved in this case came forward, as the District Attorney complains
25 of in his Ca. Pen. Code § 3042 reply to the BPH. And Mark
26 Horning never received any punishment for his personal culpab-
27 ility, as Danny says from Death Row Mark paid the D.A. off to
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Ground 1.

### CONTENTIONS

drop all charges against Mark Horning, Terry Jones, and Shelly Bragi. And the BPH never took any of this into consideration in the July 01, 2005., waived absentee parole hearing.

It is clear from this later death penalty appeal that Danny Horning was dangerous and dangerous at the time of petitoner's commitment offense. Had petitioner not robbed the store Mark and Danny would have killed petitioner. See Ca. Pen. Code § 26 (6)(8)., were as the trial court used the duress of this statue's holding to lower the degree of murder to second degree. However the trial court committed a sentencing error because as soon as, the court lowered the degree it should have followed through and found petitioner factually innocent of the offense pursuant to Ca. Pen. Code § 26 (6)(8), as second degree felony murder is not punishable by the death penalty.

Issue raised as Ground 5 of this here petition for habeas corpus.


Petitioner contends that the BPH denial reason # 4:


" Even if we were to take the inmates (indis-
cernible) that he was a willing participant
in the robbery, but that was based upon that
he was threatened, we have an individual who
was killed, two other individuals robbed. "


And including for the same reasons the BPH denial reason # 6.,

12.

Ground 1.

CONTENTIONS

are a violation of petitioner's due process rights and petitoner's right to a court review that is sufficient enough to protect those rights because the current ' some evidence ' test is not sufficient to protect those said rights.

The BPH arbitrarily decided the duress and second degree Dillon proportionality/personal culpability factors found true by the trial court are irreverent. It's easy to tell the BPH is doing this by what their saying in the opening sentence of denial reason # 4: " Even if we were to take the ... " Clearly this means the BPH is not taking the relevant factors into consideration. See Ramirez quote in the Scott case law:

> " The gravity of the commitment offense or
> offenses alone may be sufficient basis for
> denying parole application, so long as the
> Board [BPH] does not fail to consider all
> other relevant factors "

In re Ramirez (2001) 94 Cal.App.4th. 549, 569 114 Cal.Rptr.2d. 381. Quoted from:

In re Scott (2005) ____Cal.App.4th. ____,DJDAR 12450, 12456. See Ex. B: BPH Denial Trans. pp. 15 - 16 line(s) 17-22 & 1-6.

The BPH arbitrarily ignored the relevant factors of duress in denial reason # 4. And in denial reason # 4 and # 6 the BPH

13.

Ground 1.

CONTENTIONS

primary consideration for all of the unsuitability factors stems from the gravity of the commitment offense alone.  As Quoted:

> We have an individual who was killed,
> two other individuals robbed. "

See Ex. B: BPH Denial Trans. pp. 15 line(s) 20 - 21.

The BPH further places emphases on the gravity of the commitment offense in their denial reason # 6:

> " The bigger issue, of course, is the killing
> of the victim and there seems to be no reason
> why the victim had to be killed.  This was
> not a situation where the victim was attemp-
> ting to fight off the robbers with guns or
> (indiscernible) anything like that. "

See Ex. B: BPH Denial Trans. pp. 15 -16 line(s) 26, 1 - 6.

Petitioner contends the BPH with these two denial reasons is not judging whether petitioner would pose an unreasonable public safety risk, but the BPH is seeking retribution, punishment, and even vigilantism.  Nobody, not even the Monterey County District Attorney thinks petitioner is dangerous just that petitioner needs more punishment.

See Ex. G: Monterey County District Attn. 3042 reply.

14.

Ground 1.

CONTENTIONS

Petitioner contends that the BPH is not judging petitioner as an individual, nor considering petitioner's 22 years incarceration. Ca. Pen. Code § 3041(b) requires both individual consideration, and that in judging the gravity of the offense, it also includes, the concept of timing. The BPH arbitrarily disregarded the timing and placed undo emphases upon the gravity of the commitment offense alone in judging whether or not petitioner would pose an unreasonable public safety risk.

See the Carl Irons case law quote in the Scott case law:


" Yet, the predictive value of the commitment
offense may be very questionable after a long
period of time 9. "

Iron v. Warden of State Prison - Solano (E.D. Cal. 2005) 358 F.Supp.2d. 936, 947 fn. # 2; Quoted from:

In re Scott (2005) ____Cal.App.4th. ____, DJDAR 12450, 12456.


" Thus, the denial of release solely on the
basis of the gravity of the commitment
offense warrants especially close scrutiny"

In re Scott (2005) ____Cal.App.4th. ____, DJDAR 12450, 12456. See Fn. # 9.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ground 1.

