# EXHIBIT  F
# (PART 2 OF 2)

1

Ground 1.

2

CONTENTIONS

3

Rights.   The  Federal  Court  in  the  Hill  case  sort  of  limited

4

a  prisoners  due  process  right  in  a  prison  disciplinary  hearing

5

by   limiting   a   courts   review   of   it   to   'some   evidence'.

6

The  Hill  Court  reasoned,  it  should  not  be  second  guessing  prison

7

officials  because  they  may  need  to  make  decisions  regarding

8

pending  prison  emergencies,  such  as  a  prison  riot.

9

10

However  petitioner  contends  this  analogy  does  not  extend

11

to  the  situation  going  on  in  a  lifer  parole  hearing.   There

12

is  no  pending  emergency  for  the  Board  of  Prison  Hearings  to

13

contend  with.   And  even  if  the  BPH  should  make  a  mistake  and

14

grant  parole  to  a  real  dangerous  lifer, there  still  is  no

15

pending  emergency  as  there  are  three  levels  of  review.

16

With  that  many  levels  of  review  which  takes  several  months

17

were  is  the  pending  emergency  that  a  reviewing  court  needs

18

to  formulate  a  hands  off  approach  to  protecting  a  prisoner's

19

due  process  of  law  rights  ?

20

21

22

23

24

25

26

27

28

7. Ground 2 or Ground    2    *(if applicable)*:

The BPH and their CDC&R agents are forcing their Religion of 12-steps A.A. program onto petitioner by withholding parole from petitioner until petitioner converts to the A.A. religion. This action by violates petitioner's right to be free from Government sponsored --

a. Supporting facts:

--Religion under the first Amendment to the United States Constitution, and the relevant clauses of the U.S. state of California's Constitution.

FACTS

The BPH used denial reason # 9:

" The psychological report from Dr. Lewis Phd,
indicates that there are concerns. One of the
major concerns that the doctor had was in regards
to his AA 12-step program. Basically the doctor
under impressions, assessment of (indiscernible)
2003 details a risk and return to dangerousness.
Under Dr. Bencichs, " If the state absolutely
asks for drug and alcohol (indiscernible) finds
finds potential compared to average lifer.
However, his capacity (indiscernible) social
status were he released is compromised since he
is no longer availing himself for (indiscernible)
of weekly support of 12-step meeting. This makes

continued...

b. Supporting cases, rules, or other authority:

Ex parte Andrews (1861) 18 Cal. 678.

Ca.Ed.Fac.Authority v. Priest (1974) 12 Cal.3rd. 593, 605.

Fox v. City of L.A. (1978) 22 Cal.3rd. 792, 150 Cal.Rptr. 867.

Fem.Wom. v. Philibosan (1984) 157 Cal.App.3rd. 1076, 1092.

Kerr v. Farrey (1996 7th Cir.) 95 F.3d. 472.

1  Ground 2.

2  CONTENTIONS

3      ... it more likely he will relapse.

4      (indiscernible) meeting.  Therefore,

5      (indiscernible) he be paroled. "

6

7  See Ex. B:  Denial Trans. pp. 2 - 3 line(s) 19 - 26 & 1 - 9.

8  See Ex. I:  Dr. Lewis's Life Prisoner Evaluation. pp. 1 - 5.

9  See Ex. J:  Dr. Bencichs's Psychol. Evaluation. pp. 1 - 3.

10

11     The BPH and their CDC&R agents withheld parole from

12  petitioner until petitioner converts to their religion of AA

13  12 steps.  Petitioner contends this violates the separation

14  of Church and State codified in the Constitution.

15

16  On April 21, 2004., the California Supreme Court summarily

17  denied petitioner's writ of habeas corpus.  The said writ of

18  habeas corpus concerned CDC&R officials denying petitioner

19  the right to pursue a legal name change to a christian name

20  change pursuant to petitioners christian sect's belief system.

21  No explanation was given by the court - just in your face bam

22  your writ is denied.  The powerful do what the want in

23  California.  This cold reality caused petitioner to question

24  his belief system.  Why would prayers to a higher power asking

25  that the writ be granted avail nothing (?)

26     So petitioner had a Evolutionary Social Darwinism

27  enlightenment and became a Evolutionest believing only in

28

39.

Ground 2.

