# EXHIBIT  G
# (PART  2 OF 2)

FACTS.

1    The suitability hearing on July 01, 2005., was the 7th sub-
2  sequent parole hearing.  The offense as listed below is taken from
3  the Probation Officer's Report (POR).

4    On October 18, 1981, at approximately 10:50 p.m., Soledad
5  Police responded to Pete's Shell (a service station and grocery
6  store) on South Front Street regarding an armed robbery which
7  had just occurred.  Arthur Sandoval (17) was located behind the
8  station face down in a pool of blood; there was no pulse.
9  Victims Pamela Lewis (21) and Sal Montoya (19) stated that two
10 subjects with ski masks entered the store, ordered them to lay
11 down on the floor, took $13.00 from the cash register and ran
12 from the store.  A short time later they heard two shots.

13    It should be noted that during the robbery Dario Bailon
14 (approximately age 30) and Sal Melchor (26) entered the store
15 to buy beer.  They ignored the responsibles' demand that they
16 join the other individuals on the floor.  The subjects were gone
17 by the time they returned to the counter with the beer.  Bailon,
18 Melchor and his companion, Frank Garcia (17) remained at the
19 scene after the arrival of the police.  Arthur Sandoval had
20 apparently been with them prior to the robbery.

21                              FACTS

22    The BPH found petitioner unsuitable for parole for the reason
23 s stated in the Denial Transcripts.  Hereafter referred to as
24 denial reasons # 1 - 12.  The denial reasons as taken from the
25 denial transcripts are listed below:

26

27        #1.)  The offense was carried out in a cruel
28              callous manner.

                           1.

FACTS.

#2.)  Multiple victims were robbed and
      one person killed.


#3.)  Offense was carried out in a
      dispassionate manner or that the
      crime was inexplicable and very
      trivial in relationship to the
      offense.


#4.)  Even if we were to take the
      inmate's (indiscernible) that he
      was a willing participant in the
      robbery, but that was based upon
      that he was threatened, we have
      an individual who was killed, two
      other individuals robbed.


#5.)  There's a (indiscernible) occasion
      that the inmate actually got worse
      after the incident, never turned anyone
      in.  This theory indicates that maybe he
      more participation in the crime than he
      alleges.

1

FACTS.

2  #6.)  The bigger issue, of course is the

3       killing of the victim and there seems

4       to be no reason why the victim had to

5       be killed.  This was not a situation

6       where the victim was attempting to

7       fight off the robbers with guns or

8       (indiscernible) anything like that.

9

10  #7.)  The other reason for the denial at

11       this point in time is his institutional

12       behavior.  Prior programming has only been

13       limited while incarcerated.  He has not

14       sufficiently participated in the programs.

15       He has failed to demonstrate evidence of

16       positive change.

17

18  #8.)  Misconduct while incarcerated includes

19       recently a 115, April 29th, year 2004 as

20       well as five recent 128's, starting with

21       chrono 2003 which is his last parole date

22       He had a 115 on July 2000 -- excuse me a

23       128 of July 2003; April of 2004; another

24       one in April 2004; in June 2004 128 and

25       finally a recent January 2005.

26

27

28

1                              FACTS.

2        #9.)  The psychological report from a Dr. Lewis

3              Phd indicates that there are concerns.

4              One of the major concerns that the doctor had

5              was in regards to his AA 12-step program.

6              Basically the doctor indicates under impress-

7              ions, assessment of (indiscernible) 2003

8              details a risk and return to dangerousness.

9              Under Dr. Bencichs, " If the state absolutely

10             asks for drug and alcohol (indiscernible) finds

11             potential  compared  to  average  lifer.   However,

12             his capacity (indiscernible) social status were

13             he released is compromised since he is no longer

14             availing himself for (indiscernible) of weekly

15             support of 12-step meeting.  This makes it more

16             likely he will relapse.  (indiscernible)

17             meeting.  Therefore, (indiscernible) he be

18             paroled. "

19

20       #10.)  Another reason for the denial is the 3042

21             response.  Inmate has read the letters from

22             the District Attorney's Office from Monterey

23             County indicating their opposition to the

24             inmate's release.  Remarks.  The Panel notes

25

26

27

28

                              4.

1 | FACTS.

2 | #11.) The Panel makes the following findings.

3 | The prisoner continues to need therapy

4 | programming and self-help in order indiscer-

5 | nible) discuss the (indiscernible) cope and

6 | stress in a nondestructive manner as well as

7 | to gather greater insight into the crime.

8 | In review of the prisoner's social history

9 | and lack of program participation, there's

10 | no occasion that the prisoner would behave

11 | differently if paroled.

12 |

13 | #12.) Prisoner should be commended for the fact

14 | that he is attempting -- prisoner is commended

15 | by the Commission to the fact that he realized

16 | that he was unsuitable and has not attempted

17 | to mitigate his numerous violations while

18 | incarcerated, and for that reason, we will

19 | take that into account during the deliberat-

20 | ions regarding the amount of denial.

21 |

22 | See EX. B: BPH Denial Trans.  pp. 15 - 20  line(s)

5.

Ground 1.

CONTENTIONS

Petitioner contends that the fundamental purpose of due process of law, even the laws of our government is based upon fairness. That concept of fairness of the Constitutions, federal law, and state law applies to the Individual. Even down to the least individual of our society the convicted murder.

The parole term suitability hearings before the California BPH must provide due process of law. And that due process means something more than a mere pro forma parole hearing. It means that due process of law is there to insure that a fair hearing is held. Petitioner did not receive a fair hearing and it is petitioner's contention that a court review that only looks to see if there is ' some evidence ' to support the BPH decision is not sufficient enough to protect a prisoners' due process rights. A reviewing courts some evidence test would cause a arbitrary and capricious pro forma parole hearing to pass review. The problem with that standard is that there will always be some evidence to support the BPH. Especially if all the BPH has to is recite some of the CCR title 15 regulations and slap one or facts from any prisoner's murder and presto a pro forma hearing was had. And yet the controlling parole statue Ca. Pen. Code § 3041 (a) states that parole for murder is normal.

Petitioner denies each and every one of the BPH's 12 denial reasons. Petitioner will lay out a contention for each denial reason as due process violation also some denial reasons will

6.

1

Ground 1.

2

CONTENTIONS

3 be raised as separate constitutional grounds herein this petition

4 for writ of habeas corpus.

5     Petitioner contends the BPH just regurgitated some boiler-

6 plate of the CCR title 15 regulations and added some fact from

7 the offense to an illegal repromulgation of the regulations.

8 The one added fact is from denial reason #2:

9

10         " Multiple victims were robbed and one

11             person killed. "

12

13     The actual regulation CCR Title 15 § 2402 reads:

14

15         (c)(1)(A) Multiple victims were attacked, injured

16             or killed in the same or separate incidents.

17

18     Petitioner contends that regulations give raise to the same

19 due process of law rights as any law. The title 15 regulation

20 as promulgated does not fit petitioners offense. The actual

21 wording of the regulation means victims were attacked coma injured

22 There can be no separation of attacked, injured. Together the

23 phrase attacked, injured means as in physically attacked and

24 injured. While in petitioners offense two victims were robbed

25 by being made to lay upon a floor, they were not physically

26 harmed in any way. What the BPH has done is to repulmagate

27 the regulation to fit the offense instead of weighing the offense

28 to see if the offense fits the regulation.

