# EXHIBIT H
# (PART 2 OF 2)

FACTS.

#11.)  The Panel makes the following findings.
       The prisoner continues to need therapy
       programming and self-help in order indiscer-
       nible) discuss the (indiscernible) cope and
       stress in a nondestructive manner as well as
       to gather greater insight into the crime.
       In review of the prisoner's social history
       and lack of program participation, there's
       no occasion that the prisoner would behave
       differently if paroled.


#12.)  Prisoner should be commended for the fact
       that he is attempting -- prisoner is commended
       by the Commission to the fact that he realized
       that he was unsuitable and has not attempted
       to mitigate his numerous violations while
       incarcerated, and for that reason, we will
       take that into account during the deliberat-
       ions regarding the amount of denial.

See EX. B: BPH Denial Trans. pp. 15 - 20  line(s)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ground 1.

CONTENTS

Petitioner contends that the fundamental purpose of due process of law, even the laws of our government is based upon fairness. That concept of fairness of the Constitutions, federal law, and state law applies to the Individual. Even down to the least individual of our society the convicted murder.

The parole term suitability hearings before the California BPH must provide due process of law. And that due process means something more than a mere pro forma parole hearing. It means that due process of law is there to insure that a fair hearing is held. Petitioner did not receive a fair hearing and it is petitioner's contention that a court review that only looks to see if there is ' some evidence ' to support the BPH decision is not sufficient enough to protect a prisoners' due process rights. A reviewing courts some evidence test would cause a arbitrary and capricious pro forma parole hearing to pass review. The problem with that standard is that there will always be some evidence to support the BPH. Especially if all the BPH has to is recite some of the CCR title 15 regulations and slap one or facts from any prisoner's murder and presto a pro forma hearing was had. And yet the controlling parole statue Ca. Pen. Code § 3041 (a) states that parole for murder is normal.

Petitioner denies each and every one of the BPH's 12 denial reasons. Petitioner will lay out a contention for each denial reason as due process violation also some denial reasons will

6.

1  Ground 1.

2  CONTENTIONS

3  be raised as separate constitutional grounds herein this petition

4  for writ of habeas corpus.

5  Petitioner contends the BPH just regurgitated some boiler-

6  plate of the CCR title 15 regulations and added some fact from

7  the offense to an illegal repromulgation of the regulations.

8  The one added fact is from denial reason #2:

9

10  " Multiple victims were robbed and one

11  person killed. "

12

13  The actual regulation CCR Title 15 § 2402 reads:

14

15  (c)(1)(A) Multiple victims were attacked, injured

16  or killed in the same or separate incidents.

17

18  Petitioner contends that regulations give raise to the same

19  due process of law rights as any law.  The title 15 regulation

20  as promulgated does not fit petitioners offense.   The actual

21  wording of the regulation means victims were attacked coma injured

22  There can be no separation of attacked, injured.  Together the

23  phrase attacked, injured means as in physically attacked and

24  injured.  While in petitioners offense two victims were robbed

25  by being made to lay upon a floor, they were not physically

26  harmed in any way.  What the BPH has done is to repulmagate

27  the regulation to fit the offense instead of weighing the offense

28  to see if the offense fits the regulation.

7.

1                                 Ground 1.

2                               CONTENTIONS

3       The BPH repromulgation was done without proper OAL procedure.

4 U.S. v. Nixon (1974) 418 U.S. 683, 41 L.Ed.2d. 1039.

5 Ag.L.Rl.Bd. v Sup.Ct. (1976) 16 Cal.3d. 392, 128 Cal.Rptr. 183.

6

7       Petitioner contends That the California felony murder theory

8 coupled with Ca. Pen. Code § 31 co-conspirater liability, and

9 the particular facts of the offense prove that there is no truth

10 to the BPH's unsuitability findings # 1 - 3; that the offense

11 was cruel and callous, dispassionate, inexplicable, [or] trivial.

12 Nor is the BPH considering petitioner as an individual pursuant

13 to Ca. Pen. Code § 3041(b); by acknowledging the above mentioned

14 facts.  The BPH acted arbitrarily by placing the full weight

15 of the offense onto petitioner while not considering the facts

16 from the offense as they apply to petitioner as an individual.

17       Individually petitioner was forced to participate in the

18 offense under a credible threat of duress.  This duress was

19 more than sufficient enough to cause the trial court to lower

20 the degree of murder to 2nd degree felony murder pursuant to

21 the individual culpability plus cruel and unusual punishment

22 holdings of People v Dillon (1983) 34 Cal.3d. 440.  This was

23 small occurrence because as Dillon characterizes it: A proport-

24 ionality finding of cruel and unusual punishment is the exception

25 to the rule and not the normal course of action for a trial

26 court to make.  Petitioner's Dillon reduction in degree of murder

27 is an exceptional event premised upon petitioners duress defense.

28                                   8.

Ground 1.

CONTENTIONS

It is a major, exceptional, court found true fact, that the BPH arbitrarily and capriciously, did not consider in the absentee parole hearing held on July 01, 2005.

Particularly troubling is the BPH's unsuitability finding of dispassionate. As the dictionary defines it dispassionate means to be without emotion. While duress is defined by court case law holdings to mean:

Duress is defined as " a direct or implied threat of force violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to

  1.) Perform an act which otherwise they would not have performed.

  2.) Acquiesce in an act to which one would not have submitted.

People v Cochran (2002) 103 Cal.App.4th. 8, 13.

Duress is not dispassionate it is a form of fear. See the following case law for a definition of what fear means: People v Pitmon (1985) 170 Cal.App.3rd. 38, 51.

Petitioner contends that the robbery was only carried out after being given a credible death threat by co-conspirater Mark Horning. In fact anyone of the Horning brothers would have killed petitioner on, or for Marks behalf, especially Danny Horning. The Detective who investigated petitioners commitment offens Detective Gordon Sonne' wrote a letter to the then BPT supporting

9.

Ground 1.

CONTENTIONS

petitioners parole. In that letter Dect. Sonne characterized the Horning brothers as a gang. Petitioner contends this is the same as a criminal street gang.

See Ex. C: Detective Sonne's Mar 06 1991 Letter.

See Ex. D: Probation Officers Report.


Petitioner offers the following two case laws to support the contention that the Hornings threat was credible.

People v Horning (1984) 150 Cal.App.3d. 1015, 1017 - 1018 198 Cal.Rptr. 384.

People v Horning (2005) 34 Cal.4th. 871, 22 Cal.Rptr.2d. 305.


In the first case law from 1984 where its an appeal by Mark Horning where Danny Horning is also involved.

In another robbery, unrelated to petitioner's conviction, , Mark Horning threatens the victim Mr. Sears with a credible threat, as follows:

" he [Mark] always got even with the people he thought didn't do him right"

Later that same day, Mark and Dannys erratic and aggressive behavior frightened the victim Mr. Sears.