CONTENTIONS

Petitioner contends that the BPH denial reason # 7:

" The other reason for the denial at this point
in time is his institutional behavior.  Prior
programming has only been limited while incar-
erated.  He has not sufficiently participated
in the programs.  He has failed to demonstrate
evidence of positive change. "

See Ex. B: BPH Denial Trans. pp. 16  line(s) 8 - 12.

The BPH denial reason # 7 is arbitrary and capricious
because no prior BPT unsuitability findings, or recommendations
of what petitioner could do to become parole suitable, have
stated  that  petitioner  is  not  sufficiently  programing.
At petitioners prior parole hearing he was told to get his ducks
in a row because he is getting close.  How could petitioner
be getting close if his prior programming was not sufficient
?  See Ex. H: Prior BPT Denial Trans. pp. 62 - 69 line(s) ____

The deference between the two hearings is the last parole
hearing and the present parole hearing is; in the last hearing
from Mar. 26, 2003., the commissioners were Governor Davis,
a democrat, appointees, and in the present hearing from Jul.
01, 2005., the commissioners are Governor Scwarzenegger, a
republican, appointees.  The two groups of commissioners did

16.

1

Ground 1.

2

CONTENTIONS

3  not communicate with each other.  The two political groups have

4  the same illegal no parole agenda, but do not rely on what a

5  prior governors commissioners may have said.  In this case

6  the new BPH acted without considering what petitioner had been

7  told by prior parole panels concerning his programming.

8  Petitioner further contends that he has had a total of

9  six prior parole hearings were he was found unsuitable.

10 As a matter of procedural due process of law rights petitioner

11 had the right to a written notice of what he might do concerning

12 prison programming in order that he may become parole suitable.

13 In each of the prior six parole hearing written notices the

14 BPT made certain programming request of petitioner.

15 Petitioner has completed each and every one of those BPT request.

16 So at what point in time would petitioner know from the BPT

17 that his prison programming was not sufficient enough for this

18 future neo-con parole commissioners appointed by a Republican?

19

20 Petitioner has completed the vocational trade of Automotive

21 Service with degrees from the Automotive Society of Engineers.

22 Petitioner has completed the vocational trade of Machinist with

23 a State of California Certificate, as well as, a Machinist Union

24 Certificate.  Petitioner has completed the Category X program

25 with a low to none violence potential something the BPT recommend-

26 ed.  Petitioner has completed the BPT recommended groups of

27 "anger control", and "assertive behavior".

28

17.

Ground 1.

CONTENTIONS

Petitioner has completed the workshop "Alternatives to Violence"
Petitioner has completed the program from the Catholic Church
known as KAIROUS. Petitioner has completed several college
classes and is close to earning an A.A. degree. Petitioner
has participated in the Alcoholics Anonymous program for over
twenty some years; a program recommended by every prior BPT
panel. Note up until two years ago petitioner attended this
program until he became an evolutionist and now objects to the
program as being religious. See ground 2., of this here petition
for writ of habeas corpus where petitioner raises the first
amendment objection to further participation in A.A.

No prior BPT parole panel said that this was not sufficient
so the current BPH parole panel's finding is arbitrary.
See Ex. A: BPH Hearing Trans. pp. 9 line(s) 12 - 21.

Petitioner contends that the BPH should of appointed a
CDC&R correctional counselor pursuant to Ca. Pen. Code § 3041.5
(3) because petitioner waived his constitutional right to attend
the hearing. Once a prisoner waives this attendance right the
BPH is required to hold an absentee parole hearing.
The absentee parole hearing is to be just as legally fair as
a parole hearing where the prisoner attends. The reason is
because petitioner did not waive any other procedural rights,
only the first right to attend. Because the BPH did not appoint

18.

Ground 1.

CONTENTIONS

a CDC&R person the BPH weigh of the evidence was lopsided and arbitrarily construed in favor of the government.


Petitioner contends that the denial reason # 8:


" Misconduct while incarcerated includes

recently a 115, April 29th, year 2004 as well

as five recent 128's, starting with chrono

2003 which is his last parole date.   He had

a 115 on July 2000 -- excuse me a 128 of July

2003; April 2004; another one in April 2004;

in June 2004; 128 and finally a recent January

2005"

See Ex. B: BPH Denial Trans. pp. 16 line(s) 12 - 18.   also
pp. 19 line(s) 3 - 12.
are an arbitrary action by the BPH because the BPH has an illegal
five years worth of denials police for any inmate who recieves
a CDC&R disciplinary report known as a CDC&R 115.   The evidence
of this policy is in the statement of the commissioner on page
19 of the denial transcript where it says that petitioner needs
to look in the rearview mirror and put this far behind him.
Obviously the BPH is using a metaphor meaning a substantial
amount of time needs to pass from the last 115 or 128 Chrono
before petitioner can be found parole suitable.   This policy
is illegal because Ca. Pen. Code § 3041(b) restricts the BPH's

1

Ground 1.