CONTENTIONS

Science. Soon after petitioner's conversion petitioner stoped attending AA 12-step after participating in the program since 1986. The reason petitioner will not further participate is AA and all 12-step programs are religious because they require a belief in a higher power than mankind.

Petitioner told the prison Phd doctors that his objection was because of the religious nature of the AA program. Dr. Lewis included the objection in her report.
See Ex. I: Dr. Lewis's Life Prisoner Evaluation. pp. 1 - 5.

Petitioner contends that the BPH was fully aware of petitioners objection to the AA 12-step program as religious. And petitioner contends that the BPH fully knows that AA and all related 12-step programs are religious in nature. And that the BPH only arbitrarily forces all life prisoners to attend such programs only to promote the programs religious and learned helplessness. That the BPH has never tested petitioner for alcoholism. The BPH has conducted no type of testing neither physical, psychological, medically, nor DNA wise for the genetic disorder. Instead, what the BPH does, is just to require every life prisoner to attend AA 12-step programs, irregardless of whether or not, any of these life prisoners are actually alcoholics. The BPH's only purpose is to promote the religious and learned helplessness of the AA 12-step programs.
People v. Aris (1989) 215 Cal.App.3rd. 1178, 1195.

1 | Ground 2.

2 | CONTENTIONS

3 |     Petitioner asserts that he is not an alcoholic. Petitioner

4 | does not have the genetic disorder encoded in petitioners DNA

5 | for alcoholism.  And petitioner, if tested for the genetic dis-

6 | order will prove that he is not an alcoholic.

7 | See Ex. O:  Excerpt from book ' Life Extensions".

8 |

9 |     Petitioner contends that the forced religious AA program

10 | by the BPH is arbitrary because neither the BPH nor CDC&R offered

11 | petitioner a non-religious alcohol abstinence, or alcohol counsel-

12 | -ing for a parole release date.

13 |

14 |     Petitioner contends that the correctional counselors report,

15 | the two psychological reports, and the BPH's actions concerning

16 | forcing petitioner to attend AA 12-step program is in violation

17 | of petitioners ADA rights.  Petitioner has told the counselor,

18 | and the two psychologist that his health problems are causing

19 | petitioner to miss AA meetings because he does not have the

20 | energy to work all day and attend AA too.  Petitioner has

21 | Hepatitis C, lymphoma, chronic fatigue syndrome, and major

22 | depression.  All these health problems leave petitioner exhausted

23 | with lack of energy and motivation to attend AA.  But the BPH

24 | did not even consider this.  The BPH also violates petitioners

25 | ADA rights for withholding parole for alcoholism because

26 | alcoholism is a disability under the ADA.  Parole is being denied

27 | because of a disability.

28 | See Ex. N:  Correctional Counselors Report. pp. _____.

7. Ground 2 or Ground ___3___ *(if applicable)*:

    The Board of Prison Hearings violated petitioner's due process of law right pursuant to California Penal Code § 3042; by the BPH failing to send a § 3042 notice to the attorney who represented petitioner at trial: under the Federal and California Constitutional clauses.

a. Supporting facts:

    For the July 01, 2005., parole hearing, petitioner waived his right to have an attorney appointed. As a result of this waiver, petitioner was given, by the BPH agent CC-I, what is known as, the attorney evidence packet. In this evidence packet were most of the Ca. Pen. Code § 3042 notices. A § 3042 notice was sent to the trial court presiding judge, the Monterey County District Attorneys Office, and to the Monterey County Sheriff's Department. All as required by Penal Code § 3042.

See Ex. T:  California Penal Code § 3042 notices. pp. 1 - 4.

    However petitioner could not find a Penal Code § 3042 notice being sent to the trial attorney who represented petitioner at his court trial in Dec. of 1983. Instead the evidence packet contained a CDC&R memorandum. The memorandum stated that a § 3042 notice could not be sent to the trial attorney because his address was unknown.

See Ex. S:  BPH/CDC&R memo of unknown trial attn. address.

    The attorney who represented petitioner at trial; name is on the front page of the Probation Officers Report (POR). The POR is a document that the BPH and CDC&R have.

See Ex. D: Probation Officers Report (POR). pp. 1 - 7.

b. Supporting cases, rules, or other authority:

 

 

 

 

 

1

**Ground 3.**

2

CONTENTIONS

3      Petitioner's trial attorneys name is: James Newhouse.

4  Petitioner believes the person in charge of send out the Penal

5  Code § 3042 notices, on behalf of the BPH, is the Classification

6  & Parole Representative at San Quentin Prison.   Under CDC&R's

7  usage this is abbreviated to C&PR.