7.

Ground 1.

CONTENTIONS

The BPH repromulgation was done without proper OAL procedure.
U.S. v. Nixon (1974) 418 U.S. 683, 41 L.Ed.2d. 1039.
Ag.L.Rl.Bd. v Sup.Ct. (1976) 16 Cal.3d. 392, 128 Cal.Rptr. 183.


Petitioner contends That the California felony murder theory coupled with Ca. Pen. Code § 31 co-conspirater liability, and the particular facts of the offense prove that there is no truth to the BPH's unsuitability findings # 1 - 3; that the offense was cruel and callous, dispassionate, inexplicable, [or] trivial. Nor is the BPH considering petitioner as an individual pursuant to Ca. Pen. Code § 3041(b); by acknowledging the above mentioned facts. The BPH acted arbitrarily by placing the full weight of the offense onto petitioner while not considering the facts from the offense as they apply to petitioner as an individual.

Individually petitioner was forced to participate in the offense under a credible threat of duress. This duress was more than sufficient enough to cause the trial court to lower the degree of murder to 2nd degree felony murder pursuant to the individual culpability plus cruel and unusual punishment holdings of People v Dillon (1983) 34 Cal.3d. 440. This was small occurrence because as Dillon characterizes it: A proport-ionality finding of cruel and unusual punishment is the exception to the rule and not the normal course of action for a trial court to make. Petitioner's Dillon reduction in degree of murder is an exceptional event premised upon petitioners duress defense.

8.

Ground 1.

CONTENTS

It is a major, exceptional, court found true fact, that the BPH arbitrarily and capriciously, did not consider in the absentee parole hearing held on July 01, 2005.

Particularly troubling is the BPH's unsuitability finding of dispassionate. As the dictionary defines it dispassionate means to be without emotion. While duress is defined by court case law holdings to mean:

Duress is defined as " a direct or implied threat of force violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to

1.) Perform an act which otherwise they would not have performed.

2.) Acquiesce in an act to which one would not have submitted.

People v Cochran (2002) 103 Cal.App.4th. 8, 13.

Duress is not dispassionate it is a form of fear. See the following case law for a definition of what fear means: People v Pitmon (1985) 170 Cal.App.3rd. 38, 51.

Petitioner contends that the robbery was only carried out after being given a credible death threat by co-conspirater Mark Horning. In fact anyone of the Horning brothers would have killed petitioner on, or for Marks behalf, especially Danny Horning. The Detective who investigated petitioners commitment offens Detective Gordon Sonne' wrote a letter to the then BPT supporting

9.

Ground 1.

CONTENTIONS

petitioners parole.  In that letter Dect. Sonne characterized the Horning brothers as a gang.  Petitioner contends this is the same as a criminal street gang.

See Ex. C: Detective Sonne's Mar 06 1991 Letter.

See Ex. D: Probation Officers Report.


Petitioner offers the following two case laws to support the contention that the Hornings threat was credible.

People v Horning (1984) 150 Cal.App.3d. 1015, 1017 - 1018 198 Cal.Rptr. 384.

People v Horning (2005) 34 Cal.4th. 871, 22 Cal.Rptr.2d. 305.


In the first case law from 1984 where its an appeal by Mark Horning where Danny Horning is also involved.

In another robbery, unrelated to petitioner's conviction, Mark Horning threatens the victim Mr. Sears with a credible threat, as follows:

" he [Mark] always got even with the people he thought didn't do him right"

Later that same day, Mark and Dannys erratic and aggressive behavior frightened the victim Mr. Sears.

Several hours later the same day the victim Mr. Sears was attacked, injured in his barn.  Someone [Mark or Danny] hit Mr. Sears in the head twice with a five pound sledge hammer.  The victim Mr. Sears was then threatened with a pistol and personally robbed.

10.

1

## Ground 1.

2

### CONTENTIONS

3  The reader should note from this case law (150 C.A.3rd. 1015)

4  that a police stop of the Hornings near the victim Mr. Sear's

5  residence, did not result in an arrest because Mark Horning

6  was identified as a Prison Guard employee. Mark Horning was

7  Correctional Officer and due's paying member of the CCPOA when

8  he credible threatened petitioner. In short an authority figure.

9  People v. Pitmon (1985) 170 Cal.App.3rd. 38, 51.

10

11      The second case law People v. Horning (2005) 34 Cal.4th.

12  871., is a death penalty appeal of Danny Horning occurring some

13  years after petitioner's commitment offense. Danny Horning

14  never did time for his Ca. Pen. Code § 31., personal culpability

15  in petitioner's commitment offense of California felony murder.

16  The reason Danny Horning never received any punishment for his

17  role was because the Monterey County District Attorney picked

18  Danny over petitioner, to turn state's evidence, and immunity

19  from prosecution. Yet the District Attorneys star witness

20  Danny Horning would go on to commit several danger to society

21  felonies, including murder-robbery were the victims head and

22  hands were cut off. It's interesting that Danny never came

23  forward to turn anyone in for two years. In fact nobody invol-

24  ved in this case came forward, as the District Attorney complains

25  of in his Ca. Pen. Code § 3042 reply to the BPH. And Mark

26  Horning never received any punishment for his personal culpab-

27  ility, as Danny says from Death Row Mark paid the D.A. off to

28

Ground 1.

CONTENTIONS

drop all charges against Mark Horning, Terry Jones, and Shelly Bragi. And the BPH never took any of this into consideration in the July 01, 2005., waived absentee parole hearing.

It is clear from this later death penalty appeal that Danny Horning was dangerous and dangerous at the time of petitioner's commitment offense. Had petitioner not robbed the store Mark and Danny would have killed petitioner. See Ca. Pen. Code § 26 (6)(8)., were as the trial court used the duress of this statue's holding to lower the degree of murder to second degree. However the trial court committed a sentencing error because as soon as, the court lowered the degree it should have followed through and found petitioner factually innocent of the offense pursuant to Ca. Pen. Code § 26 (6)(8), as second degree felony murder is not punishable by the death penalty.

Issue raised as Ground 5 of this here petition for habeas corpus.


Petitioner contends that the BPH denial reason # 4:


        " Even if we were to take the inmates (indis-

        cernible) that he was a willing participant

        in the robbery, but that was based upon that

        he was threatened, we have an individual who

        was killed, two other individuals robbed. "


And including for the same reasons the BPH denial reason # 6.,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Ground 1.

### CONTENTIONS

are a violation of petitioner's due process rights and petitioner's right to a court review that is sufficient enough to protect those rights because the current ' some evidence ' test is not sufficient to protect those said rights.

The BPH arbitrarily decided the duress and second degree Dillon proportionality/personal culpability factors found true by the trial court are irreverent. It's easy to tell the BPH is doing this by what their saying in the opening sentence of denial reason # 4: " Even if we were to take the ... " Clearly this means the BPH is not taking the relevant factors into consideration. See Ramirez quote in the Scott case law:

" The gravity of the commitment offense or
offenses alone may be sufficient basis for
denying parole application, so long as the
Board [BPH] does not fail to consider all
other relevant factors "

In re Ramirez (2001) 94 Cal.App.4th. 549, 569 114 Cal.Rptr.2d. 381. Quoted from:

In re Scott (2005) ____Cal.App.4th. ____,DJDAR 12450, 12456.
See Ex. B: BPH Denial Trans. pp. 15 - 16 line(s) 17-22 & 1-6.