Several hours later the same day the victim Mr. Sears was attacked , injured in his barn. Someone [Mark or Danny] hit Mr. Sears in the head twice with a five pound sledge hammer. The victim Mr. Sears was then threatened with a pistol and personally robbed.

10.

Ground 1.

CONTENTIONS

The reader should note from this case law (150 C.A.3rd. 1015)
that a police stop of the Hornings near the victim Mr. Sear's
residence, did not result in an arrest because Mark Horning
was identified as a Prison Guard employee.  Mark Horning was
Correctional Officer and due's paying member of the CCPOA when
he credible threatened petitioner.  In short an authority figure.
People v. Pitmon (1985) 170 Cal.App.3rd. 38, 51.

The second case law People v. Horning (2005) 34 Cal.4th.
871., is a death penalty appeal of Danny Horning occurring some
years after petitioner's commitment offense.  Danny Horning
never did time for his Ca. Pen. Code § 31., personal culpability
in petitioner's commitment offense of California felony murder.
The reason Danny Horning never received any punishment for his
role was because the Monterey County District Attorney picked
Danny over petitioner, to turn state's evidence, and immunity
from prosecution.  Yet the District Attorneys star witness
Danny Horning would go on to commit several danger to society
felonies, including murder-robbery were the victims head and
hands were cut off.  It's interesting that Danny never came
forward to turn anyone in for two years.  In fact nobody invol-
ved in this case came forward, as the District Attorney complains
of in his Ca. Pen. Code § 3042 reply to the BPH.  And Mark
Horning never received any punishment for his personal culpab-
ility, as Danny says from Death Row Mark paid the D.A. off to

11.

1 | Ground 1.

2 | CONTENTIONS

3 | drop all charges against Mark Horning, Terry Jones, and Shelly

4 | Bragi. And the BPH never took any of this into consideration

5 | in the July 01, 2005., waived absentee parole hearing.

6 | It is clear from this later death penalty appeal that Danny

7 | Horning was dangerous and dangerous at the time of petitioner's

8 | commitment offense. Had petitioner not robbed the store Mark

9 | and Danny would have killed petitioner. See Ca. Pen. Code §

10 | 26 (6)(8)., were as the trial court used the duress of this

11 | statue's holding to lower the degree of murder to second degree.

12 | However the trial court committed a sentencing error because

13 | as soon as, the court lowered the degree it should have followed

14 | through and found petitioner factually innocent of the offense

15 | pursuant to Ca. Pen. Code § 26 (6)(8), as second degree felony

16 | murder is not punishable by the death penalty.

17 | Issue raised as Ground 5 of this here petition for habeas corpus.

18 |

19 | Petitioner contends that the BPH denial reason # 4:

20 |

21 | " Even if we were to take the inmates (indis-

22 | cernible) that he was a willing participant

23 | in the robbery, but that was based upon that

24 | he was threatened, we have an individual who

25 | was killed, two other individuals robbed. "

26 |

27 | And including for the same reasons the BPH denial reason # 6.,

28 |

Ground 1.

CONTENTIONS

are a violation of petitioner's due process rights and petitoner's right to a court review that is sufficient enough to protect those rights because the current ' some evidence ' test is not sufficient to protect those said rights.

The BPH arbitrarily decided the duress and second degree Dillon proportionality/personal culpability factors found true by the trial court are irreverent. It's easy to tell the BPH is doing this by what their saying in the opening sentence of denial reason # 4: " Even if we were to take the ... " Clearly this means the BPH is not taking the relevant factors into consideration. See Ramirez quote in the Scott case law:

> " The gravity of the commitment offense or
> offenses alone may be sufficient basis for
> denying parole application, so long as the
> Board [BPH] does not fail to consider all
> other relevant factors "

In re Ramirez (2001) 94 Cal.App.4th. 549, 569 114 Cal.Rptr.2d. 381. Quoted from:

In re Scott (2005) ____Cal.App.4th. ____,DJDAR 12450, 12456. See Ex. B: BPH Denial Trans. pp. 15 - 16 line(s) 17-22 & 1-6.

The BPH arbitrarily ignored the relevant factors of duress in denial reason # 4. And in denial reason # 4 and # 6 the BPH

13.

Ground 1.

CONTENTIONS

primary consideration for all of the unsuitability factors stems from the gravity of the commitment offense alone. As Quoted:

> We have an individual who was killed,
>
> two other individuals robbed. "

See Ex. B: BPH Denial Trans. pp. 15 line(s) 20 - 21.

The BPH further places emphases on the gravity of the commitment offense in their denial reason # 6:

> " The bigger issue, of course, is the killing
>
> of the victim and there seems to be no reason
>
> why the victim had to be killed. This was
>
> not a situation where the victim was attemp-
>
> ting to fight off the robbers with guns or
>
> (indiscernible) anything like that. "

See Ex. B: BPH Denial Trans. pp. 15 -16 line(s) 26, 1 - 6.

Petitioner contends the BPH with these two denial reasons is not judging whether petitioner would pose an unreasonable public safety risk, but the BPH is seeking retribution, punishment, and even vigilantism. Nobody, not even the Monterey County District Attorney thinks petitioner is dangerous just that petitioner needs more punishment.

See Ex. G: Monterey County District Attn. 3042 reply.

14.

## Ground 1.

### CONTENTIONS

Petitioner contends that the BPH is not judging petitioner as an individual, nor considering petitioner's 22 years incarceration. Ca. Pen. Code § 3041(b) requires both individual consideration, and that in judging the gravity of the offense, it also includes, the concept of timing. The BPH arbitrarily disregarded the timing and placed undo emphases upon the gravity of the commitment offense alone in judging whether or not petitioner would pose an unreasonable public safety risk.

See the Carl Irons case law quote in the Scott case law:

> " Yet, the predictive value of the commitment
> offense may be very questionable after a long
> period of time 9. "

Iron v. Warden of State Prison - Solano (E.D. Cal. 2005) 358 F.Supp.2d. 936, 947 fn. # 2; Quoted from:

In re Scott (2005) ____Cal.App.4th. ____, DJDAR 12450, 12456.

> " Thus, the denial of release solely on the
> basis of the gravity of the commitment
> offense warrants especially close scrutiny"

In re Scott (2005) ____Cal.App.4th. ____, DJDAR 12450, 12456. See Fn. # 9.

Ground 1.

CONTENTS

Petitioner contends that the BPH denial reason # 7:

> " The other reason for the denial at this point
> in time is his institutional behavior.  Prior
> programming has only been limited while incar-
> erated.  He has not sufficiently participated
> in the programs.  He has failed to demonstrate
> evidence of positive change. "

See Ex. B: BPH Denial Trans. pp. 16  line(s) 8 - 12.