2

CONTENTIONS

3  review to the gravity or timing of past or current convicted

4  offenses. A CDC&R 115 or 128 Chrono are not convicted offenses.

5  The BPH also broke petitioner off, a three year denial behind

6  the CDC&R 115 from April of 2004, and the Jan. 2005 CDC&R 128

7  Chrono. The 115 was for quitting a prison job because of

8  inadequate ventilation from the wood dust and petitioner does

9  not want to die from wood workers disease. And petitioner was

10 placed in the job after a personality conflict with a Prison

11 Industry Authority (PIA) supervisor.                    . the

12 PIA supervisor for running heroin and marijuana into San Quentin,

13 and having sex with the :        Muslims inmates. As a result

14 that supervisor no. longer works for San Quentin PIA, but as

15 get back at petitioner he was placed in a Hand sanding part

16 of PIA where no inmate wants to work. The wood dust is bad

17 because there is no ventilation in that part of the PIA factory.

18 Petitioner was not allowed to move out of that work position,

19 so he quit. However how does this make petitioner an unreasonabl

20 e risk to public safety ? Petitioner contends that this is

21 analogous to quitting a job in society while it may not pay

22 the bills - it only means new employment must be had.

23 The reason the BPH gave petitioner a three year denial

24 of parole is because they are under a court order to catch up

25 on over due parole hearings. Petitioners July 01, 2005., parole

26 hearing was almost a year late. So the BPH is giving out multi

27 year denials to catch up on their overdue backlog of parole

28

20.

**Ground 1.**

CONTENTIONS

hearings and only because a court has ordered them to do so. The BPH has given other life inmates with CDC 115's dates. Some of the other life inmate CDC 115's were as recent as petitioner's year old 115. Some of the other life inmate's CDC 115 were for rule violations far worse than petitioner's quitting a prison job CDC 115. See the Smith case law:

In re Smith (2003) 109 Cal.App.4th. 489, 134 Cal.Rptr.2d. 781.


Petitioner contends that the BPH denial reason #9 and the related BPH denial reason # 11, are arbitrary and capricious because the BPH misread the psychological reports in a way that was to support their predetermined pro forma parole farce. BPH denial reason # 9:


> " The psychological report from a Dr. Lewis
> Phd indicates that there are concerns. One
> of the major concerns that the doctor had
> was in regards to his AA 12-step program.
> Basically the doctor indicates under inpres-
> sions, assessment of (indiscernible) 2003
> details a risk and return to dangerousness.
> Under Dr. Bencichs, " If the state absolutely
> ask for drug and alcohol (indiscernible)
> finds potential compared to average lifer.
> However, his capacity (indiscernible) social

Ground 1.

CONTENTIONS

status were he released is compromised since
he is no longer availing himself for (indis-
cernible) of weekly support of 12-step meet-
ing.  This makes it more likely he will
relapse.  (indiscernible) meeting.  Therefore,
(indiscernible) he be paroled. "

See Ex. B: BPH Denial Trans. pp. 16 - 17 line(s) 19-26, 1-9.

See Ex. I: Dr. Lewis's Life Prisoner Evaluation pp. 1 - 5.

See Ex. J: Dr. Bencich's Psychological Evaluation pp. 1 - 3.

The first thing to notice is an incredible usage by the
BPH of the word indiscernible in parentheses.  The word indis-
cernible always appears in the sentences in a way that would
tend to have a reader fill in the blank with a negative con
-notation reflecting badly upon petitioner.

Both Doctors Lewis and Bencich are agents of the State
of California Government via the BPH and CDC&R.  It is in the
Doctor's official capacity that they violated petitioner's rights
to be free of Government sponsored religion.  12-step programs
such as AA are religious programs and as such petitioner contends
it violates his first amendment rights.  This usage of religion
by the Doctors has caused the BPH to deny parole on the basis
of petitioner's refusal to participate in religion because of
his belief in science and evolution. See ground 2 of this petition.

22.

Ground 1.

CONTENTIONS

Both Doctors have in their evaluations placed petitioners violence level at lower than the average lifer. Also both Doctor 's have under the DSM - IV Axis II, diagnosed: no major mental illness, nor personality disorder. Petitioner is not a Social Path. These are the relevant portions of the psychological reports that the BPH arbitrarily ignored. While both Doctors expressed concern about possible alcohol usage, both also noted petitioner has been clean and sober since 1986. If I am not using alcohol while incarcerated in the most harsh punishment environment why would I drink out there in paradise ?

Neither the BPH nor the Doctors have offered petitioner an alternative non-religious alcohol abstinence program in the penitentiary, nor upon future parole. This is arbitrary because the BPH could order such a non-religious alcohol program as part of petitioner's parole requirements.