8

9      In petitioner's Central File, aka a C-file, and also

10  in the BPH attorney evidence packet, there are no address given

11  for any of the officials that Penal Code § 3042 requires the

12  BPH to send notification to.  The exception would be the actual

13  § 3042 notices prepared by the C&PR of San Quentin Prison.

14  So where did the C&PR get the address's for all of the officials

15  that were sent a § 3042 notice ?

16  See Ex.   T:  California Penal Code § 3042 notices. pp. 1 - 4.

17

18      Petitioner contends that the C&PR had to look these address's

19  up in reference books, such as, telephone books, court

20  directories, or CDC&R's own reference address books.  But the

21  C&PR did not look up petitioner's trial attorney's address in

22  any reference book like the California State Bar Association's

23  address book which contains all of the attorneys whom practice

24  law in California, and gives their addresses.

25  Petitioner did look up trial attorney James Newhouse's address

26  in the State Bar Directory.  The address is:  James Newhouse,

27  460 Alma Street.  Monterey California, 93940-3203.

28

### Ground 3.

#### CONTENTIONS

Petitioner attempted to give the trial attorney's address to to the C&PR via a CDC&R form, known as, a Request For Interview. See Ex. Q: Request For Interview Form to C&PR on Feb. 20, 2005.

The C&PR seemed not to do anything about sending a § 3042 notice to the trial attorney because petitioner did not receive a copy of any notice sent. Petitioner then filed a CDC&R 602 administrative appeal form. The 602 appealed the fact the trial attorney was not sent a Penal Code § 3042 notice as required by law.

See Ex. R: CDC&R 602 Appeal. Mar. 14, 2005. pp. 1 - 4.

Petitioner sent the 602 appeal to the Appeals Coordinator, at San Quentin which is either CC-II, W. Jeppeson, or CC-II R. Chandler-Dacanay. The appeals coordinator returned the 602 appeal with a CDC&R 695 form attached. The CDC&R 695 form directed petitioner to send the 602 appeal to the BPT (BPH). See Ex. R: CDC&R 602 Appeal. Mar. 14, 2005. at pg. 4.

Petitioner sent the 602 appeal to the Board of Prison Terms at their Sacramento address: 1515 K Street. 6th Floor. Sacramento, Ca. 95814. The BPT of now the BPH returned the 602 appeal. A Kirsten Preslar signed a memo stating essentially that the BPH does not accept administrative appeals of BPH's actions pursuant to CCR Title 15 § 3160.

Ground 3.

CONTENTIONS

See Ex. R:   CDC&R 602 Appeal. at pg. 1.


Petitioner contends that he has did all he could do to provide the name and address of the trial attorney to the BPH so the BPH could send a Penal Code § 3042 notice to said attorney. The attorneys name was given in the 602 appeal, and in the Request for Interview Form.  The trial attorneys address was also given in the two CDC&R official forms.  Petitioner therefore contends that the BPH arbitrarily violated his due process of law right pursuant to California Penal Code § 3042 to have a notice sent to the attorney who represented him at trial. This lack of notification by the BPH caused petitioner to have arbitrary and unfair parole hearing on July 01, 2005., becuase BPH gave undue weight to the evidence of the Monterey County District Attorneys § 3042 notice reply.  The BPH even used the Monterey County District Attorney's § 3042 notice reply, as denial reason # 10.  ( See Ground One of this petition.) However the BPH did not consider any evidence that might have been presented by the trial attorney should he have received his Penal Code § 3042 notice.  The one source of possible mitigating evidence for petitioner's behalf was purposely and illegal avoided with a trivial excuse of we don't know the trial attorney's address.  At the very least petitioner ask the reviewing court to order a new parole hearing on this ground alone.

45.

7. Ground 2 or Ground _____4_____ (if applicable):

In the July 01, 2005., parole hearing, the BPH relied upon illegal and unreliable evidence which resulted in an arbitrary and capricious parole hearing in violation of Petitioner's Due Process law rights under the California and Federal Constitutional clauses.

a. Supporting facts:

The BPH used as its denial reason # 5:

" There's a (indiscernible) occasion that the inmate actually got worse after the incident, never turned anyone in.  This theory indicates that maybe he had more participation in the crime than he alleges."