The BPH arbitrarily ignored the relevant factors of duress in denial reason # 4. And in denial reason # 4 and # 6 the BPH

13.

1

Ground 1.

2

CONTENTIONS

3    primary consideration for all of the unsuitability factors stems

4    from the gravity of the commitment offense alone.  As Quoted:

5

6            We have an individual who was killed,

7            two other individuals robbed. "

8    See Ex. B: BPH Denial Trans. pp. 15 line(s) 2O - 21.

9

10        The  BPH  further  places  emphases  on  the  gravity  of  the

11    commitment offense in their denial reason # 6:

12

13            " The bigger issue, of course, is the killing

14            of the victim and there seems to be no reason

15            why the victim had to be killed.  This was

16            not a situation where the victim was attemp-

17            ting to fight off the robbers with guns or

18            (indiscernible) anything like that. "

19    See Ex. B: BPH Denial Trans. pp. 15 -16 line(s) 26; 1 - 6.

20

21        Petitioner contends the BPH with these two denial reasons

22    is  not  judging  whether  petitioner  would  pose  an  unreasonable

23    public  safety  risk,  but  the  BPH  is  seeking  retribution,

24    punishment, and even vigilantism.  Nobody, not even the Monterey

25    County  District  Attorney  thinks  petitioner  is  dangerous  just

26    that petitioner needs more punishment.

27    See Ex. G: Monterey County District Attn. 3042 reply.

28

14.

## Ground 1.

### CONTENTIONS

Petitioner contends that the BPH is not judging petitioner as an individual, nor considering petitioner's 22 years incarceration. Ca. Pen. Code § 3041(b) requires both individual consideration, and that in judging the gravity of the offense, it also includes, the concept of timing. The BPH arbitrarily disregarded the timing and placed undo emphases upon the gravity of the commitment offense alone in judging whether or not petitioner would pose an unreasonable public safety risk.

See the Carl Irons case law quote in the Scott case law:

> " Yet, the predictive value of the commitment
> offense may be very questionable after a long
> period of time 9. "

Iron v. Warden of State Prison - Solano (E.D. Cal. 2005) 358 F.Supp.2d 936, 947 fn. # 2; Quoted from:

In re Scott (2005) ____Cal.App.4th. ____, DJDAR 12450, 12456.

> " Thus, the denial of release solely on the
> basis of the gravity of the commitment
> offense warrants especially close scrutiny"

In re Scott (2005) ____Cal.App.4th. ____, DJDAR 12450, 12456. See Fn. # 9.

Ground 1.

CONTENTIONS

Petitioner contends that the BPH denial reason # 7:

> " The other reason for the denial at this point
> in time is his institutional behavior.  Prior
> programming has only been limited while incar-
> erated.  He has not sufficiently participated
> in the programs.  He has failed to demonstrate
> evidence of positive change. "

See Ex. B: BPH Denial Trans. pp. 16  line(s) 8 - 12.

The  BPH  denial  reason  #  7  is  arbitrary  and  capricious because  no  prior  BPT  unsuitability  findings,  or  recommendations of  what  petitioner  could  do  to  become  parole  suitable,  have stated  that  petitioner  is  not  sufficiently  programing. At  petitioners  prior  parole  hearing  he  was  told  to  get  his  ducks in  a  row  because  he  is  getting  close.   How  could  petitioner be  getting  close  if  his  prior  programming  was  not  sufficient- ?   See  Ex. H: Prior BPT Denial Trans. pp. 62 - 69 line(s) ____

The  deference  between  the  two  hearings  is  the  last  parole hearing  and  the  present  parole  hearing  is;  in  the  last  hearing from  Mar. 26, 2003.,  the  commissioners  were  Governor  Davis, a  democrat,  appointees,  and  in  the  present  hearing  from  Jul. 01, 2005.,  the  commissioners  are  Governor  Scwarzenegger,  a republican,  appointees.   The  two  groups  of  commissioners  did

16.

Ground 1.

CONTENTIONS

not communicate with each other. The two political groups have the same illegal no parole agenda, but do not rely on what a prior governors commissioners may have said. In this case the new BPH acted without considering what petitioner had been told by prior parole panels concerning his programming.

Petitioner further contends that he has had a total of six prior parole hearings were he was found unsuitable. As a matter of procedural due process of law rights petitioner had the right to a written notice of what he might do concerning prison programming in order that he may become parole suitable. In each of the prior six parole hearing written notices the BPT made certain programming request of petitioner. Petitioner has completed each and every one of those BPT request. So at what point in time would petitioner know from the BPT that his prison programming was not sufficient enough for this future neo-con parole commissioners appointed by a Republican?

Petitioner has completed the vocational trade of Automotive Service with degrees from the Automotive Society of Engineers. Petitioner has completed the vocational trade of Machinist with a State of California Certificate, as well as, a Machinist Union Certificate. Petitioner has completed the Category X program with a low to none violence potential something the BPT recommend ed. Petitioner has completed the BPT recommended groups of "anger control", and "assertive behavior".

17.

Ground 1.

CONTENTIONS

Petitioner has completed the workshop "Alternatives to Violence"
Petitioner has completed the program from the Catholic Church
known as KAIROUS. Petitioner has completed several college
classes and is close to earning an A.A. degree. Petitioner
has participated in the Alcoholics Anonymous program for over
twenty some years; a program recommended by every prior BPT
panel. Note up until two years ago petitioner attended this
program until he became an evolutionist and now objects to the
program as being religious. See ground 2., of this here petition
for writ of habeas corpus where petitioner raises the first
amendment objection to further participation in A.A.


No prior BPT parole panel said that this was not sufficient
so the current BPH parole panel's finding is arbitrary.
See Ex. A: BPH Hearing Trans. pp. 9 line(s) 12 - 21.


Petitioner contends that the BPH should of appointed a
CDC&R correctional counselor pursuant to Ca. Pen. Code § 3041.5
(3) because petitioner waived his constitutional right to attend
the hearing. Once a prisoner waives this attendance right the
BPH is required to hold an absentee parole hearing.
The absentee parole hearing is to be just as legally fair as
a parole hearing where the prisoner attends. The reason is
because petitioner did not waive any other procedural rights,
only the first right to attend. Because the BPH did not appoint

18.

1

Ground 1.

2

CONTENTIONS

3    a CDC&R person the BPH weigh of the evidence was lopsided and

4    arbitrarily construed in favor of the government.

5

6        Petitioner contends that the denial reason # 8:

7

8            " Misconduct while incarcerated includes

9            recently a 115, April 29th, year 2004 as well

10           as five recent 128's, starting with chrono

11           2003 which is his last parole date.  He had

12           a 115 on July 2000 -- excuse me a 128 of July

13           2003; April 2004; another one in April 2004;

14           in June 2004; 128 and finally a recent January

15           2005"

16   See Ex. B: BPH Denial Trans. pp. 16 line(s) 12 - 18.    also

17   pp. 19 line(s) 3 - 12.