The  BPH  denial  reason  #  7  is  arbitrary  and  capricious because no prior BPT unsuitability findings, or recommendations of what petitioner could do to become parole suitable, have stated  that  petitioner  is  not  sufficiently  programing. At petitioners prior parole hearing he was told to get his ducks in a row because he is getting close.  How could petitioner be getting close if his prior programming was not sufficient ? .See Ex. H: Prior BPT Denial Trans. pp. 62 - 69 line(s) ____

The deference between the two hearings is the last parole hearing and the present parole hearing is; in the last hearing from Mar. 26, 2003., the commissioners were Governor Davis, a democrat, appointees, and in the present hearing from Jul. 01, 2005., the commissioners are Governor Scwarzenegger, a republican, appointees.  The two groups of commissioners did

16.

Ground 1.

CONTENTIONS

not communicate with each other.  The two political groups have the same illegal no parole agenda, but do not rely on what a prior governors commissioners may have said.  In this case the new BPH acted without considering what petitioner had been told by prior parole panels concerning his programming.

Petitioner further contends that he has had a total of six prior parole hearings were he was found unsuitable. As a matter of procedural due process of law rights petitioner had the right to a written notice of what he might do concerning prison programming in order that he may become parole suitable. In each of the prior six parole hearing written notices the BPT made certain programming request of petitioner. Petitioner has completed each and every one of those BPT request. So at what point in time would petitioner know from the BPT that his prison programming was not sufficient enough for this future neo-con parole commissioners appointed by a Republican?


Petitioner has completed the vocational trade of Automotive Service with degrees from the Automotive Society of Engineers. Petitioner has completed the vocational trade of Machinist with a State of California Certificate, as well as, a Machinist Union Certificate.  Petitioner has completed the Category X program with a low to none violence potential something the BPT recommend ed.  Petitioner has completed the BPT recommended groups of "anger control", and "assertive behavior".

17.

1

Ground 1.

2

CONTENTIONS

3    Petitioner has completed the workshop "Alternatives to Violence"

4    Petitioner has completed the program from the Catholic Church

5    known as KAIROUS.    Petitioner has completed several college

6    classes and is close to earning an A.A. degree.    Petitioner

7    has participated in the Alcoholics Anonymous program for over

8    twenty some years; a program recommended by every prior BPT

9    panel.    Note up until two years ago petitioner attended this

10   program until he became an evolutionist and now objects to the

11   program as being religious.    See ground 2., of this here petition

12   for writ of habeas corpus where petitioner raises the first

13   amendment objection to further participation in A.A.

14

15   No prior BPT parole panel said that this was not sufficient

16   so the current BPH parole panel's finding is arbitrary.

17   See Ex. A: BPH Hearing Trans. pp. 9 line(s) 12 - 21.

18

19   Petitioner contends that the BPH should of appointed a

20   CDC&R correctional counselor pursuant to Ca. Pen. Code § 3041.5

21   (3) because petitioner waived his constitutional right to attend

22   the hearing.    Once a prisoner waives this attendance right the

23   BPH is required to hold an absentee parole hearing.

24   The absentee parole hearing is to be just as legally fair as

25   a parole hearing where the prisoner attends.    The reason is

26   because petitioner did not waive any other procedural rights,

27   only the first right to attend.    Because the BPH did not appoint

28

18.

Ground 1.

CONTENTIONS

a CDC&R person the BPH weigh of the evidence was lopsided and arbitrarily construed in favor of the government.

Petitioner contends that the denial reason # 8:

" Misconduct while incarcerated includes recently a 115, April 29th, year 2004 as well as five recent 128's, starting with chrono 2003 which is his last parole date.  He had a 115 on July 2000 -- excuse me a 128 of July 2003; April 2004; another one in April 2004; in June 2004; 128 and finally a recent January 2005"

See Ex. B: BPH Denial Trans. pp. 16 line(s) 12 - 18.   also pp. 19 line(s) 3 - 12.

are an arbitrary action by the BPH because the BPH has an illegal five years worth of denials police for any inmate who recieves a CDC&R disciplinary report known as a CDC&R 115.  The evidence of this policy is in the statement of the commissioner on page 19 of the denial transcript where it says that petitioner needs to look in the rearview mirror and put this far behind him. Obviously the BPH is using a metaphor meaning a substantial amount of time needs to pass from the last 115 or 128 Chrono before petitioner can be found parole suitable.  This policy is illegal because Ca. Pen. Code § 3041(b) restricts the BPH's

Ground 1.

CONTENTIONS

review to the gravity or timing of past or current convicted offenses. A CDC&R 115 or 128 Chrono are not convicted offenses.

The BPH, also broke petitioner off, a three year denial behind the CDC&R 115 from April of 2004, and the Jan. 2005 CDC&R 128 Chrono. The 115 was for quitting a prison job because of inadequate ventilation from the wood dust and petitioner does not want to die from wood workers disease. And petitioner was placed in the job after a personality conflict with a Prison Industry Authority (PIA) supervisor.                    the PIA supervisor for ~~running Bracin~~ and ~~woodshop taks~~ San Quentin, and ~~Bracing sex~~ with the    ~~Bracing iBracin~~. As a result that supervisor no longer works for San Quentin PIA, but as get back at petitioner he was placed in a Hand sanding part of PIA where no inmate wants to work. The wood dust is bad because there is no ventilation in that part of the PIA factory. Petitioner was not allowed to move out of that work position, so he quit. However how does this make petitioner an unreasonabl e risk to public safety ? Petitioner contends that this is analogous to quitting a job in society while it may not pay the bills - it only means new employment must be had.

The reason the BPH gave petitioner a three year denial of parole is because they are under a court order to catch up on over due parole hearings. Petitioners July 01, 2005., parole hearing was almost a year late. So the BPH is giving out multi year denials to catch up on their overdue backlog of parole

20.

**Ground 1.**

CONTENTIONS

hearings and only because a court has ordered them to do so.
The BPH has given other life inmates with CDC 115's dates.
Some of the other life inmate CDC 115's were as recent as
petitioner's year old 115. Some of the other life inmate's
CDC 115 were for rule violations far worse than petitioner's
quitting a prison job CDC 115. See the Smith case law:
In re Smith (2003) 109 Cal.App.4th. 489, 134 Cal.Rptr.2d. 781.

Petitioner contends that the BPH denial reason #9 and the
related BPH denial reason # 11, are arbitrary and capricious
because the BPH misread the psychological reports in a way that
was to support their predetermined pro forma parole farce.
BPH denial reason # 9:

> " The psychological report from a Dr. Lewis
> Phd indicates that there are concerns. One
> of the major concerns that the doctor had
> was in regards to his AA 12-step program.
> Basically the doctor indicates under inpres-
> sions, assessment of (indiscernible) 2003
> details a risk and return to dangerousness.
> Under Dr. Bencichs, " If the state absolutely
> ask for drug and alcohol (indiscernible)
> finds potential compared to average lifer.
> However, his capacity (indiscernible) social

21.

Ground 1.