Petitioner contends that the BPH denial reason # 12:

> " Prisoner should be commended for the fact
> that he is attempting -- prisoner is comm-
> ended by the Commission to the fact that he
> realized that he was unsuitable and has not
> attempted to mitigate his numerous violations
> while incarcerated, and for that reason, we
> take that into account during the deliberat-

23.

Ground 1.

CONTENTIONS

-ions regarding the amount of denial. "

See Ex. B: BPH Denial Trans. pp. 17 - 18 line(s) 23-26, 1-24.


Petitioner contends that the BPH denial reason # 12 is arbitrary and capricious because the BPH assumed petitioner was unsuitable as the reason petitioner waived his right to attend the parole hearing.

See Ex. K: BPH waiver forms signed by petitioner.


A lifer prisoner preparing to go before the BPH for a parole hearing is called in before his/her correctional counselor to sign a group of BPH papers concerning the life prisoners many choices and possible request for ADA help ect.

Some of the choices on the forms includes three choices concerning representation of legal counsel:


1.) The life prisoner may waive his/her right to legal counsel during the upcoming parole hearing.

2.) The life prisoner may retain his/her own private legal counsel.

3.) The life prisoner may ask the BPH to appoint legal counsel if and only if the the life prisoner does not own any financial in excess of $ 1500.00

24.

Ground 1.
CONTENTIONS

See Ex. K: BPT Waiver Forms pp. 1 - 7, at page 3 - 4 & 5.

On page 5 of the BPT Waiver forms petitioner on May 05, waived his right to an attorney. Petitioner contends at that point in time the BPT or BPH should have appointed a correctional counselor (CC-I) to represent petitioners factual record and this should have been done pursuant to Ca. Pen. Code § 3041.5.

A Life prisoner also has three choice, in the waiver forms, concerning the future parole hearing:

> 1.) The life prisoner may waive his/her right to attend the parole hearing. As well as, waive the right to attend , but be represented by legal counsel either appointed or hired.
> 2.) The life prisoner may request a postpone-ment of the upcoming parole hearing.
> 3.) The life prisoner may waive the parole hearing and stipulation to unsuitability; and the right to have legal counsel represent the life prisoner during the upcoming parole hearing. This includes the life prisoners request for a one/two/three year denial.

See Ex. K: BPT Waiver Forms pp. 1 - 4.

In re Sydney M. (1984) 162 Cal.App.3d. 39, 48.

25.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ground 1.

CONTENTIONS

Petitioner contends that he waived his right to an attorney and waived only the first procedural due process right, namely the right to be present and ask questions. Yet the BPH arb -itrarily commended petitioner for waiving his hearing because "... he realized he was unsuitable and has not attempted to mitigate his numerous violations while incarcerated, ... "
See Ex. B: BPH Denial Trans. pp. 3 - 4 line(s) 23-26 & 1-3.


If petitioner, thought or believed, he was unsuitable, he would of made the third choice, and stipulation to a one year denial. But petitioner cannot ever stipulate to unsuitability because petitioner is not an unreasonable risk to public safety. Any life prisoner that stipulates to unsuitability is in fact legally admitting that they are a danger to society.

Petitioner only waived the right to attend the hearing were the form, he signed, said a hearing would be he in absence. The waiver form, on page 2 at the third, notice of rights, gives notice of the consequence of absence: i.e. a decision will be made in your absence (15 CCR § 2248) Petitioner contends this means an absence parole hearing shall be legally fair and not pre-decided by a parole commissioners presumptuous predetermined substitution for why petitioner waived his constitutional right. See in the hearing transcript were the commissioner asked petit- ioner if he was waiving because of the CDC&R 115 petitioner answered, " It isn't because of a 115, but, yes I do want

26.

Ground 1.

CONTENTIONS

want to waive my right -- waive my right to attend a hearing.

I want to waive my right to an attorney."

See Ex. A:  BPH Hearing Trans. pp. 3  line(s) 14 - 21.

See Ex. K:  BPH Waiver Forms.  pp. 2  Line(s) at Rights # Three.


It cannot be said, that the commissioner did not know, the hearing was being waived over a CDC&R 115, because petitioner specifically expressed it was not for a 115. It is arbitrary for the BPH to presume as such.  The BPH is arbitrary for holding against petitioner his right to waive the said rights, and to do so without having to give reason.


Petitioner further contends the BPH's statement about: 'commending prisoner for not trying to mitigate his CDC&R 115', is arbitrary.  It is a biased presumption by the BPH because petitioner has the due process right to answer questions about the CDC&R 115.  If the BPH takes the position that any answer about the CDC&R 115 is an attempt to mitigate, then there is no fair hearing held.  Just a biased, and predetermined pro forma parole hearing was given.


Petitioner contends that if any reviewing court will only use the 'some evidence test' to review petitioner's many contentions, then most of the pro forma BPH's violations will not be corrected because there will always be some tiny little