See Ex. B:  BPH Denial Trans.  pp. 15 line(s) 22 - 26.

This is exactly why petitioner waived attending the hearing and waived his attorney, so petitioner could find out what it was the BPH was holding against him.  And here it is: a secret theory. Petitioner contends that the BPH and its predecessor the BPT have in each and every one of petitioner's parole hearings been using This secret theory.  A theory that has the BPH not accepting the court found true facts of the offense.  The BPH has held a kangaroo court based upon one small fact from the gravity of the offense

b. Supporting cases, rules, or other authority:

1

## Ground 4.

2

### CONTENTIONS

3  How does this small fact from the gravity of the offense support

4  the commissioner contention that petitioner got worse after

5  offense ? Let alone support a theory that petitioner had more

6  participation in the offense than he alleges.

7  Petitioner did not turn anyone in, and this fact goes a long

8  in explaining the duress.

9

10      Petitioner contends that the theory the BPH used to deny

11  parole is illegal evidence because theories are not reliable

12  evidence.  Theories also do not have an indicia of reliability.

13  The theory used by the BPH also is in violation of the BPH's

14  regulation of Title 15 § 2401(a), which requires the BPH to

15  consider all reliable evidence.

16  In re Dannenberg (2005) 34 Cal.4th. 1060., 1083 (§ 19).

17  In re Powell (1988) 45 Cal.3rd. 894, 902.

18  Jancsek v. Oregon Bd. Parole (9th Cir. 1997) 833 F.2d. 1389,

19  at page 1390 indicia of reliability.

20  In re Scott (2005) ____ Cal.App.4th. ____, ____. DJDAR 12450,

21  12456.

22

23

24

25

26

27

28

7. Ground 2 or Ground ___5___ (if applicable):

    The BPH in denying parole with denial reason # 11, violated petitioner's due process of law rights pursuant to Ca. Penal Code § 5011, under the California and Federal Constitutional clauses, and including the relevant due process claims of a right to a defense

a. Supporting facts:     , and Ineffective Aid of Counsel at trial.

    The BPH used denial reason # 11:

    " The Panel makes the following findings. The Prisoner continues to need therapy programming and self-help in order (indiscernible) discuss the (indiscernible) cope and stress in a non-destructive manner as well as to gather greater insight into the crime. In review of the prisoner's social history and lack of program participation, there's no occasion that the prisoner would behave differently if paroled. "

See Ex. B: BPH Denial Trans. pg. 17 line(s) 14 - 23.

    Petitioner contends that the two psychiatric reports prepared for the July 01, 2005., parole hearing both evaluate petitioner's dangerousness level as lower than the average prisoner.
See Ex. I: Dr. Lewis's Life Prisoner Eval. pp. 1 - 5.
See Ex. J: Dr. Bencichs's Psychological Eval. pp. 1 - 3.
Therefore the BPH's requirements go beyond just assessing if
continued

b. Supporting cases, rules, or other authority:
California Penal Code § 5011.
People v Pope (1979) 23 Cal.3rd. 412, 427, 152 Cal.Rptr. 732.
Flanders v. Graves (8th Cir. 2002) 299 F.3d. 924
Schlup Gateway.
California and Federal Constitutions.

Ground 5.

CONTENTIONS

petitioner would pose an unreasonable risk of danger to society, as Ca. Penal Code § 3041(b) requires. Instead the BPH is relying upon vestibule of a popular American Myth of what parole for a convicted murder should be. The myth that the prisoner must be first broken then lead over a series of years to total rehabilitation and finally redemption in a religious way.

Petitioner further contends that this is what the BPH is is doing when it states that petitioner does not have sufficient prior prison programming, or needs therapy and self-help. The BPH arbitrarily presumes that petitioner is dangerous because he has committed a Ca. Penal Code 31 co-defendant felony murder. However the parole law Ca. Penal Code § 3041(a)(b) presumes that petitioner is parole suitable. There is nothing particularly egregious about petitioner second degree crime to warrant not setting a parole suitability date. Petitioner does have enough prior prison programming as petitioner has received from prior BPT parole panels written reason of what petitioner could do to become parole eligible at the next parole hearing. In none of these prior parole hearings has the BPT recommended to petitioner that his programming was not sufficient. How could petitioner have known that he needed more programming if the prior BPT panels have told petitioner he was doing the right things, and to get his ducks in a row concerning parole plans See Ex. H:  Prior BPT Denial Trans. pg. 66 line(s) 5 - 11.