18   are an arbitrary action by the BPH because the BPH has an illegal

19   five years worth of denials police for any inmate who recieves

20   a CDC&R disciplinary report known as a CDC&R 115.  The evidence

21   of this policy is in the statement of the commissioner on page

22   19 of the denial transcript where it says that petitioner needs

23   to look in the rearview mirror and put this far behind him.

24   Obviously the BPH is using a metaphor meaning a substantial

25   amount of time needs to pass from the last 115 or 128 Chrono

26   before petitioner can be found parole suitable.  This policy

27   is illegal because Ca. Pen. Code § 3041(b) restricts the BPH's

28

1 Ground 1.

2 CONTENTIONS

3 review to the gravity or timing of past or current convicted

4 offenses. A CDC&R 115 or 128 Chrono are not convicted offenses.

5      The BPH, also broke petitioner off, a three year denial behind

6 the CDC&R 115 from April of 2004, and the Jan. 2005 CDC&R 128

7 Chrono. The 115 was for quitting a prison job because of

8 inadequate ventilation from the wood dust and petitioner does

9 not want to die from wood workers disease. And petitioner was

10 placed in the job after a personality conflict with a Prison

11 Industry Authority (PIA) supervisor.     the

12 PIA supervisor for ~~running Ervin~~ and ~~employee being~~ San Quentin,

13 and ~~Davins sex~~ with the     ~~Dr. Tracy Canter.~~ As a result

14 that supervisor no longer works for San Quentin PIA, but as

15 get back at petitioner he was placed in a Hand sanding part

16 of PIA where no inmate wants to work. The wood dust is bad

17 because there is no ventilation in that part of the PIA factory.

18 Petitioner was not allowed to move out of that work position,

19 so he quit. However how does this make petitioner an unreasonabl

20 e risk to public safety ? Petitioner contends that this is

21 analogous to quitting a job in society while it may not pay

22 the bills - it only means new employment must be had.

23      The reason the BPH gave petitioner a three year denial

24 of parole is because they are under a court order to catch up

25 on over due parole hearings. Petitioners July 01, 2005., parole

26 hearing was almost a year late. So the BPH is giving out multi

27 year denials to catch up on their overdue backlog of parole

28

20.

1

**Ground 1.**

2

CONTENTIONS

3

hearings and only because a court has ordered them to do so.

4
The BPH has given other life inmates with CDC 115's dates.

5
Some of the other life inmate CDC 115's were as recent as

6
petitioner's year old 115. Some of the other life inmate's

7
CDC 115 were for rule violations far worse than petitioner's

8
quitting a prison job CDC 115. See the Smith case law:

9
In re Smith (2003) 109 Cal.App.4th. 489, 134 Cal.Rptr.2d. 781.

10

11
Petitioner contends that the BPH denial reason #9 and the

12
related BPH denial reason # 11, are arbitrary and capricious

13
because the BPH misread the psychological reports in a way that

14
was to support their predetermined pro forma parole farce.

15
BPH denial reason # 9:

16

17
" The psychological report from a Dr. Lewis

18
Phd indicates that there are concerns. One

19
of the major concerns that the doctor had

20
was in regards to his AA 12-step program.

21
Basically the doctor indicates under inpres-

22
sions, assessment of (indiscernible) 2003

23
details a risk and return to dangerousness.

24
Under Dr. Bencichs, " If the state absolutely

25
ask for drug and alcohol (indiscernible)

26
finds potential compared to average lifer.

27
However, his capacity (indiscernible) social

28

## Ground 1.

### CONTENTIONS

status were he released is compromised since
he is no longer availing himself for (indis-
cernible) of weekly support of 12-step meet-
ing.  This makes it more likely he will
relapse.  (indiscernible) meeting.  Therefore,
(indiscernible) he be paroled. "

See Ex.  B: BPH Denial Trans. pp. 16 - 17 line(s) 19-26,  1-9.
See Ex.  I: Dr. Lewis's Life Prisoner Evaluation pp. 1 - 5.
See Ex.  J: Dr. Bencich's Psychological Evaluation pp. 1 - 3.

The first thing to notice is an incredible usage by the
BPH of the word indiscernible in parentheses.  The word indis-
cernible always appears in the sentences in a way that would
tend to have a reader fill in the blank with a negative con
-notation reflecting badly upon petitioner.

Both Doctors Lewis and Bencich are agents of the State
of California Government via the BPH and CDC&R.  It is in the
Doctor's official capacity that they violated petitioner's rights
to be free of Government sponsored religion.  12-step programs
such as AA are religious programs and as such petitioner contends
it violates his first amendment rights.  This usage of religion
by the Doctors has caused the BPH to deny parole on the basis
of petitioner's refusal to participate in religion because of
his belief in science and evolution. See ground 2 of this petition.

22.

Ground 1.

CONTENTIONS

Both Doctors have in their evaluations placed petitioners violence level at lower than the average lifer. Also both Doctor 's have under the DSM - IV Axis II diagnosed: no major mental illness, nor personality disorder. Petitioner is not a Social Path. These are the relevant portions of the psychological reports that the BPH arbitrarily ignored. While both Doctors expressed concern about possible alcohol usage, both also noted petitioner has been clean and sober since 1986. If I am not using alcohol while incarcerated in the most harsh punishment environment why would I drink out there in paradise ?

Neither the BPH nor the Doctors have offered petitioner an alternative non-religious alcohol abstinence program in the penitentiary, nor upon future parole. This is arbitrary because the BPH could order such a non-religious alcohol program as part of petitioner's parole requirements.

Petitioner contends that the BPH denial reason # 12:

" Prisoner should be commended for the fact that he is attempting -- prisoner is comm-ended by the Commission to the fact that he realized that he was unsuitable and has not attempted to mitigate his numerous violations while incarcerated, and for that reason, we take that into account during the deliberat-

23.

1    Ground 1.

2    CONTENTIONS

3    -ions regarding the amount of denial. "

4    See Ex. B: BPH Denial Trans. pp. 17 - 18 line(s) 23-26, 1-24.

5

6    Petitioner contends that the BPH denial reason # 12 is

7    arbitrary and capricious because the BPH assumed petitioner

8    was unsuitable as the reason petitioner waived his right to

9    attend the parole hearing.

10    See Ex. K: BPH waiver forms signed by petitioner.

11

12    A lifer prisoner preparing to go before the BPH for a parole

13    hearing is called in before his/her correctional counselor

14    to sign a group of BPH papers concerning the life prisoners many

15    choices and possible request for ADA help ect.

16    Some of the choices on the forms includes three choices

17    concerning representation of legal counsel:

18

19    1.) The life prisoner may waive his/her right

20    to legal counsel during the upcoming parole

21    hearing.

22    2.) The life prisoner may retain his/her own

23    private legal counsel.

24    3.) The life prisoner may ask the BPH to

25    appoint legal counsel if and only if the

26    the life prisoner does not own any financial

27    in excess of $ 1500.00

28

24.

## Ground 1.
### CONTENTIONS

See Ex. K: BPT Waiver Forms pp. 1 - 7, at page 3 - 4 & 5.

On page 5 of the BPT Waiver forms petitioner on May 05, waived his right to an attorney. Petitioner contends at that point in time the BPT or BPH should have appointed a correctional counselor (CC-I) to represent petitioners factual record and this should have been done pursuant to Ca. Pen. Code § 3041.5.