CONTENTIONS

status were he released is compromised since
he is no longer availing himself for (indis-
cernible) of weekly support of 12-step meet-
ing.  This makes it more likely he will
relapse.  (indiscernible) meeting.  Therefore,
(indiscernible) he be paroled. "

See Ex. B: BPH Denial Trans. pp. 16 - 17 line(s) 19-26, 1-9.
See Ex. I: Dr. Lewis's Life Prisoner Evaluation pp. 1 - 5.
See Ex. J: Dr. Bencich's Psychological Evaluation pp. 1 - 3.


The first thing to notice is an incredible usage by the
BPH of the word indiscernible in parentheses.  The word indis-
cernible always appears in the sentences in a way that would
tend to have a reader fill in the blank with a negative con
-notation reflecting badly upon petitioner.

Both Doctors Lewis and Bencich are agents of the State
of California Government via the BPH and CDC&R.  It is in the
Doctor's official capacity that they violated petitioner's rights
to be free of Government sponsored religion.  12-step programs
such as AA are religious programs and as such petitioner contends
it violates his first amendment rights.  This usage of religion
by the Doctors has caused the BPH to deny parole on the basis
of petitioner's refusal to participate in religion because of
his belief in science and evolution. See ground 2 of this petition.

22.

Ground 1.

CONTENTIONS

Both Doctors have in their evaluations placed petitioners violence level at lower than the average lifer. Also both Doctor 's have under the DSM - IV Axis II, diagnosed: no major mental illness, nor personality disorder. Petitioner is not a Social Path. These are the relevant portions of the psychological reports that the BPH arbitrarily ignored. While both Doctors expressed concern about possible alcohol usage, both also noted petitioner has been clean and sober since 1986. If I am not using alcohol while incarcerated in the most harsh punishment environment why would I drink out there in paradise ?

Neither the BPH nor the Doctors have offered petitioner an alternative non-religious alcohol abstinence program in the penitentiary, nor upon future parole. This is arbitrary because the BPH could order such a non-religious alcohol program as part of petitioner's parole requirements.

Petitioner contends that the BPH denial reason # 12:

> " Prisoner should be commended for the fact
> that he is attempting -- prisoner is comm-
> ended by the Commission to the fact that he
> realized that he was unsuitable and has not
> attempted to mitigate his numerous violations
> while incarcerated, and for that reason, we
> take that into account during the deliberat-

Ground 1.

CONTENTIONS

-ions regarding the amount of denial. "

See Ex. B: BPH Denial Trans. pp. 17 - 18 line(s) 23-26, 1-24.

Petitioner contends that the BPH denial reason # 12 is arbitrary and capricious because the BPH assumed petitioner was unsuitable as the reason petitioner waived his right to attend the parole hearing.

See Ex. K: BPH waiver forms signed by petitioner.

A lifer prisoner preparing to go before the BPH for a parole hearing is called in before his/her correctional counselor to sign a group of BPH papers concerning the life prisoners many choices and possible request for ADA help ect.

Some of the choices on the forms includes three choices concerning representation of legal counsel:

1.) The life prisoner may waive his/her right to legal counsel during the upcoming parole hearing.

2.) The life prisoner may retain his/her own private legal counsel.

3.) The life prisoner may ask the BPH to appoint legal counsel if and only if the the life prisoner does not own any financial in excess of $ 1500.00

Ground 1.

CONTENTIONS

See Ex. K: BPT Waiver Forms pp. 1 - 7, at page 3 - 4 & 5.

On page 5 of the BPT Waiver forms petitioner on May 05, waived his right to an attorney. Petitioner contends at that point in time the BPT or BPH should have appointed a correctional counselor (CC-I) to represent petitioners factual record and this should have been done pursuant to Ca. Pen. Code § 3041.5.

A Life prisoner also has three choice, in the waiver forms, concerning the future parole hearing:

  1.) The life prisoner may waive his/her right
  to attend the parole hearing. As well as,
  waive the right to attend , but be represented
  by legal counsel either appointed or hired.
  2.) The life prisoner may request a postpone-
  ment of the upcoming parole hearing.
  3.) The life prisoner may waive the parole
  hearing and stipulation to unsuitability;
  and the right to have legal counsel represent
  the life prisoner during the upcoming parole
  hearing. This includes the life prisoners
  request for a one/two/three year denial.

See Ex. K: BPT Waiver Forms pp. 1 - 4.

In re Sydney M. (1984) 162 Cal.App.3d. 39, 48.

1

Ground 1.

2

CONTENTIONS

3      Petitioner contends that he waived his right to an attorney

4 and waived only the first procedural due process right, namely

5 the right to be present and ask questions. Yet the BPH arb

6 -itrarily commended petitioner for waiving his hearing because

7 "... he realized he was unsuitable and has not attempted to

8 mitigate his numerous violations while incarcerated, ... "

9 See Ex. B: BPH Denial Trans. pp. 3 - 4 line(s) 23-26 & 1-3.

10

11      If petitioner, thought or believed, he was unsuitable, he

12 would of made the third choice, and stipulation to a one year

13 denial. But petitioner cannot ever stipulate to unsuitability

14 because petitioner is not an unreasonable risk to public safety.

15 Any life prisoner that stipulates to unsuitability is in fact

16 legally admitting that they are a danger to society.

17      Petitioner only waived the right to attend the hearing

18 were the form, he signed, said a hearing would be he in absence.

19 The waiver form, on page 2 at the third, notice of rights, gives

20 notice of the consequence of absence: i.e. a decision will be

21 made in your absence (15 CCR § 2248) Petitioner contends this

22 means an absence parole hearing shall be legally fair and not

23 pre-decided by a parole commissioners presumptuous predetermined

24 substitution for why petitioner waived his constitutional right.

25 See in the hearing transcript were the commissioner asked petit-

26 ioner if he was waiving because of the CDC&R 115 petitioner

27 answered, " It isn't because of a 115, but, yeas I do want

28

26.

Ground 1.

CONTENTIONS

want to waive my right -- waive my right to attend a hearing.

I want to waive my right to an attorney."

See Ex. A: BPH Hearing Trans. pp. 3 line(s) 14 - 21.

See Ex. K: BPH Waiver Forms. pp. 2 Line(s) at Rights # Three.

It cannot be said, that the commissioner did not know, the hearing was being waived over a CDC&R 115, because petitioner specifically expressed it was not for a 115. It is arbitrary for the BPH to presume as such. The BPH is arbitrary for holding against petitioner his right to waive the said rights, and to do so without having to give reason.

Petitioner further contends the BPH's statement about: 'commending prisoner for not trying to mitigate his CDC&R 115', is arbitrary. It is a biased presumption by the BPH because petitioner has the due process right to answer questions about the CDC&R 115. If the BPH takes the position that any answer about the CDC&R 115 is an attempt to mitigate, then there is no fair hearing held. Just a biased, and predetermined pro forma parole hearing was given.