1                        Ground 5.

2                     CONTENTIONS

3        Petitioner also contends that the BPH finding that petitioner

4   needs more therapy to discuss and cope with stress in a non-

5   destructive manner is arbitrary because neither psychiatric

6   report prepared for the parole hearing suggest that petitioner

7   needs therapy for the purpose of dealing with stress in a non-

8   destructive manner.  Dr. Lewis's report does recommend therapy,

9   but only for the purpose of treating petitioner's depression.

10  See Ex. I:  Dr. Lewis's Life Prisoner Eval. pg. 5 at top ¶.

11

12       Please note that both reports, evaluate petitioner as

13  suffering from depression as a mood disorder present since child-

14  hood.

15  Dr. Lewis pg. 3 at ¶ XIII Review of Life Crime, B:

16

17            " The routine mood altering substances may

18            indicate that he suffered a mood disorder,

19            likely depression that caused him to self-

20            medicate to control for his dysphoric affect

21            Mr. Ekdahl's than active addiction is one

22            contributing factor to the life crime

23            because the regular intake of substances

24            tends to increase vulnerability to behave

25            in ways they would not if they were abstinent.""

26  See Ex. I:  Dr. Lewis's Life Pris. Eval. pg. 3.

27

28

                          50.

Ground 5.

CONTENTIONS

Also Dr. Bencich pg. 2 at ¶ XIII Review of Life Crime. B:

> " I suspect his depression and very low self-
> esteem were long standing, since childhood, and
> untreated because the family was so isolated
> and transient.  I believe the fear he evidenced
> in his early incarceration, when custody felt
> he could be easily victimized, was quite similar
> to the fear he felt in childhood under his step-
> father's command and as a young adult when coerced
> into the commission of the crime by a much more
> forceful acquaintance. "

See Ex. J:  Dr. Bencichs's Psych. Eval. pg. 2.

Notice that these evaluations differ from the BPH's Assumption that petitioner's depression stems from the day that the California [Supreme] Court denied petitioner's religious name change writ of habeas corpus:

> " Mr. Ekdahl has been attempting to change his
> name, and in May of 2004 he went on a hunger
> strike for 3 days when the California Superior
> Court decided he would not be allowed to change
> his name.  This was a trigger of depression, and
> he continues to suffer from depression, he reports

51.

Ground 5.

CONTENTIONS

that the Prozac he is taking helps alleviate

the symptoms a great deal. "

See Ex. A:  BPH Hearing Trans. pg. 10 line(s) 10 - 17.


Petitioner also contends that the BPH finding that petitioner needs more therapy and self-help to gather greater insight into the crime, is arbitrary and in violation of Ca. Penal Code § 5011.  This law means that a prisoner does not have to admit guilt, or have greater insight into the crime, if he is innocent of the crime.  And if petitioner chooses to not discuss the crime because of his innocence the BPH should not illegally withold parole on the grounds petitioner needs more therapy to gather insight.  Because the only way a life prisoner could gather greater insight through therapy would be for that prisoner to discuss the crime with the therapist.


Petitioner contends he is innocent of this crime pursuant to Ca. Penal Code § 26 (6) or later (8), and because of that fact petitioner will never discuss the crime again.  The Monterey County Superior Court Judge Silver lowered the degree of murder from 1st degree felony murder to 2nd degree felony murder. The trial court was following the holding of People v Dillon (1983) 34 Cal.3rd. 441.  The trial court's decision to lower the degree of offense was based upon petitioner's duress defense.  The duress petitioner suffered when Mark Horning

Ground 5.

CONTENTIONS

threatened petitioner with a credible death threat. The trial court was familiar with the duress as it was self-evident to trial Judge who remarked that he had personally observed the defendants and had presided over some of the Horning Brother's trial proceedings.

See Ex. E:  Trial Court Sentencing Trans.  pp. 1 - 6.

People v Horning (1984) 150 Cal.App.3rd. 1015, 1017 - 1018.

People v Horning (2005) 34 Cal.4th. 871.

Both case laws reflect upon the dangerousness of the Hornings and proves the credibility of the death threat.