A Life prisoner also has three choice, in the waiver forms, concerning the future parole hearing:

> 1.) The life prisoner may waive his/her right to attend the parole hearing. As well as, waive the right to attend , but be represented by legal counsel either appointed or hired.
> 2.) The life prisoner may request a postpone-ment of the upcoming parole hearing.
> 3.) The life prisoner may waive the parole hearing and stipulation to unsuitability; and the right to have legal counselrepresent the life prisoner during the upcoming parole hearing. This includes the life prisoners request for a one/two/three year denial.

See Ex. K: BPT Waiver Forms pp. 1 - 4.

In re Sydney M. (1984) 162 Cal.App.3d. 39, 48.

25.

Ground 1.

CONTENTIONS

Petitioner contends that he waived his right to an attorney and waived only the first procedural due process right, namely the right to be present and ask questions. Yet the BPH arb -itrarily commended petitioner for waiving his hearing because "... he realized he was unsuitable and has not attempted to mitigate his numerous violations while incarcerated, ... " See Ex. B: BPH Denial Trans. pp. 3 - 4 line(s) 23-26 & 1-3.

If petitioner, thought or believed, he was unsuitable, he would of made the third choice, and stipulation to a one year denial. But petitioner cannot ever stipulate to unsuitability because petitioner is not an unreasonable risk to public safety. Any life prisoner that stipulates to unsuitability is in fact legally admitting that they are a danger to society.

Petitioner only waived the right to attend the hearing were the form, he signed, said a hearing would be he in absence. The waiver form, on page 2 at the third, notice of rights, gives notice of the consequence of absence: i.e. a decision will be made in your absence (15 CCR § 2248) Petitioner contends this means an absence parole hearing shall be legally fair and not pre-decided by a parole commissioners presumptuous predetermined substitution for why petitioner waived his constitutional right. See in the hearing transcript were the commissioner asked petit- ioner if he was waiving because of the CDC&R 115 petitioner answered, " It isn't because of a 115, but, yeas I do want

26.

1

### Ground 1.

2

### CONTENTIONS

3 want to waive my right -- waive my right to attend a hearing.

4 I want to waive my right to an attorney."

5 See Ex. A:  BPH Hearing Trans. pp. 3  line(s) 14 - 21.

6 See Ex. K:  BPH Waiver Forms.  pp. 2  Line(s) at Rights # Three.

7

8 It cannot be said, that the commissioner did not know,

9 the hearing was being waived over a CDC&R 115, because

10 petitioner specifically expressed it was not for a 115.

11 It is arbitrary for the BPH to presume as such. The BPH is

12 arbitrary for holding against petitioner his right to waive

13 the said rights, and to do so without having to give reason.

14

15 Petitioner further contends the BPH's statement about:

16 'commending prisoner for not trying to mitigate his CDC&R 115',

17 is arbitrary. It is a biased presumption by the BPH because

18 petitioner has the due process right to answer questions about

19 the CDC&R 115. If the BPH takes the position that any answer

20 about the CDC&R 115 is an attempt to mitigate, then there is

21 no fair hearing held. Just a biased, and predetermined

22 pro forma parole hearing was given.

23

24 Petitioner contends that if any reviewing court will only

25 use the 'some evidence test' to review petitioner's many

26 contentions, then most of the pro forma BPH's violations will

27 not be corrected because there will always be some tiny little

28

7. **Ground 2** or Ground _____2_____ (if applicable):

     The BPH and their CDC&R agents are forcing their Religion of 12-steps A.A. program onto petitioner by withholding parole from petitioner until petitioner converts to the A.A. religion. This action by violates petitioner's right to be free from Government sponsored --

a. Supporting facts:

    --Religion under the first Amendment to the United States Constitution, and the relevant clauses of the U.S. state of California's Constitution.

FACTS

    The BPH used denial reason # 9:

      " The psychological report from Dr. Lewis Phd, indicates that there are concerns. One of the major concerns that the doctor had was in regards to his AA 12-step program. Basically the doctor under impressions, assessment of (indiscernible) 2003 details a risk and return to dangerousness. Under Dr. Bencichs, " If the state absolutely asks for drug and alcohol (indiscernible) finds finds potential compared to average lifer. However, his capacity (indiscernible) social status were he released is compromised since he is no longer availing himself for (indiscernible) of weekly support of 12-step meeting. This makes

continued...

b. Supporting cases, rules, or other authority:

Ex parte Andrews (1861) 18 Cal. 678.
Ca.Ed.Fac.Authority v. Priest (1974) 12 Cal.3rd. 593, 605.
Fox v. City of L.A. (1978) 22 Cal.3rd. 792, 150 Cal.Rptr. 867.
Fem.Wom. v. Philibosan (1984) 157 Cal.App.3rd. 1076, 1092.
Kerr v. Farrey (1996 7th Cir.) 95 F.3d. 472.

---

1

Ground 2.

2

CONTENTIONS

3

... it more likely he will relapse.

4

(indiscernible) meeting.  Therefore,

5

(indiscernible) he be paroled. "

6

7

See Ex. B:  Denial Trans. pp. 2 - 3 line(s) 19 - 26 & 1 - 9.

8

See Ex. I:  Dr. Lewis's Life Prisoner Evaluation. pp. 1 - 5.

9

See Ex. J:  Dr. Bencichs's Psychol. Evaluation. pp. 1 - 3.

10

11

The  BPH  and  their  CDC&R  agents  withheld  parole  from

12

petitioner  until  petitioner  converts  to  their  religion  of  AA

13

12  steps.   Petitioner  contends  this  violates  the  separation

14

of Church and State codified in the Constitution..

15

16

On  April  21,  2004.,  the  California  Supreme  Court  summarily

17

denied  petitioner's  writ  of  habeas  corpus.   The  said  writ  of

18

habeas  corpus  concerned  CDC&R  officials  denying  petitioner

19

the  right  to  pursue  a  legal  name  change  to  a  christian  name

20

change  pursuant  to  petitioners  christian  sect's  belief  system.

21

No  explanation  was  given  by  the  court  -  just  in  your  face  bam

22

your  writ  is  denied.   The  powerful  do  what  the  want  in

23

California.   This  cold  reality  caused  petitioner  to  question

24

his  belief  system.   Why  would  prayers  to  a  higher  power  asking

25

that the writ be granted avail nothing (?)

26

So  petitioner  had  a  Evolutionary  Social  Darwinism

27

enlightenment  and  became  a  Evolutionest  believing  only  in

28

39.

1                           Ground 2.

2                          CONTENTIONS

3   Science.   Soon  after  petitioner's  conversion  petitioner  stoped

4   attending  AA  12-step  after  participating  in  the  program  since

5   1986.   The  reason  petitioner  will  not  further  participate  is

6   AA  and  all  12-step  programs  are  religious  because  they  require

7   a  belief  in  a  higher  power  than  mankind.

8

9       Petitioner  told  the  prison  Phd  doctors  that  his  objection

10  was  because  of  the  religious  nature  of  the  AA  program.   Dr.