Petitioner contends that if any reviewing court will only use the 'some evidence test' to review petitioner's many contentions, then most of the pro forma BPH's violations will not be corrected because there will always be some tiny little

27.

7. **Ground 2 or Ground** _2_ *(if applicable):*

    The BPH and their CDC&R agents are forcing their Religion of 12-steps A.A. program onto petitioner by withholding parole from petitioner until petitioner converts to the A.A. religion. This action violates petitioner's right to be free from Government sponsored --

a. Supporting facts:

    --Religion under the first Amendment to the United States Constitution, and the relevant clauses of the U.S. state of California's Constitution.

FACTS.

    The BPH used denial reason # 9:

       " The psychological report from Dr. Lewis Phd, indicates that there are concerns. One of the major concerns that the doctor had was in regards to his AA 12-step program. Basically the doctor under impressions, assessment of (indiscernible) 2003 details a risk and return to dangerousness. Under Dr. Bencichs, " If the state absolutely asks for drug and alcohol (indiscernible) finds finds potential compared to average lifer. However, his capacity (indiscernible) social status were he released is compromised since he is no longer availing himself for (indiscernible) of weekly support of 12-step meeting. This makes

continued...

b. Supporting cases, rules, or other authority:

Ex parte Andrews (1861) 18 Cal. 678.
Ca.Ed.Fac.Authority v. Priest (1974) 12 Cal.3rd. 593, 605.
Fox v. City of L.A. (1978) 22 Cal.3rd. 792, 150 Cal.Rptr. 867.
Fem.Wom. v. Philibosan (1984) 157 Cal.App.3rd. 1076, 1092.
Kerr v. Farrey (1996 7th Cir.) 95 F.3d. 472.

Ground 2.

CONTENTIONS

... it more likely he will relapse.

(indiscernible) meeting. Therefore,

(indiscernible) he be paroled. "

See Ex. B:  Denial Trans. pp.  2 - 3 line(s) 19 - 26 & 1 - 9.

See Ex. I:  Dr. Lewis's Life Prisoner Evaluation. pp. 1 - 5.

See Ex. J:  Dr. Bencichs's Psychol. Evaluation. pp. 1 - 3.


The BPH and their CDC&R agents withheld parole from petitioner until petitioner converts to their religion of AA 12 steps.  Petitioner contends this violates the separation of Church and State codified in the Constitution.


On April 21, 2004., the California Supreme Court summarily denied petitioner's writ of habeas corpus.  The said writ of habeas corpus concerned CDC&R officials denying petitioner the right to pursue a legal name change to a christian name change pursuant to petitioners christian sect's belief system. No explanation was given by the court - just in your face bam your writ is denied.  The powerful do what the want in California.  This cold reality caused petitioner to question his belief system.  Why would prayers to a higher power asking that the writ be granted avail nothing (?)

So petitioner had a Evolutionary Social Darwinism enlightenment and became a Evolutionest believing only in

Ground 2.

CONTENTIONS

Science. Soon after petitioner's conversion petitioner stoped attending AA 12-step after participating in the program since 1986. The reason petitioner will not further participate is AA and all 12-step programs are religious because they require a belief in a higher power than mankind.

Petitioner told the prison Phd doctors that his objection was because of the religious nature of the AA program. Dr. Lewis included the objection in her report.

See Ex. I: Dr. Lewis's Life Prisoner Evaluation. pp. 1 - 5.

Petitioner contends that the BPH was fully aware of petitioners objection to the AA 12-step program as religious. And petitioner contends that the BPH fully knows that AA and all related 12-step programs are religious in nature. And that the BPH only arbitrarily forces all life prisoners to attend such programs only to promote the programs religious and learned helplessness. That the BPH has never tested petitioner for alcoholism. The BPH has conducted no type of testing neither physical, psychological, medically, nor DNA wise for the genetic disorder. Instead, what the BPH does, is just to require every life prisoner to attend AA 12-step programs, irregardless of whether or not, any of these life prisoners are actually alcoholics. The BPH's only purpose is to promote the religious and learned helplessness of the AA 12-step programs.

People v. Aris (1989) 215 Cal.App.3rd. 1178, 1195.

40.

Ground 2.

CONTENTIONS

Petitioner asserts that he is not an alcoholic. Petitioner does not have the genetic disorder encoded in petitioners DNA for alcoholism. And petitioner, if tested for the genetic disorder will prove that he is not an alcoholic.
See Ex. O: Excerpt from book ' Life Extensions".

Petitioner contends that the forced religious AA program by the BPH is arbitrary because neither the BPH nor CDC&R offered petitioner a non-religious alcohol abstinence, or alcohol counsel--ing for a parole release date.

Petitioner contends that the correctional counselors report, the two psychological reports, and the BPH's actions concerning forcing petitioner to attend AA 12-step program is in violation of petitioners ADA rights. Petitioner has told the counselor, and the two psychologist that his health problems are causing petitioner to miss AA meetings because he does not have the energy to work all day and attend AA too. Petitioner has Hepatitis C, lymphoma, chronic fatigue syndrome, and major depression. All these health problems leave petitioner exhausted with lack of energy and motivation to attend AA. But the BPH did not even consider this. The BPH also violates petitioners ADA rights for withholding parole for alcoholism because alcoholism is a disability under the ADA. Parole is being denied because of a disability.
See Ex. N: Correctional Counselors Report. pp. _____.

7. Ground 2 or Ground ___3___ (if applicable):

The Board of Prison Hearings violated petitioner's due process of law right pursuant to California Penal Code § 3042; by the BPH failing to send a § 3042 notice to the attorney who represented petitioner at trial: under the Federal and California Constitutional clauses.

a. Supporting facts:

For the July 01, 2005., parole hearing, petitioner waived his right to have an attorney appointed. As a result of this waiver, petitioner was given, by the BPH agent CC-I, what is known as, the attorney evidence packet. In this evidence packet were most of the Ca. Pen. Code § 3042 notices. A § 3042 notice was sent to the trial court presiding judge, the Monterey County District Attorneys Office, and to the Monterey County Sheriff's Department. All as required by Penal Code § 3042.

See Ex. T: California Penal Code § 3042 notices. pp. 1 - 4.

However petitioner could not find a Penal Code § 3042 notice being sent to the trial attorney who represented petitioner at his court trial in Dec. of 1983. Instead the evidence packet contained a CDC&R memorandum. The memorandum stated that a § 3042 notice could not be sent to the trial attorney because his address was unknown.

See Ex. S: BPH/CDC&R memo of unknown trial attn. address.

The attorney who represented petitioner at trial; name is on the front page of the Probation Officers Report (POR). The POR is a document that the BPH and CDC&R have.

See Ex. D: Probation Officers Report (POR). pp. 1 - 7.

b. Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

1                              Ground 3.

2                              CONTENTIONS

3        Petitioner's trial attorneys name is: James Newhouse.

4   Petitioner believes the person in charge of send out the Penal

5   Code § 3042 notices, on behalf of the BPH, is the Classification

6   & Parole Representative at San Quentin Prison.  Under CDC&R's

7   usage this is abbreviated to C&PR.