The trial court would have found petitioner innocent pursuant to Ca. Penal Code § 26(6)(8) if not for the fact the statute forbids that finding if the crime is punishable by the death penalty. So instead the trial court used the duress to lower the degree of crime to 2nd degree felony murder. Petitioner contends that the trial court as soon as it lowered the degree of crime to 2nd degree felony murder then the trial court should of followed though and found petitioner innocent pursuant to Ca. Penal Code § 26(6)(8)., because petitioner's type of 2nd degree felony murder can never be punished by the death penalty. 2nd degree felony murder is a court created statute and as such has never in its history been punished by the death penalty; therefore there is no § 26 prohibition against petitioner's innocence and no time bar for an innocent claim.

7. **Ground 2 or Ground** ___6___ *(if applicable):*

    Petitioner, in the alternative, has an illegal sentence, in violation of the applicable clauses of either the California or United States Federal Constitutions, and is not time barred because an illegal sentence will always have need of legal remedy.

a. **Supporting facts:**

    Petitioner was convicted of 1st degree felony murder. 1st degree felony murder only carries one penalty applicable here, and that penalty is the death penalty. However the trial court lowered the degree of felony murder to 2nd degree via the holdings of People v Dillon (1983) 34 Cal.3rd. 441.

    Petitioner contends that the Rose Bird, California Supreme Court overstepped its authority, and invaded the legislative sphere of California Government, when the Court created a new 2nd degree felony murder for punishment of one of the felonies enumerated in California Penal Code § 189. Only the California Legislature has authority to define crimes and the punishments for those crimes. While the California Judicial Branch of Government has created a " wholly judicial creation" of 2nd degree felony murder, it is only applicable to any felony inherently dangerous to human life, and is not one of the six felonies enumerated in Penal Code § 189. Petitioner's robbery convictions are one of the six felonies that are enumerated in Penal Code § 189. Therefore petitioner cannot be sentenced to 2nd degree felony murder because the court had no authority to create this proportionality type of 2nd degree felony murder. Petitioner should be ordered by the court to be re-sentenced to 1st degree felony murder sentence of Death Penalty.

b. **Supporting cases, rules, or other authority:**

People v Ford (1964) 60 Cal.2nd. 772; 36 Cal.Rptr. 2nd. 620.

People v Hansen (1994) 9 Cal.4th. 300; 36 Cal.Rptr. 609.

People v Mattison (1971) 4 Cal.3rd. 177; 93 Cal.Rptr. 185.

People v Burroughs (1984) 35 Cal.3rd. 824, 829.

People v Dillon (1983) 34 Cal.3rd. 441.

7. **Ground 2 or Ground** ___7.___ *(if applicable):*

California Penal Code Statue § 3001 is unconstitutional under any relevant Constitutional Clause of either or both of the U.S. State of California Constitution or the United States Federal Constitution.

a. Supporting facts:

Petitioner is convicted out of Monterey County. As such, pursuant to Ca. Penal Code § 3001., petitioner must parole to Monterey County. Petitioner does not have family in Monterey County. CDC&R does not provide for life prisoner under Ca. Penal Code § 1168 any type of pre parole resources. The BPH does require life prisoners to submitted viable parole plans that include a place of residence and a promise of future employment. While the BPH does not have specific regulations to cover its pre parole requirements from a life prisoner. The BPH does, as a matter of long standing routine, require such pre parole plans. Not all California Counties are equal in their economic opportunities, and resources available to petitioner to create his pre parole plans. The BPH has constantly has denied petitioner to change the county of parole. Petitioner therefore faces unfair and financial difficulties in formulating viable pre parole plans that will be acceptable enough for the BPH to find petitioner for parole. This fact causes petitioner considerable depression because he will never be able to parole because of this statutes requirements and the BPH's draconian application of the law.

b. Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment?  [X] Yes.  [ ] No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

Court of Appeal, First District, Division Four.

b. Result: Judgment Affirmed.          c. Date of decision: April 29, 1985.

d. Case number or citation of opinion, if known:   A025812  (CR-9938 & CR-9942)

e. Issues raised: (1)   Unknown.

(2) _____

(3) _____

f. Were you represented by counsel on appeal?  [X] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

Mr. Gardner.  900 Nor.Point # 450 Apt. San Fran. CA. 94109.

9. Did you seek review in the California Supreme Court?  [X] Yes.  [ ] No.  If yes, give the following information:

a. Result: Review Denied.          b. Date of decision: July 17, 1985.

c. Case number or citation of opinion, if known:   A025812 (CR-9938 & CR-9942)

d. Issues raised: (1)   Unknown.