11  Lewis  included  the  objection  in  her  report.

12  See  Ex.  I:  Dr.  Lewis's  Life  Prisoner  Evaluation.  pp.  1 - 5.

13

14      Petitioner  contends  that  the  BPH  was  fully  aware  of

15  petitioners  objection  to  the  AA  12-step  program  as  religious.

16  And  petitioner  contends  that  the  BPH  fully  knows  that  AA  and

17  all  related  12-step  programs  are  religious  in  nature.   And  that

18  the  BPH  only  arbitrarily  forces  all  life  prisoners  to  attend

19  such  programs  only  to  promote  the  programs  religious  and  learned

20  helplessness.   That  the  BPH  has  never  tested  petitioner  for

21  alcoholism.   The  BPH  has  conducted  no  type  of  testing  neither

22  physical,  psychological,  medically,  nor  DNA  wise  for  the  genetic

23  disorder.   Instead,  what  the  BPH  does,  is  just  to  require  every

24  life  prisoner  to  attend  AA  12-step  programs,  irregardless  of

25  whether  or  not,  any  of  these  life  prisoners  are  actually

26  alcoholics.   The  BPH's  only  purpose  is  to  promote  the  religious

27  and  learned  helplessness  of  the  AA  12-step  programs.

28  People v. Aris (1989) 215 Cal.App.3rd. 1178, 1195.

Ground 2.

CONTENTIONS

Petitioner asserts that he is not an alcoholic. Petitioner does not have the genetic disorder encoded in petitioners DNA for alcoholism. And petitioner, if tested for the genetic disorder will prove that he is not an alcoholic.

See Ex. O: Excerpt from book ' Life Extensions".

Petitioner contends that the forced religious AA program by the BPH is arbitrary because neither the BPH nor CDC&R offered petitioner a non-religious alcohol abstinence, or alcohol counsel--ing for a parole release date.

Petitioner contends that the correctional counselors report, the two psychological reports, and the BPH's actions concerning forcing petitioner to attend AA 12-step program is in violation of petitioners ADA rights. Petitioner has told the counselor, and the two psychologist that his health problems are causing petitioner to miss AA meetings because he does not have the energy to work all day and attend AA too. Petitioner has Hepatitis C, lymphoma, chronic fatigue syndrome, and major depression. All these health problems leave petitioner exhausted with lack of energy and motivation to attend AA. But the BPH did not even consider this. The BPH also violates petitioners ADA rights for withholding parole for alcoholism because alcoholism is a disability under the ADA. Parole is being denied because of a disability.

See Ex. N: Correctional Counselors Report. pp. _____.

7. **Ground 2 or Ground** __3__ *(if applicable):*

　　　The Board of Prison Hearings violated petitioner's due process of law right pursuant to California Penal Code § 3042; by the BPH failing to send a § 3042 notice to the attorney who represented petitioner at trial: under the Federal and California Constitutional clauses.

a. **Supporting facts:**

　　　For the July 01, 2005., parole hearing, petitioner waived his right to have an attorney appointed. As a result of this waiver, petitioner was given, by the BPH agent CC-I, what is known as, the attorney evidence packet. In this evidence packet were most of the Ca. Pen. Code § 3042 notices. A § 3042 notice was sent to the trial court presiding judge, the Monterey County District Attorneys Office, and to the Monterey County Sheriff's Department. All as required by Penal Code § 3042.

See Ex. T:  California Penal Code § 3042 notices.  pp. 1 - 4.

　　　However petitioner could not find a Penal Code § 3042 notice being sent to the trial attorney who represented petitioner at his court trial in Dec. of 1983. Instead the evidence packet contained a CDC&R memorandum. The memorandum stated that a § 3042 notice could not be sent to the trial attorney because his address was unknown.

See Ex. S:  BPH/CDC&R memo of unknown trial attn. address.

　　　The attorney who represented petitioner at trial; name is on the front page of the Probation Officers Report (POR). The POR is a document that the BPH and CDC&R have.

See Ex. D:  Probation Officers Report (POR). pp. 1 - 7.

b. **Supporting cases, rules, or other authority:**

_____

_____

_____

_____

_____

1

Ground 3.

2

CONTENTIONS

3       Petitioner's trial attorneys name is: James Newhouse.

4   Petitioner believes the person in charge of send out the Penal

5   Code § 3042 notices, on behalf of the BPH, is the Classification

6   & Parole Representative at San Quentin Prison. Under CDC&R's

7   usage this is abbreviated to C&PR.

8

9       In petitioner's Central File, aka a C-file, and also

10  in the BPH attorney evidence packet, there are no address given

11  for any of the officials that Penal Code § 3042 requires the

12  BPH to send notification to. The exception would be the actual

13  § 3042 notices prepared by the C&PR of San Quentin Prison.

14  So where did the C&PR get the address's for all of the officials

15  that were sent a § 3042 notice ?

16  See Ex. T: California Penal Code § 3042 notices. pp. 1 - 4.

17

18      Petitioner contends that the C&PR had to look these address's

19  up in reference books, such as, telephone books, court

20  directories, or CDC&R's own reference address books. But the

21  C&PR did not look up petitioner's trial attorney's address in

22  any reference book like the California State Bar Association's

23  address book which contains all of the attorneys whom practice

24  law in California, and gives their addresses.

25  Petitioner did look up trial attorney James Newhouse's address

26  in the State Bar Directory. The address is: James Newhouse,

27  460 Alma Street. Monterey California, 93940-3203.

28

## Ground 3.

### CONTENTIONS

Petitioner attempted to give the trial attorney's address to to the C&PR via a CDC&R form, known as, a Request For Interview. See Ex. Q: Request For Interview Form to C&PR on Feb. 20, 2005.

The C&PR seemed not to do anything about sending a § 3042 notice to the trial attorney because petitioner did not receive a copy of any notice sent. Petitioner then filed a CDC&R 602 administrative appeal form. The 602 appealed the fact the trial attorney was not sent a Penal Code § 3042 notice as required by law.
See Ex. R:  CDC&R 602 Appeal. Mar. 14, 2005. pp. 1 - 4.

Petitioner sent the 602 appeal to the Appeals Coordinator, at San Quentin which is either CC-II, W. Jeppeson, or CC-II R. Chandler-Dacanay.  The appeals coordinator returned the 602 appeal with a CDC&R 695 form attached.  The CDC&R 695 form directed petitioner to send the 602 appeal to the BPT (BPH). See Ex. R:  CDC&R 602 Appeal. Mar. 14, 2005. at pg. 4.

Petitioner sent the 602 appeal to the Board of Prison Terms at their Sacramento address: 1515 K Street. 6th Floor. Sacramento, Ca. 95814.  The BPT of now the BPH returned the 602 appeal.  A Kirsten Preslar signed a memo stating essentially that the BPH does not accept administrative appeals of BPH's actions pursuant to CCR Title 15 § 3160.

Ground 3.

CONTENTIONS

See Ex. R:  CDC&R 602 Appeal. at pg. 1.