8

9        In petitioner's Central File, aka a C-file, and also

10  in the BPH attorney evidence packet, there are no address given

11  for any of the officials that Penal Code § 3042 requires the

12  BPH to send notification to.  The exception would be the actual

13  § 3042 notices prepared by the C&PR of San Quentin Prison.

14  So where did the C&PR get the address's for all of the officials

15  that were sent a § 3042 notice ?

16  See Ex.  T:  California Penal Code § 3042 notices. pp. 1 - 4.

17

18       Petitioner contends that the C&PR had to look these address's

19  up  in  reference  books,  such as,  telephone  books,  court

20  directories, or CDC&R's own reference address books.  But the

21  C&PR did not look up petitioner's trial attorney's address in

22  any reference book like the California State Bar Association's

23  address book which contains all of the attorneys whom practice

24  law in California, and gives their addresses.

25  Petitioner did look up trial attorney James Newhouse's address

26  in the State Bar Directory.  The address is:  James Newhouse,

27  460 Alma Street. Monterey California, 93940-3203.

28

                              43.

Ground 3.

CONTENTIONS

Petitioner attempted to give the trial attorney's address to to the C&PR via a CDC&R form, known as, a Request For Interview. See Ex. Q: Request For Interview Form to C&PR on Feb. 20, 2005.

The C&PR seemed not to do anything about sending a § 3042 notice to the trial attorney because petitioner did not receive a copy of any notice sent. Petitioner then filed a CDC&R 602 administrative appeal form. The 602 appealed the fact the trial attorney was not sent a Penal Code § 3042 notice as required by law.

See Ex. R: CDC&R 602 Appeal. Mar. 14, 2005. pp. 1 - 4.

Petitioner sent the 602 appeal to the Appeals Coordinator, at San Quentin which is either CC-II, W. Jeppeson, or CC-II R. Chandler-Dacanay. The appeals coordinator returned the 602 appeal with a CDC&R 695 form attached. The CDC&R 695 form directed petitioner to send the 602 appeal to the BPT (BPH). See Ex. R: CDC&R 602 Appeal. Mar. 14, 2005. at pg. 4.

Petitioner sent the 602 appeal to the Board of Prison Terms at their Sacramento address: 1515 K Street. 6th Floor. Sacramento, Ca. 95814. The BPT or now the BPH returned the 602 appeal. A Kirsten Preslar signed a memo stating essentially that the BPH does not accept administrative appeals of BPH's actions pursuant to CCR Title 15 § 3160.

44.

Ground 3.

CONTENTIONS

See Ex. R:   CDC&R 602 Appeal. at pg. 1.


Petitioner contends that he has did all he could do to provide the name and address of the trial attorney to the BPH so the BPH could send a Penal Code § 3042 notice to said attorney. The attorneys name was given in the 602 appeal, and in the Request for Interview Form.   The trial attorneys address was also given in the two CDC&R official forms.   Petitioner therefore contends that the BPH arbitrarily violated his due process of law right pursuant to California Penal Code § 3042 to have a notice sent to the attorney who represented him at trial. This lack of notification by the BPH caused petitioner to have arbitrary and unfair parole hearing on July 01, 2005., becuase BPH gave undue weight to the evidence of the Monterey County District Attorneys § 3042 notice reply.   The BPH even used the Monterey County District Attorney's § 3042 notice reply, as denial reason # 10. ( See Ground One of this petition.) However the BPH did not consider any evidence that might have been presented by the trial attorney should he have received his Penal Code § 3042 notice.   The one source of possible mitigating evidence for petitioner's behalf was purposely and illegal avoided with a trivial excuse of we don't know the trial attorney's address.   At the very least petitioner ask the reviewing court to order a new parole hearing on this ground alone.

7. Ground 2 or Ground ___4___ (if applicable):

    In the July 01, 2005., parole hearing, the BPH relied upon illegal and unreliable evidence which resulted in an arbitrary and capricious parole hearing in violation of Petitioner's Due Process law rights under the California and Federal Constitutional clauses.

a. Supporting facts:

    The BPH used as its denial reason # 5:

        " There's a (indiscernible) occasion that the inmate actually got worse after the incident, never turned anyone in.  This theory indicates that maybe he had more participation in the crime than he alleges."

See Ex. B: BPH Denial Trans.  pp. 15 line(s) 22 - 26.

    This is exactly why petitioner waived attending the hearing and waived his attorney, so petitioner could find out what it was the BPH was holding against him.  And here it is: a secret theory.  Petitioner contends that the BPH and its predecessor the BPT have in each and every one of petitioner's parole hearings been using This secret theory.  A theory that has the BPH not accepting the court found true facts of the offense.  The BPH has held a kangaroo court based upon one small fact from the gravity of the offense .

b  Supporting cases, rules, or other authority:

1

## Ground 4.

2

### CONTENTIONS

3  How does this small fact from the gravity of the offense support

4  the commissioner contention that petitioner got worse after

5  offense ? Let alone support a theory that petitioner had more

6  participation in the offense than he alleges.

7  Petitioner did not turn anyone in, and this fact goes a long

8  in explaining the duress.

9

10    Petitioner contends that the theory the BPH used to deny

11  parole is illegal evidence because theories are not reliable

12  evidence.  Theories also do not have an indicia of reliability.

13  The theory used by the BPH also is in violation of the BPH's

14  regulation of Title 15 § 2401(a), which requires the BPH to

15  consider all reliable evidence.

16  In re Dannenberg (2005) 34 Cal.4th. 1060., 1083 (§ 19).

17  In re Powell (1988) 45 Cal.3rd. 894, 902.

18  Jancsek v. Oregon Bd. Parole (9th Cir. 1997) 833 F.2d. 1389,

19  at page 1390 indicia of reliability.

20  In re Scott (2005) ____ Cal.App.4th. ____, _____. DJDAR 12450,

21  12456.

22

23

24

25

26

27

28

47.

7. **Ground 2 or Ground** _____5_____ *(if applicable)*:

The BPH in denying parole with denial reason # 11, violated petitioner's due process of law rights pursuant to Ca. Penal Code § 5011, under the California and Federal Constitutional clauses, and including the relevant due process claims of a right to a defense

a. **Supporting facts:**    , and Ineffective Aid of Counsel at trial.

The BPH used denial reason # 11:

" The Panel makes the following findings.  The
Prisoner continues to need therapy programming
and self-help in order (indiscernible) discuss
the (indiscernible) cope and stress in a non-
destructive manner as well as to gather greater
insight into the crime.  In review of the
prisoner's social history and lack of program
participation, there's no occasion that the
prisoner would behave differently if paroled. "

See Ex. B: BPH Denial Trans. pg. 17 line(s) 14 - 23.