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

IAC on Appeal.

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal. App.3d 500 [125 Cal. Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

No administrative remedies available from the Board of Prison Hearings.  No known administrative review for the Innocent Claim or the Illegal Sentence Claim.

b. Did you seek the highest level of administrative review available?  [ ] Yes.  [ ] No.    N/A.  Not APPLICABLE
*Attach documents that show you have exhausted your administrative remedies.*

MC-275 (Rev. January 1, 1999)          **PETITION FOR WRIT OF HABEAS CORPUS**          Page five of six

56.

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [X] Yes. If yes, continue with number 13.   [ ] No. If no, skip to number 15.

13. a. (1) Name of court: California Supreme Court.

    (2) Nature of proceeding (for example, "habeas corpus petition"): habeas corpus petition.

    (3) Issues raised: (a) Sixth Amendment right to Jury Trial.

        (b) Eighth Amendment right to Proportional Sentence by BPT.

    (4) Result (Attach order or explain why unavailable): Summarily Denied Review.   Lost.

    (5) Date of decision: Aug 09, 2000.  S087827.

  b. (1) Name of court: California Supreme Court.

    (2) Nature of proceeding: writ of habeas corpus petition.

    (3) Issues raised: (a) New evidense in co-defendant's trial transcripts.

        (b) Right to New Trial.

    (4) Result (Attach order or explain why unavailable): Summarily Denied Review - Time Barred.

    (5) Date of decision: Feb. 23, 2000.  Lost.  S084090.

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    N/A.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    For the two Claims of Innocence and Illegal Sentence, petitioner

    believes there is no time bar, or delay for Constitutional Relief.

16. Are you presently represented by counsel? [ ] Yes.  [X] No.  If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? [ ] Yes. [X] No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    Not APPLICABLE

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: December 21st, 2005.

▶ *Emil Ebdahl*
      (SIGNATURE OF PETITIONER)

MC-275 (Rev. January 1, 1999)     **PETITION FOR WRIT OF HABEAS CORPUS**     Page six of six

Table of Exhibits.

A:  BPH Hearing Trans.  pp.  1 - 14.  line(s)

B:  BPH Denial Trans.  pp.  15 - 20.  line(s)

C:  Detective Sonne's Mar 06, 1991., Letter.

D:  Probation Officers Report (POR)  pp. 1 - 7.

E:  Trial Court Sentencing Trans.  pp. 1 - 6.

F:  Prior BPT Denial Trans.  Feb. 27, 2002., pp. 33 - 37.

G:  Monterey County District Attn. § 3042 reply to notice.

H:  Prior BPT Denial Trans.  Mar. 26, 2003., pp. 62 - 70.

I:  Dr. Lewis's Life Prisoner Evaluation.  pp.  1 - 5.

J:  Dr. Bencichs's Psychological Evaluation.  pp. 1 - 3.

K:  BPH Waiver Forms (#1001A Rev. 10/89).  pp.  1 - 8.

L:  New York Times Oct. 02, 2005., Internet.  pp. 1 - 19.

M:  Ca.Sup.Ct. No. S117967.  Summery Denial. Apr. 21, 2004.

N:  CDC&R Correctional Counselor (CC-I).  pp. 1 - 8.

O:  Except from book 'Life Extension' ISBN: 0-446-37683-3.

P:  CCPOA Internet Download.  pp. 1 - 4.

Q:  Inmate Request for Interview Form to C&PR on Feb. 20, 2005.

R:  CDC&R 602 Grievance Appeal. Mar. 14, 2005.  pp. 1 - 4.

S:  Life Prisoner Parole Consideration Worksheet. pp. 1 - 5.

T:  California Penal Code § 3042 notices.  pp. 1 - 4.

U:  BHP/CDC&R Memo of unknown trial attn. address.

# ORIGINAL

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

Court of Appeal - Sixth App. Dist.

**FILED**

OCT 1 6 2006

MICHAEL J. YERLY, Clerk

By _____

DEPUTY

In re EMIL EKDAHL,

    on Habeas Corpus.

H030652
(Monterey County
Super. Ct. No. HC5267)

BY THE COURT:

    The petition for writ of habeas corpus is denied.

(Premo, Acting P.J., Elia, J., and Duffy, J., participated in this decision.)

Dated    OCT 1 6 2006        _Premo_     Acting P.J.