Petitioner contends that he has did all he could do to provide the name and address of the trial attorney to the BPH so the BPH could send a Penal Code § 3042 notice to said attorney. The attorneys name was given in the 602 appeal, and in the Request for Interview Form.  The trial attorneys address was also given in the two CDC&R official forms.  Petitioner therefore contends that the BPH arbitrarily violated his due process of law right pursuant to California Penal Code § 3042 to have a notice sent to the attorney who represented him at trial. This lack of notification by the BPH caused petitioner to have arbitrary and unfair parole hearing on July 01, 2005., becuase BPH gave undue weight to the evidence of the Monterey County District Attorneys § 3042 notice reply.  The BPH even used the Monterey County District Attorney's § 3042 notice reply, as denial reason # 10.  ( See Ground One of this petition.) However the BPH did not consider any evidence that might have been presented by the trial attorney should he have received his Penal Code § 3042 notice.  The one source of possible mitigating evidence for petitioner's behalf was purposely and illegal avoided with a trivial excuse of we don't know the trial attorney's address.  At the very least petitioner ask the reviewing court to order a new parole hearing on this ground alone.

45.

7. Ground 2 or Ground ____4____ (if applicable):

    In the July 01, 2005., parole hearing, the BPH relied upon illegal and unreliable evidence which resulted in an arbitrary and capricious parole hearing in violation of Petitioner's Due Process law rights under the California and Federal Constitutional clauses.

a. Supporting facts:

    The BPH used as its denial reason # 5:

        " There's a (indiscernible) occasion that the inmate actually got worse after the incident, never turned anyone in. This theory indicates that maybe he had more participation in the crime than he alleges."

See Ex. B:  BPH Denial Trans.  pp. 15 line(s) 22 - 26.

    This is exactly why petitioner waived attending the hearing and waived his attorney, so petitioner could find out what it was the BPH was holding against him. And here it is: a secret theory. Petitioner contends that the BPH and its predecessor the BPT have in each and every one of petitioner's parole hearings been using This secret theory.  A theory that has the BPH not accepting the court found true facts of the offense.  The BPH has held a kangaroo court based upon one small fact from the gravity of the offense

b. Supporting cases, rules, or other authority:

Ground 4.

CONTENTIONS

How does this small fact from the gravity of the offense support the commissioner contention that petitioner got worse after offense ? Let alone support a theory that petitioner had more participation in the offense than he alleges.

Petitioner did not turn anyone in, and this fact goes a long in explaining the duress.

Petitioner contends that the theory the BPH used to deny parole is illegal evidence because theories are not reliable evidence. Theories also do not have an indicia of reliability. The theory used by the BPH also is in violation of the BPH's regulation of Title 15 § 2401(a), which requires the BPH to consider all reliable evidence.

In re Dannenberg (2005) 34 Cal.4th. 1060., 1083 (§ 19).

In re Powell (1988) 45 Cal.3rd. 894, 902.

Jancsek v. Oregon Bd. Parole (9th Cir. 1997) 833 F.2d. 1389, at page 1390 indicia of reliability.

In re Scott (2005) ____ Cal.App.4th. ____, _____. DJDAR 12450, 12456.

7. **Ground 2** or **Ground** ___5___ *(if applicable):*

The BPH in denying parole with denial reason # 11, violated petitioner's due process of law rights pursuant to Ca. Penal Code § 5011, under the California and Federal Constitutional clauses, and including the relevant due process claims of a right to a defense

a. **Supporting facts:**       , and Ineffective Aid of Counsel at trial.

The BPH used denial reason # 11:

" The Panel makes the following findings.  The
Prisoner continues to need therapy programming
and self-help in order (indiscernible) discuss
the (indiscernible) cope and stress in a non-
destructive manner as well as to gather greater
insight into the crime.  In review of the
prisoner's social history and lack of program
participation, there's no occasion that the
prisoner would behave differently if paroled. "

See Ex. B: BPH Denial Trans. pg. 17 line(s) 14 - 23.

Petitioner contends that the two psychiatric reports prepared for the July 01, 2005., parole hearing both evaluate petitioner's dangerousness level as lower than the average prisoner.
See Ex. I:  Dr. Lewis's Life Prisoner Eval. pp. 1 - 5.
See Ex. J: Dr. Bencichs's Psychological Eval. pp. 1 - 3.
Therefore the BPH's requirements go beyond just assessing if
continued

b. **Supporting cases, rules, or other authority:**
California Penal Code § 5011.
People v Pope (1979) 23 Cal.3rd. 412, 427, 152 Cal.Rptr. 732.
Flanders v. Graves (8th Cir. 2002) 299 F.3d. 924
Schlup Gateway.
California and Federal Constitutions.

MC-275 (Rev. January 1, 1999)          **PETITION FOR WRIT OF HABEAS CORPUS**                    Page four of six

Ground 5.

CONTENTIONS

petitioner would pose an unreasonable risk of danger to society, as Ca. Penal Code § 3041(b) requires.  Instead the BPH is relying upon vestibule of a popular American Myth of what parole for a convicted murder should be.  The myth that the prisoner must be first broken then lead over a series of years to total rehabilitation and finally redemption in a religious way.

Petitioner further contends that this is what the BPH is is doing when it states that petitioner does not have sufficient prior prison programming, or needs therapy and self-help. The BPH arbitrarily presumes that petitioner is dangerous because he has committed a Ca. Penal Code 31 co-defendant felony murder. However the parole law Ca. Penal Code § 3041(a)(b) presumes that petitioner is parole suitable.  There is nothing particularly egregious about petitioner second degree crime to warrant not setting a parole suitability date.  Petitioner does have enough prior prison programming as petitioner has received from prior BPT parole panels written reason of what petitioner could do to become parole eligible at the next parole hearing.  In none of these prior parole hearings has the BPT recommended to petitioner that his programming was not sufficient.  How could petitioner have known that he needed more programming if the prior BPT panels have told petitioner he was doing the right things, and to get his ducks in a row concerning parole plans See Ex. H:  Prior BPT Denial Trans. pg. 66 line(s) 5 - 11.

1          Ground 5.

2          CONTENTIONS

3      Petitioner also contends that the BPH finding that petitioner

4  needs more therapy to discuss and cope with stress in a non-

5  destructive manner is arbitrary because neither psychiatric

6  report prepared for the parole hearing suggest that petitioner

7  needs therapy for the purpose of dealing with stress in a non-

8  destructive manner.  Dr. Lewis's report does recommend therapy,

9  but only for the purpose of treating petitioner's depression.

10 See Ex. I:  Dr. Lewis's Life Prisoner Eval. pg. 5 at top ¶.

11

12     Please note that both reports, evaluate petitioner as

13 suffering from depression as a mood disorder present since child-

14 hood.

15 Dr. Lewis pg. 3 at ¶ XIII Review of Life Crime, B:

16

17          " The routine mood altering substances may

18          indicate that he suffered a mood disorder,

19          likely depression that caused him to self-

20          medicate to control for his dysphoric affect

21          Mr. Ekdahl's than active addiction is one

22          contributing factor to the life crime

23          because the regular intake of substances

24          tends to increase vulnerability to behave

25          in ways they would not if they were abstinent.""

26 See Ex. I:  Dr. Lewis's Life Pris. Eval. pg. 3.

27

28

                        50.

Ground 5.