Petitioner contends that the two psychiatric reports prepared for the July 01, 2005., parole hearing both evaluate petitioner's dangerousness level as lower than the average prisoner.
See Ex. I: Dr. Lewis's Life Prisoner Eval. pp. 1 - 5.
See Ex. J: Dr. Bencichs's Psychological Eval. pp. 1 - 3.
Therefore the BPH's requirements go beyond just assessing if

b  **continued**
Supporting cases, rules, or other authority:
California Penal Code § 5011.
People v Pope (1979) 23 Cal.3rd. 412, 427, 152 Cal.Rptr. 732.
Flanders v. Graves (8th Cir. 2002) 299 F.3d. 924
Schlup Gateway.
California and Federal Constitutions.

Ground 5.

CONTENTIONS

petitioner would pose an unreasonable risk of danger to society, as Ca. Penal Code § 3041(b) requires. Instead the BPH is relying upon vestibule of a popular American Myth of what parole for a convicted murder should be. The myth that the prisoner must be first broken then lead over a series of years to total rehabilitation and finally redemption in a religious way.

Petitioner further contends that this is what the BPH is is doing when it states that petitioner does not have sufficient prior prison programming, or needs therapy and self-help. The BPH arbitrarily presumes that petitioner is dangerous because he has committed a Ca. Penal Code 31 co-defendant felony murder. However the parole law Ca. Penal Code § 3041(a)(b) presumes that petitioner is parole suitable. There is nothing particularly egregious about petitioner second degree crime to warrant not setting a parole suitability date. Petitioner does have enough prior prison programming as petitioner has received from prior BPT parole panels written reason of what petitioner could do to become parole eligible at the next parole hearing. In none of these prior parole hearings has the BPT recommended to petitioner that his programming was not sufficient. How could petitioner have known that he needed more programming if the prior BPT panels have told petitioner he was doing the right things, and to get his ducks in a row concerning parole plans See Ex. H:  Prior BPT Denial Trans. pg. 66 line(s) 5 - 11.

1                              Ground 5.

2                             CONTENTIONS

3          Petitioner also contends that the BPH finding that petitioner

4     needs more therapy to discuss and cope with stress in a non-

5     destructive manner is arbitrary because neither psychiatric

6     report prepared for the parole hearing suggest that petitioner

7     needs therapy for the purpose of dealing with stress in a non-

8     destructive manner.  Dr. Lewis's report does recommend therapy,

9     but only for the purpose of treating petitioner's depression.

10    See Ex. I:  Dr. Lewis's Life Prisoner Eval. pg. 5 at top ¶.

11

12         Please note that both reports, evaluate petitioner as

13    suffering from depression as a mood disorder present since child-

14    hood.

15    Dr. Lewis pg. 3 at ¶ XIII Review of Life Crime, B:

16

17              " The routine mood altering substances may

18              indicate that he suffered a mood disorder,

19              likely depression that caused him to self-

20              medicate to control for his dysphoric affect

21              Mr. Ekdahl's than active addiction is one

22              contributing factor to the life crime

23              because the regular intake of substances

24              tends to increase vulnerability to behave

25              in ways they would not if they were abstinent."

26    See Ex. I:  Dr. Lewis's Life Pris. Eval. pg. 3.

27

28

                              50.

1
Ground 5.

2
CONTENTIONS

3
Also Dr. Bencich pg. 2 at ¶ XIII Review of Life Crime. B:

4

5
" I suspect his depression and very low self-

6
esteem were long standing, since childhood, and

7
untreated because the family was so isolated

8
and transient.   I believe the fear he evidenced

9
in his early incarceration, when custody felt

10
he could be easily victimized, was quite similar

11
to the fear he felt in childhood under his step-

12
father's command and as a young adult when coerced

13
into the commission of the crime by a much more

14
forceful acquaintance. "

15
See Ex. J:  Dr. Bencichs's Psych. Eval. pg. 2.

16

17
    Notice   that   these   evaluations   differ   from   the   BPH's

18
Assumption that petitioner's depression stems from the day that

19
the   California   [Supreme]   Court   denied   petitioner's   religious

20
name change writ of habeas corpus:

21

22
" Mr. Ekdahl has been attempting to change his

23
name, and in May of 2004 he went on a hunger

24
strike for 3 days when the California Superior

25
Court decided he would not be allowed to change

26
his name.  This was a trigger of depression, and

27
he continues to suffer from depression, he reports

28

51.

1                              Ground 5.

2                             CONTENTIONS

3           that the Prozac he is taking helps alleviate

4           the symptoms a great deal. "

5    See Ex. A:  BPH Hearing Trans. pg. 10 line(s) 10 - 17.

6

7        Petitioner also contends that the BPH finding that petitioner

8    needs more therapy and self-help to gather greater insight into

9    the crime, is arbitrary and in violation of Ca. Penal Code

10   § 5011.  This law means that a prisoner does not have to admit

11   guilt, or have greater insight into the crime, if he is innocent

12   of the crime.  And if petitioner chooses to not discuss the crime

13   because of his innocence the BPH should not illegally withold

14   parole on the grounds petitioner needs more therapy to gather

15   insight.  Because the only way a life prisoner could gather

16   greater insight through therapy would be for that prisoner to

17   discuss the crime with the therapist.

18

19       Petitioner contends he is innocent of this crime pursuant to

20   Ca. Penal Code § 26 (6) or later (8), and because of that

21   fact petitioner will never discuss the crime again.  The Monterey

22   County Superior Court Judge Silver lowered the degree of murder

23   from 1st degree felony murder to 2nd degree felony murder.

24   The trial court was following the holding of People v Dillon

25   (1983) 34 Cal.3rd. 441.  The trial court's decision to lower

26   the degree of offense was based upon petitioner's duress

27   defense.  The duress petitioner suffered when Mark Horning

28

                                52.

1 |                              Ground 5.

2 |                             CONTENTIONS

3 | threatened petitioner with a credible death threat.  The trial

4 | court was familiar with the duress as it was self-evident to

5 | trial Judge who remarked that he had personally observed the

6 | defendants and had presided over some of the Horning Brother's

7 | trial proceedings.

8 | See Ex. E:  Trial Court Sentencing Trans.  pp. 1 - 6.

9 | People v Horning (1984) 150 Cal.App.3rd. 1015, 1017 - 1018.

10 | People v Horning (2005) 34 Cal.4th. 871.

11 |      Both case laws reflect upon the dangerousness of the Hornings

12 | and proves the credibility of the death threat.

13 |

14 |      The trial court would have found petitioner innocent pursuant

15 | to Ca. Penal Code § 26(6)(8) if not for the fact the statute

16 | forbids that finding if the crime is punishable by the death

17 | penalty.  So instead the trial court used the duress to lower

18 | the degree of crime to 2nd degree felony murder.  Petitioner

19 | contends that the trial court as soon as it lowered the degree

20 | of crime to 2nd degree felony murder then the trial court should

21 | of followed though and found petitioner innocent pursuant to

22 | Ca. Penal Code § 26(6)(8)., because petitioner's type of 2nd

23 | degree felony murder can never be punished by the death penalty.