CONTENTIONS

Also Dr. Bencich pg. 2 at ¶ XIII Review of Life Crime. B:

> " I suspect his depression and very low self-
> esteem were long standing, since childhood, and
> untreated because the family was so isolated
> and transient.  I believe the fear he evidenced
> in his early incarceration, when custody felt
> he could be easily victimized, was quite similar
> to the fear he felt in childhood under his step-
> father's command and as a young adult when coerced
> into the commission of the crime by a much more
> forceful acquaintance. "

See Ex. J:  Dr. Bencichs's Psych. Eval. pg. 2.

Notice that these evaluations differ from the BPH's Assumption that petitioner's depression stems from the day that the California [Supreme] Court denied petitioner's religious name change writ of habeas corpus:

> " Mr. Ekdahl has been attempting to change his
> name, and in May of 2004 he went on a hunger
> strike for 3 days when the California Superior
> Court decided he would not be allowed to change
> his name.  This was a trigger of depression, and
> he continues to suffer from depression, he reports

51.

1                              **Ground 5.**

2                             **CONTENTIONS**

3           that the Prozac he is taking helps alleviate

4           the symptoms a great deal. "

5 See Ex. A: BPH Hearing Trans. pg. 10 line(s) 10 - 17.

6

7     Petitioner also contends that the BPH finding that petitioner

8 needs more therapy and self-help to gather greater insight into

9 the crime, is arbitrary and in violation of Ca. Penal Code

10 § 5011. This law means that a prisoner does not have to admit

11 guilt, or have greater insight into the crime, if he is innocent

12 of the crime. And if petitioner chooses to not discuss the crime

13 because of his innocence the BPH should not illegally withold

14 parole on the grounds petitioner needs more therapy to gather

15 insight. Because the only way a life prisoner could gather

16 greater insight through therapy would be for that prisoner to

17 discuss the crime with the therapist.

18

19     Petitioner contends he is innocent of this crime pursuant to

20 Ca. Penal Code § 26 (6) or later (8), and because of that

21 fact petitioner will never discuss the crime again. The Monterey

22 County Superior Court Judge Silver lowered the degree of murder

23 from 1st degree felony murder to 2nd degree felony murder.

24 The trial court was following the holding of People v Dillon

25 (1983) 34 Cal.3rd. 441. The trial court's decision to lower

26 the degree of offense was based upon petitioner's duress

27 defense. The duress petitioner suffered when Mark Horning

28

Ground 5.

CONTENTIONS

threatened petitioner with a credible death threat. The trial court was familiar with the duress as it was self-evident to trial Judge who remarked that he had personally observed the defendants and had presided over some of the Horning Brother's trial proceedings.

See Ex. E:  Trial Court Sentencing Trans.  pp.  1 - 6.

People v Horning (1984) 150 Cal.App.3rd. 1015, 1017 - 1018.

People v Horning (2005) 34 Cal.4th. 871.

Both case laws reflect upon the dangerousness of the Hornings and proves the credibility of the death threat.


The trial court would have found petitioner innocent pursuant to Ca. Penal Code § 26(6)(8) if not for the fact the statute forbids that finding if the crime is punishable by the death penalty.  So instead the trial court used the duress to lower the degree of crime to 2nd degree felony murder.  Petitioner contends that the trial court as soon as it lowered the degree of crime to 2nd degree felony murder then the trial court should of followed though and found petitioner innocent pursuant to Ca. Penal Code § 26(6)(8)., because petitioner's type of 2nd degree felony murder can never be punished by the death penalty. 2nd degree felony murder is a court created statute and as such has never in its history been punished by the death penalty; therefore there is no § 26 prohibition against petitioner's innocence and no time bar for an innocent claim.

53.

7. Ground 2 or Ground ___6___ *(if applicable)*:

    Petitioner, in the alternative, has an illegal sentence, in violation of the applicable clauses of either the California or United States Federal Constitutions, and is not time barred because an illegal sentence will always have need of legal remedy.

a. Supporting facts:

    Petitioner was convicted of 1st degree felony murder. 1st degree felony murder only carries one penalty applicable here, and that penalty is the death penalty. However the trial court lowered the degree of felony murder to 2nd degree via the holdings of People v Dillon (1983) 34 Cal.3rd. 441.

    Petitioner contends that the Rose Bird, California Supreme Court overstepped its authority, and invaded the legislative sphere of California Government, when the Court created a new 2nd degree felony murder for punishment of one of the felonies enumerated in California Penal Code § 189. Only the California Legislature has authority to define crimes and the punishments for those crimes. While the California Judicial Branch of Government has created a " wholly judicial creation" of 2nd degree felony murder, it is only applicable to any felony inherently dangerous to human life, and is not one of the six felonies enumerated in Penal Code § 189. Petitioner's robbery convictions are one of the six felonies that are enumerated in Penal Code § 189. Therefore petitioner cannot be sentenced to 2nd degree felony murder because the court had no authority to create this proportionality type of 2nd degree felony murder. Petitioner should be ordered by the court to be re-sentenced to 1st degree felony murder sentence of Death Penalty.

b. Supporting cases, rules, or other authority:

People v Ford (1964) 60 Cal.2nd. 772; 36 Cal.Rptr. 2nd. 620.

People v Hansen (1994) 9 Cal.4th. 300; 36 Cal.Rptr. 609.

People v Mattison (1971) 4 Cal.3rd. 177; 93 Cal.Rptr. 185.

People v Burroughs (1984) 35 Cal.3rd. 824, 829.

People v Dillon (1983) 34 Cal.3rd. 441.

7. Ground 2 or Ground ___7.___ *(if applicable):*

California Penal Code Statue § 3001 is unconstitutional under any relevant Constitutional Clause of either or both of the U.S. State of California Constitution or the United States Federal Constitution.

a. Supporting facts:

Petitioner is convicted out of Monterey County. As such, pursuant to Ca. Penal Code § 3001., petitioner must parole to Monterey County. Petitioner does not have family in Monterey County. CDC&R does not provide for life prisoner under Ca. Penal Code § 1168 any type of pre parole resources. The BPH does require life prisoners to submitted viable parole plans that include a place of residence and a promise of future employment. While the BPH does not have specific regulations to cover its pre parole requirements from a life prisoner. The BPH does, as a matter of long standing routine, require such pre parole plans. Not all California Counties are equal in their economic opportunities, and resources available to petitioner to create his pre parole plans. The BPH has constantly has denied petitioner to change the county of parole. Petitioner therefore faces unfair and financial difficulties in formulating viable pre parole plans that will be acceptable enough for the BPH to find petitioner for parole. This fact causes petitioner considerable depression because he will never be able to parole because of this statutes requirements and the BPH's draconian application of the law.

b. Supporting cases, rules, or other authority:

**<u>VERIFICATION</u>**

I, Emil Ekdahl, state:

I am the petitioner in this action.  I have read the foregoing Writ of Habeas Corpus and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on. Dated:  _August 28_____, 2006, at San Quentin State Prison, California.

Respectfully submitted

_Emil Ekdahl_
**Emil Ekdahl,**
Plaintiff In pro. se.

## PRAYER REQUEST FOR RELIEF

Petitioner is without remedy save for habeas corpus.  Accordingly, petitioner request that the Court:

1.      Issue a writ of habeas corpus

2.      Issue an order to show cause

3.      Declare the rights of the parties;

4.      Grant any and all relief found necessary or appropriate.

Respectfully submitted

Emil Ekdahl

Emil Ekdahl,
Plaintiff In pro. se.