24 | 2nd degree felony murder is a court created statute and as such

25 | has never in its history been punished by the death penalty;

26 | therefore there is no § 26 prohibition against petitioner's

27 | innocence and no time bar for an innocent claim.

28 |

7. Ground 2 or Ground ___6___ (if applicable):

    Petitioner, in the alternative, has an illegal sentence, in violation of the applicable clauses of either the California or United States Federal Constitutions, and is not time barred because an illegal sentence will always have need of legal remedy.

a. Supporting facts:

    Petitioner was convicted of 1st degree felony murder. 1st degree felony murder only carries one penalty applicable here, and that penalty is the death penalty. However the trial court lowered the degree of felony murder to 2nd degree via the holdings of People v Dillon (1983) 34 Cal.3rd. 441.

    Petitioner contends that the Rose Bird, California Supreme Court overstepped its authority, and invaded the legislative sphere of California Government, when the Court created a new 2nd degree felony murder for punishment of one of the felonies enumerated in California Penal Code § 189. Only the California Legislature has authority to define crimes and the punishments for those crimes. While the California Judicial Branch of Government has created a " wholly judicial creation" of 2nd degree felony murder, it is only applicable to any felony inherently dangerous to human life, and is not one of the six felonies enumerated in Penal Code § 189. Petitioner's robbery convictions are one of the six felonies that are enumerated in Penal Code § 189. Therefore petitioner cannot be sentenced to 2nd degree felony murder because the court had no authority to create this proportionality type of 2nd degree felony murder. Petitioner should be ordered by the court to be re-sentenced to 1st degree felony murder sentence of Death Penalty.

b. Supporting cases, rules, or other authority:

People v Ford (1964) 60 Cal.2nd. 772; 36 Cal.Rptr. 2nd. 620.

People v Hansen (1994) 9 Cal.4th. 300; 36 Cal.Rptr. 609.

People v Mattison (1971) 4 Cal.3rd. 177; 93 Cal.Rptr. 185.

People v Burroughs (1984) 35 Cal.3rd. 824, 829.

People v Dillon (1983) 34 Cal.3rd. 441.

7. Ground 2 or Ground ___7.___ *(if applicable)*:

California Penal Code Statue § 3001 is unconstitutional under any relevant Constitutional Clause of either or both of the U.S. State of California Constitution or the United States Federal Constitution.

a. Supporting facts:

Petitioner is convicted out of Monterey County. As such, pursuant to Ca. Penal Code § 3001., petitioner must parole to Monterey County. Petitioner does not have family in Monterey County. CDC&R does not provide for life prisoner under Ca. Penal Code § 1168 any type of pre parole resources. The BPH does require life prisoners to submitted viable parole plans that include a place of residence and a promise of future employment. While the BPH does not have specific regulations to cover its pre parole requirements from a life prisoner. The BPH does, as a matter of long standing routine, require such pre parole plans. Not all California Counties are equal in their economic opportunities, and resources available to petitioner to create his pre parole plans. The BPH has constantly has denied petitioner to change the county of parole. Petitioner therefore faces unfair and financial difficulties in formulating viable pre parole plans that will be acceptable enough for the BPH to find petitioner for parole. This fact causes petitioner considerable depression because he will never be able to parole because of this statutes requirements and the BPH's draconian application of the law.

b. Supporting cases, rules, or other authority:

1                                           _____.

2                                                     Name.

**GROUND 8.**

When the Sixth Appellate District Court denied habeas corpus petition H0300652, on October 16, 2006, it violated petitioners right to Constitutional habeas procedure under the California Constitution and the United States Constitution.

Summery denial of petitioner's habeas petition disregards that there are valid constitutional grounds for relief. These grounds of the petition can be shown valid, but only after a normal habeas procedure is had. After a show cause order and subsequent motions for discovery the grounds will be proven.

See Exhibit **V:** Sixth Appellate Court Summery Denial Order of October 16, 2006.

Sims v. Rowland, 414 F.3rd. 1148 1151 (9th Cir).

People v Gallardo (2000) 77 Cal. App. 4th. 971 [92 Cal.Rptr. 2d. 217]

1

**VERIFICATION**

2

3        I, Emil Ekdahl,  state:

4

5        I am the petitioner in this action.  I have read the foregoing Petition for Writ of Habeas Corpus and

6    the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my

7    on my own information and belief, and as to those matters I believe them to be true.

8

9

10

11

12

13

14

15

16

17

18

19

20        I declare under penalty of perjury that the foregoing is true and correct  and that this declaration was

21    executed on _____, at San Quentin State Prison, California .

22

23

24                                                               _____.

25                                                                        Name.

(1)

## PRAYER REQUEST FOR RELIEF

Petitioner is without remedy save for habeas corpus.  Accordingly, petitioner request that the Court:

1. Issue a writ of habeas corpus

2. Issue an order to show cause

3. Declare the rights of the parties;

**4.** Grant any and all relief found necessary or appropriate.

Respectfully submitted

*Emil Ekdahl*

Emil Ekdahl,
Plaintiff In pro. se.

# DECLARATION OF SERVICE BY MAIL

I, _____*Emil Ekdahl*_____, the undersigned, declare:
Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

CDC No. _*C-79199*_    Housing _*2N30-U*_
San Quentin State Prison
San Quentin, CA 94974

On _*November 07*_, _*2006*_, I served the following document(s):
      Month/Day            Year

_*1 Copy of Petition for writ of habeas corpus.*_

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

*California Attorney General*
*455 Golden Gate Ave*
*Suite 11000*
*San Francisco, CA 94102-7004.*
*Attn: Correctional Law Section.*

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this _*07*_ day of _*November*_, _*2006*_, at San Quentin, CA, County of Marin.

_____*Emil Ekdahl*_____
Signature of declarant

# DECLARATION OF SERVICE BY MAIL

I, _____*Emil EKDAHL*_____, the undersigned, declare:
**Printed Name of Declarant**

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

CDC No. _*C-79199*_    Housing _*2N30-U*_
San Quentin State Prison
San Quentin, CA 94974

On _*November 07*_ , _*2006*_ , I served the following document(s):
      **Month/Day**        **Year**

_*One Copy of Petition for Writ of habeas corpus plus Exhibits,*_
_*copy to said writ.*_

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

_*Supreme Court of California,*_
_*San Francisco Office,*_
_*350 McAllister Street,*_
_*San Francisco, CA. 94102-4797.*_
_*Attn: Court Clerk habeas Section.*_

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this _*07*_ day of _*November*_ , _*2006*_ , at San Quentin, CA, County of Marin.

_____*Emil Ekdahl*_____
**Signature of declarant**